IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| HAYWARD INDUSTRIES, INC., <br><br> Plaintiff, <br><br> v. <br><br> BLUEWORKS CORPORATION, BLUEWORKS INNOVATION CORPORATION, NINGBO C.F. ELECTRONIC TECH CO., LTD; NINGBO YISHANG IMPORT AND EXPORT CO., LTD. <br><br> Defendants. <br> -------------------------------------------------------- <br> NINGBO C.F. ELECTRONIC TECH CO., LTD, <br><br> Counterclaim-Plaintiffs, <br><br> v. <br><br> HAYWARD INDUSTRIES, INC., <br><br> Counterclaim-Defendant | Civil Action No. 3:20-CV-710 -MOC-DSC |

**HAYWARD INDUSTRIES' OBJECTION TO**
**MAGISTRATE JUDGE'S ORDER OF MARCH 7, 2023**

Pursuant to Fed. R. Civ. P. 72(a), Plaintiff Hayward Industries, Inc., respectfully objects to the Magistrate Judge's text-only order of March 8, 2023, granting Defendants' Motion to Extend Deadlines in the Pretrial Order and Case Management Plan, (Doc. No. 110).

I.  **INTRODUCTION**

On March 7, after hours, Defendants moved to extend this Court's deadlines, including the June trial-ready date *and deadlines that had already expired*. Defendants' motion was noted on the docket as opposed, but the Magistrate Judge granted it the next morning without first giving

Hayward the chance to respond. That violation of due process, along with other serious and prejudicial errors, is the reason Hayward now objects to the order and seeks its reversal.

Defendants have delayed this case numerous times since it was filed on December 18, 2020. There have been seven extensions of the schedule (*see* Doc. Nos. 52, 72, 85, 90, 92, 105, and 110), all sought by Defendants. As a professional courtesy, Hayward either consented to Defendants' requests or did not oppose, but each time conditioned its position on not moving the trial-ready date of June 20, 2023. Defendants have already extended the expert deadlines six times before finally and *deliberately* electing to not serve any opening or rebuttal reports. The time has come for this case to be adjudicated on the merits without further delay.

## II. FACTUAL BACKGROUND

### A. Hayward Was Not Given an Opportunity to Respond, and Defendants Failed to Meet and Confer

Defendants noted that their motion was "opposed" when they filed it on March 7. Under the local rules, Hayward had 14 days to respond. Indeed, the clerk entered on the docket a response date of March 21. Nonetheless, the Magistrate Judge granted the motion a mere 15.5 hours later, before Hayward had the opportunity to respond.[1] The Court, therefore, did not consider Hayward's position. *Compare Maynard v. Dixon*, 943 F.2d 407, 413 (4th Cir. 1991) (finding no error because the opposing party was given "sufficient opportunity to respond").

Had the Court allowed Hayward to respond, Hayward would have explained the prejudice it would suffer from extending the trial date past June. For example, this case involves swimming pool equipment, the prime selling season for which, as one would expect, is the summer. By

---

[1] Defendants' filed their motion at 5:51 pm on Tuesday, March 7. (Doc. No. 110). Even though Defendants' motion and the ECF filing noted that the motion was opposed, the Court granted the motion the next morning, in a text-only order entered at 9:26 am on Wednesday, March 8.

extending the trial date from June to the end of August, the Court gave Defendants an extra selling season during which they would continue to harm Hayward by co-opting sales of Hayward's competing products via trademark infringement, false advertising, passing off, and other unfair competition. Furthermore, Defendants' false statements remain in their Amazon and Blueworkspool.com advertisements, including as to claiming compatibility with Hayward's swimming pool systems and that their cell plates are "made in USA" or "made by a USA company," despite their claim that they have changed their advertising to address Hayward's concerns. (Doc No. 110 at 2). Hayward would have also questioned Defendants' good faith and claim of excusable neglect, as well as whether there was good cause to justify the extensions. Moreover, Hayward's damages expert has another trial scheduled for the end of August and thus has a conflict. Hayward's local counsel also has a trial starting in July that will run through the end of August and beyond and thus also has a conflict.

Furthermore, the Magistrate Judge extended not only future deadlines (*i.e*., the June trial date and dispositive motion dates) but also deadlines *that had already passed* (*i.e*., the expert report deadlines). Doing so, as even Defendants admit, requires a finding of good cause and, for the lapsed deadlines, excusable neglect, which is a higher standard than when extending future deadlines. (*See* Doc. No. 110 at 2 and 4.) Not only did the Magistrate Judge not wait for Hayward's argument on whether Defendants had met that higher standard (Defendants offered no justification), but the Magistrate Judge also ruled in a text-only order with no findings at all, including as to good cause and excusable neglect.

Additionally, the local rules require parties to meet and confer before filing motions. While Defendants previously raised with Hayward their desire to extend future deadlines, they never revealed their intent to seek extension of the expert report deadlines that they had chosen to not to

3

meet. *See* LCvR 7.1(b) ("Civil motions must show that counsel have conferred and attempted in good faith to resolve areas of disagreement . . . A motion that fails to show that the parties have properly conferred or attempt to confer may be summarily denied").

In sum, Defendants' motion lacks any justification—much less good cause and excusable neglect—for modifying the scheduling order, delaying trial, and getting a "mulligan" on serving rebuttal expert reports. Nor did the Magistrate Judge's conclusory, text-only order find any such justification.

> **B.** **Defendants Failed to Show Good Cause, Failed to Show Excusable Neglect for Missing the Expert Report Deadline, and Failed to Provide any Reason for Extending the Trial Date**

As for the missed rebuttal expert report deadlines, this is not a case of excusable neglect. Defendants were amply represented throughout this case. Defendants are currently on their *seventh* counsel (original local counsel Mr. Grimes of Bradley Arant Boult Cumming LLP; current local counsel Mr. Jaffa of Cranford, Buckley, Schultze, Tomchin, P.A.; Foley & Lardner; Morgan Lewis; Yanling Jiang of Jiang IP; Platinum Intellectual Property; and now Turner Boyd LLP). Defendants were ably represented—by a very large and capable firm, Morgan Lewis, which at the time was Defendants' lead trial counsel—when they received Hayward's opening expert reports on January 20, 2023. Although still represented by Morgan Lewis (and two other firms), Defendants also did not serve any rebuttal expert reports or seek an extension by the February 17th deadline. Instead, Defendants waited several more weeks, fired Morgan Lewis, retained new counsel, and used that ploy to seek a do-over.

The Magistrate Judge could not possibly have found good cause or excusable neglect because Defendants made no such showing. Instead, Defendants merely confirmed the obvious:

4

Case 3:20-cv-00710-MOC-DSC   Document 112   Filed 03/15/23   Page 4 of 19

> Under the prior schedule, Blueworks' [i.e., Defendants'] rebuttal expert reports were due to be served February 17; Blueworks' prior counsel did not serve any rebuttal expert reports.

(Doc. 110 at 4). Defendants have offered no legitimate argument for "good cause" and no excuse for their neglect, except to say they have "acted diligently through its new counsel," after the deadline passed, "demonstrating Blueworks' good faith." (Doc. No. 110 at 5). Acting diligently *after* a deadline has passed is no excuse for why the deadline was missed in the first place, or in this case, a sufficient reason why Defendants decided to not serve reports or request an extension.

Defendants could not possibly show excusable neglect because Defendants made a strategic decision to not serve expert reports and to let deadlines expire. Indeed, Defendants' counsel, Ms. Dunn, advised Hayward on February 16, 2023—the day before the deadline—that Defendants would not be serving rebuttal reports:

> Hi Erik, I wonder whether we can have a call about this case. **I can tell you that Defendants will not be able to provide the rebuttal documents today because they cannot afford them . . . .**

Email from Ms. Dunn to Mr. Belt, Feb. 16, 2023 (emphasis added); *see also* (Declaration of Erik Belt, dated March 13, 2023 ("Belt Dec.") ¶ 7, attached hereto as Exhibit B). Nonetheless, Defendants did not timely move for an extension, nor have they shown sufficient "excusable neglect" to warrant reopening discovery deadlines

Defendants had retained experts as early as November 2022. For example, Defendants prospective expert, Dr. David Eby, signed the protective order on November 11, 2022. (Belt Dec. ¶ 13). Defendants disclosed their three rebuttal experts Dr. Eby, Dr. Daniel Werner and Dr. Melissa Pittaoulis, on January 10, 2023, and that the experts had signed the protective order so that they could review Hayward's confidential materials in preparation for drafting expert reports. Hayward did not object to any of Defendants' experts' viewing confidential information. *Id*. Thus,

5

over a month before the rebuttal deadline, Defendants had retained experts, who were presumably getting up to speed.

Defendants simply decided to not use experts, perhaps for cost limitations, perhaps due to a difference of opinion among their four law firms, including new counsel, regarding defense strategy. Whatever their reason, Defendants decided to not notify the Court or seek leave to extend the expert deadlines before they passed. This tactical decision demonstrates Defendants' lack of good cause, and most importantly does not constitute excusable neglect. All of the above should have been considered by the Magistrate Judge, who erred by ruling on Defendants' motion without any such findings and without waiting for Hayward's response.

### C. Defendants Engaged in Gamesmanship for Strategic Advantage

About 10 days before seeking the extensions at issue here, Defendants moved for another extension—which was not opposed and was granted—even though Defendants likely planned at the time to move again for a later extension for strategic reasons. As early as February 7, 2023, the parties had been discussing the first extension of time to depose Hayward's experts and to file dispositive motions, all to accommodate Defendants' request for a judicial mediation. Those discussions focused on making room for mediation, but ensuring the trial date in June was not disrupted. (Belt Dec. ¶ 4). Hayward advised Defendants' counsel repeatedly that it would not oppose a motion for extension so long as Defendants did not seek a new trial date. (*Id*). Further, Hayward would not agree to moving the deadline for rebuttal expert reports. (*Id*. at ¶¶ 4-6). Yet, Defendants did not seek to move for an extension to file rebuttal expert reports at any point before the February 17th deadline.

Defendants notified Hayward of the forthcoming change in counsel in an email dated February 21, 2023. (Belt Decl. ¶ 10, Exhibit D). Defendants thus knew of their decision to change

6

counsel *before* February 24, when they filed their unopposed motion to extend the deadlines to depose experts and for dispositive motions.[2] Yet, Defendants did not advise the Court of that pending change in counsel or that they would later, after the mediation was scheduled, seek an extension for their rebuttal expert reports or for trial:

> The Ready for Trial date shall remain unchanged and set for June 20, 2023. The Parties continue to make substantial progress in preparing [sic]. A judicial settlement conference is scheduled for March 16, 2023. The Parties believe there is a strong possibility that this matter will be resolved at the judicial settlement conference. Finally, Defendants consulted with counsel for Plaintiff and the motion is unopposed.

(Doc. No. 105 at 2) (emphasis added).

Hayward did not oppose that motion because Defendants assured Hayward they would not seek to extend the trial date. (Belt Dec. ¶ 11). Indeed, as seen above, Defendants emphasized that the trial ready date set for June 20, 2023, remained unchanged. The Court granted that joint motion and extended the deadlines for completion of expert depositions until March 31, 2023, and dispositive motions until April 10, 2023.

But less than two weeks later, only 15 minutes after Defendants filed a notice of substitution of counsel, Defendants moved to extend the scheduling order *yet again* and this time sought to extend the missed rebuttal expert report deadline and the trial date as well. This tactic can only be seen as gamesmanship by Defendants. There is a clear pattern of Defendants' requesting extensions and then asking for another within a week.[3] Defendants have constantly

---

[2] Curiously, Defendants did not move then to extend the expert report deadlines.

[3] For example, Defendants' requested another extension of the scheduling order in September 2022, and filed a joint motion on September 29 (Doc. No. 90). Four business days later, Defendants advised Hayward that they needed yet another extension due to their lead counsel being hospitalized (which, obviously, Hayward did not oppose). Similarly, only seven business days after jointly moving to extend deadlines on February 17, 2023, Defendants bring their most recent Motion seeking more time and a later trial date.

7

gamed the system so that they could delay the trial as long as possible and get in another summer selling season before any court reckoning. The Court should not condone Defendants' antics any further. Hayward thus respectfully requests that the Court overrule the order and deny Defendants' motion.

### D. Hayward Will Be Prejudiced by a Late August Trial Date

The Magistrate Judge also erred by failing to undertake any analysis of the prejudice to Hayward from the continuances. As mentioned above, Hayward will be harmed if trial does not occur before the peak commercial season. The parties compete most intensely for customers during the summer and thus Hayward will be prejudiced if Defendants are afforded another season of profits and sales infringing on Hayward's products.

Nor did the Magistrate Judge inquire into, or permit a response on, whether the next trial date presented any scheduling conflicts. Hayward's local counsel, Mr. Ferguson of Womble Bond Dickinson, who is required to be at the trial by local rule, has a previously-scheduled criminal trial in the Northern District of Georgia scheduled to begin July 12th, where both parties reported to that court they anticipate the trial taking at least 12 weeks (until October 4). Additionally, lead trial counsel Erik Belt had planned a European vacation in late August to celebrate his 30th anniversary. More importantly, at least one of Hayward's expert witnesses has a conflict in late August. Specifically, Hayward's expert Juli Saitz is out of the country August 1 through 4th and also has a scheduled trial set for August 24, 2023. (Belt Dec. ¶15). Thus, extending the trial date to late August poses conflicts and prejudices Hayward.

### III. LEGAL STANDARD

Upon the filing of objections to a Magistrate Judge's order, "[t]he district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly

8

erroneous or is contrary to the law." Fed. R. Civ. P. 72(a). "A factual finding is clearly erroneous when [a court is] 'left with the definite and firm conviction that a mistake has been committed.'" *Johnson v. City of Fayetteville*, No. 5:12–CV–456–F, 2013 WL 4039418, at *3 (E.D.N.C. Aug. 6, 2013) (quoting *TFWS, Inc. v. Franchot,* 572 F.3d 186, 196 (4th Cir. 2009)).

## IV. ARGUMENT

The Court should overrule the Magistrate Judge's order because (1) Defendants' counsel failed to confer with Hayward regarding Defendants' request to extend deadlines that had already passed; (2) the Magistrate Judge failed to wait for Hayward's opposition before ruling and thus did not consider Hayward's side of the story; and (3) the Magistrate Judge failed to consider Fourth Circuit case law that denies extensions of deadlines, including those that have already passed, when the movant has not demonstrated good cause and, in the case of expired deadlines, excusable neglect.

### A. Defendants' Did Not Comply with Local Rules to Meet and Confer

As an initial matter, Defendants did not comply with the Local Rules because there was no meet-and-confer about *passed deadlines*. *See* Local Rule 7.1(b) ("Civil motions must show that counsel have conferred and attempted in good faith to resolve areas of disagreement, or describe the timely attempts of the movant to confer with opposing counsel. A motion that fails to show that the parties have properly conferred or attempted to confer **may be summarily denied**") (emphasis added). Indeed, Hayward's counsel has never spoken with new counsel even once. Defendants' local counsel had mentioned an extension of deadlines on a meet-and-confer on March 6, 2023, with Hayward's local counsel, about a *different* motion that they intended to extend deadlines by 60 days, which Hayward opposed. There was no discussion before this motion of extending deadlines that have already passed. (Belt Dec. ¶ 12).

### B. The Court Did Not Allow Hayward to Oppose

Rule 72(a) provides that "[w]hen a pretrial matter not dispositive of a party's claim or defense is referred to a magistrate judge to hear and decide, the magistrate judge must promptly conduct the required proceedings and, when appropriate, issue a written order stating the decision." Here, however, the Magistrate Judge never "conduct[ed] the required proceedings" because His Honor never gave Hayward the chance to oppose the motion. Fed. R. Civ. P. 72(a); *cf. Andes v. Versant Corp.*, 788 F.2d 1033, 1038 (4th Cir. 1986) (vacating the district court's order of dismissal with prejudice when plaintiff was not given an opportunity to respond to the defendant's request for dismissal with prejudice and when the district court did not articulate the reasons for its ruling). Defendants filed their motion after hours, at 5:51 pm on March 7. Although Defendants' motion and the ECF filing notice both stated that the motion was opposed and the clerk docketed a deadline of March 21 for Hayward to oppose, His Honor granted the motion early the next morning. The order is a short "text only" order and makes no findings of excusable neglect or diligence.

### C. Defendants Have Not Shown "Good Cause" to Warrant Extension of the Scheduling Order and Trial Date

The Court's scheduling order "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). "The drafters of the Rules intended [the scheduling] order to control the subsequent course of the action so as to improve the quality of justice rendered in the federal courts by sharpening the preparation and presentation of cases, tending to eliminate trial surprise, and improving, as well as facilitating, the settlement process." *Forstmann v. Culp*, 114 F.R.D. 83, 84-85 (M.D.N.C. 1987) (internal quotation marks omitted). The good cause requirement specific to Rule 16(b)(4) takes precedence over the generally applicable extension provisions of Rule 6(b)(1). *Ladd v. Rsch. Triangle Inst.*, No. 5:06-CV-399-BO, 2008 WL

10

Case 3:20-cv-00710-MOC-DSC   Document 112   Filed 03/15/23   Page 10 of 19

11429747, at *1 (E.D.N.C. Jan. 7, 2008), *aff'd*, No. 5:06-CV-399-BO, 2008 WL 11456161 (E.D.N.C. Mar. 27, 2008) (citing *Dilmar Oil Co. v. Federated Mut. Ins. Co.*, 986 F. Supp. 959, 980 (D.S.C. 1997), *aff'd*, 129 F.3d 116 (4th Cir. 1997)); *Corkrey v. Internal Revenue Serv.*, 192 F.R.D. 66, 67 (N.D.N.Y. 2000); *see also Rich Food Servs. v. Rich Plan Corp.*, No. 5:99-CV-677, 2001 U.S. Dist. LEXIS 25955, *45 (E.D.N.C. 20 Nov. 2001) ("The good cause standard focuses on the diligence of the party seeking the modification to the scheduling order."); Fed. R. Civ. P. 16(b), advisory committee's note – 1983 amendment ("[T]he court may modify the schedule on a showing of good cause if it cannot reasonably be met despite the diligence of the party seeking the extension."). "[T]he scheduling order 'is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril.'" *Forstmann*, 114 F.R.D. at 85.

As Defendants admit in their motion, "the touchstone of 'good cause' under Rule 16(b) is diligence." *Marcum v. Zimmer*, 163 F.R.D. 250, 255 (S.D. W. Va. 1995). Defendants have identified nothing that would support a finding that they acted diligently regarding the expert report deadline at issue. Courts in this district have denied motions to extend the scheduling order when good cause is not shown. *United States v. Swamp Fox Utilities, LLC*, No. 1:15-CV-482, 2016 WL 5376200, at *4 (M.D.N.C. Sept. 26, 2016) (court found unreasonable delay in a defendant's moving to extend deadline for expert disclosures, among other deadlines, because defendant did not act diligently and thus did not establish "good case" for amending the scheduling order);, No. 5:06-CV-399-BO, 2008 WL 11429747, at *1 (finding plaintiff failed to exercise diligence in obtaining expert witness evidence and denied motion to extend deadline filed sixth months after deadline passed).

A delay due to Defendants' retaining new counsel does not establish good cause as a matter of law. Indeed, Defendants cite to that very notion in their motion: "**a delay attributed to a change**

11

**in counsel does not constitute good cause because new counsel is bound by the actions of their predecessor.**" (Doc. No. 110 at 3) (citing *Alston v. Becton, Dickinson & Co.*, No. 1:12-CV-452, 2014 WL 338804, at *2 (M.D.N.C. Jan. 30, 2014)). Here, Defendants simply intimate that new counsel may have a different strategy than predecessor counsel. Because Defendants have failed to justify their delay in moving to modify the scheduling order, including the trial date, their request should be denied as to all extensions.

### D. Defendants Failed to Show Any "Excusable Neglect" for Failing to Move for an Extension before the Expert Deadline Passed

Because Defendants waited weeks after the expert report deadlines passed before seeking their extension, they must also satisfy the demanding "excusable neglect" standard. *See* Fed. R. Civ. P. 6(b). "When an act . . . must be done within a specified time, the court may, for good cause, extend the time . . . on motion made after the time has expired if the party failed to act because of excusable neglect." Fed. R. Civ. P 6(b)(1)(B). Whether neglect is excusable is "at bottom an equitable [inquiry], taking account of all relevant circumstances surrounding the party's omission[.]" *Thompson v. E.I. DuPont de Nemours & Co., Inc.*, 76 F.3d 530, 533 (4th Cir. 1996) (quoting *Pioneer Inv. Serv. Co. v. Brunswick Assoc. Ltd.*, 507 U.S. 380, 395 (1993)). Excusable neglect is a high bar. *See Agnew v. United Leasing Corp.*, 680 F. App'x 149, 155 (4th Cir. Feb. 22, 2017). "In determining whether a party has shown excusable neglect, a court will consider: (1) the danger of prejudice to the non-moving party; (2) the length of delay and its potential impact on judicial proceedings; (3) the reason for the delay including whether it was in the reasonable control of the movant; and (4) whether the movant acted in good faith." *Colony Apts. v. Abacus Project Mgmt., Inc.*, 197 F. App'x 217, 223 (4th Cir. 2006) (citing *Thompson*, 76 F.3d at 533). The most important factor is the reason for the delay, but merely establishing these factors does

not alone entitle the moving party to relief. *Id*. A party's failure to act diligently still precludes a finding of excusable neglect. *Robinson v. Wix Filtration Co.*, 599 F.3d 403, 413 (4th Cir. 2010).

### i. Defendants Have Not Provided any Reason for Their Delay.

Although the Court looks at the totality of the circumstances when evaluating a party's failure to meet a deadline, the most significant is whether a party's reason for delay was within its reasonable control.[4] *Thompson, supra*, at 534. Here, Defendants have not provided, and cannot provide, any justification for their delay because, as they admit: "[u]nder the prior schedule, Blueworks' rebuttal expert reports were due to be served February 17; Blueworks' prior counsel did not serve any rebuttal expert reports." (Doc. No. 110 at 4). Defendants were entirely responsible for choosing not to serve rebuttal expert reports by the deadline.

Notably, Defendants had retained experts as early as November 2022 and designated three experts on January 10, 2023, at which time Defendants provided the experts' signed undertakings under the protective order so that their experts could examine Hayward's confidential materials. Hayward did not object to any of Defendants' experts viewing confidential materials. Thus, over a month before the rebuttal deadline, Defendants had retained experts, who were presumably getting up to speed on the case.[5]

Given that Defendants had lined up experts and that they were represented by a large, national law firm, Morgan Lewis, they proffer no explanation for their decision to not serve the

---

[4] Defendants' motion understandably omits that the "reason for the delay" includes whether it was in their reasonable control

[5] In addition to missing the February 17th deadline for rebuttal expert reports, Defendant also missed the January 20th deadline for opening reports on which they bore the burden of proof (*e.g.*, for their counterclaim that Hayward's trademarks are generic or descriptive). Defendants have not sought to extend that long expired January 20th deadline. But Hayward fears that Defendants will use the improper extension of the February 17th rebuttal deadline to sneak into their rebuttal reports issues that should have been raised in opening reports.

13

rebuttal reports or reason why they should be allowed to retroactively change course in their litigation strategy. Indeed, in their latest motion, Defendants failed to submit a declaration from their four law firms or from Defendants with any reason for Defendants' failure to abide by the deadlines. The failure to offer "at least some 'pardonable reason' for failure to meet the deadline" alone is, in some circumstances, sufficient to determine that the neglect is not excusable. *B&G Bldg. Maint., Inc. v. N.L.R.B.,* 123 Fed. App'x. 551, 553 (4th Cir. 2005) (upholding NLRB's conclusion that a one-day delay in filing a brief did not constitute "excusable neglect" where no reason for the delay was provided).

Defendants' purposeful conduct cannot be considered neglect, let alone excusable neglect. They were intentional decisions. ***Indeed, Defendants had already advised Hayward before the February 17th deadline that they did not intend to serve rebuttal reports in the first place***. They instead wanted to conserve financial resources for settlement purposes. ( Belt Dec. ¶¶ 7-8, Exhibits B and C). Diligent counsel would have moved to extend the deadline before it passed. But again, they chose not to do so. A party cannot establish diligence when that party has failed to timely alert the Court when it knows it will be unable to meet the deadline. *See Tetzlaff v. Educ. Credit Mgt. Corp.*, 521 B.R. 875, 8790 (E.D. Wisc. 2014). These are not negligent acts; they are just Defendants' deliberate decisions that new counsel, in hindsight, wishes to retract.

Courts in the Fourth Circuit have denied motions to extend deadlines that have already passed when a party's inadvertence or mistake was far less intentional than Defendants here. For example, the Eastern District of North Carolina recently denied a motion to extend the expert discovery deadline because the court found that the moving party, the defendants, provided no reason they could not take the expert's deposition within the time allowed and thus failed to demonstrate good cause to extend the deadline to complete expert discovery. *Tom v. Hosp.*

14

*Ventures LLC*, No. 5:17-CV-98-FL, 2022 WL 1913409, at *5 (E.D.N.C. June 3, 2022). In this case, Defendants both knew and understood the expert report deadlines and had an opportunity to request extensions of the deadlines before those deadlines passed. But Defendants failed to take actions within their "reasonable control," *Pioneer*, 507 U.S. at 395, to avoid delay. *United States v. Swamp Fox Utilities, LLC*, No. 1:15-CV-482, 2016 WL 5376200, at *4.

Defendants' rely on two cases that do not support their position. In *Beach v. Costco Wholesale Corp.*, No. 5:18-CV-00092, 2019 WL 1102223, at *2-4 (W.D. Va. Mar. 8, 2019), the plaintiff moved for a continuance and extension of the discovery deadlines to conduct depositions because her original counsel left his firm two weeks before the close of discovery. Here, Defendants' counsel did not leave the law firm. In fact, Defendants had at the time three different firms representing them. In contrast to the plaintiff in *Beach*, Defendants' counsel took no action here; rather, Defendants themselves decided to replace their counsel and retain new counsel two weeks before a scheduled mediation and four months before trial. This is not an "unforeseen personnel change," as the Court noted in *Beach*. It is a calculated decision made by the Defendants and completely within Defendants' control.

In *Alston v. Becton, Dickinson & Co., supra*, plaintiff's counsel moved to withdraw after entry of the scheduling order, which the court granted. The court advised plaintiff that she would need to proceed *pro se* unless and until new counsel appeared on her behalf. Next, plaintiff moved to stay all proceedings while she attempted to obtain new counsel. The court denied that motion, noting that "the record reflected that plaintiff agreed to withdrawal of her prior counsel after adoption of the scheduling order **and without requesting any alteration in the previously adopted deadline**s." *Id.* at *1 (emphasis added). Plaintiff then moved for an extension of time one day before the close of discovery. In discussing plaintiff's efforts to secure new counsel, the

court held that "**a delay attributed to a change in counsel does not constitute good cause because new counsel is bound by the actions of their predecessor**." *Id.* at *2 (internal citation omitted). (emphasis added). The *Alston* court emphasized that parties need to adhere to the schedule:

> a scheduling order represents 'the critical path chosen by the [Court] and the parties to fulfill the mandate of [Federal] Rule [of Civil Procedure] in securing the just, speedy, and inexpensive determination of every action.' *Marcum*, 163 F.R.D. at 253 (internal brackets and quotation marks omitted); *see also Blue v. Hartford Life & Accident Ins. Co.*, 698 F.3d 587, 594 (7th Cir. 2012) (reaffirming "that district courts have an interest in keeping litigation moving forward and that maintaining respect for set deadlines is essential to achieving that goal"); *Walter Kidde Portable Equip., Inc. v. Universal Sec. Instruments, Inc.*, No. 1:03CV537, 2005 WL 6043267, at *3 (M.D.N.C. July 7, 2005) (unpublished) (citing this Court's "history of strict adherence to discovery schedules").

*Id.* at *3. The *Alston* court found that the motion to extend the discovery deadline did not provide any adequate ground to alter that path and denied the motion. *Id.* Here, Defendants are well represented by three different law firms – much different from the *pro se* plaintiff in *Alston*. Defendants should not receive the benefit of an extension of a passed deadline because they were represented by three sets of competent counsel at the time the deadline passed.

### ii. Defendants' Have Not Acted in Good Faith

Another factor under *Pioneer*—whether Defendants' acted in good faith—does not offer support to Defendants here. While the Fourth Circuit has acknowledged that this factor is seldom an issue, *Symbionics Inc. v. Ortlieb*, 432 F. App'x 216, 219 (4th Cir. 2011), the facts of this case provide a solid basis for considering it. As discussed earlier, Defendants purposefully chose not to comply with the rebuttal expert deadline, advising Hayward that they would not be doing so. (Belt Dec. ¶ 7, Exhibit B). Defendants' counsel also chose not to move the Court for an extension before the deadline or in their February 24th motion. Rather, Defendants waited several more weeks until after they filed their recent substitution of counsel. Such actions and omissions do not

16

Case 3:20-cv-00710-MOC-DSC   Document 112   Filed 03/15/23   Page 16 of 19

counterbalance the detriment of the third *Pioneer* factor focusing on the reason for the filing delay. *Smith v. Look Cycle USA,* 933 F. Supp. 2d 787 (E.D. Va. 2013).

### iii. Hayward Will Be Unfairly Prejudiced

Contrary to Defendants' argument, Hayward will be prejudiced. Indeed, Defendants have known about the prejudice to Hayward for months because Hayward consistently advised Defendants' counsel that it did not want to postpone the trial date past the prime summer selling season and explicitly stated that it would object if they used this third substitution of counsel to request further delays, including of the trial date. (Belt Dec. ¶ 14). In addition, Defendants have not changed their false advertising statements to address Hayward's concerns despite their insincere claim that they have done so. (Doc. No. 110 at 2). Thus, to knowingly argue that Hayward will not be prejudiced is deceitful. Defendants have already benefitted from two summer seasons, the prime industry sales season, thereby increasing sales and presence in the market. The only purpose of this latest extension is to profit from one more full season. Given that the parties are direct competitors, trial should be before the selling season goes too far. Holding trial in late August will be at the tail end of the selling season, allowing Defendants to sell more and unfairly compete with Hayward and harm Hayward's business.

Indeed, Hayward provisionally opposed new counsel's *pro hac vice* admission, noting that consent was conditioned on not moving the trial date. Hayward suspected that, once the *PHV* motion was granted, Defendants would then file a notice of substitution of counsel (which does not require court action) and pull this very trick of basing the request for extensions on the substitution. That's exactly what they did. This gamesmanship should not be rewarded.

Further, the Court did not consider the conflicts of counsel, including Hayward's local counsel, who is required to be at the trial by local rule, but has a previously-scheduled trial in the

17

Northern District of Georgia scheduled to begin July 12th, where both parties reported to the Court last week they anticipate the trial taking at least 12 weeks (until October 4th). Additionally, as seen above, Hayward's fact witnesses and expert witnesses have conflicts in August. As just one example, Hayward's expert Juli Saitz is out of the country August 1 through 4th and also has a trial set for August 24, 2023. Thus, the prejudice factor weighs against granting Defendants' motion.

## V. CONCLUSION

For the foregoing reasons, Hayward respectfully requests that this Court overrule the Magistrate Judge's order and deny Defendants' Motion to Extend Deadlines in the Pretrial Order and Case Management Plan.

Respectfully submitted this 15th day of March, 2023,

**HAYWARD INDUSTRIES, INC**.

 s/ *Russ Ferguson*
Russ Ferguson (N.C. Bar No. 39671)
**Womble Bond Dickinson (US) LLP**
One Wells Fargo Center
Suite 3500
301 South College Street, Suite 3500
Charlotte, NC 2202
Russ.Ferguson@wbd-us.com

Erik Paul Belt*
James Donoian*
Anne E. Shannon*
Alexander Ried*
**McCARTER & ENGLISH, LLP**
265 Franklin St.
Boston, Massachusetts 02110
Tel: (617) 449-6500
ebelt@mccarter.com
jdonoian@mccarter.com
ashannon@mccarter.com
aried@mccarter.com

* Admitted *pro hac vice*

*Attorneys for Plaintiff Hayward Industries, Inc.*