IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| HAYWARD INDUSTRIES, INC., <br><br> Plaintiff, Counterclaim Defendant <br><br> v. <br><br> BLUEWORKS CORPORATION, BLUEWORKS INNOVATION CORPORATION, NINGBO C.F. ELECTRONIC TECH CO., LTD; NINGBO YISHANG IMPORT AND EXPORT CO., LTD. <br><br> Defendants, Counterclaim Plaintiffs. | Civil Action No. 3:20-CV-710 -MOC-DSC |

**HAYWARD'S OPPOSITION TO DEFENDANTS' MOTION TO EXTEND DEADLINES IN THE PRETRIAL ORDER AND CASE MANAGEMENT PLAN**

**INTRODUCTION**

The long-standing trial-ready date of June 20, 2023, is important to Hayward, and Defendants agreed to keep that date as a *quid pro quo* for Hayward's not opposing the previous extension that Defendants obtained only two weeks before filing the currently-disputed motion. That is why Defendants represented to this Court in their previous motion for an extension that "The Ready for Trial date shall remain unchanged and set for June 20, 2023." (Doc. No. 105) (emphasis added). Defendants should not be allowed to renege on their agreement.

Moving the trial to the end of August, as Defendants now propose, prejudices Hayward. Summer is prime selling season for the parties' competing swimming pool products. A trial in late August or later will give Defendants one more prime summer selling season to infringe Hayward's trademarks, falsely advertise their products, and unfairly steal business from Hayward. Further, a late-August trial presents conflicts for Hayward's legal team and witnesses. For example,

Hayward's damages expert has another trial scheduled for the end of August and thus has a conflict. Also, Hayward's local counsel, Mr. Ferguson, will be in a federal criminal trial at that time. Other conflicts are discussed below.

Defendants have delayed this case numerous times since it was filed in December 2020. There have been **_seven_** extensions of the schedule (*see* Doc. Nos. 52, 72, 85, 90, 92, 105, and 110), all sought by Defendants. As a professional courtesy, Hayward either consented to Defendants' requests or did not oppose, but, notably, conditioned its consent on not moving the trial-ready date. The time has come for this case to be adjudicated on the merits now, without further delay.

Defendants seek to extend not only the June 20th trial date but also a deadline that had already expired before Defendants moved—namely, the expert rebuttal report deadline. Defendants have extended the expert discovery deadlines *six times* before finally and deliberately electing to not serve any opening or rebuttal reports by the now expired February 17th expert rebuttal report deadline. Extending the upcoming deadlines requires a showing of good cause. Resurrecting the lapsed expert report deadline requires even more—namely, excusable neglect. Defendants, however, have shown neither good cause nor excusable neglect.

## I. HAYWARD WILL BE PREJUDICED BY A LATE AUGUST TRIAL DATE

Hayward will suffer actual prejudice from delaying the trial, even by just a couple of months. As prefaced above, Hayward will be prejudiced if trial does not occur before the peak commercial season. The "high season" of selling pool products like the ones at issue is, naturally, the summer. (Declaration of Erik Belt, dated May 10, 2023 ("Belt Dec.") at ¶¶ 7, 16). Thus, Hayward will be prejudiced if Defendants are afforded another season of profits and sales infringing on Hayward's products. That harm is irreparable. Although this litigation has been pending for over two years, Defendants have *still* failed to produce all of their sales and financial

2

Case 3:20-cv-00710-MOC-SCR   Document 117   Filed 05/10/23   Page 2 of 20

records, along with other requested documents. Although Hayward has requested Defendants' complete financials, and Defendants have pretended to agree to produce them, they have dragged their feet. Hayward still does not have complete sales information from Defendants, including from the past two years of their infringement. (Belt Decl. at ¶ 21). Defendants' failure to produce complete sales and profit information hinders Hayward's ability to calculate the total damages. In other words, damage to Hayward from delaying justice by two of the busiest months in the selling cycle may be hard to remedy through money damages alone.

Further, contrary to Defendants' assertions that they changed their advertising to address Hayward's concerns, (Doc. No. 110 at 2), Defendants have not changed their advertising and, if anything, are advertising some of their accused false claims even more prominently than they were before this lawsuit. For example, Defendants' false statements remain in their Amazon and Blueworkspool.com advertisements, including that their knock-off salt cells are "compatible with" Hayward's swimming pool systems and that their cell plates are "made in USA" or "made by a USA company." (Belt Decl., ¶ 19., Exhibit G). In fact, just over a week ago, Hayward found another ad at a trade show that makes these false claims in large letters. (Belt Dec., ¶ 20, Exhibit H).

Moreover, before filing their motion, Defendants never consulted with Hayward's counsel to see whether their proposed new trial date of August 20 presented any scheduling conflicts. Hayward's local counsel, Mr. Ferguson of Womble Bond Dickinson, who is required to be at the trial by local rule, has a previously-scheduled criminal trial in the Northern District of Georgia scheduled to begin July 12, where both parties reported to that court they anticipate the trial taking at least 12 weeks (until October 4). Additionally, lead trial counsel Erik Belt had planned a European vacation in late August to celebrate his 30th anniversary. More importantly, at least one

3

of Hayward's expert witnesses has a conflict in late August. Specifically, Hayward's expert Juli Saitz is out of the country August 1-4 and also has a scheduled trial set for August 24, 2023. (Belt Decl., ¶17). Thus, extending the trial date to late August poses conflicts and prejudices Hayward.

## II. DEFENDANTS' IMPROPER DELAY TACTICS

Defendants' *modus operandi* throughout this litigation has been to delay at all costs. In their most recent delay tactic, Defendants lured Hayward into settlement discussions, followed by their request for a judicial mediation, (Doc. No. 100), under false promises that Defendants would withdraw their trade secret counterclaims and withdraw their objection to the recent Magistrate Judge's order denying their motion to compel.[1] (Doc. No. 99); (Belt Dec. at ¶ 6 and Exh. B).

Defendants presented their offer to withdraw their trade secrets counterclaims as a "good-faith gesture to invite Hayward to reconsider the settlement." *Id*. Hayward was amenable to mediation if it occurred as soon as possible (*i.e*., in mid-February) so as not to disrupt the litigation schedule and, importantly, so as not to move the June 20th trial date. But, lured by Defendants' promises, Hayward consented to a mediation to be held nearly a month later, in mid-March. (*Id*. at ¶ 2.)[2] Defendants' desire to delay mediation for a month forced the parties to consider tolling certain interim deadlines to accommodate the mediation. Accordingly, Hayward agreed to not oppose Defendants' motion to extend only two deadlines: (1) to depose Hayward's experts and (2) to file dispositive motions. Importantly, Hayward insisted that the trial-ready date not be moved, and Defendants agreed. (Belt Decl., ¶ 14). Thus, in Defendants' ensuing unopposed

---

[1] This Court recently overruled Defendants' objection. *See* (Doc. No. 115).

[2] Evidence of Defendants' offer to withdraw their trade secrets counterclaims in exchange for mediation does not violate Rule 408 because the evidence is offered not to show liability but rather to show Defendants' delay and bad faith. *See* Rule 408(b); *see also, e.g.*, *Lane v. Endurance Am. Specialty Ins. Co.*, No. 3:10-CV-401-MOC-DCK, 2011 WL 1343201, at *3–4 (W.D.N.C. Apr. 8, 2011) (refusing to strike evidence of settlement negotiations when raised for purposes of demonstrating party's bad faith).

4

motion (Doc. No. 105, filed February 24, *i.e.*, one week after the rebuttal deadline), Defendants did ***not*** seek to extend (1) the expired deadlines for expert reports and (2) the trial-ready date. Indeed, Defendants explicitly stated that "<u>The Ready for Trial date shall remain unchanged and set for June 20, 2023</u>." (Doc. No. 105)[3]; (Belt Decl., ¶ 5). In hindsight, Defendants' desire to continue the mediation into March was just a ruse to delay trial. And their representation to the Court was false.

Just a few days after the mediation was scheduled, Defendants revealed that they would be switching trial counsel. That was something of a bait-and-switch because Hayward would no longer be negotiating with the trial counsel, Morgan Lewis, who had represented Defendants throughout the bulk of discovery and with whom Hayward's counsel had built a relationship. The mediation with Magistrate Judge Keesler took place on March 16. Hayward came prepared to settle. But, for the *second time,* Defendants came to the mediation with no intention to resolve this matter.[4] The mediation was over by 2 pm. For the second time in a mediation, Defendants did not even counter Hayward's opening settlement proposal. (Belt Decl., ¶ 18). It was an unnecessary waste of both Hayward's and the Court's resources. Defendants' request for mediation, therefore, was just a ruse to drag out the litigation while new counsel could get up to speed and to push the trial date past this summer.

On March 7, less than two weeks after moving for extensions that Hayward did not oppose because Defendants agreed to not extend the June 20th trial-ready date, (Doc. No. 105), Defendants

---

[3] The deadline for opening expert reports, on issues for which the party bore the burden of proof, was January 20, 2023. The deadline for rebuttal reports was February 17. Defendants never served opening or rebuttal reports by either deadline.

[4] The parties went to a first mediation in November 2021. At that mediation, Defendants put no money on the table, even though their counsel had previously represented that Defendants would offer money to settle when Hayward sought such assurances before committing to spending the time and money on early mediation. (Belt Decl. at ¶ 18).

5

asked this Court to extend the trial date and to resurrect what was already a long-expired deadline to serve expert rebuttal reports, all for the sole purpose of delay. (Doc. No. 110). Indeed, the improperly extended rebuttal expert deadline of April 30 has come and gone, and it is clear Defendants never intended to serve rebuttals to all of Hayward's experts in the first place. As noted above, on April 30, Defendants served only one rebuttal report (concerning damages) and neglected to serve any rebuttals to Hayward's two liability experts.

The record is replete with Defendants' improper delay tactics. As early as February 7, 2023, the parties had been discussing an extension of time to depose Hayward's experts and to file dispositive motions, all to accommodate Defendants' request for a judicial mediation. As prefaced above, those discussions focused on making room for mediation while ensuring the trial date in June would not be disrupted. (Belt Dec., ¶¶ 7-9). Hayward advised Defendants' counsel repeatedly that it would not oppose a motion for extension so long as Defendants did not seek a new trial date. (*Id*. at ¶¶ 4-5, 7-9). Further, Hayward made it clear that it would not agree to move the deadline for rebuttal expert reports. (*Id*. at ¶¶ 4, 7-9.) Yet knowing that the expert report deadline was fast approaching, and knowing Hayward's position on the issue, Defendants still did not seek to move for an extension to file rebuttal expert reports at any point before the February 17th deadline. (Belt Decl. at ¶ 11).

Defendants notified Hayward of the forthcoming change in counsel in an email dated February 21, 2023. (Belt Decl. at ¶ 12, Exhibit E). Thus, Defendants knew that they would be switching counsel *at least three days before* February 24, when they filed their unopposed motion to extend the deadlines to depose experts and for dispositive motions, and which was predicated

6

upon Defendants' assurances that they would not seek to extend the trial date. (Belt Dec. ¶ 13).[5] (*See* Doc. No. 105.) Yet, Defendants did not advise the Court of that pending change in counsel or that they would later, after the mediation was scheduled, seek to continue the trial. Instead, Defendants represented to this Court that the trial-ready date of June 20 would stand:

> <u>The Ready for Trial date shall remain unchanged and set for June 20, 2023</u>. The Parties continue to make substantial progress in preparing [sic]. A judicial settlement conference is scheduled for March 16, 2023. The Parties believe there is a strong possibility that this matter will be resolved at the judicial settlement conference. Finally, Defendants consulted with counsel for Plaintiff and the motion is unopposed.

(Doc. No. 105 at 2) (emphasis added). The Court granted that joint motion and extended the deadlines for completion of expert depositions until March 31 and dispositive motions until April 10. (Text-only Order of February 24, 2023).

But on March 7, less than two weeks after previously moving for extensions on February 24 and only about 15 minutes after filing a notice of substitution of counsel, Defendants moved to extend the scheduling order *yet again.* This time, Defendants sought to resurrect the missed February 17th rebuttal report deadline and to extend the June 20th trial date as well. This tactic can only be seen as gamesmanship to stall trial and avoid a reckoning until after the summer selling season. The Court should not condone Defendants' sharp tactics any further.

### III. DEFENDANTS FAIL TO SHOW GOOD CAUSE AND EXCUSABLE NEGLECT FOR MISSING THE EXPERT REBUTTAL REPORT DEADLINE

Similarly, Defendants have no good excuse for missing the expert rebuttal report deadlines. Defendants were amply represented throughout this case. Defendants are currently on their *seventh* counsel (original local counsel Bradley Arant Boult Cumming LLP; current local counsel

---

[5] In the two previous motions for extension filed before February 24, the parties also kept the June 20 trial-ready date and did not seek to move it. (*See* Doc. Nos. 90 and 93.)

Cranford, Buckley, Schultze, Tomchin, P.A.; original lead trial counsel Foley & Lardner; replacement lead trial counsel Morgan Lewis; co-counsel Jiang IP; co-counsel Platinum Intellectual Property; and now third lead trial counsel, Turner Boyd LLP). When Defendants received Hayward's opening expert reports on January 20, 2023, they were ably represented by a large and capable firm, Morgan Lewis, which at the time was Defendants' lead trial counsel (after replacing Foley & Lardner). Although still represented by Morgan Lewis (and two other firms), Defendants did not serve any rebuttal expert reports nor seek an extension by the February 17th deadline. And Defendants did not seek to resurrect that deadline in their February 24th motion (Doc. No. 105). Instead, Defendants waited several more weeks, fired Morgan Lewis, retained new counsel (Turner Boyd), and sought to extend dates that they either vowed not to extend (the June 20th trial date) or dates that had long-expired (the February 17th rebuttal report deadline).

In their current motion of March 7, (Doc. No. 110), Defendants did not even try to show good cause for continuing the trial or excusable neglect for missing the previous deadlines. Instead, Defendants merely confirmed the obvious:

> Under the prior schedule, Blueworks' [i.e., Defendants'] rebuttal expert reports were due to be served February 17; Blueworks' prior counsel did not serve any rebuttal expert reports.

(Doc. 110 at 4.) That statement of fact is hardly an excuse.

Defendants have not explained why prior counsel, Morgan Lewis, failed to serve expert reports by the deadlines. Defendants have not offered any evidence of good cause or excusable neglect, except to repeat that they have "acted diligently through its new counsel," after the deadline passed, "demonstrating Blueworks' good faith." (Doc. No. 110 at 5). Acting diligently *after* a deadline has passed is no excuse for why the deadline was missed in the first place.

Defendants cannot possibly show excusable neglect because Defendants made a strategic

8

decision to not serve expert reports and to let the expert report deadlines expire. Indeed, Defendants' current counsel, Ms. Dunn, advised Hayward on February 16, 2023—the day before the rebuttal deadline—that Defendants had *deliberately* decided to not serve rebuttal reports. (Belt Decl., ¶ 10, Exhibit D). It is not surprising, therefore, that in their current motion of March 7, Defendants have offered no excuse for missing the expert report deadline. They have none.

Notably, Defendants had retained experts as early as November 2022 and thus certainly could have served expert reports by the deadline. For example, Defendants' prospective expert, Dr. David Eby, signed the protective order on November 11, 2022. (Belt Decl., ¶ 15). Defendants disclosed three rebuttal experts—Dr. Eby, Dr. Daniel Werner, and Dr. Melissa Pittaoulis—on January 10, 2023. Hayward did not object to any of Defendants' experts' viewing confidential information. *Id*. Thus, over a month before the rebuttal deadline, Defendants had retained experts, who were presumably getting up to speed.[6]

For whatever reason, Defendants decided to not serve expert reports and to not seek leave to extend the expert deadlines before they passed. This tactical decision demonstrates Defendants' lack of good cause and certainly does not show excusable neglect.

## ARGUMENT

### I. DEFENDANTS HAVE NO GOOD CAUSE FOR CONTINUING THE TRIAL

#### A. Continuing the Trial will Irreparably Prejudice Hayward

To continue long scheduled dates like the trial, Defendants must show good cause. Fed. R. Civ. P. 16(b)(4). The trial date is Hayward's leading concern. To extend the long-scheduled June

---

[6] On April 30, Defendants served a rebuttal report on damages. But, strangely, this report comes from a different damages expert, not the one that Defendants originally designated back in January. Further, Defendants never offered rebuttals from the two other experts that they previously retained. That again demonstrates Defendants shifting-sands approach to this litigation.

trial date is unfair and unnecessarily prejudices Hayward. Defendants have offered no good cause to subject Hayward to such undue prejudice.

Courts in this District have denied requests to extend litigation schedules when such requests, as the one here, jeopardizes the long-scheduled trial date or would prejudice the other side. *See Tyndall v. Maynor,* 288 F.R.D. 103, 110 (M.D.N.C. 2013) (motion to extend denied because requested modification of scheduling order would require a significant extension of discovery period and thus would jeopardize long-scheduled trial date, and modification posed serious prejudice to plaintiff's interest in maintaining an agreed-upon and judicially-sanctioned end-point for the case); *Amatulli & Sons, LLC v. Great N. Ins. Co.*, No. CIV. 3:06-CV-286, 2008 WL 90092, at *1 (W.D.N.C. Jan. 8, 2008) (granting defendant's request to extend the discovery deadline for the limited purpose of taking the deposition of one witness *but denied* the requests for continuation of any other deadlines, *including* the trial date).

Contrary to Defendants' argument, Hayward will be prejudiced by the new trial date. Indeed, Defendants have known about the prejudice to Hayward for months because Hayward consistently advised Defendants' counsel that it did not want to postpone the trial date past the prime summer selling season and explicitly stated that it would object if they used this third substitution of counsel to request further delays, including of the trial date. (Belt Decl., ¶ 16). In addition, Defendants have not changed their false advertising statements to address Hayward's concerns despite their insincere claim that they have done so. (Belt Decl. at ¶¶ 19-20).

Thus, to argue that Hayward will not be prejudiced is deceitful. Defendants have already benefitted from the passage of two summer selling seasons during this litigation, thereby increasing sales and presence in the market. The only purpose of this latest extension is to profit from one more full season. Given that the parties are competitors, trial should be before the selling

10

season goes too far. Holding trial in late August will be at the tail end of the selling season, allowing Defendants to continue unfairly competing with Hayward and harming Hayward's business.

Indeed, Hayward provisionally opposed new counsel's *pro hac vice* admission, noting that *consent was conditioned on not moving the trial date*. Hayward suspected that, once the *PHV* motion was granted, Defendants would then file a notice of substitution of counsel (which does not require court action) and pull this very trick of basing the request for extensions on the substitution. That's exactly what they did. This gamesmanship should not be rewarded.

Further, the Defendants' request to extend the trial date to August 20 does not consider the conflicts of counsel, including Hayward's local counsel, who is required to be at the trial by local rule, but has a previously-scheduled federal criminal trial in the Northern District of Georgia scheduled to begin July 12th, where both parties reported to the Court they anticipate the trial taking at least 12 weeks (until October 4th). (Belt Decl. at ¶ 17). Additionally, as seen above, Hayward's fact witnesses and expert witnesses have conflicts in August. As just one example, Hayward's expert Juli Saitz is out of the country August 1-4 and also has a trial set for August 24, 2023. *Id*. Thus, the prejudice factor weighs against granting Defendants' motion.

### B. Switching Counsel Does Not Constitute Good Cause

A delay due to Defendants retaining new counsel does not establish good cause as a matter of law. Indeed, Defendants cite to that very notion in their motion: "<u>a delay attributed to a change in counsel does not constitute good cause because new counsel is bound by the actions of their predecessor</u>." (Doc. No. 110 at 3) (citing *Alston v. Becton, Dickinson & Co.*, No. 1:12CV452, 2014 WL 338804, at *2 (M.D.N.C. Jan. 30, 2014)) (emphasis added). As Defendants admit, prior counsel (Morgan Lewis) failed to failed to seek an extension of the trial date when they moved for extensions on February 24, just two weeks before the current motion was filed on March 7. Indeed,

11

in that motion, Defendants and their prior counsel affirmatively represented to this Court that "The Ready for Trial date shall remain unchanged and set for June 20, 2023." (Doc. No. 105 at 2)(emphasis added). Thus, by their own admission, Defendants are bound by prior counsel's acts and omissions, including prior counsel's promise that the trial date shall remain unchanged.

Furthermore, as of February 24, when Defendants filed their previous extension motion, (Doc. No. 105), Defendants already knew at least several days beforehand that they would be replacing Morgan Lewis with new counsel. (Belt Decl. at ¶ 12, Exhibit E). Thus, Defendants used the substitution of counsel to evade their promise to Hayward and to this Court that the June 20th trial date would remain unchanged.

Here, Defendants hint that new counsel may have a different strategy from predecessor counsel. Again, that is no excuse, and certainly is not excusable neglect. Indeed, Defendants had two sets of current counsel, Ms. Dunn and local counsel Mr. Brooks, during the period when Defendants decided to switch lead trial counsel *yet again*. (That is, at least two of Defendants' law firms have continuously represented Defendants since before the substitution of counsel, meaning, in practice, there was not a complete switch of counsel to begin with). At all times, Defendants were well represented by competent counsel, two of whom remain in this case even today. Because Defendants have failed to justify their delay in moving to modify the scheduling order, including the trial date, their request should be denied as to all extensions.

### C. Defendants Were Not Diligent

The Court's scheduling order "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). As Defendants admit in their motion, "the touchstone of 'good cause' under Rule 16(b) is diligence." *Marcum v. Zimmer*, 163 F.R.D. 250, 255 (S.D. W. Va. 1995). "[T]he scheduling order 'is not a frivolous piece of paper, idly entered, which can be

cavalierly disregarded by counsel without peril.'" *Forstmann v. Culp*, 114 F.R.D. 83, 85 (M.D.N.C. 1987).

Defendants have identified nothing that would support a finding that they acted diligently, particularly because, on February 24, the exact day when they represented to the Court that the trial date would ***not*** be moved, (Doc. No. 105 at 2), Defendants already knew that they would be switching counsel for the seventh time. In any event, as argued above, switching counsel is not good cause for an extension. And switching counsel after fact discovery, a week before a court-sponsored mediation, and so close to trial (and for the seventh time) does not show diligence.

Here, on February 24, just two weeks before filing the current motion to extend filed on March 7, Defendants requested the extension of certain deadlines to facilitate mediation. *See* (Doc. No. 105). Defendants could have sought to extend the trial date or to resurrect their already missed expert report deadline then. At a bare minimum, Defendants' could have rejected Hayward's offer to not oppose Defendants' February 24th motion, which offer was based on the critical condition that the trial not be moved and, instead, could have sought to move the trial then.

Further, as discussed above, at least as early as February 21—three days before they moved for the extension on February 24—Defendants knew that they would be switching counsel. (Belt Decl. at ¶ 12, Exhibit E). Yet, even though they anticipated switching counsel and, thus, would possibly want further extensions, Defendants accepted Hayward's offer and represented to this Court that the trial-ready date of June 20 would remain unchanged and did not seek to resurrect the missed expert deadline. (Doc. No. 105). But two weeks later, Defendants reneged on their representation to this Court and, minutes after switching counsel, moved to extend the trial and to resurrect the expert rebuttal deadline. That is not just a lack of diligence—it's a lack of good faith.

13

## II. DEFENDANTS FAILED TO SHOW ANY EXCUSABLE NEGLECT FOR MISSING THE EXPERT REPORT DEADLINE

Because Defendants waited weeks after the expert report deadlines passed before seeking their resurrection, they must also satisfy not just the "good cause" standard but also the more demanding "excusable neglect" standard under Fed. R. Civ. P. 6(b). That rule provides that a court may extend a missed deadline "on motion made after the time has expired if the party failed to act because of <u>excusable neglect</u>." Fed. R. Civ. P 6(b)(1)(B) (emphasis added). Whether neglect is excusable is "at bottom an equitable [inquiry], taking account of all relevant circumstances surrounding the party's omission[.]" *Thompson v. E.I. DuPont de Nemours & Co., Inc.*, 76 F.3d 530, 533 (4th Cir. 1996) (quoting *Pioneer Inv. Serv. Co. v. Brunswick Assoc. Ltd.*, 507 U.S. 380, 395 (1993)). Excusable neglect is a high bar. *See Agnew v. United Leasing Corp.*, 680 F. App'x 149, 155 (4th Cir. Feb. 22, 2017).

"In determining whether a party has shown excusable neglect, a court will consider: (1) the danger of prejudice to the non-moving party; (2) the length of delay and its potential impact on judicial proceedings; (3) the reason for the delay including whether it was in the reasonable control of the movant; and (4) whether the movant acted in good faith." *Colony Apts. v. Abacus Project Mgmt., Inc.*, 197 F. App'x 217, 223 (4th Cir. 2006) (citation omitted). The most important factor is the reason for the delay, but merely establishing these factors does not alone entitle the moving party to relief. *Id*. A party's failure to act diligently still precludes a finding of excusable neglect. *Robinson v. Wix Filtration Co*., 599 F.3d 403, 413 (4th Cir. 2010).

### A. Defendants Have Not Justified Their Delay under any Standard, Much Less "Excusable Neglect"

Typically, the most significant factor when determining excusable neglect is whether a party's excuse for delay was within its reasonable control. *Thompson, supra*, at 534. Here,

Defendants have not provided, and cannot provide, any justification for their delay. Indeed, they did not even try. Here is their entire "excuse":

> Under the prior schedule, Blueworks' rebuttal expert reports were due to be served February 17; Blueworks' prior counsel did not serve any rebuttal expert reports.

(Doc. No. 110 at 4). Defendants were represented by competent counsel at the time—indeed, a very large, prominent firm, Morgan Lewis—and thus were entirely responsible for choosing not to serve rebuttal expert reports by the deadline. And as noted above, Defendants were additionally represented by two other law firms that continue to represent Defendants to this day.

Notably, Defendants had retained experts as early as November 2022 and designated three experts on January 10, 2023, at which time Defendants provided the experts' signed undertakings under the protective order so that their experts could examine Hayward's confidential materials. Hayward did not object to any of Defendants' experts viewing confidential materials. Thus, over a month before the rebuttal deadline, Defendants had retained experts, who were presumably getting up to speed on the case.

Because Defendants had lined up experts and were represented by a large, national law firm, Morgan Lewis (along with two other law firms), they certainly could have met the deadline. Yet Defendants proffer no explanation for their decision to not serve the rebuttal reports or reason they should be allowed to retroactively change course in their litigation strategy. Indeed, in their latest motion, Defendants failed to submit a declaration from any of their four law firms or from Defendants with any reason for Defendants' failure to abide by the deadlines. The failure to offer "at least some 'pardonable reason' for failure to meet the deadline" alone can be sufficient to determine that the neglect is not excusable. *B&G Bldg. Maint., Inc. v. N.L.R.B.,* 123 Fed. App'x. 551, 553 (4th Cir. 2005) (upholding NLRB's conclusion that a one-day delay in filing a brief did not constitute "excusable neglect" where no reason for the delay was provided).

15

Defendants' purposeful conduct cannot be considered neglect, let alone excusable neglect. They were intentional decisions. ***Indeed, Defendants had already advised Hayward before the February 17th deadline that they did not intend to serve rebuttal reports in the first place***. (Belt Dec., ¶ 10, Exhibit D). Diligent counsel would have moved to extend the deadline before it passed. But again, they chose not to do so. A party cannot establish diligence when that party has failed to timely alert the Court when it knows it will be unable to meet the deadline. *See Tetzlaff v. Educ. Credit Mgt. Corp.*, 521 B.R. 875, 8790 (E.D. Wisc. 2014). These are not negligent acts; they are just Defendants' deliberate decisions that new counsel, in hindsight, wishes to retract.

Courts in the Fourth Circuit have denied motions to resurrect expired deadlines when a party's inadvertence or mistake was far less intentional than Defendants' conduct here. For example, the Eastern District of North Carolina recently denied a motion to extend the expert discovery deadline because the court found that the moving party, the defendants, failed to explain why they could not take the expert's deposition within the time allowed and thus failed to demonstrate good cause to extend the deadline to complete expert discovery. *Tom v. Hosp. Ventures LLC*, No. 5:17-CV-98-FL, 2022 WL 1913409, at *5 (E.D.N.C. June 3, 2022). *See also*, *e.g.*, *United States v. Swamp Fox Utilities, LLC*, No. 1:15-CV-482, 2016 WL 5376200, at *4 (M.D.N.C. Sept. 26, 2016) (court found unreasonable delay and denied extension because the defendant waited nearly four months after the expert disclosure deadline expired to file extension motion); *Ladd v. Rsch. Triangle Inst.,* No. 5:06-CV-399-BO, 2008 WL 11429747, at *1 (E.D.N.C. Jan. 7, 2008) (denying motion to extend expert discovery deadline filed six months after deadline passed); *Blevins v. Nationwide Gen. Ins. Co.*, No. 2:17-CV-03692, 2018 WL 8265244, at *3 (S.D.W. Va. Sept. 7, 2018) (denying party's request to submit an untimely expert report and

precluded the expert's report and testimony due to the parties' failure to comply with the deadline and Rule 26(a)(2), which would jeopardize the trial date).

The facts and holding in *Simmons v. Corizon Health, Inc.,* No. 1:14-CV-740, 2016 WL 4537744 (M.D.N.C. Aug. 29, 2016), are instructive. There, the plaintiffs' expert disclosure deadline was May 15, 2016. *Id*. at *1. Five weeks after the deadline, on June 20, 2016, the plaintiff moved to extend their expert disclosure deadline retroactively. *Id*. The plaintiffs argued that they received a pertinent deposition transcript only four days before plaintiffs' expert disclosures were due and did not have adequate time to hire an expert to review the transcript and the medical records before the expert disclosure deadline—facts that are more sympathetic to the movant than the facts present here. *Id*. Nonetheless, the court found that the plaintiffs did not explain why they waited five weeks to seek an extension of their expert disclosure deadline, noting that plaintiffs could have requested such an extension immediately after the deposition or after their receipt of the deposition transcript, or at some earlier point in the more than five-week period between the receipt of the transcript and their filing of the extension motion. *Id*. at *2. Thus, plaintiffs failed to demonstrate sufficient diligence regarding the requested extension:

> Plaintiffs' delay in presenting their extension request counsels against finding that they have acted with diligence regarding this matter . . . Plaintiffs reinforce the view that, rather than moving diligently to secure an expert once the need became apparent, they sought to avoid taking action as long as possible.

*Id*. The Court therefore held that the plaintiffs had not established good cause for requesting the extension and denied the motion.

Defendants rely on two cases that do not support their position. In the first, *Beach v. Costco Wholesale Corp*., No. 5:18-cv-00092, 2019 WL 1102223, at *2-4 (W.D. Va. Mar. 8, 2019), the plaintiff moved for a continuance and extension of the discovery deadlines to conduct depositions because her original counsel left his firm two weeks before the close of discovery. Here,

17

Defendants' counsel did not leave the law firm. In fact, Defendants had at the time three different firms representing them, two of which continue to represent Defendants. In contrast to the plaintiff in *Beach*, Defendants' counsel took no action here; rather, Defendants themselves decided to replace their counsel and retain new counsel two weeks before a scheduled mediation and four months before trial. This is not an "unforeseen personnel change," as the Court noted in *Beach*. It is a calculated decision made by the Defendants and completely within Defendants' control.

In the second, *Alston v. Becton, Dickinson & Co., supra*, plaintiff's counsel moved to withdraw after entry of the scheduling order, which the court granted. The court advised plaintiff that she would need to proceed *pro se* unless and until new counsel appeared on her behalf. Next, plaintiff moved to stay all proceedings while she attempted to obtain new counsel. The court denied that motion, noting that "the record reflected that plaintiff agreed to withdrawal of her prior counsel after adoption of the scheduling order **and without requesting any alteration in the previously adopted deadline**s." *Id*. at \*1 (emphasis added). Plaintiff then moved for an extension of time one day before the close of discovery. In discussing plaintiff's efforts to secure new counsel, the court held that "**a delay attributed to a change in counsel does not constitute good cause because new counsel is bound by the actions of their predecessor**." *Id*. at \*2 (internal citation omitted). (emphasis added). The *Alston* court emphasized that parties need to adhere to the schedule:

> a scheduling order represents 'the critical path chosen by the [Court] and the parties to fulfill the mandate of [Federal] Rule [of Civil Procedure] in securing the just, speedy, and inexpensive determination of every action.' *Marcum*, 163 F.R.D. at 253 (internal brackets and quotation marks omitted); *see also Blue v. Hartford Life & Accident Ins. Co.*, 698 F.3d 587, 594 (7th Cir. 2012) (reaffirming "that district courts have an interest in keeping litigation moving forward and that maintaining respect for set deadlines is essential to achieving that goal"); *Walter Kidde Portable Equip., Inc. v. Universal Sec. Instruments, Inc.*, No. 1:03CV537, 2005 WL 6043267, at \*3 (M.D.N.C. July 7, 2005) (unpublished) (citing this Court's "history of strict adherence to discovery schedules").

*Id*. at *3. The *Alston* court found that the motion to extend the discovery deadline did not provide any adequate ground to alter that path and denied the motion. *Id*. Here, Defendants are well represented by three different law firms – much different from the *pro se* plaintiff in *Alston*. Defendants should not receive the benefit of an extension of a passed deadline because they were represented by three sets of competent counsel at the time the deadline passed.

### B. Defendants Have Not Acted in Good Faith

Another factor under *Pioneer*—whether Defendants acted in good faith—does not support Defendants here. As discussed earlier, Defendants purposefully chose not to comply with the rebuttal expert deadline, advising Hayward that they would not be doing so. (Belt Dec. at ¶ 10, Exhibit D). Defendants' counsel also chose not to move the Court for an extension before the deadline or in their February 24th motion. Rather, Defendants waited several more weeks until after they filed their recent substitution of counsel. Such actions and omissions do not counterbalance the detriment of the third *Pioneer* factor focusing on the reason for the filing delay. *Smith v. Look Cycle USA,* 933 F. Supp. 2d 787 (E.D. Va. 2013).

Moreover, as seen above, Defendants unfairly caused at least a month's delay by luring Hayward into a mediation that collapsed within just a few hours without Defendants having counteroffered. Defendants offered to withdraw their trade secrets counterclaims and their objections to the Magistrate Judge's order denying their motion to compel as incentive for Hayward to mediate. Defendants never did withdraw those counterclaims or those objections, however. By misleading Hayward, Defendants caused further delay and expense.

### CONCLUSION

For the foregoing reasons, Hayward respectfully requests that this Court deny Defendants' Motion to Extend Deadlines in the Pretrial Order and Case Management Plan.

Respectfully submitted this 10th day of May, 2023,

                **HAYWARD INDUSTRIES, INC**.


                s/ *Russ Ferguson*
                Russ Ferguson (N.C. Bar No. 39671)
                **Womble Bond Dickinson (US) LLP**
                One Wells Fargo Center
                Suite 3500
                301 South College Street, Suite 3500
                Charlotte, NC 28202
                Russ.Ferguson@wbd-us.com


                Erik Paul Belt*
                James Donoian*
                Anne E. Shannon*
                Alexander Ried*
                **MCCARTER & ENGLISH, LLP**
                265 Franklin St.
                Boston, Massachusetts 02110
                Tel: (617) 449-6500
                ebelt@mccarter.com
                jdonoian@mccarter.com
                ashannon@mccarter.com
                aried@mccarter.com

                * Admitted *pro hac vice*

                *Attorneys for Plaintiff Hayward Industries, Inc.*