UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:20-cv-710-MOC-DSC

| | |
|---|---|
| **HAYWARD INDUSTRIES, INC.**, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| Vs. ) | ORDER |
| ) | |
| **BLUEWORKS CORPORATION, BLUEWORKS** ) | |
| **INNOVATION CORPORATION, NINGBO C.F.** ) | |
| **ELECTRONIC TECH CO., LTD., NINGBO** ) | |
| **YISHANG IMPORT AND EXPORT CO., LTD.**, ) | |
| ) | |
| Defendants. ) | |
| ------------------------------------------------------------- ) | |
| **BLUEWORKS CORPORATION, NINGBO C.F.** ) | |
| **ELECTRONIC TECH CO., LTD., NINGBO** ) | |
| **YISHANG IMPORT AND EXPORT CO., LTD.**, ) | |
| ) | |
| Counterclaim-Plaintiffs, ) | |
| ) | |
| Vs. ) | |
| ) | |
| **HAYWARD INDUSTRIES, INC.**, ) | |
| ) | |
| Counterclaim-Defendant. ) | |

**THIS MATTER** is before the Court on Defendants' Motion in Limine, filed pursuant to Fed. R. Civ. P. 702, to exclude the testimony of Nicholas M. Didow. (Doc. No. 153).

This case involves a dispute between competitors in the pool industry. Plaintiff Hayward Industries, Inc. makes and sells, among other pool products, pool chlorination systems. Chlorine generators, also known as "salt cell systems," convert dissolved salt into chlorine to sanitize pools. Chlorine generator systems replace the need for liquid or tablet chlorine. The salt cell has a limited use life and is replaced by inserting a new salt cell into the overall system when the prior cell is exhausted.

1

Plaintiff's complaints arise from Defendants' sale of aftermarket replacement salt cells for use in Plaintiff's chlorine generator systems. In this action, Plaintiff accuses Defendant of Lanham Act violations and other claims. Plaintiff alleges, among other things, that Defendants' advertisements tend to confuse customers into thinking that Defendants' products are Hayward products.

Plaintiff has submitted the expert report of Professor Didow to support its claims. Professor Didow's report is based on surveys to measure the following issues: (1) the likelihood of confusion between Defendants' "T-15-Cell" mark and Hayward's T-Cell-15® mark in connection with the advertising and sale of salt cells; and (2) consumers' understanding and perception of certain false statements in Defendants' advertising, such as Defendants' claims that its replacement salt cells are "compatible with" Hayward's controllers.[1] Defendants now move to exclude Dr. Didow's expert report, arguing that Dr. Didow's survey methods to test likelihood of confusion and the false advertising claims are unreliable and inadmissible. More specifically, Defendants argue that Professor Didow's surveys should be excluded because (1) Professor Didow failed to stimulate marketplace conditions in his presentation of the marks and statements at issue; (2) Professor Didow failed to use a control; and (3) Professor Didow used leading questions.

The Court denies the motion. Defendants' various challenges to Professor Didow's expert report go to the weight to be given to Didow's testimony, not to its admissibility. The Fourth

---

[1] Professor Didow conducted a so-called "Squirt" survey to measure the likelihood of confusion between Hayward's T-Cell-15® mark and Defendants' T-15-Cell mark. (Doc. No. 124-15, Didow Report at 11-13). A Squirt survey, in which respondents are asked to compare two trademarks, bears a reasonable similarity to the marketplace when "both marks are likely to be seen in the marketplace sequentially or side-by-side." 6 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 32:174.50 (5th ed.).

2

Circuit has held that excluding survey evidence is rare: "While there will be occasions when the proffered survey is so flawed as to be completely unhelpful to the trier of fact and therefore inadmissible, such situations will be rare." PBM Prods., LLC v. Mead Johnson & Co., 639 F.3d 111, 123 (4th Cir. 2011) (quoting AHP Subsidiary Holding Co. v. Stuart Hale Co., 1 F.3d 611, 618 (7th Cir. 1993)) (affirming district court's decision to admit experts' false advertising surveys and testimony despite defendants' critiques that surveys were conducted improperly). Instead, objections to alleged flaws in surveys should be handled by cross-examination, not exclusion. Id.; see also, e.g., Pediamed Pharm., Inc. v. Breckenridge Pharm., Inc., 419 F. Supp. 2d 715, 729 n.20 (D. Md. 2006); Rydman v. Champion Petfoods USA, Inc., No. C18-1578, 2023 WL 3172466, at *3 (W.D. Wash. May 1, 2023) (denying motion to exclude survey on fraudulent misrepresentations, noting that "objections based on flaws in the survey's methodology are properly addressed by the trier of fact"); 6 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 32:170 (5th ed. 2023) ("The majority rule is that while technical deficiencies can reduce a survey's weight, they will not prevent the survey from being admitted into evidence."); Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc., 618 F.3d 1025, 1037 (9th Cir. 2010) (reversing district court's decision to exclude likelihood of confusion survey despite survey improperly comparing products side-by-side, failing to replicate real world conditions, failing to properly screen participants, and using highly suggestive questions because "these criticisms, valid as they may be, go to issues of methodology . . . and therefore go to the weight of the survey rather than its admissibility") (internal citations omitted); Sara Lee Corp v. Kayser-Roth Corp., No. 6:92CV00460, 1992 WL 436279, at *21 (M.D.N.C. Dec. 1, 1992) (considering survey despite flaws such as failing to duplicate marketplace conditions, failure to provide written instructions to respondents, and lack of a control, stating, "flaws in a survey do

not necessarily make the survey evidence irrelevant, but go to the weight of the evidence"); Alzheimer's Disease & Related Disorders Assoc., Inc. v. Alzheimer's Found. of Am., Inc., 307 F. Supp. 3d 260, 276 (S.D.N.Y. 2018) (admitting Squirt survey over the defendant's objections that the survey stimuli failed to replicate marketplace conditions because the marks were shown to respondents "in plain, black and white, and bolded text" without additional content found in the advertisements, and holding that the survey was not "unreliable or lack[ing] probative value as a result").

In sum, the Court **DENIES** Defendants' motion to exclude Professor Didow's surveys and testimony from trial. (Doc. No. 153).

Signed: December 19, 2023

Max O. Cogburn Jr
United States District Judge