UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:20-cv-710-MOC-DSC

| | |
|---|---|
| HAYWARD INDUSTRIES, INC., )<br>)<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>BLUE WORKS CORPORATION, et al., )<br>)<br>Defendants. )<br>_____ ) | ORDER |

**THIS MATTER** is before the Court on Plaintiff Hayward Industries, Inc.'s Motion for Summary Judgment on Claims of Trademark Infringement, False Advertising, Passing Off, and Unfair Competition, (Doc. No. 119), Plaintiff's Motion for Summary Judgment on Defendant's Trademark Cancellation Counterclaim, (Doc. No. 142), Defendant Blue Works Corporation's Motion for Summary Judgment of No False Advertising on Statements Regarding Compatibility and No Lost Profits, (Doc. No. 180), and Defendant's Motion for Summary Judgment of Plaintiff's Claims with Respect to the Turbo Cell, T-Cell, T-Cell-9, and T-Cell-15 Marks, (Doc. No. 189). The Court held a hearing on the motions on August 21, 2023.[1] This matter is ripe for disposition.

### I. FACTUAL AND PROCEDURAL BACKGROUND

This case involves a dispute between competitors in the pool industry. Plaintiff Hayward, which has a manufacturing facility in Charlotte, makes and sells pool chlorination systems, among other pool products. At issue here are chlorine generators, also known as "salt cell

---

[1] Moreover, on January 18, 2024, Plaintiff submitted supplemental materials to support its summary judgment motion.

1

systems," that convert dissolved salt into chlorine to sanitize pools. Chlorine generator systems replace the need for liquid or tablet chlorine and are thus convenient for pool owners.

Chlorine generator systems include a control panel and a "salt cell." The control panel regulates the amount of chlorine generated by the salt cell. The cell itself, which has a limited use life, can be replaced with a new salt cell when the prior cell is exhausted. Salt cells are roughly analogous to printer toner cartridges. Just as toner cartridges must be replaced periodically, so must salt cells. And just as toner cartridges are compatible only with printers produced by certain manufacturers, salt cells are only compatible with certain control panels.

Plaintiff's salt cells are compatible only with Plaintiff's chlorination systems, in some cases particular versions of Plaintiff's systems (e.g., Aquarite) and pool sizes. Consumers generally understand this usage. (See, e.g., Doc. No. 126 at 4, ¶ 15; Seraphine Decl., Ex. 4 (Paroline Depo. at 144:9–146:9, 145:20–146:9), Ex. 5 (NingboCF_000003), Ex. 6 (NingboCF_0000096)). Hayward's salt cells are sold under various trademarks, including TURBO CELL® and T-CELL-15®, among others.

Named Defendants sell replacement salt cells compatible with Plaintiff's chlorination systems and advertise them as such.[2] Defendants use Plaintiff's various T-Cell trademarks in their advertisements to indicate that Defendants' salt cells are for use in specific models of Plaintiff's various chlorination systems. Defendants' Amazon presence offers a constructive example:

---

[2] The named Defendants are BlueWorks Corporation, BlueWorks Innovation Corporation, Ningbo C.F. Electronic Tech Co., Ltd., and Ningbo Yishang Import and Export Co., Ltd. Plaintiff maintains that these companies are all connected and have acted in concert with one another for purposes of this lawsuit. The Court refers to these companies collectively as "BlueWorks."



Plaintiff maintains that Defendants, by using Plaintiff's various T-Cell trademarks in their advertisements, confusingly and deceptively suggest that Defendants' salt cells are associated with or endorsed by Plaintiff. Plaintiff further contends that Defendants' salt cells are falsely advertised as "compatible with" Plaintiff's controllers. Plaintiff alleges that Defendants have thus used Plaintiff's trademarks without permission and have deceptively passed off Defendants' salt cells as endorsed, authorized, or even manufactured by Plaintiff for use in Plaintiff's systems.

Plaintiff further contends that Defendants made the following misrepresentations about Defendants' salt cells in communications directed to Plaintiff's current and potential customers:

- "Direct Replacement" for Plaintiff's salt cells

- "Compatible with" Plaintiff's controllers
- "Same as," "Comparable to," or "Equivalent to" Plaintiff's salt cells
- "Same cell supplier as the original"
- "Made in USA same as 'Hayward'"
- "NSF Certified"
- "Provide OEM services for the USA leading pool chlorinator manufacturers"

Plaintiff brings the following claims against Defendants: trademark infringement, false advertising, counterfeiting, passing off, false designation of origin, unfair competition, and importation in violation of the Lanham Act, 15 U.S.C. § 1051 et seq.; North Carolina statutory and common law claims of unjust enrichment, tortious interference with prospective advantage, trademark infringement and unfair competition, and Unfair and Deceptive Trade Practices under N.C. Gen. Stat. § 75-1.1 et seq.; and infringement of Plaintiff's copyright-protected works in violation of the Copyright Act. (Doc. No. 57).

Defendants counterclaim, seeking an order from the Court finding that the trademarks are invalid as generic or as having acquired secondary meaning. Plaintiff seeks summary judgment against Defendants' counterclaim. Plaintiff also seeks summary judgment on its claims for false advertising (Count I), trademark infringement for TURBO CELL® (Count VI) T-CELL-3® (Count VII), trademark infringement for T-CELL-9® (Count VIII), trademark infringement for T-CELL-15® (Count IX), passing-off (Count XIV), false designation of origin (Counts XII and XIII), unfair competition (XVI), and North Carolina Unfair Deceptive Practices Act (Count XIX).

Defendants filed their own Motion for Summary Judgment of Plaintiff's Claims with Respect to the Turbo Cell, T-Cell, T-Cell-9, and T-Cell-15 Marks. Defendants also filed a

separate summary judgment motion, asking that the Court find no false advertising based on Defendants' statements in their ads regarding "compatibility." Defendants also seek an order from the Court finding that Plaintiff's damages calculation based on lost profits is flawed and should therefore be excluded.

## II. STANDARD OF REVIEW

The Court grants a party's summary judgment motion "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted). Only disputes between the parties over material facts (determined by reference to the substantive law) that might affect the outcome of the case properly preclude the entry of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" only if the evidence is such that "a reasonable jury could return a verdict for the nonmoving party." Id.

Once the movant meets their initial burden, the burden shifts to the nonmoving party. Webb v. K.R. Drenth Trucking, Inc., 780 F. Supp. 2d 409 (W.D.N.C. 2011). The nonmoving party "may not rest upon the mere allegations or denials of his pleading, but ... must set forth specific facts showing there is a genuine issue for trial." Anderson, 477 U.S. at 248. Considering a motion for summary judgment, a court views the evidence in the light most favorable to the non-moving party, that is, "[t]he evidence of the non-movant is to be believed, and all justifiable

5

inferences are to be drawn in his favor." Anderson, 477 U.S. at 255. At summary judgment, it is inappropriate for a court to weigh evidence or make credibility determinations. Id.

When considering cross-motions for summary judgment, a court evaluates each motion separately on its own merits using the standard set forth above. See Rossignol v. Voorhaar, 316 F.3d 516, 522 (4th Cir. 2003); accord Local 2-1971 of Pace Int'l Union v. Cooper, 364 F. Supp. 2d 546, 554 (W.D.N.C. 2005).

III. DISCUSSION

A. PLAINTIFF'S SUMMARY JUDGMENT MOTION ON DEFENDANT'S COUNTERCLAIMS

The Court first addresses Plaintiff's Motion for Summary Judgment on Defendants' counterclaims seeking declaratory judgment of invalidity for and cancellation of Plaintiff's registered trademarks "T-Cell-3," "T-Cell-9," "T-Cell-15" (the "T-Cell Marks").[3] Plaintiff uses these marks as model numbers for replacement salt cells used in its chlorine generator systems. "T-Cell" is a shortened version of "Turbo Cell," and the numbers "-3," "-9," and "-15" used in Plaintiff's T-Cell Marks correspond to the pool size in which each salt cell is used.

With respect to Defendants' invalidity counterclaims, Plaintiff argues that its T-Cell Marks are not generic. The Court will deny Plaintiff's summary judgment motion as it pertains to invalidity. First, whether an asserted mark is generic is a question of fact. See Booking.com B.V. v. United States Pat. & Trademark Off., 915 F.3d 171, 179 (4th Cir. 2019) (holding that "the

---

[3] Defendants' cancellation and invalidity claims are set forth in Count I Blueworks Corporation and Blueworks Innovation Corporation's counterclaims (Doc. No. 60), Counts XVI-XVII of Ningbo C.F. Electronic Tech Co., Ltd.'s counterclaims (Doc. No. 59), and Counts XII-XIII of Ningbo Yishang Import and Export Co., Ltd.'s counterclaims (Doc. No. 58). Defendants have withdrawn their challenge to the validity of and claim for cancellation of the "TURBO CELL" mark but maintain the challenge as to Plaintiff's "T-CELL-3," "T-CELL-9," and "T-CELL-15" marks.

question of whether a proposed mark is generic is a question of fact that is subject to deferential review"). Here, disputed facts as to the genericness of Plaintiff's marks include whether the T-Cell Marks are used to identify Plaintiff as the source of the salt cell (as required for trademark protection) or instead are used to convey size and suitability (in which case they are generic). These questions of material fact preclude summary judgment on this issue for either party.

Second, even if Plaintiff could show that the T-Cell Marks are not generic, that is not the end of the inquiry. Marks can be (1) generic, (2) descriptive, (3) suggestive, and (4) arbitrary or fanciful, and "descriptive" marks require a showing of secondary meaning to be protectible. See Sea-Roy Corp. v. Parts R Parts, Inc., No. 1:94cv59, 1997 WL 1046282, at **24–26 (W.D.N.C. 1997) (citing Sara Lee Corp. v. Kayser-Roth Corp., 81 F.3d 455, 464 (4th Cir. 1996)). Secondary meaning exists when a descriptive mark has become sufficiently distinctive to establish "a mental association, if any, in consumers' minds between the mark and a single source of the product." Id. at *27. Summary judgment is also not appropriate here because whether the T-Cell marks have a secondary meaning remains a disputed question of material fact.

Third, where the trademark at issue is used as a model number for a product, there must be a factual determination of whether the mark is truly used as a trademark or rather merely as a model designation. Use of a mark as a model designation renders the mark invalid. See Eastman Kodak Co. v. Bell & Howell Document Mgmt. Prods. Co., 994 F.2d 1569, 1576 (Fed. Cir. 1993). While Plaintiff argues that it uses the T-Cell Marks as trademarks, Defendants have produced some evidence that Plaintiff and others use the T-Cell Marks as model numbers. This factual dispute precludes summary judgment.

To prevail on its motion Plaintiff must show that there are no facts that could support a jury finding that: (1) the T-Cell Marks are generic; (2) the T-Cell Marks are descriptive but have

7

not acquired secondary meaning; and (3) the T-Cell Marks are invalid due to functionality. Genuine issues of fact exist on each of these questions, and Plaintiff's motion is therefore denied.

## B. PLAINTIFF'S SUMMARY JUDGMENT MOTION AS TO PLAINTIFF'S LANHAM ACT FALSE ADVERTISING CLAIM

Plaintiff additionally seeks summary judgment on its false advertising claims under the Lanham Act. To carry its burden of proof on this count, Plaintiff must establish five elements: (1) Defendants made a false or misleading description of fact or representation of fact in a commercial advertisement about his own or another's product; (2) the misrepresentation was material, i.e., likely to influence the purchasing decision; (3) the misrepresentation actually deceived or had the tendency to deceive a substantial segment of its audience; (4) Defendant placed the false or misleading statement in interstate commerce; and (5) Plaintiff has been or is likely to be injured as a result of the misrepresentation, either by direct diversion of sales or by a decrease in goodwill associated with its products. PBM Prods., LLC v. Mead Johnson & Co., 639 F.3d 111, 120 (4th Cir. 2011); see also 15 U.S.C. § 1125(a)(1)(B). Plaintiff contends that Defendants have misrepresented that Defendants' salt cells are: (1) a "direct replacement" for Hayward's salt cells; (2) "compatible with" Hayward's controllers; (3) the "same as," "comparable to," or "equivalent to" Hayward salt cells; (4) produced by the "same cell supplier as the original"; (5) "made in USA same as 'Hayward'"; (6) "NSF Certified"; and (7) that Defendants "[p]rovide OEM services for the USA leading pool chlorinator manufacturers." (Motion at 1–2).

Summary judgment will be denied as to the false advertising claims, as there are genuine issues of disputed fact precluding summary judgment. First, there are issue of fact as to whether

the challenged statements were actually false.[4] There are also issues of fact as to materiality, deception, and injury. For these reasons, the Court will deny Plaintiff's motion for summary judgment.

### C. PLAINTIFF'S SUMMARY JUDGMENT MOTION ON PLAINTIFF'S LANHAM ACT TRADEMARK INFRINGEMENT CLAIMS

Plaintiff also seeks summary judgment on its claims for Lanham Act trademark infringement of the Turbo Cell, T-Cell-3, T-Cell-9, and T-Cell-15 marks (Counts VI – IX), unfair competition and false designation of origin (Counts XII and XIII), and unfair competition and false designation of origin passing-off (Count XIV).[5] For the reasons set forth below, Plaintiff's motion is denied.

To establish trademark infringement under the Lanham Act, Plaintiff must prove that: (1) it owns a valid mark; (2) Defendant used the mark "in commerce" and without Plaintiff's authorization; (3) Defendant used the mark (or an imitation of it) "in connection with the sale, offering for sale, distribution, or advertising" of goods or services; and (4) Defendant's use of the mark is likely to confuse consumers. 15 U.S.C. § 1114(a); see Louis Vuitton Malletier S.A. v. Haute Diggity Dog, LLC, 507 F.3d 252, 259 (4th Cir. 2007); People for the Ethical Treatment of Animals v. Doughney, 263 F.3d 359, 364 (4th Cir. 2001).

Nine factors are relevant to the "likelihood of confusion" inquiry: (1) the strength or distinctiveness of Plaintiff's mark as actually used in the marketplace; (2) the similarity of the

---

[4] As one example, Defendants maintain that the statement that the salt cells were made in the United States is not actually false.

[5] Plaintiff notes that its motion is directed to only four of the nine trademarks Plaintiff asserts. (See Motion at 3 (identifying Counts VI-IX); Doc. No. 57 (Amended Complaint), Counts II-X.) Plaintiff does not seek summary judgment on its claims for other asserted trademarks: "Hayward," "Aqua Rite," "Gold Line," "Swimpure," and "Pro Logic," (Counts II-V, X), or its claims for trademark counterfeiting (Count XI).

9

two marks to consumers; (3) the similarity of the goods or services that the marks identify; (4) the similarity of the facilities used by the markholders; (5) the similarity of advertising used by the markholders; (6) Defendant's intent; (7) actual confusion; (8) the quality of Defendant's product; and (9) the sophistication of the consuming public. Rosetta Stone v. Google Inc., 676 F.3d 144, 153 (4th Cir. 2012) (quoting George & Co., LLC v. Imagination Entm't Ltd., 575 F.3d 383, 393 (4th Cir. 2009)). "These 'factors are not always weighted equally, and not all factors are relevant in every case.'" Id. at 154 (quoting Louis Vuitton Malletier S.A., 507 F.3d at 259–60).

The Court finds that genuine issues of disputed fact preclude summary judgment here. Whether there is a likelihood of confusion by customers is an especially fraught, fact-dependent inquiry. First, Plaintiff broadly charges Defendants with infringing its Turbo Cell and T-Cell marks in a wide variety of manners, including different usages, at different times, by different parties, via different channels. Plaintiff also points to changing advertising over a seven-year period without indicating of when the offending advertising appeared. Plaintiff makes no effort to identify any particular usage as the basis for its motion. The Court "must examine the allegedly infringing use in the context in which it is seen by the ordinary consumer." Anheuser-Busch, Inc. v. L L Wings, Inc., 962 F.2d 316, 319 (4th Cir. 1992); see also Grayson O Co. v. Agadir Int'l LLC, 856 F.3d 307, 316 (4th Cir. 2017) (affirming this Court's grant of summary judgment of no infringement). Plaintiff nevertheless requests a broad grant of summary judgment of infringement for all uses in any context. The Court will decline Plaintiff's request.

Moreover, Defendants offer evidence from which a reasonable jury could find that its use of Plaintiff's trademarks was nominative fair use. Under the nominative fair use doctrine, one may lawfully reference the trademarks of another in connection with the sale of aftermarket parts. See Hypertherm, Inc. v. Precision Prods., Inc., 832 F.2d 697, 700 (1st Cir. 1987) ("[A]

10

firm … which has labored (lawfully) to replicate another's parts, may ordinarily use the originator's trademark descriptively, that is, to identify the product it has copied."); see also Porter v. Farmers Supply Serv., Inc., 617 F. Supp. 1175, 1187 (D. Del. 1985), aff'd, 790 F.2d 882 (Fed. Cir. 1986). This is because "an imitator is entitled to truthfully inform the public that it believes that it has produced a product equivalent to the original and that the public may benefit through lower prices by buying the imitation." Calvin Klein Cosmetics Corp. v. Lenox Labs, Inc., 815 F.2d 500, 503 (8th Cir. 1987).

In the Fourth Circuit, where nominative use is implicated, district courts may tailor the likelihood of confusion factors, which are "not intended to be exhaustive or mandatory," to those that are useful and relevant in context. Rosetta Stone, 676 F.3d at 153–55 (applying the defense of nominative fair use to trademark dilution claim); see R/C Theatres Mgmt. Corp. v. Metro Movies, LLC, 44 F. Supp. 3d 626, 634 (D. Md. 2014) (acknowledging defense of nominative fair use). Accordingly, the doctrine of nominative fair use employs different or additional factors to fairly assess the likelihood of confusion in such cases. For example, a defendant may demonstrate its use was a non-infringing under the following factors. (1) Is the use of plaintiff's mark necessary to describe (a) plaintiff's product or service and (b) defendant's product or service? (2) Is only so much of the plaintiff's mark used as is necessary to describe plaintiff's products or services? (3) Does the defendant's conduct or language reflect the true and accurate relationship between plaintiff and defendant's products or services? Century 21 Real Estate Corp. v. Lendingtree, Inc., 425 F.3d 211, 228 (3d. Cir. 2005); see also Toyota Motor Sales, U.S.A., Inc. v. Tabari, 610 F.3d 1171, 1175–76 (9th Cir. 2010) (similar factors).

Applying these factors, Defendants argue that their use of Plaintiff's marks is nominative fair use, solely to inform the public that Defendants have produced a lower-priced equivalent to

Plaintiff's replacement salt cells. Defendants further contend their use was limited to that reasonably necessary to identify Plaintiff and its systems. Defendants also note that they use "Turbo Cell" and "T-Cell" marks in regular font and size, which weighs in favor of fair use. See Frontrange Sols. USA v. Newroad Software, Inc., 505 F. Supp. 2d 821, 835 (Dist. Colo. 2007) (use in "generic type" weighed in favor of fair use and against finding of likelihood of confusion). Finally, Defendants argue that the use of Plaintiff's marks does not suggest sponsorship or endorsement by Plaintiff. These are issues of fact for a jury to decide. Consequently, the Court will deny Plaintiffs' summary judgment motion with respect to its Lanham Act trademark infringement claims.

D. **DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ON STATEMENTS REGARDING COMPATIBILITY AND NO LOST PROFIT DAMAGES**

Defendants move for summary judgment on two issues: (1) false advertising based on Defendants' statements that its aftermarket replacement salt cell products are "compatible" with Plaintiff's pool chlorination systems; and (2) lost profits. The Court will deny Defendants' motion.

First, as "compatibility," the Court agrees with Defendant that merely stating that a product is compatible with another, even where the first product is inferior, is not alone a false statement. As the First Circuit aptly noted:

> One has a right to ape—if he can—the unpatented product of another. In the absence of false representations or palming off, the sale of unpatented replacement parts by one other than the manufacturer of the original equipment is neither unlawful nor actionable. Even if the parts are substandard, the rule holds—so long as their origin is not obscured. Notwithstanding some slight danger of confusion, it would (as we have said before) "be difficult to take seriously" an assertion that every such sale comprises unfair competition. Producing an unpatented machine does not give the producer a legal monopoly on its component parts. If a potentially lucrative aftermarket develops, imitators will flock to obtain and offer make-do surrogates, often claiming equivalent

12

performance and some added premium (e.g., faster delivery, cheaper pricing). In the entrepreneurial world as elsewhere, copycats have always been commonplace.

Hypertherm, Inc. v. Precision Prod., Inc., 832 F.2d 697, 700 (1st Cir. 1987).

Nonetheless, the Court will decline to grant Defendants summary judgment on "compatibility." Plaintiff credibly contends that the use of the term "compatibility," in the context of other statements, was meant specifically to confuse Hayward customers. Whether Defendants' compatibility language was intended to or did confuse Plaintiff's customers is, fundamentally, a question of disputed fact for the jury that the Court cannot resolve on summary judgment.

As to Defendant's lost profits arguments, Plaintiff has produced evidence from which a jury could determine that the salt cell market was in effect a two-supplier market. Consequently, Plaintiff's expert may give opinion evidence to the jury on lost profits. Defendants' expert may likewise submit rebuttal evidence on lost profits damages. Thus, lost profits present another disputed question of material fact that must be resolved by the jury. The Court will deny Defendant's summary judgment motion as to lost profits damages.

### E. PLAINTIFF'S MOTION FOR JUDGMENT ON PLAINTIF'S STATE LAW CLAIMS

Plaintiff's state law claims are based on the same facts as its Lanham Act claims. For the same reason the Court will deny summary judgment as to Plaintiff's Lanham Act claims, Plaintiff is not entitled to summary judgment on its state law claims. See Georgia Pac. Consumer Prods., LP v. Von Drehle Corp., 618 F.3d 441, 449 (4th Cir. 2010) (Lanham Act and related North Carolina state law claims "rise or fall" together); La Michoacana Nat., LLC v. Maestre, No. 317cv727, 2021 WL 4073292, at *10 (W.D.N.C. Sept. 7, 2021) (same).

### V. CONCLUSION

The Court finds that both parties' motions for summary judgment must be denied.

**IT IS THEREFORE ORDERED THAT:**

Plaintiff Hayward Industries, Inc.'s Motion for Summary Judgment on Claims of Trademark Infringement, False Advertising, Passing Off, and Unfair Competition, (Doc. No. 119), Plaintiff's Motion for Summary Judgment on Defendant's Trademark Cancellation Counterclaim, (Doc. No. 142), Defendant Blue Works Corporation's Motion for Summary Judgment of No False Advertising on Statements Regarding Compatibility and No Lost Profits, (Doc. No. 180), and Defendant's Motion for Summary Judgment of Plaintiff's Claims with Respect to the Turbo Cell, T-Cell, T-Cell-9, and T-Cell-15 Marks, (Doc. No. 189), are **DENIED**.

<u>**This matter shall proceed to trial.**</u>

Signed: January 25, 2024

Max O. Cogburn Jr.
United States District Judge

14

Case 3:20-cv-00710-MOC-SCR    Document 263    Filed 01/25/24    Page 14 of 14