**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION**

| | |
|---|---|
| HAYWARD INDUSTRIES, INC., <br><br> Plaintiff, Counterclaim Defendant <br><br> v. <br><br> BLUEWORKS CORPORATION, BLUEWORKS INNOVATION CORPORATION, NINGBO C.F. ELECTRONIC TECH CO., LTD; NINGBO YISHANG IMPORT AND EXPORT CO., LTD. <br><br> Defendants, Counterclaim Plaintiffs. | Civil Action No. 3:20-CV-710 -MOC-DSC |

## HAYWARD'S TRIAL BRIEF

### I.     INTRODUCTION

This case arises from Defendants' unfair and deceptive trade practices, including, for example, trademark infringement, false advertising, passing off, and false designation of origin. These and related claims fall under the federal unfair competition law, known as the Lanham Act, as well as under the North Carolina Unfair and Deceptive Trade Practices Act and common law. Hayward has also asserted a claim for copyright infringement.

As this Court knows from the summary judgment briefing, this case involves salt water pool chlorination systems.  Hayward manufactures and sells these systems, which consist of a controller (such as the AQUARITE® controller) and a salt cell, such as the TURBO CELL® family of salt cells, which include the T-CELL-15®, T-CELL-9®, and T-CELL-3® salt cells. Hayward has been selling these salt chlorination systems for over 20 years and has established a significant market share and install base, not to mention substantial consumer good will.

ME1 47657382v.1

The salt cell does not work by itself.  Rather, it must communicate with the controller.  The salt cell relays to the controller certain information, such as the temperature of the pool water.  An algorithm in the controller interprets that information to estimate the condition of the pool water.  Based on that analysis, the controller instructs the salt cell when to turn on and off and thus how much chlorine to produce.  Hayward's controllers are calibrated to the particular design specifications of Hayward's salt cells, meaning that if another company's salt cell were connected to the Hayward controller, the controller would misinterpret the feedback from the salt cell, resulting in too much or too little chlorine being generated, as well as premature failure of the salt cell.  Or the salt cell won't work at all.  Hayward does not authorize other companies to make compatible salt cells.

Salt cells have finite life spans and must be replaced every few years.  Hayward sells replacement salt cells that are also calibrated to Hayward's controllers and vice versa.

Defendants noticed Hayward's success and install base and thus decided to make and sell replacement salt cells for Hayward's systems.  That's where the trouble started.  Defendants advertise their replacement salt cells in such a way as to make it appear that their cells are somehow authorized by Hayward or that Defendants are affiliated with Hayward.  In effect, Defendants are passing off their replacement salt cells as genuine or authorized Hayward replacements.  Defendants do so in three ways.

First, Defendants advertise their salt cells as "compatible with" Hayward's controllers; as the "same as" or "equivalent to" or "direct replacements for" Hayward's salt cells; and that Defendants use the same cell plates (a key component of the salt cells) as Hayward does, from the same supplier.  They also advertise that their salt cells, or at least their cell plates, are made in the USA.  None of that is true.  The evidence will show that the salt cells are not compatible, not the

2

ME1 47657382v.1

same, not equivalent, and do not contain the same cell plates. These and other false claims in Defendants' ads (*e.g*, that their salt cells are "NSF certified" and that Defendants are the "OEM" for the largest salt cell distributors in the US, read "Hayward") confuse consumers into buying the knockoff replacements instead of Hayward's genuine salt cells.

The second way that Defendants pass off their salt cells and confuse consumers is through misappropriation of Hayward's trademarks. Defendants' unauthorized use of Hayward's trademarks goes far beyond "fair use"; instead, Defendants intentionally use Hayward's trademarks, or confusingly similar marks (e.g., T-15-CELL, BLT15, or T15 instead of T-CELL15®), to confuse customers into purchasing Defendants' replacement salt cells.

Third, Defendants even copy Hayward's copyrighted user manuals, making it appear that Hayward has authorized the knock-off salt cells. At the very least, Defendants' copying shows their intent to falsely associate themselves with Hayward.

Hayward seeks to stop Defendants' from using Hayward's trademarks (or confusingly similar marks) and from falsely advertising their knockoff replacement cells as "compatible with," "equivalent to," "made in the USA," etc. Moreover, Hayward seeks actual damages in the form of its lost profits. For every replacement cell that Defendants unfairly sell, Hayward loses a sale and the profit that goes with it. Alternatively, Hayward seeks Defendants' profits from its ill-gotten gains. Significant issues that will arise at trial are addressed below in summary fashion, with cross-reference to Hayward's motions *in limine* where appropriate for the sake of brevity.

## II.    FACTUAL BACKGROUND

As prefaced above, the trademarked products at issue are colloquially known as salt cells, which, along with the controllers that run them, are the key components of automated saltwater chlorination systems for swimming pools. Hayward makes and sells both the controllers and the

3

salt cells, including replacement salt cells for when the originally installed salt cells wear out. Salt cells designed for other companies' controllers, or that are not compatible with Hayward's controllers, will not work in Hayward's controllers. So that Hayward can ensure the quality of its systems, it does not authorize others to make compatible replacement salt cells. Hayward's salt cells are sold under various trademarks, such as TURBO CELL® and T-CELL-15®, among others.

Hayward's trademarked salt cells have enjoyed significant commercial success for many years. Having noticed Hayward's success, Defendants set out to free-ride on Hayward's hard work by making and selling cheap knock-off replacement salt cells that infringe Hayward's trademarks and are falsely advertised as, *inter alia*, "compatible with" Hayward's controllers. In so doing, Defendants have used Hayward's trademarks without permission and have deceptively passed off their salt cells as endorsed or authorized or even made by Hayward for use in Hayward's systems.

Importantly, Defendants advertise and sell their knockoff salt cells in the same channels of trade that Hayward uses, particularly online marketplaces like Amazon.com. Indeed, when a consumer looking for a replacement for a Hayward T-CELL-15® salt cell enters, for example, "T-Cell-15 replacement" or "Hayward replacement" into the Amazon.com search field, the consumer will be shown a list of salt cells. The first on the list might be a genuine Hayward product, but the next one will be a Blueworks knockoff. Thus, the products are advertised side by side, further adding to the confusion. Defendants make the following misrepresentations (collectively, Defendants' "False Statements"), among others, about their knockoff salt cells in their ads and communications directed to Hayward's current and potential customers:

- "Direct replacement" for Hayward's salt cells;
- "Compatible with" Hayward's controllers;
- "Same as," "Comparable to," "Equivalent to" Hayward's salt cells, and similar statements implying that Defendants' cells are the same as Hayward's;

4

- "Same cell supplier as the original," "same cell coating as" used in Hayward's cells, and similar statements relating to the key component of the cells, known as "cell plates" or "blades" or "electrodes";
- "Made in the USA" or "Made by a USA company";
- "NSF Certified"; and
- "Provide OEM services for the USA leading pool chlorinator manufacturers"

None of these claims are true. Defendants admit that Defendants' salt cells, including the cell plates, are ***not*** made in the USA but rather made in China. Importantly, Defendants' salt cells are not "compatible with" Hayward's controllers or the "same as" or "equivalent to" Hayward's genuine salt cells. Hayward's technical expert, Quinn Horn, Ph.D., tested Defendants' salt cells against Hayward's and found numerous, important differences in materials and construction that cause Defendants' salt cells to malfunction, to have lifespans that expire prematurely, and that are substantially incompatible with Hayward's controllers. Further, consumers who were fooled into buying Defendants' salt cells have posted on-line reviews complaining that Defendants' salt cells don't work in Hayward's systems. Several witnesses, including a pool industry professional and a former business partner of Defendants, also testified that Defendants' salt cells malfunction or fail quickly when used in Hayward's systems.

Defendants' misrepresentations about the quality, compatibility, and origin of their salt cells would mislead consumers into buying Defendants' salt cells, as Hayward's consumer behavior and marketing expert, Professor Nick Didow of the UNC Kenan-Flagler Business School, concluded based on consumer surveys he conducted. Professor Didow's surveys also found that consumers would likely be confused by Defendants' use of trademarks similar to Hayward's, such as "T-15-Cell," which is an obvious but confusing variation of Hayward's T-CELL-15® mark. Notably, Defendants never offered their own expert to counter Professor Didow's survey evidence.

The evidence will show that Hayward dedicates significant resources to its branding efforts and enjoys goodwill associated with its brands. Hayward also devotes significant resources to

5

ME1 47657382v.1

product development and testing to ensure that consumers have access to quality products that deliver the performance and safety they have come to expect form Hayward. For example, Hayward salt cells are NSF certified, meaning the product is approved by the National Sanitation Foundation and meets strict standards for public health protection. Consumers rely on the Hayward Marks as a source and statements such as "NSF Certified" among others when making material purchasing decisions. Defendants' cells are not NSF certified (and thus are not equivalent).

In addition to using Hayward's exact trademarks to advertise their salt cells, Defendants also use a number of obvious variations and marks that are suspiciously close to Hayward's T-CELL-15 (and -9 and -3) marks, such as "BLT15," "BLT9," "BLT3," among others. The evidence will show that the non-genuine products are not like-for-like replacements. For instance, the Defendants non-genuine salt cells are not certified by the NSF and are not the same quality as Haywards.

At trial, the evidence will show:

1. Defendants used multiple Hayward trademarks (or confusingly similar marks) in their website's advertisements for knock-off replacement salt cells;

2. Defendants copied without permission Hayward's copyrighted user manuals and include them with their knock-off salt cells, further creating the impression that Hayward authorizes Defendants to make compatible replacements;

3. Defendants used false and misleading wording in solicitation emails to various pool companies and distributors deceptively suggesting they are affiliated with, or sponsored or approved by Hayward, or that they are the OEM for Hayward;

4. Defendants misrepresented the quality of the replacement salt cells. Defendants advertised their salt cells as "direct replacements" for genuine Hayward salt cells or "compatible with" Hayward's controllers, even though Defendants' salt cells do **not** provide the quality that consumers expect from a Hayward system and do not communicate correctly with the controllers.

5. Hayward has been harmed by Defendants' unfair and deceptive practices. The evidence will show that Hayward has suffered lost profits. Alternatively, Hayward is entitled to a disgorgement of Defendants' profits.

6

ME1 47657382v.1

To be clear, Hayward is not trying to stop Defendants from making salt cells. Other companies in the pool equipment market make and sell their own controllers and salt cells calibrated for their own controllers. They do not make and sell salt cells misleadingly positioned as compatible with Hayward's controllers, and Hayward does not make and sell salt cells targeted at its competitors' controllers. Thus, Defendants could make and sell their own controllers and compatible salt cells, under their own trademarks, without referencing Hayward and its trademarks. That would be fair competition, and Hayward welcomes fair competition. In contrast, this case is about Defendants' advertising and marketing tactics, which mislead and confuse consumers through false claims and misappropriation of Hayward's trademarks. That is unfair competition.

## III.   LEGAL STANDARDS

Hayward asserts against Defendants claims under the following legal theories: (1) trademark infringement, (2) unfair competition and false designation of origin; (3) false advertising; (4) copyright infringement; (5) counterfeiting; (6) unfair and deceptive trade practices under North Carolina's Unfair and Deceptive Trade Practices Act ("UDTPA"); (7) trademark infringement and unfair completion under NC common law; (8) tortious interference with prospective economic advantage; (9) unjust enrichment; (10) contributory infringement and/or vicarious liability.

Section 43(a) of the Lanham Act (15 USC § 1125(a)) prohibits the use in commerce of trademarks or false designations of origin that are "likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person." 15 U.S.C. § 1125(a). Similarly, section 32 of the Lanham Act (15 U.S.C. § 1114) protects registrants and prohibits use in commerce of a registered mark (or confusingly similar mark) that causes confusion, mistake or deceives. *See Cinebarre, LLC v. Movie Grill*

7

ME1 47657382v.1

*Concepts XV, LLC,* No. 3:13-CV-00618, 2015 WL 4250373, at *2 (W.D.N.C. July 13, 2015) (citing *Louis Vuitton Malletier S.A. v. Haute Diggity Dog,* LLC, 507 F.3d 252, 259 (4th Cir. 2007) (quoting 15 U.S.C. § 1114(1)(a)).) The key inquiry in trademark and unfair competition cases is a likelihood of confusion. Courts in the Fourth Circuit examine the following factors in assessing whether a likelihood of confusion exists:

> (1) the strength or distinctiveness of the plaintiff's mark as actually used in the marketplace;
>
> (2) the similarity of the two marks to consumers;
>
> (3) the similarity of the goods or services that the marks identify;
>
> (4) the similarity of the facilities used by the mark holders;
>
> (5) the similarity of advertising used by the mark holders;
>
> (6) the defendant's intent;
>
> (7) actual confusion;
>
> (8) the quality of the defendant's product; and
>
> (9) the sophistication of the consuming public.

*Variety Stores, Inc. v. Wal-Mart Stores, Inc*., 888 F.3d 651, 660 (4th Cir. 2018) (citations omitted). "'Not all of these factors will be relevant in every trademark dispute, and there is no need for each factor to support [the plaintiffs] position on the likelihood of confusion issue.'" *Id*. (quoting *Synergistic Int'l, LLC v. Korman*, 470 F.3d 162, 171 (4th Cir. 2006)).

"The test is likelihood of confusion; evidence of actual confusion is unnecessary." *Sara Lee Corp. v. Kayser-Roth Corp*., 81 F.3d 455, 463 (4th Cir. 1996) (emphasis in original). Nevertheless, evidence of actual confusion is "patently the best evidence of likelihood of confusion." *Tools USA & Equip. Co. v. Champ Frame Straightening Equip. Inc*., 87 F.3d 654, 660-61 (4th Cir. 1996). Because "evidence of actual confusion is difficult to find," due to most instances of confusion never being reported, as a matter of law "even a few incidents" are "highly probative of the likelihood of confusion." *Kos Pharm., Inc. v. Andrx. Corp*., 369 F.3d 700, 720 (3d Cir. 2004) (citation omitted); *Sara Lee Corp*., 81 F.3d at 466 ("[W]e can but wonder how often

8

ME1 47657382v.1

the experiences related by the [six] trial witnesses have been repeated-but not reported-in stores across the country").

In addition to prohibiting trademark infringement, Section 43(a) also prohibits any false designation of origin that is likely to cause consumer confusion. This provision "goes beyond trademark protection" and covers all communications to customers that are likely to create confusion about the origin, sponsorship, or approval of the goods being sold. *Belmora LLC v. Bayer Consumer Care AG,* 819 F.3d 697, 709-710 (4th Cir. 2016), cert denied, 137 S.Ct. 1202 (2017) (quoting *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 28-29 (2003)). *Lamparello v. Falwell*, 420 F.3d 309, 313 (4th Cir.2005) ("Both infringement [under § 32] and false designation of origin [under § 43(a) ] have [the same] five elements.").

Section 43(b) of the Lanham Act "creates liability for 'misrepresent[ing] the nature, characteristics, qualities, or geographic origin' of goods," otherwise known as false advertising. *Id*. at 706 (quoting 15 U.S.C. § 1125(b)). A false advertising claim requires proof that the defendant "made a false or misleading description of fact" in commercial advertising or promotion; that the misrepresentation was "likely to influence the purchasing decision," that the misrepresentation "has the tendency to deceive" consumers, that the false or misleading statement was made in interstate commerce, and that the false or misleading statement injured the plaintiff. *PBM Prods. LLC v. Mead Johnson & Co*., 639 F.3d 111, 120 (4th Cir. 2011) (citation omitted). If, however, the advertising claim is literally false, then the plaintiff need not prove deception or materiality of the statement (*i.e.*, does not need to prove that the statement would influence consumers). *PBM Prods., LLC v. Mead Johnson & Co.*, 639 F.3d 111, 120 (4th Cir. 2011) ("Where the advertisement is literally false, a violation may be established without evidence of consumer deception"); *C.B. Fleet Co. v. SmithKline Beecham Consumer Healthcare, L.P.*, 131 F.3d 430, 434 (4th Cir. 1997)

ME1 47657382v.1

("If the advertising claim is literally false, the court may enjoin the use of the claim without reference to the advertisement's impact on the buying public") (internal citations and quotation marks omitted).

To succeed on a passing off claim, Hayward must prove that the Defendants "falsely represented that [Hayward] was the source of the [Defendants'] goods when [Hayward] was not, that is, that [Defendants] falsely suggested that [Hayward] was the producer of the tangible product sold in the marketplace." *Camco Mfg., Inc. v. Jones Stephens Corp.*, 391 F. Supp. 3d 515, 527 (M.D.N.C. 2019) (citation and internal quotation marks omitted).

Similarly Sections 1114 and 1117 of the Lanham Act prohibit counterfeiting. Counterfeiting requires a plaintiff to prove that a defendant (1) intentionally used a counterfeit mark in commerce; (2) knowing that the mark was counterfeit; (3) in connection with the sale, offering for sale, or distribution of goods; and (4) the use of the counterfeit mark was likely to confuse or deceive. See 15 U.S.C. §§ 1114(1)(a), 1117(b); *GoSecure Inc. v. Bhandari,* 637 F. Supp. 3d 368, 379 (E.D. Va. 2022).

To prove copyright infringement, a plaintiff must show that (1) he or she owned the copyright to the work that was allegedly copied; and, (2) the defendant copied protected elements of that work. *Levi v. Twentieth Century Fox Film Corp.*, No. 3:16CV129, 2018 WL 1542239, at *3 (E.D. Va. Mar. 29, 2018); *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 341 (1991).

A defendant found liable for the foregoing trademark infringement must typically pay to the plaintiff "(1) [its] profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action." 15 U.S.C. § 1114(1)(a); § 1117(a). "In a case involving [knowing and intentional] use of a counterfeit mark" the defendant will instead be liable for "three times such profits or damages, whichever amount is greater, together with a reasonable attorney's fee." *Id.*§

10

ME1 47657382v.1

1117(b). In a case involving a counterfeit mark, a plaintiff may also elect to receive statutory damages in lieu of profits and/or damages. *Id*. § 1117(c). Counterfeiting damages are subject to heighted statutory penalties. *See* 15 U.S.C. § 1117. "In a case involving the use of a counterfeit mark," a Lanham Act plaintiff may elect to recover, in lieu of the standard profits and damages available for mere infringement, "an award of statutory damages . . . not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed." 15 U.S.C. § 1117(c). Even greater penalties are available upon a finding that a defendant used a counterfeit mark willfully. If a defendant has "intentionally us[ed] a mark or designation, knowing that such mark or designation is a counterfeit mark," and the plaintiff elects to pursue standard profits and damages, the court "shall, unless [it] finds extenuating circumstances, enter judgment for three times [defendant's] profits or [plaintiff's] damages, whichever amount is greater, together with a reasonable attorney's fee." *Id*. § 1117(b). And if a plaintiff elects instead to pursue statutory damages, a "court [that] finds that the use of the counterfeit mark was willful," may impose damages of up to "$2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed." *Id*. § 1117(c)(2).

The Lanham Act provides for a recovery of damages measured either by the plaintiff's actual damages or the Defendants' profits. *See* 15 U.S.C. § 1117(a). Upon proof of a violation, the Lanham Act provides:

> In assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed .... If the court shall find that the amount of the recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case.

ME1 47657382v.1

The Fourth Circuit has stated six non-exclusive factors for determining whether to grant actual damages (*e.g.,* lost profits) in a false advertising case:

> (1) whether the defendant had the intent to confuse or deceive; (2) whether sales were diverted; (3) the adequacy of other remedies; (4) any unreasonable delay by the plaintiff in asserting his rights; (5) the public interest in making the misconduct unprofitable; and (6) whether it is a case of palming off.

*Muhler Co. v. Window World of N. Charleston LLC,* No. 2:11-CV-00851, 2014 WL 4269078, at *5-6 (D.S.C. Aug. 28, 2014) (granting lost profits) (citing *Synergistic Int'l, LLC v. Korman,* 470 F.3d 162, 174–75 (4th Cir. 2006)); *see also Concordia Pharms., Inc. v. Method Pharms.,* LLC, 240 F. Supp. 3d 449, 457–58 (W.D. Va. 2017) (finding that the *Synergistic* factors justified award of lost profits even through plaintiff could not prove that the false ads alone caused diverted sales).

There is no requirement that Hayward prove every sale lost to Defendants. *Church & Dwight Co., Inc. v. SPD Swiss Precision Diagnostics GMBH*, 2018 WL 4253181 at *15-16. (finding plaintiff's expert's market share calculation "a fair and reasonable approximation" of damages where expert assumed all sales of the defendant's products were attributable to the defendant's false advertising and defendant did not offer any persuasive evidence that the isolating "the effect of the false advertising, if even possible, would have made a big difference in calculating damages").

In the alternative, Hayward is entitled to any profits earned by Defendants that are attributable to their infringement. Disgorgement damages are a statutory approximation of the actual injury a plaintiff has suffered. *See, e.g., Polo Fashions, Inc. v. Craftex, Inc.,* 816 F.2d 145, 149 (4th Cir. 1987) ("The defendants' profits, however, are a rough measure of the plaintiffs damages. Indeed, they are probably the best possible measure of damages available"). Once a plaintiff has shown which of the defendant's products were subject to the infringing or unlawful conduct and established the gross revenue derived from such products, it is the defendant's burden

12

ME1 47657382v.1

to "prove all elements of cost or deduction claimed." *Mishawaka Rubber & Woolen Mfg. Co. v. S.S. Kresge Co*., 316 U.S. 203, 205-06 (1942).

Additionally, a party tortiously interferes with another party's prospective economic advantage when they "induc[e] a third party to refrain from entering into a contract with them which contract would have ensued but for the interference." *BioSignia, Inc. v. Life Line Screening of Am., Ltd*., No. 1:12CV1129, 2014 WL 2968139, at *8 (M.D.N.C. July 1, 2014); *Carter v. Ozoeneh*, No. 3:08CV614-RJC-DSC, 2010 WL 890260, at *5 (W.D.N.C. Mar. 8, 2010) (noting that under North Carolina law the elements of a claim for tortious interference with prospective economic advantage include: (1) the defendant induced a third party not to enter into a contract with the plaintiff; (2) the contract would have ensued but for the interference of the defendant; (3) the defendant acted without justification; and (4) the plaintiff suffered measurable damages resulting from the defendant's allegedly tortious activities).

Unjust enrichment occurs when a party received a benefit without proper restitution. *Rosetta Stone Ltd. v. Google, Inc.*, 676 F.3d 144, 165–66 (4th Cir. 2012) ("A plaintiff asserting unjust enrichment must demonstrate the following three elements: (1) he conferred a benefit on [the defendant]; (2) [the defendant] knew of the benefit and should reasonably have expected to repay [the plaintiff]; and (3) [the defendant] accepted or retained the benefit without paying for its value.").

Moreover, contributory infringement liability may be imposed upon those who facilitate or encourage trademark infringement. *Rosetta Stone Ltd. v. Google, Inc*., 676 F.3d 144, 163 (4th Cir. 2012) Inwood Lab'y*s, Inc. v. Ives Lab'ys, Inc.*, 456 U.S. 844, 854, (1982) (explaining "if a manufacturer or distributor intentionally induces another to infringe a trademark, or if it continues to supply its product to one whom it knows or has reason to know is engaging in trademark

ME1 47657382v.1

infringement, the manufacturer or distributor is contributorily responsible for any harm done as a result of the deceit").Finally, the UDTPA prohibits both (1) unfair and (2) deceptive acts or practices. An act or practice is deceptive if "it has the capacity or tendency to deceive the average consumer." *Dean v. Hill*, 615 S.E.2d 699, 702 (N.C. Ct. App. 2005) (quoting *Creekside Apts. v. Potea*t, 446 S.E.2d 826, 833 (N.C. Ct. App. 1994)). This standard does not require proof of actual confusion. *Id*. A plaintiff need not establish fraud, bad faith, or deliberate acts of deception, *Spartan Leasing, Inc. v. Pollard*, 400 S.E.2d 476, 482 (N.C. Ct. App. 1991), nor is a defendant's good faith a defense to an action under the UDTPA, *Gray v. N.C. Ins. Underwriting Ass'n,* 529 S.E.2d 676, 681 (N.C. 2000).

A practice that violates the federal Lanham Act also violates the UDTPA, though the UDTPA is broader than the Lanham Act. *Design Res., Inc. v. Leather Indus. of Am.,* No. 1:10CV157, 2014 WL 4159991, at *13 (M.D.N.C. Aug. 19, 2014). Namely, the UDTPA prohibits "unfair" acts or practices in addition to "deceptive" acts or practices. " 'Unfairness' is a broader concept and includes the concept of 'deception.' " *Mitchell v. Linville*, 557 S.E.2d 620, 623 (N.C. Ct. App. 2001). The term encompasses "any conduct that a court of equity would consider unfair." *Univ. Furniture Intern., Inc. v. Collezione Europa USA, Inc.*, 618 F.3d 417, 439 (4th Cir. 2010) (quoting *Polo Fashions*, 816 F.2d at 148). "A practice is unfair when it offends established public policy, as well as when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." *Mitchell*, 557 S.E.2d at 623 (internal citation omitted); *see also Univ. Furniture Intern.*, 618 F.3d at 439 (a "practice is unfair if it is unethical or unscrupulous" (citation omitted)).

The role of the jury in a case involving a claim of unfair or deceptive practices is to determine the particular acts or practices that have occurred. *Gray*, 529 S.E.2d at 68. For any act

14

ME1 47657382v.1

or practice determined by the jury to have occurred, "[t]he determination of whether an act or practice is an unfair or deceptive practice that violates N.C.G.S. § 75-1.1 is a question of law for the court." *Id*. An injured plaintiff may measure its damages based on the profits the Defendant derived from its unfair or deceptive activities. *E.g., Ferrellgas, L.P. v. Best Choice Prods.*, 1:16CV259, 2017 WL 3142044, at *6-7, *9 (M.D.N.C. July 24, 2017).

The UDTPA provides for automatic trebling of damages and the trial judge, not the jury, does the trebling. N.C.G.S. § 75-16; 813.00 Trade Regulation, NC Pattern Jury Inst. - Civ. 813.00, at n.2.

## IV.  LEGAL ISSUES THAT MAY ARISE AT TRIAL

### A.  Statements from customers used as evidence of actual confusion are non-hearsay or fit within exceptions to the hearsay rule

Hayward anticipates that Defendants will raise a hearsay objection to the evidence of actual confusion consisting of statements from Defendants' own customers. The body of customer complaints is comprised of statements that the customer is confused or was confused at the time of purchase or complaining of the quality. The first category of customer statements—misidentifications such as identifying Defendants' salt cells as a "T-CELL" or "T15" or similar designation—are unambiguously not hearsay in this context because they are not offered for the truth of the matter asserted but rather as evidence of statement of mind—namely, that the customer was confused. *See Lyons Partnership, L.P. v. Morris Costumes, Inc*., 243 F.3d 789, 804 (4th Cir. 2001) (evidence that individuals misidentified Defendant's mascot as "Barney" was non-hearsay evidence that individuals were confused about the identity of the mascot); *You Fit, Inc. v. Pleasanton Fitness, LLC*, No. 8:12-CV-1917-T-27EAJ, 2013 WL 521784 (M.D. Fl. Feb. 11, 2013) (Yelp reviews); *Sarkis' Cafe, Inc. v. Sarks in the Park, LLC*, No. 12 C 9686, 2016 WL 723135, at *8, n.15 (N.D. Ill. Feb. 24, 2016) (online customer reviews).

15

ME1 47657382v.1

As to the second type of statement, consumer statements reporting past or present confusion qualify under the then-existing state-of-mind exception to the rule against hearsay. *E.g., Fun-Damental Too, Ltd. v. Gemmy Indus. Corp.*, 111 F.3d 993, 1003-04 (2d Cir. 1997); *Kos Pharm., Inc. v. Andrx. Corp.*, 369 F.3d 700, 719 (3d Cir. 2004); *Dynamic Aviation Grp., Inc. v. Dynamic Int'lAirways, LLC,* No. 5:15-CV-00058, 2016 WL 10677907, at *1-2 (W.D. Va. July 5, 2016), 1*65 Park Row, Inc. v. JHR Dev., LLC*, No. 2:12-CV-00106-NT, 2013 WL 6190346, at *1 (D. Me. Nov. 25, 2013); cf. *Tools USA & Equip. Co. v. Champ Frame Straightening Equip. Inc.,* 87 F.3d 654, 660-61 (4th Cir. 1996) (finding actual confusion based on reports of consumer confusion provided by testimony from the plaintiff s employees).

The state of mind of Defendants' customers is also relevant to Hayward's false advertising claims because the customer reviews show that Defendants' false statements were material to consumers and that consumers were deceived. *GoSMiLE, Inc. v. Levine*, 769 F. Supp. 2d 630, 647 (S.D.N.Y. 2011) (admitting online product reviews under 803(3) and finding that the online reviews have "probative value as to consumer perceptions" of the products' quality); *Benshot LLC v. 2 Monkey Trading LLC*, No. 18-C-1716, 2022 WL 1275604, at *5 (Apr. 28, 2022) (relying on "customer reviews of [a party's] products at Amazon" to show that allegedly false Made in USA statements were material to consumers in a Lanham Act false advertising case); *RXD Media, LLC v. IP Application Dev. LLC*, 986 F.3d 361, 373 (4th Cir. 2021) (Finding that "anecdotal evidence of actual confusion through comments posted on [the opposing party]'s Facebook page" supported the district court's finding of likelihood of confusion).

The customer reviews are also admissible under Fed. R. Evid. 803(17) as market reports. *Jackpocket, Inc. v. Lottomatrix NY LLC*, 645 F. Supp. 3d 185, 222, n. 11 (S.D.N.Y. 2022) (admitting internet printouts showing customer reviews under 803(17) because "the public relies

on this information from the Google Play Store for . . . customer reviews" and because Google "knows that their work will be consulted [and] if it is inaccurate, the public or the trade will cease consulting their product"). Indeed, many of the customer reviews are identified as "verified purchase[s]," adding to their reliability.

All customer emails are also admissible pursuant to the business records exception to the hearsay rule, F.R.E. 803(6). Defendants have customer service representatives in addition to a general email address to receive consumer inquiries (e.g., sales@blueworkspool.com). Thus, Defendant maintains these communications and customer complaints and inquires in the regular course of business, and these complaints are admissible under Rule 803(6).

Finally, the use of customer complaints to prove actual confusion falls within the "catchall" hearsay exception under Federal Rule of Evidence 807. The complaints were sent independently from individual consumers to Defendants: "The fact that they all reported roughly similar experiences suggests their truthfulness." *F.T.C. v. Figgie Intern., Inc*., 994 F.2d 595, 608 (9th Cir. 1993). The evidence of actual confusion is used to prove a material fact-likelihood of confusion- and hauling hundreds of consumers into court to testify would be impractical if not impossible, meaning that "reasonable efforts" would not produce probative evidence. *Id*. at 608-09. Finally, admitting the statements "furthers the federal rules' paramount goal of making relevant evidence admissible." *Id*. at 609 (citation omitted)

### B. Defendants' use of the Hayward Marks was not fair use because it was likely to cause confusion as to source, origin, sponsorship or approval

Defendants have raised an affirmative defense of nominative fair use. The Fourth Circuit, however, has not adopted nominative fair use as a valid defense to an infringement claim. *Rosetta Stone Ltd. v. Google, Inc.*, 676 F.3d 144, 155 (4th Cir. 2012); *Lorillard Tobacco Co. v. Lorillard Licensing Co.*, 616 F. Supp. 2d 281, 588-89 (E.D. Va. 2009) ("While the Third Circuit and Ninth

17

ME1 47657382v.1

Circuit apply [the nominative fair use] standard differently, **the Fourth Circuit has not adopted it in any form**")(emphasis added). Such a defense "falls outside of the typical statutory understanding of trademark law." *Id*. Moreover, Defendants' fair use defense fails because Defendants' use the Hayward trademarks, or variations of them, to advertise their own products, not to refer to Hayward's products, as nominative fair use requires. *Align Tech., Inc. v. Strauss Diamond instruments, Inc.*, No. 18-cv-06663, 2019 WL 1586776, at *5-6 (N.D. Cal. Apr. 12, 2019) (rejecting nominative fair use defense because the defendant used plaintiff's mark to refer to defendant's own product, which implied an association between the plaintiff and defendant). Below are examples of Defendants' unfair use of Hayward's marks, or variations of them:



ME1 47657382v.1



(Dkt. No. 122-12 at 18 and 49.) As shown in the above advertisements, Defendants use Hayward's marks, or variations of them, *before* their compatibility statement. In effect, they are advertising a "Blueworks T-15-Cell," which is an easy case of infringement.[1]

A successful nominative fair use defense requires the defendant to prove the following elements: (1) "the product or service in question must be one not readily identifiable without use of the trademark," *New Kids on the Block v. News Am. Publ'g, Inc.*, 971 F.2d 302, 308 (9th Cir. 1992); (2) "only so much of the mark or marks may be used as is reasonably necessary to identify the product or service," *id.*; and (3) use of the mark or marks is not likely to create confusion as to the source, sponsorship, approval, or affiliation of the products in question, *id; Rosetta Stone*, 676 F.3d at 169-70. "[A] common component of fair use is good faith." *Rosetta Stone,* 676 F.3d at 169.

---

[1] Defendants claim that their salt cells are compatible with Hayward's salt system controllers—not Hayward's salt cells, which are branded T-Cell-15®, T-Cell-9®, or T-Cell-3®--thus showing that Defendants have no need to use Hayward's T-Cell-formative trademarks at all.

ME1 47657382v.1

First, Defendants do not need to use Hayward's T-Cell-15®, T-Cell-9®, or T-Cell-3® trademarks to refer to the products with which Defendants claim their salt cells are compatible because these trademarks are used for Hayward's salt cells and Defendants' claim compatibility with Hayward's *salt system controllers*.  Second, Defendants' use more of Hayward's trademarks than is necessary by including multiple Hayward trademarks in multiple places in their advertisements, including in the headline, bullet points, and text below the main advertisement. Third, the evidence at trial will show that Defendants' use of Hayward's marks is likely to create confusion as to the source, sponsorship, approval, or affiliation. Thus, this is not fair use.

### C.    Hayward will meet its burden to establish damages and Defendants' arguments in opposition rest on rejected statements of law.

Pursuant to 15 U.S.C. § 1117, Hayward may elect its actual damages (e.g., lost profits) or disgorgement of Defendants' profits.   Hayward's burden is clear: it only needs to prove Defendants' gross sales.  The evidence will show Hayward's expert, Ms. Juli Saitz, calculated the sales and opined on the damages.is matter.    Contrary to Defendant's position, courts do not require that the plaintiff prove that each *individual* sale was caused by actual confusion. Requiring such a showing would be contrary to the law. *See Select Comfort Corp. v. Tempur Sealy Int'l, Inc.,* No. 13-cv-2451, 2016 WL 5496340 (D. Minn. Sept. 28, 2016). Defendants' conduct in marketing the replacement salt cells  at issue is unlawful because it creates a *likelihood* of confusion. Indeed, courts and commentators have long-recognized the policy and wisdom inherent in section 1117(a)'s burden shifting damages analysis. As the Supreme Court has explained, "Congress did not put upon the despoiled the burden--as often as not impossible to sustain--of showing that but for the defendant's unlawful use of the mark, particular customers would have purchased the plaintiff's goods ..."*Mishawaka Rubber,* 316 U.S. at 206; *see also* Restatement (Third) of Unfair Competition § 37 (1995) ("The defendant bears the burden of establishing which, if any, of the

20

ME1 47657382v.1

total sales are not attributable to the misconduct").

Moreover, Defendants' use of Professor Didow's likelihood of confusion survey is an unreliable, untested, and novel method of apportioning damages. *Vital Pharms. V. PhD Mktg. Inc*., No. Cv 20-06745-RSWL-JCX, 2022 WL 2952495, at *6 (C.D. Cal. July 26, 2022) ("courts have rejected the use of a likelihood of confusion survey to apportion profits" and finding defendant's logic flawed because plaintiff's "survey did not narrow respondents to actual purchasers of defendant's [products]' revealing nothing about why consumers bought defendant's products"); *Solid 21, Inc. v. Richemont N. Am., Inc.*, No. 19-CV-1262 (AS), 2023 WL 6058614, at*6 (S.D.N.Y. Sept. 18, 2023) (excluding defendant's damages expert's testimony related to using plaintiff's consumer survey to reduce damages, which incorrectly conflated defendant's liability for infringement and apportionment of profits to be awarded plaintiff); *Globefill v. Elements Spirits, Inc.*, No. 2:10-cv-02034, 2017 WL 26520589, at *3 (C.D. Cal. Sept. 8, 2017) (rejecting defendant's attempt to use plaintiff's survey evidence showing 40% likelihood of confusion among survey participants "did not show 60% of actual sales of [defendant's] tequila were 'demonstrably not attributable to the unlawful use of'" plaintiff's trade dress (quoting *Mishawaka Rubber & Woolen Mfg. Co. v. S.S. Kresge Co.,* 316 U.S. 203, 206 (1942)).

### D. Emails to solicit customers and promote products are considered commercial advertising for purposes of the Lanham Act

Emails and other communications used to promote products and solicit customers are considered commercial advertising for purposes of false advertising under the Lanham Act. *Ultimate Outdoor Movies, LLC v. FunFlicks, LLC*, No. CV SAG-18-2315, 2019 WL 2233535, at *25 (D. Md. May 23, 2019) (defendant's email solicitation considered to be an advertisement or promotion); *Handsome Brook Farm v. Human Farm Animal Care Inc.*, 193 F. Supp. 3d 556 (E.D. V.A. June 15, 2016) (holding that emails to purchasers in the relevant industry were concerned

21

ME1 47657382v.1

commercial advertising under the Lanham Act). Here, Defendants used emails to solicit customers and to promote their products to potential customers to purchase Defendants' replacement salt cells. Courts have held these types of emails as commercial advertising under the Lanham Act. *Id.*

### E. Defendants' falsely advertised their salt cells

Section 43(a) of the Lanham Act prohibits the use of any false or misleading statement or representation of fact in commercial advertising. *PBM Prod., LLC v. Mead Johnson & Co.*, 639 F.3d 111, 120 (4th Cir. 2011). ***Unlike trademark infringement, false advertising under Lanham Act § 43(a) does not require a showing of a likelihood of confusion***. *Irwin Indus. Tool Co. v. Worthington Cylinders Wisconsin, LLC*, 747 F. Supp. 2d 568, 578 (W.D.N.C. 2010). Rather a plaintiff may show false advertising by showing that the statement at issue is either (1) literally false ***or*** (2) likely to mislead, confuse, or deceive the public.

First, literal falsity eliminates the need for a plaintiff to introduce evidence of the impact the statements had on consumers. Evidence of deception and materiality is not required. *PBM Prod.*, 639 F.3d at 120 ("Where the advertisement is literally false, a violation may be established without evidence of consumer deception"); *Irwin Indus. Tool Co.*, 747 F. Supp. 2d at 578. Thus, if an advertisement is literally false, liability under the Lanham Act is established. *Newborn Bros. Co. v. Albion Eng'g Co.*, 481 F. Supp. 3d 312, 349 (D.N.J. 2020) (finding defendant's statements literally false because defendants claimed their products were "made in America" when they were not); *Pediamed Pharms., Inc. v. Breckenridge Pharm., Inc.*, 419 F.Supp.2d 715, 731 (D. Md. 2006) (showing that statements were literally false means that further analysis of the remaining elements of a false advertising claim is not needed).

Second, if an advertisement is not literally false, it can still violate Lanham Act § 43(a) if the ad is likely to mislead, confuse, or deceive the consuming public. *PBM Prod.*, 639 F.3d at 120

(a contested statement may still constitute false advertising if "although literally true, [is] likely to mislead and to confuse consumers given the merchandising context."); *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1140 (9th Cir. 1997).

Each one of Defendants' advertising claims about its salt cells (that they are compatible with Hayward's controllers, that they are made in the USA, that they are the same as Hayward's salt cells, etc.) are both literally false and confusing. As such, liability for false advertising as to each statement can be founded on two independent and alternative bases.

### F. Hayward is Entitled to Trebling of Damages under North Carolina's Unfair Trade Practices Act

Defendants have committed unfair and deceptive acts or practices by using Hayward Marks and Copyrights in connection with their sale of the non-genuine salt cell and falsely advertising their salt cells with Defendants' False Statements.

The Unfair and Deceptive Trade Practices Act makes the trebling of damages mandatory and automatic. *Tradewinds Airlines, Inc. v. C-S Aviation Services,* 222 N.C. App. 834, 842, 733 S.E.2d 162, 169 (N.C. App. 2012) ("the trebling of damages is automatic and is not in the discretion of the trial court.") Accordingly, if a violation of N.C. Gen. Stat. § 75-1 .1 is found, any damages awarded by the jury are trebled. *Polo Fashions, Inc. v. Craftex, Inc,* 816 F.2d at 149. In the present case, Defendants acted with a deliberate intent to deceive and confuse Hayward customers that they were buying genuine Hayward replacement salt cells. Therefore, an award of attorney's fees and enhanced damages is justified.

### G. Defendants Used Without Permission Hayward's Copyrights

Defendants have infringed Hayward's copyrighted materials by copying them without Hayward's permission. To prove copyright infringement, a plaintiff must show that: (1) he or she owned the copyright to the work that was allegedly copied; and, (2) the defendant copied protected

23

ME1 47657382v.1

elements of that work. *Levi v. Twentieth Century Fox Film Corp.*, No. 3:16CV129, 2018 WL 1542239, at *3 (E.D. Va. Mar. 29, 2018); *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.,* 499 U.S. 340, 341 (1991). The evidence at trial will show that Defendants copied Hayward's copyrighted manuals by using portions of Hayward's manuals in their own manuals without Hayward's permission. "Statutory damages pursuant to the Copyright Act are available to a 'copyright owner [who] elect[s], at any time before final judgment is rendered, to recover, instead of actual damages and profits, an award of statutory damages for all infringements involved in the action, with respect to any one work.'" *Sony Music Ent. v. Cox Communications, Inc.*, 464 F. Supp. 3d 975, 816-17 (E.D. Va. 2020) (quoting 17 U.S.C. § 504(c)(1)). "Awards for willful infringement may be as high as $150,000.00 per work infringed." *Id.*

### H. Whether Hayward is Entitled to Attorneys' Fees and Enhanced Damages

Hayward is also entitled to attorneys' fees and enhanced damages due to the same conduct as described above. Section 35 of the Lanham Act provides that attorneys' fees may be awarded in an exceptional case. Also, a court has the authority to increase the damages. The precedents are uniform in holding that in cases of willful or deliberate infringement, attorneys' fees should be granted. *Scotch Whiskey Assoc. v. Majestic Distilling Co*., 958 F.2d 594 (4th Cir. 1992). In *Scotch Whiskey*, the Fourth Circuit stated:

> Deliberate and flagrant infringement of trademarks should particularly be discouraged in view of the public interest in the integrity of marks as a measure of quality of products. Effective enforcement of trademark rights is left to the trademark owners and they should, in the interest of preventing purchaser confusion, be encouraged to enforce trademark rights. It would be unconscionable not to provide a complete remedy including attorney fees for acts which courts have characterized as malicious, fraudulent, deliberate and willful.

(citing Senate Report No. 1400, 93rd Congress, Second Session).

24

ME1 47657382v.1

## V. ANTICIPATED EVIDENTIARY ISSUES

Hayward has filed motions *in limine* on the following issues and reserves the right to supplement this list at trial:

A. Hayward's Motion In Limine to Preclude Defendants from Presenting Evidence or Testimony regarding Costs, Expenses Or Other Deductions From Defendants' Profits;

B. Motion In Limine to Preclude Testimony Regarding Defendants' Trade Secret Claims;

C. Motion In Limine That It Is The Law Of The Case That Defendants Are Alter Egos Of One Another;

D. Motion In Limine To Preclude Testimony And Other Evidence Regarding Defendants' Testing Of Their Salt Cells;

E. Motion In Limine To Preclude The Use of Confusion Survey Evidence Results to Apportion Damages;

F. Motion In Limine That Defendants' Witnesses And/or Representatives From the Courtroom During Hayward's Confidential Testimony;

G. Motion In Limine To Preclude All Documents Produced In Foreign Language Without Certified Translations At the Time Of Production;

H. Motion In Limine To Preclude Defendants From offering Evidence or Testimony Relating to Documents Produced By Third Parties After Discovery Deadline;

I. Motion In Limine To Introduce Business Records Under Fed. R. Evid. 902(11);

J. Motion In Limine To Preclude Defendants From Calling Witness Not Disclosed Until Eve Of Trial;

K. Motion In Limine To Preclude Defendants' From Calling M&E Attorneys As Witnesses At Trial; and

L. Motion in Limine To Preclude Certain Trial Exhibits Identified On Defendants' Exhibit List That Were Not Timely Disclosed

ME1 47657382v.1

Respectfully Submitted this 16th day of February, 2024

Respectfully Submitted,

**HAYWARD INDUSTRIES, INC.**

By its attorneys,

*s/Russ Ferguson*
Russ Ferguson (N.C. Bar No. 39671)
**Womble Bond Dickinson (US) LLP**
One Wells Fargo Center
301 South College Street
Charlotte, NC 28202
Russ.Ferguson@wbd-us.com

Erik Paul Belt (*pro hac vice admitted*)
ebelt@mccarter.com
James Donoian (*pro hac vice admitted*)
jdonoian@mccarter.com
Anne E. Shannon (*pro hac vice admitted*)
ashannon@mccarter.com
Alexander L. Ried (*pro hac vice admitted*)
aried@mccarter.com
Siobhan M. Tolan (*pro hac vice admitted*)
stolan@mccarter.com
**McCarter & English, LLP**
265 Franklin Street
Boston, MA 02110
T: (617) 449-6500

26

ME1 47657382v.1