IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| HAYWARD INDUSTRIES, INC., <br><br> Plaintiff, <br> v. <br> BLUEWORKS CORPORATION, BLUEWORKS INNOVATION CORPORATION, NINGBO C.F. ELECTRONIC TECH CO., LTD; NINGBO YISHANG IMPORT AND EXPORT CO., LTD. <br><br> Defendants. | Civil Action No. 3:20-CV-710 -MOC-DSC |

### MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISSOLVE THE *EX PARTE* TEMPORARY RESTRAINING ORDER

Before delving into Defendants' specific substantive arguments, the Court may want to consider three preliminary points.

- First, the procedural posture of this case is much different from the typical posture in which a plaintiff seeks preliminary relief at the start of the case. After a seven-day trial, the jury found liability and damages. Accordingly, some of the procedural safeguards normally associated with injunction practice at the start of a case are less important now. Arguing otherwise, as Defendants do, is elevating form over substance.

- Second, the Court's order denying Defendants' motion for clarification (Doc. No. 404) effectively answers Defendants' motion to dissolve the TRO. The order provides a mechanism for Defendants to resolve issues regarding any legitimate need to pay bills in the short term to keep their businesses running.

- Third, Defendants sought a writ of *mandamus* to dissolve the TRO, and the Fourth Circuit summarily denied Defendants' petition. (**Exhibit A**, Order of April 18, 2024.)

1

In issuing its TRO (Doc. No. 393), the Court gave careful consideration to Hayward's *Ex Parte* Motion For Temporary Restraining Order (Doc. No. 382) and its Motion for Asset Restraining Order and Pre-Judgment Discovery (Doc. No. 383). Specifically, the Court found that, based on the facts stated in those contemporaneously filed motions and accompanying evidence (including two declarations and copious sworn trial testimony), Hayward's concern that Defendants would transfer and dissipate their assets was well founded and that the Fourth Circuit's four-factor *Winter* test was satisfied. Indeed, Defendants do not dispute and, therefore, concede the Court's findings that the irreparable harm to Hayward absent a TRO, the balance of hardships between the parties, and the public interest in enforcing judgments, all favored granting Hayward's request for the TRO. (Doc. No. 400 at 3). In fact, Defendants have made no real effort to date, despite numerous filings in this Court and the Court of Appeals, to identify the nature and amount of the business expenses that so urgently needed to be paid by April 23.[1]

Rather, Defendants, in a desperate attempt to undo the TRO, argue that the Court did not adhere to their perceived technical requirements of Rule 65, merely reciting and mischaracterizing black letter law without addressing Hayward's motion and the weighty evidentiary record on which the Court based its decision. (Doc. No. 400 at 3-5.) Defendants only real complaint is the manner in which Hayward presented verifiable factual support for its *ex parte* request, *i.e.*, that it

---

[1] After this Court denied Defendants' motion for clarification, *Hayward* reached out to Defendants and asked them to identify any payments they needed to make in the short term. Despite arguing in their three filings (motion for clarification, motion to dissolve, and mandamus petition) that Defendants desperately needed to pay taxes, utilities, employees, and the like, all Defendants could identify were a few invoices from the trial team's trial technology vendors dating back to February. They failed to identify any taxes, utilities, or other expenses that they claimed were due. Further, when Hayward asked for the particulars, Defendants' counsel did not even know what specific payments were due and took a day to consult with their client. As such, Defendants' motions should be viewed as frivolous and made without proper due diligence. Relevant correspondence between the parties is attached as **Exhibit B.**

2

would be irreparably harmed should Defendants have notice of the relief sought. In doing so, Defendants ignore the post-verdict procedural posture of this case to suggest that they are somehow deprived of due process because Hayward relied on Defendants' *own* sworn trial testimony, an investigator's declaration, and a Hayward employee's declaration, instead of an attorney's affidavit.

Thus, the Court should not dissolve the TRO. Nor does the Court need to modify the TRO now that it has denied Defendants' motion for clarification, instructed Defendants to present details of each expense on a case-by-case basis and to confer with Hayward's counsel, and advised the parties that it would expeditiously consider any consented motions to release the necessary funds to pay reasonable business expenses. (Doc. No. 404.)

Finally, Hayward respectfully submits that, after the hearing, the asset restraint be maintained to prevent Defendants from making any payments to Mr. Chen, his wife, mother, brother, or any other family members, Defendants' shareholders, affiliates, employees, agents, and officers, and any vendors or other third parties under the pretense of ordinary business expenses unless approved by the Court. The Court should further require Defendants to:

a) submit, in advance, a written accounting of all payments, including the amount, recipient, and due date, of each payment, including documentary support and financial statements regarding each expense;

b) serve a copy of the TRO with any Court-approved payment so that all third-party recipients are aware the money may be clawed back later if the Court determines a transfer or payment was not in the ordinary course of business;

c) obtain Court approval (absent an agreement among counsel) of any payments greater than $2,000.

## PROCEDURAL BACKGROUND

Hayward filed its *ex parte* motion for a temporary restraining order (Doc. No. 382) and its Motion for Asset Restraining Order and Pre-Judgment Discovery (Doc. No. 383) on March 29, 2024. On April 11 at 11:40 a.m., the judge granted Hayward's request, enjoining Defendants from transferring or dissipating their assets. At 12:15 p.m. that same day, counsel for Hayward promptly served the TRO, its *ex parte* motion papers, and its motion requesting the asset freeze and expedited discovery and supporting declarations, on Defendants' counsel. Since then, Defendants have filed a motion for clarification, a petition for writ of *mandamus*, a motion to dissolve the TRO, and a notice of amendment to the petition for writ of mandamus, each requesting urgent relief from the TRO because Defendants and Mr. Chen are, allegedly, being harmed by not being able to pay taxes, employee wages, or normal business expenses. Yet, conspicuously absent from all their filings are any facts or arguments from which this Court can assess the nature of the mystery business expenses, including identifying the specific amounts, the recipient, and the due date, of each expense, together with any documentary support for those payments. This is likely because there are no expenses which require immediate payment[2].

For example, if Defendants were actually going to pay taxes on April 15, they would have known or would have been able to estimate the tax liability and backed it up with an accountant's affidavit. Similarly, Defendants have not identified any employees, their salaries, or when they are normally paid. This is likely because there is only one known employee in North Carolina (other than Mr. Chen) (Doc. No 367, Trial Tr. at 144:10-145:25). Neither Ms. Pilley nor Mr. Kieley,

---

[2] Indeed, as seen in **Exhibit B**, all Defendants could muster were some allegedly unpaid invoices from the trial technology vendor dating back to February. Defendants identified exactly no taxes, utilities, or other urgent expenses. Defendants provided nothing indicating that the trial technology vendor's invoices needed to be paid by April 23 either. Nevertheless, Hayward consented to allow Defendants to make the payment to the trial technology vendor.

4

who both testified in person, are currently employed by Defendants. (*Id*. at 121:16-122:3); (Doc. No. 369, Trial Tr. at 141:24-142:5). The other two purported Blueworks employees, "Rita" and "Emma," are located in China and are paid through an arrangement with both Ningbo Defendants. (Doc. No. 368, Trial Tr. at 228:6-229:12).

On April 16, the Court addressed this point directly in denying Defendants' motion for clarification of the TRO and instructing Defendants that any request for relief from the TRO will be considered on a case-by-case basis and "shall identify the payee, amount to be paid, and reason why payment cannot be delayed until after the April 23 hearing." Doc. No. 404 at 2. What's more, given the Court's directive that Defendants must confer with Hayward on any requested relief, Hayward's counsel reached out to Defendants' counsel on April 16 to let them know they were "more than happy to discuss such payments so that your clients' business is not unnecessarily hamstrung over the next week." On April 18, 2024, a week since the TRO was issued and almost two days after Hayward reaching out to Defendants' counsel to confer on any business expenses Defendants specifically needed relief under the TRO, Defendants responded with a handful of invoices from Defendants' trial technology vendor. (See Exhibit B) There was no mention of any "urgent" expenses, such as taxes, attorneys' fees, utilities, wages, or the like, though Defendants filed three motions on the basis that the TRO denied Defendants access to the courts and that they needed immediate relief to pay urgent business expenses.

## ARGUMENT

I. **THE TRO WAS PROPERLY BASED ON SPECIFIC FACTS IN THE TRIAL RECORD.**

The Court relied on significantly more than an attorney's affidavit or a verified complaint that would normally be filed at the onset of litigation. Instead, the Court had the benefit of sworn trial testimony, including in particular the testimony of Defendants' principal, Mr. Chen, who

5

testified over two days of direct and cross-examinations by both parties. Further, Hayward's *ex parte* motion and the accompanying motion for an asset freeze and discovery set out in great detail the irreparable harm Hayward would suffer from the dissipation of assets should Defendants receive notice Hayward was seeking such relief. (Doc. No. 382-1 at 4-6; Doc No. 306, Declaration of Mike Glibowski; Doc. No. 383-1 at 1-5 and 16-17; Doc. No. 383-2, Declaration of Jan Barefoot). As such, Hayward relied on not just trial testimony but also two sworn declarations. Indeed, the TRO acknowledges and cites to Hayward's *ex parte* motion (Doc. No. 382-1) when discussing the requirement under Rule 65(b)(1)(B) that Hayward certify in writing the reasons notice should not be required. (Doc. No. 393 at 3.)

As Defendants point out, Rule 65's requirements are to safeguard due process when issuing a restraining order without notice (Doc. No. 400 at 3). That said, Defendants' reliance on *Nutrition & Fitness* is misplaced. The plaintiff there had filed an *ex parte* motion for a restraining order with its complaint, and the Court was considering whether, at that early stage, plaintiff had sufficiently shown irreparable harm. After finding the plaintiff had failed to do so, the Court found that, even assuming plaintiff would suffer irreparable harm, "[n]othing in [plaintiff's] motion satisfies [the] requirement" to state why notice should not be given. *Nutrition & Fitness, Inc. v. Progressive Emu, Inc.*, No. 5:12-CV-192-F, 2012 WL 1478734, at *3 (E.D.N.C. April 27, 2012). Here, Hayward has relied on two declarations (Glibowski and Barefoot) and, even better, the extensive sworn testimony of Defendants' principal to support its contention that notice should not be given. Tellingly, Defendants do not even bother to dispute Hayward's argument or the Court's finding of the risk that Defendants might move or transfer assets or that Hayward would be irreparably harmed.

Further, the other two cases on which Defendants rely do not support their form-over-substance interpretation of Rule 65. Importantly, in *Granny Goose Foods*, the Supreme Court **never discussed** the need for affidavits or for plaintiff to certify the reasons notice should not be required. Rather, the issue considered there was whether a temporary restraining order, which had been granted by a California state court and continued in federal court pursuant to 28 U.S.C.A. § 1450, had expired.[3] *Granny Goose Foods, Inc. v. Bhd of Teamsters & Auto Truck Drivers Loc. No. 70 of Alameda Cnty*, 415 U.S. 423, 438-439 (1974). Unsurprisingly, Defendants citation to *Granny Goose Foods* also fails to quote the very next sentence in the Supreme Court's decision: "Ex parte temporary restraining orders **are no doubt necessary in certain circumstances**, but under federal law they should be restricted to serving their **underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing**, and no longer." *Id*. at 439 (citation omitted) (emphasis added). That is precisely the finding the Court made here based on Hayward's factual and arguments that it would be irreparably harmed before Defendants could be heard and that notice should not be required. (Doc. No. 382-1 at 3-5.)[4]

---

[3] 28 U.S.C.A. § 1450 (Attachment or sequestration; securities) provides that "[w]henever any action is removed from a State court to a district court of the United States, any attachment or sequestration of the goods or estate of the defendant in such action in the State court shall hold the goods or estate to answer the final judgment or decree in the same manner as they would have been held to answer final judgment or decree had it been rendered by the State court…
All injunctions, orders, and other proceedings had in such action prior to its removal shall remain in full force and effect until dissolved or modified by the district court."

[4] Similarly, *Gibson v. America's Servicing Co*., No. 5:10-CV-342-FL, 2010 WL 3362993 (E.D.N.C. Aug. 24, 2010) is distinguishable because the *ex parte* motion for a temporary restraining order was filed concurrently with the unverified complaint, which contained a number of legal conclusions but minimal and unverified factual information to support the request and, therefore, did not clearly show that immediate and irreparable harm would occur before the defendant could be heard. Here, Hayward has supplied ample, sworn evidentiary support for both the irreparable harm it will suffer and that there is a strong likelihood Defendants may move assets before a hearing.

7

## II. THE TRO PROPERLY DID NOT REQUIRE HAYWARD TO POST A BOND.

When a TRO is typically filed with the initial complaint in the early stages of a case, Rule 65(c)'s bond requirement is needed to protect the enjoined party should the movant not win on the merits. Here, the Court considered Hayward's TRO post-verdict and on a complete evidentiary record, and thus the TRO was issued to preserve Hayward's $14.7 million damages award. Indeed, Rule 65(c) states, in pertinent part, that "No restraining order or preliminary injunction shall issue except upon the giving of security by the applicant, ***in such sum as the court deems proper***. . ." (emphasis added). Court in other districts have construed Rule 65(c)'s wording and found that "especially in view of the phrase— 'as the court deems proper'— the district court may dispense with security where there has been no proof of likelihood of harm to the party enjoined." *International Controls Corp. v. Vesco*, 490 F.2d 1334 (2d Cir.1974) (approving district court's fixing bond amount at zero in the absence of evidence regarding likelihood of harm) (citations omitted); *see also Johnson v. Watkin*, 2023 WL 7624024, at *24 (E.D. Cal. Nov. 14, 2023) (finding that the district court has discretion to dispense with the filing of a bond altogether or require only a nominal bond, stating "[t]he Ninth Circuit has "recognized that Rule 65(c) invests the district court with discretion as to the amount of security required, *if any*.") (internal citations omitted) (italics in original).

Here, the TRO did not harm the Defendants, and an extension of the Court's order will not do so either. First, any disruption to Defendants' business operations is short in duration and, as the Court noted in its April 11th order, Defendants have a large inventory of the supplies they can use to make their products, further limiting the potential business disruption caused by the asset freeze. (Doc. No. 393, fn. 1). Second, because the Court has established a mechanism by which the Defendants can pay any legitimate expenses that need to be paid in the ordinary course, the

Court's order effectively is only preventing the Defendants from illegitimately transferring their funds. Defendants can suffer no damage from an order preventing them from taking actions that they should not take anyway. Third, Hayward is a global company with annual sales of roughly a billion dollars. (**Exhibit C**, Annual Report for Year Ending December 31, 2023, at 39.) Accordingly, Hayward should be able to cover damages, if any, incurred as a result of the TRO.

Defendants' reliance on *Hoechst* also supports that a court may, in its discretion, set the bond amount at zero: "[i]n fixing the amount of an injunction bond, the district court should be guided by the purpose underlying Rule 65(c), which is to provide a mechanism for reimbursing an enjoined party for harm it suffers as a result of an improvidently issued injunction or restraining order." *Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*, 173 F.3d 411, 421 n.3 (4th Cir. 1999*)*. Thus, if the harm to an enjoined party is remote or zero, the court may subsequently "fix the amount of the bond accordingly" or even simply require a nominal bond. *Id*.

### III. IF DEFENDANTS POST A BOND, THERE WILL BE LESS NEED FOR RESTRAINTS ON DEFENDANTS' ASSETS.

Finally, a recent decision, *Calloway Cleaning & Restoration, Inc. v. Burer,* No. 1:22-CV-12, 2024 WL 1604624, at *1 (S.D. Ohio Apr. 12, 2024), presents a solution to Defendants' perceived harms. In *Calloway*, the court stated that it would dissolve a stay of execution of the judgment pending appeal if the ***defendant*** posted a bond, which would alleviate plaintiff's concern that the defendant would not pay the judgment. As in *Calloway*, the Court here recognized in its TRO that at this post-verdict stage of the case, it is Defendants that should post a bond, not Hayward. (*See* Doc. No. 393, **"[i]n any case, Defendants could avoid the brief business disruption attributable to an asset freeze by simply posting bond to ensure the collectability of Plaintiff's judgment.**") (emphasis added). Indeed, Hayward has also suggested to Defendants to post a bond to alleviate its concerns that Defendants would transfer or otherwise dissipate assets

prior to entry of judgment. If Defendants were to post a bond for the judgment amount, it would drastically reduce the risk of harm to Hayward and would free Defendants to transfer assets as they desire. Defendants have not made any indication that they intend to post a bond.

## III. CONCLUSION

The Court properly considered Hayward's *ex parte* motion, including the sworn trial testimony of Mr. Chen and the supporting declarations of Mr. Glibowski and Ms. Barefoot, to find Hayward would suffer irreparable harm if Defendants were given advance notice of the request. Defendants have failed to challenge the substance of those findings, choosing instead to object to the form in which the comprehensive unassailable facts proffered by Hayward and relied upon by the Court were presented in Hayward's motion. The Court should, therefore, deny Defendants' motion to dissolve the TRO and modify the asset restraint only after the parties have been fully heard on April 23, 2024.

Respectfully submitted this 19th day of April, 2024.

**HAYWARD INDUSTRIES, INC.**

By its attorneys,

*/s/ B. Chad Ewing*
Russ Ferguson (N.C. Bar No. 39671)
B. Chad Ewing (N.C. Bar No. 27811)
**Womble Bond Dickinson (US) LLP**
301 South College Street, Suite 3500
Charlotte, North Carolina 28202-6025
Russ.Ferguson@wbd-us.com
Chad.Ewing@wbd-us.com

Erik Paul Belt (*pro hac vice admitted*)
ebelt@mccarter.com
James Donoian (*pro hac vice admitted*)
jdonoian@mccarter.com
Anne E. Shannon (*pro hac vice admitted*)
ashannon@mccarter.com

Siobhan M. Tolan (*pro hac vice admitted*)
stolan@mccarter.com
Alexander L. Ried (*pro hac vice admitted*)
aried@mccarter.com
**McCarter & English, LL**P
265 Franklin Street
Boston, MA 02110
T: (617) 449-6500