# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### CHARLOTTE DIVISION

| | |
|---|---|
| HAYWARD INDUSTRIES, INC., | |
| Plaintiff, | |
| v. | Civil Action No. 3:20-cv-00710-MOC-SCR |
| BLUEWORKS CORPORATION, BLUEWORKS INNOVATION CORPORATION, NINGBO C.F. ELECTRONIC TECH CO., LTD.; NINGBO YISHANG IMPORT AND EXPORT CO., LTD., | |
| Defendants. | |

## DEFENDANTS' OPPOSITION TO HAYWARD'S *EX PARTE* MOTION FOR AN ASSET RESTRAINING ORDER AND PRE-JUDGMENT DISCOVERY

Defendants Blueworks Corporation ("Blueworks"), Blueworks Innovation Corporation ("Blueworks Innovation"), Ningbo C.F. Electronic Tech Co., Ltd. ("Ningbo C.F."), and Ningbo Yishang Import and Export Co., Ltd. ("Ningbo Yishang") (collectively the "Defendants") respectfully submit this Opposition to Plaintiff Hayward Industries, Inc.'s ("Hayward") *Ex Parte* Motion For an Asset Restraining Order and Pre-Judgment Discovery [DE 383].

Hayward seeks a sweeping, worldwide ***pre-judgment*** attachment and restraint of Defendants' assets contrary to well-settled Supreme Court authority and remedies afforded under North Carolina law, based on nothing more than pure speculation. Under the guise of seeking an order to attach and restrain the assets of the four Defendants in this case, what Hayward actually

1

seeks to seize are the assets of one of Defendants' shareholder, personally, and even his wife, personally.

Tellingly, after three years of discovery and the employment of a so-called "private investigator" [DE 383-2], Hayward has never sought to pierce the veil. As such, both Hayward's *Ex Parte* Motion for TRO [DE 382] and its *Ex Parte* Motion for an Asset Restraining Order [DE 383] are transparent attempts to intimidate not only the "four Defendants" in this litigation [DE 383-1 at 1] but also their shareholders and family. This Court should not endorse Hayward's tactics.

The simple fact is that this Court lacks the authority to issue the relief requested by Hayward, and the motion must be denied for that reason alone. Moreover, Hayward has completely failed to carry its burden of demonstrating any need for the draconian injunction it seeks. Hayward proffers no evidence at all in support of its motion, but yet invites the Court to assume that Defendants will not satisfy the judgment against them based not on any litigation misconduct, or discovered improper transfers in the nearly two months since trial, but on "connections to China" and a heavy dose of speculation. Simply put, Hayward has failed to show that it is entitled to the drastic relief of a worldwide asset freeze that would jeopardize Defendants' ability to continue as a going concern. Hayward's motion should be denied.

## I. THIS COURT SHOULD NOT ENDORSE PERSONAL ATTACKS ON NON-PARTIES, MR. ZEFENG CHEN AND MS. ZHOUJING LU OR THEIR ASSETS

Because multi-billion dollar Plaintiff Hayward[1] made the calculated decision not to sue or

---

[1] Hayward is an admitted Monopolist who has a long history of illegally squashing competition via attempted monopolization, vertical conspiracies, and even *per se* horizontal agreements and price fixing. *See* [DE 398-5; 398-6]. Indeed, in this action, Hayward's chief gripe has been that Defendants are eroding Hayward's monopoly power. *E.g.*, [DE 366 at 31:11 – 32:13] (discussing Hayward's monopoly power in replacement salt cells). Hayward is a publically traded (stock symbol HAYW), multi-billion dollar company with the resources to, as here, squash any and all

to seek leave to amend its Complaint[2] to add as defendants non-parties Mr. Zefeng "Richard" Chen ("Mr. Chen") and his wife Ms. Zhoujing "Gina" Lu ("Ms. Lu") (collectivity with their young child the "Non-Parties"), the Non-Parties lack standing to participate in this action as parties. Notably, Rule 65 only applies to parties – expressly authorizing the court to grant injunctions and restraining orders against an "adverse **party**" and authorizing the "adverse **party**" to move to dissolve the injunction. Rule 65(a) and Rule 65(b). Likewise, non-parties do not have a right of appeal under 28 U.S.C. §1292(a)(1) from an injunction under Rule 65. *Sky Cable, LLC v. DIRECTV, Inc.*, 886 F.3d 375, 384 (4th Cir. 2018) ("nonparties to proceedings in the district court may not appeal from a district court's judgment").

However, in view of this Court's *Ex Parte* Order freezing the Non-Parties' family home [DE 393], and in view of Hayward's present request for this Court to seize and/or attach the Non-Parties **personal** assets, including bank accounts and home, Mr. Chen, Ms. Lu, and their young child who reside in the home, **beg this Court for Due Process and, indeed, for Justice**.

In America, "'Our Constitution is color-blind, and neither knows nor tolerates classes among citizens.'" *Students for Fair Admissions, Inc. v. Pres. and Fellows of Harvard College*, 600 U.S. 181, 230 (2023) (quoting *Plessy v. Ferguson*, 163 U.S. 537, 559 (1896) (Harlan, J., dissenting)). Hayward, invoking Chinese xenophobia, salaciously accuses the Non-Parties of

---

competition. *See, e.g.*, Hayward's Annual Report, **Exhibit 1** at 69 ("net sales" of 1.314 Billion in 2022); *id* at 71 (identifying "assets" of nearly $3 Billion). The fact that the jury returned a verdict of First Amendment "fair use" has so enraged Hayward that it seeks a new trial. [DE 373].

[2] The deadline to seek "leave to join additional parties" was set to expire on September 15, 2021 [DE 42 at 6] but was extended to October 7, 2021. [DE 56]. Failing to bring any action against the Non-Parties, Hayward has waived any claim it may have against them in connection with the causes of action in this litigation.

being "a 'ghost'" [3] [DE 383-1 at 4, 22] because "all Defendants have a connection to China" [DE 383-1 at 15] and the failure of Hayward's so-called "private investigator" Jan Barefoot to perform her job or of Hayward to take discovery when it had the chance. Indeed, there was extensive discovery in this action and Defendants fully cooperated. It is not now "news" to Hayward that Mr. Chen is of Chinese heritage. He is not "hiding". He is not a "ghost."[3] Mr. Chen lives and works in Waxhaw, North Carolina. Chen Declaration, **Exhibit 2**. Hayward took Mr. Chen's deposition and Mr. Chen testified at trial. Mr. Chen has a United States of America taxpayer identification number. *Id*.

Moreover, Ms. Lu has legally resided in the United States since 2007, first residing in the United States as a student. Lu Declaration, **Exhibit 3**. Ms. Lu began the green card application process in 2014 and received a green card on April 3, 2017. *Id*. Ms. Lu has completed the process to become a naturalized citizen and will take the Oath next week. *Id*. Ms. Lu's son was born on September 7, 2019 in Mecklenburg County, NC and is a citizen of the United States. *Id*.

Both Ms. Lu and her son have social security numbers, **Exhibit 3**, a fact even Hayward's "private investigator" Barefoot admits. [DE 383-2 at ¶7]. Ms. Lu has not had any involvement with any of the Defendants since 2020. **Exhibit 3**. Ms. Lu was an employee of Defendant Blueworks from May 7, 2017 until December 26, 2020 and drew a salary from Blueworks during that time. *Id*. From May 7, 2017, until the birth of her son on in 2019, Ms. Lu's job with Blueworks included operational tasks. After the birth of her son and until December 26, 2020, Ms. Lu worked from home and her job consisted of administrative tasks such as calculating employees' hours and

---

[3] Terms such as "ghost" and spook are racial epithets and should have no place in civil discourse, much less in a filing in a United States District Court. *E.g*., *U.S. v. Mason*, 774 F.3d 824, 835 (4th Cir. 2014) (Gregory, J., dissenting) ("the term 'spook' is a racial epithet") (citing Oxford English Dictionary (2d ed.1989)).

working with the accountants. *Id*. However, after December 26, 2020, Ms. Lu ceased all work with Defendant Blueworks. *Id*. Since December 27, 2020, Ms. Lu has been a homemaker, caring for and raising her son. *Id*. Ms. Lu also previously owned shares of Defendant Blueworks. *Id*. However, Ms. Lu ceased to own shares of Blueworks as of August 10, 2018—more than two years before this lawsuit was initiated. *Id*.

Mr. Chen and Ms. Lu reside in their marital home located at 8408 Channel Way, Waxhaw, North Carolina, **Exhibit 3**, which is jointly owned by Mr. Chen and Ms. Lu. General Warranty Deed, **Exhibit 4**. This Court ordered the home "frozen" via its *Ex Parte* TRO. [DE 393]. None of the Defendants have **any** ownership interest in the home. *Id*.; **Exhibit 2**; **Exhibit 3**.

Hayward has represented to the Court that Ms. Lu owns two bank accounts, one with Bank of America, and one with Wells Fargo. [DE 383-1 at 6]. Hayward misinforms the Court. Ms. Lu is the sole owner of a Bank of America account but has no account with Wells Fargo. **Exhibit 3**. Ms. Lu's Bank of America Account is not owned or affiliated with any of the Defendants in any way. *Id*.

## II.    THESE NON-PARTIES ARE *NOT* DEFENDANTS

This Court's Local Civil Rule 7.1 (a) requires that "all motions ... **must** state with **particularity** the grounds for the motion and the relief or order sought." Rule 7.1(a) (emphasis added). Further, Local Rule 7.1(c)(2) requires that "Motions shall not be included in responsive briefs."

As a threshold matter, Hayward's Motion seeks entry of an order "attaching" and "restraining the transfer of the assets of all four **Defendants**...." [DE 383 at 1] (emphasis added). Mr. Chen and Ms. Lu are not **Defendants** in this action, Operative Complaint, [DE 57], Hayward never sought leave to amend its Complaint to add claims against Mr. Chen or Ms. Lu, *see* generally

5

[DE 398-4], and neither Mr. Chen nor Ms. Lu are cited in the Motion [DE 383]. Ms. Lu was never mentioned at any point in the trial in this case. *See* transcripts [DE 363, 364, 365, 366, 367, 368, 369, 370]. While this Court via oral order at trial *sua sponte* Directed Verdict that the four Defendants to this action are *alter egos*,[4] this Court has not held (and Hayward has not so moved) that Mr. Chen or Ms. Lu are *alter egos* of any of the Defendants. Yet, in the Memorandum in Support of the Motion [DE 383-1], Hayward demands that this Court attach and restrain the **personal assets** of non-parties Mr. Chen and Ms. Lu, including their marital home where they reside with their young child as well Ms. Lu's **personal** bank account. [DE 383-1]

Hayward's failure to comply with this Court's "particularity" requirement of Local Rule 7.1 (a) by failing to include Mr. Chen or Ms. Lu in the Motion itself [DE 383] is dispositive as to Hayward's demands with respect to the assets of Mr. Chen and Ms. Lu. The Motion should be denied, at least in part, on that basis alone.[5]

## III.   HAYWARD HAS NOT MET (AND CANNOT MEET) ITS BURDEN OF PROOF THAT THE PARTIES ABUSED THE CORPORATE FORM

North Carolina law is unambiguous when it comes to the requirements for finding that entities and/or persons are *alter egos* of one another or otherwise abused the corporate form. In a seminal case, the North Carolina Supreme Court set forth the three elements which must be established before a court may find *alter ego* under North Carolina law:

> (1) Control, not mere majority or complete stock control, but complete domination, not only of finances, but of policy and business practice in respect to the transaction attacked so that the corporate entity as to this transaction had at the time no separate mind, will or existence of its own; **and**

---

[4] At trial, Defendants timely objected to this *sua sponte* Direct Verdict [DE 370 15:10-11] and has moved for a new trial. [DE 376 at 2].

[5] Nor should Hayward be heard to argue that the Memorandum [DE 383-1] includes a motion distinct from the Motion [DE 383] with respect to Mr. Chen or Ms. Lu, as such would be in violation of Local Rule 7.1(c)(2).

6

(2) Such control must have been used by the defendant to commit fraud or wrong, to perpetrate the violation of a statutory or other positive legal duty, or a dishonest and unjust act in contravention of plaintiff's legal rights; **and**

(3) The aforesaid control and breach of duty must proximately cause the injury or unjust loss complained of.

*Glenn v. Wagner,* 313 N.C. 450, 455, 329 S.E.2d 326, 330 (1985) (emphasis added) (citing *B–W Acceptance Corp. v. Spencer*, 268 N.C. 1, 8, 149 S.E.2d 570, 575 (1966)). These three **required** elements have been recited repeatedly over the years and remain good law. *U.S. v. Greer*, 383 F. Supp. 2d 861, 867 (W.D.N.C. 2005) ("state law requires" the three *Glenn* elements), *aff'd*, 182 Fed. Appx. 198 (4th Cir. 2006) (unpublished); *see also U.S. v. Williams*, No. 1:17-CV-00278, 2017 WL 3700901, at *2 (M.D.N.C. Aug. 25, 2017) (same). The Fourth Circuit has "articulated several factors that 'guide the determination of whether one entity constitutes the alter ego of another.' These factors include 'gross undercapitalization, insolvency, siphoning of funds, failure to observe corporate formalities and maintain proper corporate records, non-functioning of officers, control by a dominant stockholder, and injustice or fundamental unfairness.'" *Vitol, S.A. v. Primerose Ship. Co. Ltd.*, 708 F.3d 527, 544 (4th Cir. 2013) (affirming vacatur of attachment) (quoting *Ost–West–Handel Bruno Bischoff GMBH v. Project Asia Line, Inc.*, 160 F.3d 170, 174 (4th Cir. 1998)).

The case law is equally clear that "[t]he Plaintiff has the burden of establishing ... alter ego ... of the Defendant." *Greer*, 383 F. Supp. 2d at 866 (citing *DP Envtl. Servs., Inc. v. Bertlesen*, 834 F. Supp. 162, 165 (M.D.N.C. 1993) ("The burden of establishing a basis for ... applying the alter ego doctrine rests on the party asserting the claim.")). In *Greer*, the court held that even though "the United States has put forth evidence that the Defendant ... exercises considerable control over the" entity, such showing was insufficient. 383 F. Supp. 2d at 867. Likewise, "joint and several liability, based upon alter ego or piercing the corporate veil, must be pleaded to be actionable at trial." *U.S. v. Cochran*, 79 F. Supp. 3d 578, 585 (E.D.N.C. 2015). Unlike a "vicarious liability

7

theory [, a] joint and several liability theory of relief, by contrast, based upon alter ego or piercing the corporate veil, is an unusual, exceptional, and specialized theory of relief." *Id.* (citing *Meyer v. Holley*, 537 U.S. 280, 285, 292 (2003)).

Further, courts are clear that once the plaintiff meets its burden, the district court must make findings of fact and conclusions of law supporting the *alter ego* conclusion: "Without any findings of fact to support it, this conclusion [of *alter ego*] cannot stand." *U.S. v. Fidelity Capital Corp.*, 888 F.2d 1344, 1348 (11th Cir. 1989) (vacating *alter ego* conclusion and remanding to "for the entry of findings of fact and conclusions of law on the issue of abuse of the corporate form"). Indeed, in *Fidelity*, the Eleventh Circuit specifically faulted the district court for failure to make the required findings of fact and remanded:

> To be sure, we [the Eleventh Circuit] could search the record to determine whether the evidence adduced by the parties would permit a finding that Skiba abused Fidelity's corporate form; if we did so, and concluded that such a finding could reasonably be made, we could end the matter here. We decline to take this step, however. The record is quite complicated, and the task of determining, in the first instance, whether Commonwealth has proved a case of abuse that mandates the disregard of Fidelity's independent legal status properly belongs to the district court.

*Id*.

Here, Hayward has failed to meet **Hayward's** burden of showing that the Defendants *are alter egos* of one another. That Hayward never pled *alter ego* is a procedural bar, dispositive in and of itself. *Cochran*, 79 F. Supp. 3d at 587. Likewise, Hayward has failed to meet **Hayward's** burden of showing that Mr. Chen and Ms. Lu are *alter egos* of any of the Defendants. Indeed, despite the fact that this case has been pending since 2020, Hayward openly admits to this Court via its request for discovery that it has zero evidence to support *alter ego* or veil piercing under North Carolina law. Likewise, despite entering an *Ex Parte* TRO freezing assets of non-parties,

8

this Court has not provided any findings of fact or conclusions of law sufficient to support a conclusion that the corporate form was abused.

Put simply, Hayward has not supplied any evidence that the corporate form of any entity was abused. There is no basis in law or fact to support the freezing or seizing of assets which are owned and controlled by non-parties.

## IV. THIS COURT LACKS JURISDICTION TO ORDER A FREEZE OR TO RESTRAIN ASSETS

Supreme Court precedent dictates that this Court is without jurisdiction to order the asset freeze as demanded by Hayward.

### A. <u>Relevant Factual and Procedural History</u>

Hayward's Operative Complaint alleges twenty-one counts of various claims against the four Defendants including, *inter alia*, claims of false advertising [DE 57 at ¶¶122-132] (count I), which are also alleged to be violations of NC UDTPA [DE 57 ¶¶269-284] (count XX); nine discrete allegations of registered trademark infringement along with parallel claims for trademark counterfeiting and false designation of the same marks [DE 57 at ¶¶ 133-206] (counts II – XII); claims for infringement of four unregistered trademarks [DE 57 at ¶¶221-228] (count XIII); across these thirteen registered and unregistered marks, Hayward alleged passing off [DE 57 at ¶¶229-237] (count XIV), importation [DE 57 at ¶¶238-247] (count XV), common law trademark infringement and unfair competition [DE 57 at ¶¶248-256](count XVI), and violations of the NC UDTPA [57 at ¶¶269-284] (count XX); a claim of Copyright Infringement [DE 57 at ¶¶294-301] (count XXI); and various state common law claims [DE 57 at ¶¶ 248-268] (counts XVI-XVIII). Of its **<u>twenty-one</u>** counts, Plaintiff prevailed on **<u>just three</u>**: Count I, Lanham Act False Advertising (as to two defendants); Count XIX, Violation of the NC UDTPA (as to two defendants); and Count

9

XXI, Copyright Infringement (as to one defendant, with a second defendant being exonerated). Verdict Form [DE 353].

Defendants prevailed as to **ALL** other counts. At trial, this Court agreed that "this case has been about false advertising and trademark infringement." [DE 369 at 223:3-5]. Defendants not only prevailed on all of the trademark related claims including registered and unregistered trademark infringement, passing off, and counterfeiting, under both the Lanham Act and North Carolina law, the jury specifically determined that Defendants conduct amounted to "fair use." [DE 353 at 2]. In reaching its finding of "fair use", the jury was correctly instructed that:

> fair use allows for a defendant to lawfully reference the trademarks of another in connection with the sale of aftermarket parts to accurately identify the plaintiff's goods. This is because the defendant is entitled to truthfully inform the public that it believes it has produced a product equivalent to the plaintiff's product and that the public may benefit through lower prices by buying the defendant's product.

[DE 370 128:15-21].

After the close of evidence but before the case was sent to the jury, Hayward affirmatively **waived** any claim to disgorgement of profits or actual damages resulting from its copyright claim, relying solely on a claim for statutory damages. [DE 370 at 149:1-3] (The Court: "Hayward has elected to recover statutory damages instead of actual damages and profits."); *see also* [DE 353] (only showing statutory damages on verdict form). Here, the Jury returned a verdict of the bare minimum statutory damages of $750. *See* Verdict Form [DE 353] reproduced below:

15. What amount of damages, if any, do you find that Plaintiff Hayward is entitled to recover as a result of Defendants' infringement of its copyrighted work?

$ 750_____ (enter an amount)

Likewise, the jury was tasked with determining what amount of "actual damages" in the form of "lost profit" [DE 370 at 136:5-12] **or** "in the alternative to actual damages, the profits earned by defendants...." *Id*. at 20-21; *see also* Verdict Form [DE 353] reproduced below:

10. If you find for Plaintiff Hayward on its claim for trademark infringement, false advertising, and/or the North Carolina Unfair and Deceptive Trade Practices Act what amount of Plaintiff Hayward's lost profits do you find should be awarded to Plaintiff Hayward?

$4,900,000 (enter an amount)

11. In the alternative, if you do not find Hayward is entitled to its lost profits, but you find for Plaintiff Hayward on its claim for trademark infringement, false advertising, and/or the North Carolina Unfair and Deceptive Trade Practices Act what amount of Defendants' profits do you find should be awarded to Plaintiff Hayward?

$ N/A (enter an amount)

Thus, the Jury awarded Hayward $750 in **statutory damages** as a result of its determination that Defendant Ningbo C.F. infringed Hayward's copyright and $4,900,000.00 in **actual damages** proximately caused by Defendants Blueworks and Ningbo C.F.'s false advertising. No other damages were awarded. No profit disgorgement, no unjust enrichment, no equity.

    **B.**     **Both 'Statutory Damages' and 'Actual Damages' Sound in Law, not Equity**

With respect to statutory damages under the Copyright Act, the Eighth Circuit has held that statutory damages are a **legal remedy** not an equitable remedy:

> We proceed then to the related question: whether the remedy of statutory damages is legal or equitable.... Statutory damages, whatever else they may be, are

> unquestionably money damages and, as we have noted above and as bears repeating here, the assessment of money damages by a jury is a fundamental component of common-law trial by jury. "[W]e will find an exception to the general rule and characterize damages as equitable" only if the damages sought have "the attributes" of an equitable remedy.... Consideration of such attributes convinces us that these statutory damages are legal in character.

*Cass Cnty. Music Co. v. C.H.L.R., Inc.*, 88 F.3d 635, 642 (8th Cir. 1996)(quoting *Chauffeurs, Teamsters & Helpers Local No. 391 v. Terry*, 494 U.S. 558, 570 (1990))(other citations omitted).

The Fourth Circuit is in full *accord*:

> First, the underlying question is whether a legal or equitable base supports that part of the statutory scheme allowing a plaintiff to recover damages.... We conclude that, as was the case regarding the statutes interpreted in *Curtis* and *Barber*, a civil action seeking damages for copyright infringement under 504(c) is basically an action for the enforcement of a legal right.

*Gnossos Music v. Mitken, Inc.*, 653 F.2d 117, 120 (4th Cir. 1981) (citing *Curtis v. Loether*, 415 U.S. 189 (1974); *Barber v. Kimbrell's, Inc.*, 577 F.2d 216 (4th Cir. 1978), *cert. denied*, 439 U.S. 934 (1978)).

Likewise, 'actual damages' in the form of 'lost profits' is a quintessential **legal remedy**:

> "[D]amages for trademark infringement" are a "legal form[ ] of monetary relief" to which the right to a jury trial attaches. *Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122, 133 (2d Cir. 2014) (citing *Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 472–73, 477–78 (1962)).

*Van Leeuwen Ice Cream LLC v. Rebel Creamery LLC*, No. 21-CV-2356(EK)(JRC), 2024 WL 1072046, at *2 (E.D.N.Y. Mar. 11, 2024). "[A] trademark infringement plaintiff seeking payment for lost profits was pursuing a legal rather than an equitable claim[.]" *Entec Stations, Inc. v. Murphy Oil USA, Inc.*, No. 2:14-CV-380-MEF, 2014 WL 3864848, at *1 (M.D. Ala. Aug. 6, 2014) (citing *Dairy Queen,* 369 U.S. at 477–78). Indeed, in *Dairy Queen*, granting *certiorari* following denial of a *writ of mandamus* by the Third Circuit, the Supreme Court held:

> We find it unnecessary to resolve this ambiguity in the respondents' complaint because we think it plain that their claim for a money judgment is a claim wholly

12

legal in its nature however the complaint is construed.... And as an action for damages based upon a charge of trademark infringement, it would be no less subject to cognizance by a court of law.

*Dairy Queen*, 369 U.S. at 477.

Thus, claims for statutory damages under the Copyright Act, and claims for lost profits as a form of actual damages **proximately caused** by false advertising, are **purely legal remedies** which sound in law, not equity.

### C. A District Court Lacks Jurisdiction to Enjoin the Disposal of Assets Pending Adjudication of Claims for Money Damages

The United States Supreme Court has resolved all dispute regarding whether or not a United States District Court can issue an order freezing, seizing, or otherwise restraining a party from using, transferring, or otherwise disposing of assets prior to judgment in a claim for money damages. In *Grupo Mexicano de Desarrollo S.A. v. All. Bond Fund, Inc.*, the Supreme Court held: "we hold that the District Court had no authority to issue a preliminary injunction preventing petitioners from disposing of their assets pending adjudication of respondents' contract claim for money damages." 527 U.S. 308, 333 (1999) (reversing judgment of the Court of Appeals and remanding). Citing *Grupo Mexicano*, the Fourth Circuit has held:

And finally, *Grupo Mexicano* held that because the plaintiff claimed no interest in the defendant's assets (by way of lien or an equitable interest), but rather claimed only a money judgment, the district court lacked authority to freeze or otherwise interfere with the defendant's assets. *See* 527 U.S. at ——, 119 S.Ct. at 1975.

*U.S. ex rel. Rahman v. Oncology Associates*, 198 F.3d 489, 497 (4th Cir. 1999). The Fourth Circuit further explained that, in order for an asset to be frozen pre-judgment, there must be a "nexus between the assets sought to be frozen through an interim order and the ultimate relief requested in the lawsuit[. This nexus] is essential to the authority of a district court in equity to enter a preliminary injunction freezing assets." *Id*. at 496–97 (4th Cir. 1999). Finally, "[u]nder the

required analysis, [the district court] must determine whether these claims are cognizable in equity." *Id*. at 497. Thus, a district court is **without authority** to freeze or restrain assets prejudgment with respect to **legal claims** and there must be a "nexus" with respect to any asset restraint for **equitable claims**.

      **D.**    **Analysis**

Here, there is no dispute that the damages found by the Jury – statutory damages and actual lost profit damages – **sound only in law, not equity**. Hayward either lost or waived any and all **equitable** claims to monetary relief in this action. In any event, any equitable remuneration which may have once existed (if any), is no longer at issue in this case. As such, the Supreme Court's decision in *Grupo Mexicano* **binds** this Court at least until a final judgment is entered. 527 U.S. at 333 ("we hold that the District Court had no authority to issue a preliminary injunction preventing petitioners from disposing of their assets pending adjudication of respondents' contract claim for money damages"). **Pursuant to *Grupo Mexicano*, this Court lacks authority to enter a freeze of Defendants' (and non-parties') assets.**

The cases cited by Hayward do not provide otherwise, and indeed, endorse the Supreme Court's holding in *Grupo Mexicano*. For instance, Hayward relies heavily on an unpublished case from the Eastern District of Louisiana for the proposition that a "'district court may maintain the status quo and issue a preliminary injunction to protect a remedy, ***including a damages remedy, when the freezing of the assets is limited to the property in dispute or its direct, traceable proceeds***.'" [DE 383-1 at 12] (citing *Turnkey Offshore Project Servs., LLC v. JAB Energy Sols*., LLC, No. CV 21-672, 2021 WL 3509677, at *15 (E.D. La. Aug. 10, 2021) (italics emphasis added by Hayward)). Surprisingly, Hayward only selectively cites to portions of the court's decision in

*Turnkey* and intentionally omits the court's direct invocation of the **binding** authority in *Grupo Mexicano*:

> A federal court's general equitable power does not reach a defendant's assets unrelated to the underlying litigation or entail the power to freeze such assets so that they may be preserved to satisfy a potential money judgment. As the Supreme Court held in *Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.*, federal courts have "no authority to issue a preliminary injunction preventing petitioners from disposing of their assets pending adjudication of [a] claim for money damages." This Court must "follow the well-established general rule that a judgment establishing the debt [is] necessary before [a federal court may employ its equitable powers to interfere] with the debtor's use of his property." Thus, the court may not issue a preliminary asset freeze injunction covering all of Defendants' assets to secure a potential money judgment on a legal claim given the "historical principle that before judgment (or its equivalent) an unsecured creditor has no rights at law or in equity in the property of his debtor."

*Turnkey*, 2021 WL 3509677, at *6 (quoting *Grupo Mexicano* 527 U.S. at 321, 330, 333) (footnotes and other citations omitted) (alterations in original). The court in *Turnkey* further explained the important distinction between claims for money damages and claims in equity:

> In contrast, as the Supreme Court explained in *Deckert v. Independence Shares Corp.*, a court has sufficient equitable powers to preliminarily freeze a defendant's assets in suits sounding in equity. Where a legal action is inadequate and an asset freeze is narrowly drawn to sequester only those funds necessary to satisfy the potential judgment, " '[i]t is well settled that the granting of a temporary injunction ... is within the sound discretion of the trial court.' " Thus, when the underlying claim is one that is equitable in nature, a Rule 65 injunction may be available to preserve the defendant's assets during the pendency of the proceeding.

*Turnkey*, 2021 WL 3509677, at *6 (citing *Deckert v. Independence Shares Corp.*, 311 U.S. 282, 289–91 (1940)) (footnotes omitted) (alterations in original). The court in *Turnkey* further cautioned that, even under the Supreme Court's *Deckert* holding, "an injunction to freeze assets must be narrowly drawn to sequester only those funds subject to the equitable claim and [p]laintiff's request to freeze all of [d]efendants' assets is improper." *Turnkey*, 2021 WL 3509677, at *8. Ultimately, under the unique facts of that case, the court in *Turnkey* determined that

> To the extent that [plaintiff] seeks a preliminary injunction freezing all of Defendants' assets (not just the ... bankruptcy funds ...) pending resolution of this case, that request is foreclosed by *Grupo Mexicano*. To the limited extent that Plaintiff seeks to freeze only the [bankruptcy] funds held or controlled by [the] Trustee ... and/or earmarked by the ... bankruptcy court ... which Plaintiff claims it was fraudulently induced into performing, *Deckert* allows this court to issue an injunction to freeze those funds pending resolution of this matter.

*Turnkey*, 2021 WL 3509677, at \*19. Thus, if anything, *Turnkey* supports Defendants' position in this case, that is, Hayward's *Ex Parte* Motions are "foreclosed by *Grupo Mexicano*."

The other primary case cited by Hayward is another unpublished district court case, *Tiffany (NJ) LLC v. Forbse*, No. 11-Civ.-4976, 2015 WL 5638060 (S.D.N.Y. Sept. 22, 2015). However, in *Tiffany*, the district court was tasked with adjudicating "a default judgment [seeking] an accounting of profits...." *Id*. at \*1. Indeed, the court in *Tiffany* distinguished *Grupo Mexicano* on precisely that basis: "In contrast to the plaintiffs in *Grupo Mexicano*, Tiffany asks this Court for a **postjudgment** asset restraint." *Id*. at \*4. Well, it might be said here that in contrast to the plaintiffs in *Tiffany*, Hayward asks this court for a prejudgment asset restraint. In any event, *Tiffany* is entirely inapposite here, where Hayward has waived all right to an accounting of profits as discussed *supra* and, in any event, this Court has not entered final judgment.[6]

Thus, Hayward invites this Court **to commit clear error** by

(1) violating the Supreme Court's holding in *Grupo Mexicano*, by issuing prejudgment asset restraint for legal rather than equitable monetary awards, 527 U.S. at 333; and

(2) violating the Supreme Court's holding in *Deckert*, by issuing a broad, prejudgment asset restraint that is not "framed narrowly" and without "security", 311 U.S. at 290.

---

[6] Also inapposite is Hayward's citation to *Klipsch Group, Inc. v. ePRO E-Commerce Limited*, 880 F.3d 620, 626 (2d Cir. 2018), which involves a dispute surrounding a discovery sanction. No such issue is present in this case.

## V. HAYWARD ADMITS IT CITES NO CASES IN SUPPORT OF <u>PRE-JUDGMENT</u> ASSET DISCOVERY [BUT ONLY POST-JUDGMENT]

In its *Ex Parte* Memorandum [DE 383-1 at 20], Hayward cites Fed. R. Civ. P. 26(b)(1) and Fed. R. Civ. P. 69(a) for the proposition that "Defendants must produce all information "reasonably calculated to lead to the discovery of admissible evidence" relevant to enforcement of the judgment." Of course, there is as of yet, no "judgment" to enforce in this case. Likewise, Hayward cites only cases relating to post-judgment discovery. *E.g.*, [DE 383-1 at 20-21] (citing *E.I. DuPont de Nemours and Co. v. Kolon Industries, Inc.*, 286 F.R.D. 288 (E.D. Va. 2012)[7] (seeking discovery "in aid of execution of the Judgment"); *Victor Stanley, Inc. v. SCH Enterprises, LLC*, No. CV RDB-06-2662, 2023 WL 2571516 (D. Md. Mar. 20, 2023) (same); *H.D. Smith Wholesale Drug Co. v. Med. Assocs. Pharmacy, Inc.*, No. 3:10-cv-00862, 2012 U.S. Dist. LEXIS 199603 (S.D.W. Va. June 19, 2012) (same); *Caisson Corp. v. Cnty. W. Bldg. Corp.*, 62 F.R.D. 331 (E.D. Pa. 1974) (same); *Silicon Knights, Inc. v. Epic Games, Inc.*, 917 F. Supp. 2d 503 (E.D.N.C. 2012) (same); *SAS Inst., Inc. v. World Programming Ltd.*, No. 5:10-CV-25-FL, 2018 WL 1144585, at *1 (E.D.N.C. Mar. 2, 2018) (same)). To Hayward's credit, it admits it has **no legal authority** for pre-judgment discovery and has cited no cases supporting pre-judgment discovery: "the cases above are in the context of post-judgment discovery into a defendant's assets...." [DE 383-1 at 21].

Admitting that it failed to take sufficient discovery over the past four years that this case has been pending, Hayward wants more. It demands that this Court order pre-judgment discovery

---

[7] Notably, in *E.I. DuPont*, the plaintiff sought an asset freeze only after some asset discovery was conducted, and even then the Court converted the plaintiff's motion for asset freeze into a motion requiring advanced notification of any asset transfer over $250,000, **excluding** various specific transfers such as payments to outside legal counsel and ordinary business expenses such as payroll, and placing the burden on the plaintiff to seek court intervention if it was concerned about a transfer. *See* **Exhibit 5**.

17

but it admits it has **exactly zero** legal support for its motion. This dearth of support is further heightened by Hayward's lust for seizing assets of Non-Parties. Hayward's Motion must be denied.

## VI.    NO CASES SUPPORT A <u>PRE-JUDGMENT</u> BOND <u>REQUIREMENT</u>

In its Memorandum [DE 383-1] Hayward demands that this Court order Defendants to post a prejudgment bond. As with so many issues in its *Ex Parte* Motions to this Court, there is exactly zero legal support for a prejudgment bond requirement. None of the cases cited by Hayward require a defendant to post a pre-judgment bond. *See* [DE 383-1 at 23]. In fact, the Rules of Civil Procedure require the **exact opposite**. Rule 65 (c), which has heretofore been ignored by Hayward (and this Court) requires that it is Hayward who **MUST** post a bond:

> (c) Security. The court may issue a preliminary injunction or a temporary restraining order **only if the movant gives security** in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained. The United States, its officers, and its agencies are not required to give security.

Rule 65(c). The requirement of a bond in Rule 65(c) "is mandatory and unambiguous." *Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*, 173 F.3d 411, 421 (4th Cir. 1999) (citing *District 17, UMWA v. A & M Trucking, Inc.*, 991 F.2d 108, 110 (4th Cir. 1993)). In *Hoechst*, the Fourth Circuit was clear that "[a]lthough the district court has discretion to set the bond amount 'in such sum as the court deems proper,' it is not free to disregard the bond requirement altogether. In view of the clear language of rule 65(c), failure to require a bond upon issuing injunctive relief is reversible error." *Id.* The district court "should be guided by the purpose underlying Rule 65(c), which is to provide a mechanism for reimbursing an enjoined party for harm it suffers as a result of an improvidently issued injunction or restraining order." *Id.* at n.3. Therefore, "[t]he amount of the bond ... ordinarily depends on the gravity of the potential harm to the enjoined party." *Id.*

18

Hayward has not offered to post a bond and this Court has not required Hayward to post even a nominal bond. *See Ex Parte* TRO [DE 393] (no bond). Lacking a bond requirement, the Order must be dissolved.

The Fourth Circuit and the Federal Rules are unambiguous; it is Hayward, not Defendants (and certainly not the Non-Parties) who must post a bond in this case.

## VII.  HAYWARD'S LAST-DITCH EFFORT TO INVOKE NORTH CAROLINA STATUTE CANNOT SALVAGE ITS QUEST TO RESTRAIN ASSETS

### A.  Attachment under N.C. Gen. Stat. § 1-440 *et seq.*

As a recognition that the relief it seeks is unavailable pursuant to *Grupo Mexicano* (a fact Hayward buries a footnote [DE383-1 at 12, n.6] to avoid implicating Rule 3.3(a)(2) of North Carolina Rules of Professional Conduct), Hayward makes a last-ditch effort to invoke North Carolina statutory law. In particular, Hayward invokes N.C. Gen. Stat. § 1-440.3 [DE 383] for the proposition that the statute "is designed to 'secure satisfaction of the potential judgment' with the assets of the prospective debtor." [DE 383-1 at 9] (citation to "potential judgment" not supplied by Hayward and undersigned counsel has been unable to locate the language quoted by Hayward in Article 35, § 1–440.1 to § 1–471). N.C. Gen. Stat. §1-440.3 is supplied in full below:

> In those actions in which attachment may be had under the provisions of G.S. 1-440.2, an order of attachment may be issued when the defendant is
>    (1) A nonresident, or
>    (2) A foreign corporation, or
>    (3) A domestic corporation, whose president, vice-president, secretary or treasurer cannot be found in the State after due diligence, or
>    (4) A resident of the State who, with intent to defraud his creditors or to avoid service of summons,
>        a. Has departed, or is about to depart, from the State, or
>        b. Keeps himself concealed therein, or
>    (5) A person or domestic corporation which, with intent to defraud his or its creditors,
>        a. Has removed, or is about to remove, property from this State, or
>        b. Has assigned, disposed of, or secreted, or is about to assign, dispose of, or secrete, property.

Further, as stated in the above statute, N.C. Gen. Stat. 1-440.2 provides the prerequisite for relief under N.C. Gen. Stat. §1-440.3. N.C. Gen. Stat. §1-440.2 states as follows (emphasis added): "Attachment may be had in any action the purpose of which, in whole or in part, or in the alternative, is to secure **a judgment for money**, or in any action for alimony or for maintenance and support, or an action for the support of a minor child, but not in any other action."

As a threshold matter, because §1-440.2 applies only to "a judgment for money" it is wholly inapplicable given the **pre-judgment** posture of this case. That should end the analysis. However, even if a judgment were to be entered, §1-440.3 does not apply to Defendant Blueworks, Defendant Blueworks Innovation, or the Non-Parties, all of whom are North Carolina residents. Again, this too, should end the analysis.

### B.    Assets Subject to Attachment under N.C. Gen. Stat. § 1-440.4

Even assuming *arguendo*, the relief sought by Hayward were available under North Carolina statutory law, the authority granted is limited only to "…defendant's property within this State…." N.C. Gen. State § 1-440.4. Moreover, while the statute authorizes attachment of "[a]ll of a defendant's property within this state which is subject to levy under execution," N.C. Gen. Stat. § 1-440.4, federal district courts in this state have found that the court's authority is limited to the court's district, in this case the Western District. *See Sara Lee Corp. v. Gregg*, No. 1:02CV195, 2002 WL 1925703 (M.D.N.C. Aug. 15, 2002) (finding that although state courts may exercise jurisdiction over all assets in North Carolina, "the Federal Rules of Civil Procedure .... do not support extra-district attachment."); *Universal Life Ins. Co. v. Lindberg*, No. 1:20CV681, 2021 WL 7186820, at *1 (M.D.N.C. July 9, 2021).  Therefore, the sweeping worldwide injunction sought by Hayward is not authorized under North Carolina law. *Id*.

20

C. **Asset Freeze under N.C. Gen. Stat. § 1-485**

Because Hayward has mischaracterized the North Carolina statute, Defendants reproduce

N.C. Gen. Stat §1-485 in full (emphasis added):

> A preliminary injunction may be issued by order in accordance with the provisions of this Article. The order may be made by any judge of the **superior court** or any judge of the **district court** authorized to hear in-chambers matters in the following cases, and shall be issued by the clerk of the court in which the action is required to be tried:
>
>> (1) When it appears by the complaint that the plaintiff is entitled to the relief demanded, and this relief, or any part thereof, consists in restraining the commission or continuance of some act the commission or continuance of which, during the litigation, would produce injury to the plaintiff; or,
>>
>> (2) When, during the litigation, it appears by affidavit that a party thereto is doing or threatens or is about to do, or is procuring or suffering some act to be done in violation of the rights of another party to the litigation respecting the subject of the action, and tending to render the judgment ineffectual; or,
>>
>> (3) When, during the pendency of an action, **it appears by affidavit** of any person that the defendant threatens or is about to remove or dispose of his property, with intent to defraud the plaintiff.

This Court is not the North Carolina Superior Court nor is this Court the North Carolina District Court and, thus, N.C. Gen. Stat. §1-485 is inapplicable here. That should end the analysis. Moreover, Hayward has not supplied this Court with an "affidavit" supporting an "intent to defraud the plaintiff." Quite the contrary – a jury has determined that Defendants' actions comprised "fair use" [DE 353 at 2] which is the **exact opposite of fraud**. Indeed, as discussed *supra*, in reaching its finding that Defendants' actions constituted "fair use" the jury acted on this Court's instruction that "defendant is entitled to truthfully inform the public that it believes it has produced a product equivalent to the plaintiff's product and that the public may benefit through lower prices by buying the defendant's product." [DE 370 at 128:18-21]. In as much, the jury found that Defendants have not disregarded the law or committed fraud. Statements made associating compatibility of

21

Blueworks' salt cell products with Hayward's system were made "to truthfully inform the public" and constituted "fair use." This, too, should end the analysis. But Hayward demands more....

Recognizing that the North Carolina statutes are inapplicable in this Court, Hayward demands that this Court recognize the Maryland statutory law, specifically a Maryland statute concerning a "writ of execution", Md. Rules 2-642 (a) and (b), which provide as follows (emphasis added):

> **(a) Levy Upon Real Property.** Except as otherwise provided by law, the sheriff shall levy upon a **<u>judgment debtor's</u>** interest in **<u>real property</u>** pursuant to a writ of execution by entering a description of the property upon a schedule and by posting a copy of the writ and the schedule in a prominent place on the property.
>
> **(b) Levy Upon Personal Property.** Except as otherwise provided by law, the sheriff shall levy upon a **<u>judgment debtor's</u>** interest in personal property pursuant to a writ of execution by obtaining actual view of the property, entering a description of the property upon a schedule, and (1) removing the property from the premises, or (2) affixing a copy of the writ and schedule to the property, or (3) posting a copy of the writ and schedule in a prominent place in the immediate vicinity of the property and affixing to each item of property a label denoting that the property has been levied upon by the sheriff, or (4) posting a copy of the writ and schedule in a prominent place in the immediate vicinity of the property without affixing a label to each item of property if affixing a label to each item of property is possible but not practical.

As with so much of what Hayward seeks, there is no Judgment in this case. Likewise, Defendants do not own any real property in North Carolina. Moreover, the Maryland law, as readily apparent from the full text above, is not remotely the same as the North Carolina statute as Hayward misleadingly avers.

## VIII.  CONCLUSION

For all of the above reasons, Hayward's motion(s) must be denied.

Dated: April 22, 2024               Respectfully submitted,

                                    */s/ Samuel Alexander Long, Jr.*
                                     Samuel Alexander Long, Jr.
                                     NC Bar No. 46588

Christina Davidson Trimmer
NC Bar No. 44857
SHUMAKER, LOOP & KENDRICK, LLP
101 South Tryon Street
Suite 2200
Charlotte, North Carolina 28280
Tel: (704) 375-0057
Fax: (704) 332-1197
Email: along@shumaker.com
      ctrimmer@shumaker.com

Michelle C. Dunn
Platinum Intellectual Property
3031 Tisch Way, Suite 110 PW
San Jose, CA 95128
Tel: 404-800-5884
Fax: 877-463-0654
Email: michelle.dunn@platinum-ip.com
*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on April 22, 2024, the foregoing document was served on all counsel of record using the Court's CM/ECF system, which will send notification of such filing to any CM/ECF participants.

Respectfully submitted,

*/s/ Samuel Alexander Long, Jr.*
Samuel Alexander Long, Jr.
NC Bar No. 46588
SHUMAKER, LOOP & KENDRICK, LLP
101 South Tryon Street
Suite 2200
Charlotte, North Carolina 28280
Tel: (704) 375-0057
Fax: (704) 332-1197
Email: along@shumaker.com