**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**

| | |
|---|---|
| HAYWARD INDUSTRIES, INC., | |
| Plaintiff, | |
| v. | Civil Action No. 3:20-cv-00710-MOC-SCR |
| BLUEWORKS CORPORATION, BLUEWORKS INNOVATION CORPORATION, NINGBO C.F. ELECTRONIC TECH CO., LTD., NINGBO YISHANG IMPORT AND EXPORT CO., LTD., | |
| Defendants. | |

<u>**DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR RENEWED MOTION UNDER FED. R. CIV. P. 50(b) FOR JUDGMENT AS A MATTER OF LAW OR, IN THE ALTERNATIVE, UNDER FED. R. CIV. P. 59(a) FOR A NEW TRIAL**</u>

# TABLE OF CONTENTS

INTRODUCTION ……………………………………………………………………...1

LEGAL STANDARD……………………………………………………………………..1

ARGUMENT……………………………………………………………………………...2

    I.     HAYWARD FAILED TO PROVIDE LEGALLY ADEQUATE EVIDENCE OF ANY OF ITS CLAIMS AGAINST DEFENDANTS NINGBO YISHANG IMPORT AND EXPORT CO., LTD. OR BLUEWORKS INNOVATION CORRPORATION….3

    II.    HAYWARD FAILED TO PROVIDE LEGALLY ADEQUATE EVIDENCE OF DIRECT COPYRIGHT INFRINGEMENT BY DEFENDANT NINGBO C.F…………4

    III.    HAYWARD FAILED TO PROVIDE LEGALLY ADEQUATE EVIDENCE OF DAMAGES AND PROXIMATE CAUSE AS TO ITS CLAIM FOR LOST PROFITS UNDER THE LANHAM ACT AND NC UDTPA…………………………..7

        A.    Legal Standards for Lost Profit Damages………………………………………8

        B.    Hayward Made No Attempt at Claim Differentiation in its Damages Presentation………………………………………………………………10

        C.    Hayward Failed to Prove Damages Under the UDTPA…………………………16

        D.    Hayward Presented No Evidence of Temporal Connection………………………20

        E.    Hayward Presented No Evidence of Causation…………………………………22

        F.    Statute of Limitations and Laches Prevent Award of Any Damages…………….24

    IV.    CONCLUSION……………………………………………………………...25

i

# INTRODUCTION

Defendants Blueworks Corporation ("Blueworks Corp."), Blueworks Innovation Corporation ("Blueworks Innovation"), Ningbo C.F. Electronic Tech Co., Ltd. ("Ningbo C.F."), and Ningbo Yishang Import and Export Co., Ltd. ("Ningbo Yishang") (collectively, "Defendants") respectfully submit this memorandum in support of Defendants' Renewed Motion for a Judgment as a Matter of Law [DE 375] pursuant to Fed. R. Civ. P. 50(b), or in the alternative for a New Trial under Fed. R. Civ. P. 59(a) on Hayward Industries, Inc.'s ("Hayward") claims for false advertising under the Lanham Act (Count I) [DE 57 at ¶¶122 – 132], violation of the NC UDTPA (Count XIX) [DE 57 at ¶¶269 – 284], and Copyright Infringement against Ningbo C.F. (Count XXI) [DE57 at ¶¶294 – 301]. Defendants are entitled to judgment as a matter of law because Hayward failed to carry its burden at trial. As addressed in detail below:

- There was no evidence presented as to any of Hayward's claims with respect to Defendant Ningbo Yishang Import and Export Co., Ltd. and to Defendant Blueworks Innovation Corporation (the "Wrongly Named Defendants");

- There was no evidence presented of direct copyright infringement by Ningbo C.F. with respect to Hayward's claim for *direct* Copyright Infringement (Count XXI) [DE57 at ¶¶294 – 301] against Ningbo C.F., and Hayward did not pursue a claim of vicarious copyright infringement; and

- Hayward's claims for damages relating to its claims for false advertising under the Lanham Act (Count I) [DE 57 at ¶¶122 – 132] and under the NC UDTPA (Count XIX) [DE 57 at ¶¶269 – 284] lacked sufficient evidentiary support of damages and proximate cause.

Accordingly, the Court should grant Defendants' motion for judgment as a matter of law, and enter judgment in favor of Defendants. In the alternative, the Court should grant a new trial to Defendants under Rule 59 of the Federal Rules of Civil Procedure.

# LEGAL STANDARD

A court analyzing a renewed motion for judgment as a matter of law Pursuant to Rule 50(b) of the Federal Rules of Civil Procedure determines whether a jury, viewing the evidence in the

1

light most favorable to the prevailing party, "could have properly reached the conclusion reached by this jury." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002) (citation and quotation marks omitted). A party may move for judgment as a matter of law on an entire claim or "on discrete legal issues … because a party may seek such judgments with respect to issues that are not wholly dispositive of a claim or defense." *Chesapeake Paper Prods. Co. v. Stone & Webster Eng'g Corp.*, 51 F.3d 1229, 1236 (4th Cir. 1995) (citing Fed. R. Civ. P. 50, Notes of Advisory Committee on 1993 Amendment)).

"More specifically, a renewed motion for judgment as a matter of law is properly granted 'if the nonmoving party failed to make a showing on an essential element of his case with respect to which he had the burden of proof.'" *Bennett v. R&L Carriers Shared Servs., LLC*, 744 F. Supp. 2d 494, 509 (E.D. Va. 2010) (quoting *Wheatley v. Wicomico Cnty., Md.*, 390 F.3d 328, 332 (4th Cir. 2004)). "Though courts 'must not weigh evidence, determine witness credibility, or substitute judgment of the facts for that of the jury,' the nonmoving party 'must present more than a scintilla of evidence to support its claim.'" *Mathis v. Terra Renewal Services, Inc.*, 69 F.4th 236, 242 (4th Cir. 2023) (quoting *United States Sec. & Exch. Comm'n v. Clark*, 60 F.4th 807, 812 (4th Cir. 2023)).

Alternatively, a district court should grant a new trial when the verdict: (1) is against the clear weight of the evidence; (2) is based upon false evidence; or (3) will result in a miscarriage of justice. *Atlas Food Sys. & Servs., Inc. v. Crane Nat'l Vendors, Inc.*, 99 F.3d 587, 594 (4th Cir. 1996).

## ARGUMENT

Despite bearing the burden of proof, Hayward failed to provide legally adequate evidence at trial on its claims against Defendants. First, there was no evidence presented as to *any* of

Hayward's claims with respect to Defendants Ningbo Yishang Import and Export Co., Ltd. and Blueworks Innovation Corporation (the "Wrongly Named Defendants"). Second, there was no evidence presented of *direct* copyright infringement by Defendant Ningbo C.F. with respect to Hayward's claim for direct Copyright Infringement (Count XXI), and Hayward did not pursue a claim of vicarious copyright infringement. Third, Hayward failed to present sufficient evidence of damages and proximate cause as to its claims for false advertising under the Lanham Act (Count I) and under the NC UDTPA (Count XIX).

## I. HAYWARD FAILED TO PROVIDE LEGALLY ADEQUATE EVIDENCE OF ANY OF ITS CLAIMS AGAINST DEFENDANTS NINGBO YISHANG IMPORT AND EXPORT CO., LTD. OR BLUEWORKS INNOVATION CORPORATION.

The Wrongly Named Defendants are entitled to judgment as a matter of law because Hayward failed to present a legally sufficient evidentiary basis for a jury verdict in its favor on any claims against the Wrongly Named Defendants. Indeed, Hayward failed to even include either of these Defendants on the Verdict Form submitted to the jury.

In particular, Hayward has failed to produce evidence sufficient for a reasonable jury to find that either of the Wrongly Named Defendants:

- Ever disseminated *any* advertisement (false or otherwise) which in any way relates to any Hayward product or Hayward registered or unregistered trademark;

- Ever used, passed-off, counterfeited any Hayward registered or unregistered trademark in any way (whether as an infringement or for another reason); or

- Ever copied any copyrighted material owned by Hayward.

Here, judgment as a matter of law is required. During the trial, while Hayward repeatedly referenced Defendant Blueworks and Defendant Ningbo C.F., Hayward never referenced the Wrongly Named Defendants in any substantive way. No advertisements from the Wrongly Named Defendants were ever entered into evidence. No witness testified as to conduct attributable to the

Wrongly Named Defendants. No expert opined as to conduct by the Wrongly Named Defendants. The Fourth Circuit requires the Court to "view the evidence in the light most favorable to the nonmoving party", *Fontenot*, 736 F.3d at 333, however, in this instant, there is no evidence to even view.

The Wrongly Named Defendants never should have been a part of this case and are entitled to Judgment in their favor pursuant to Rule 50(b) as to each of the 21 counts in the operative Complaint.

## II.    HAYWARD FAILED TO PROVIDE LEGALLY ADEQUATE EVIDENCE OF DIRECT COPYRIGHT INFRINGEMENT BY DEFENDANT NINGBO C.F.

"The two elements of copyright infringement are: (1) ownership of a valid copyright by the party complaining of infringement, and (2) unauthorized copying of the protected work ***by the infringing party***." *Universal Furniture Intern., Inc. v. Collezione Europa USA, Inc.*, 196 Fed. Appx. 166, 172 (4th Cir. 2006) (emphasis added) (citing *See Keeler Brass Co. v. Cont'l Brass Co.*, 862 F.2d 1063, 1065 (4th Cir.1988)); *see also Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361(1991); *CoStar Group, Inc. v. LoopNet, Inc.*, 373 F.3d 544, 549 (4th Cir. 2004).

Defendant Ningbo C.F. is entitled to judgment as a matter of law on Hayward's copyright claim because, even viewing the trial evidence in the light most favorable to Hayward, Hayward failed to make a sufficient showing that Ningbo C.F. copied the asserted copyrighted work. Hayward's evidence of copyright infringement consists of a single alleged "copy" of Hayward's copyrighted works—the manual of a third party customer of Ningbo C.F., Excel Pool Products. This alleged copy was admitted at trial as PTX029 which is titled "Excelpool Salt System." PTX029 makes no reference to Ningbo C.F., or any other indicia of ownership of Excel Pool Products which might be tied to any of the Defendants. Indeed, at trial, Hayward did not submit evidence which shows any ownership interest in Excel Pool Products by Ningbo C.F. (or any other

Defendant for that matter). That was Hayward's burden. Rather, at trial, Hayward put its employee Mr. Glibowski who testified that: "ExcelPool salt system is a brand that sells their own Salt system. It's not a Hayward brand." [DE 366 at 163:25-164:2]. However, later on cross examination, Mr. Glibowski was forced to admit that he did not know that Excel Pool was not owned by Blueworks:

> Q: And you know that ExcelPool is not BlueWorks?
>
> A: I don't know that.
>
> Q: You don't know?
>
> A No.
>
> Q: Do you know that ExcelPool is not owned by BlueWorks?
>
> A: I don't know that.

*Id*. at 182:12-17 (referencing PTX029). Later, on redirect, Mr. Glibowski did not provide any further testimony as to Exhibit PTX029 or Hayward's copyright claim. *See id*. at 67:23-76:21.

Hayward sued each of the four Defendants for direct copyright infringement. Direct liability requires "volitional conduct" that "causes" the copying or distribution. *ABKCO Music, Inc. v. Sagan*, 50 F.4th 309, 321–22 (2d Cir. 2022), *cert. denied*, 144 S. Ct. 77, 217 L. Ed. 2d 13 (2023) (citation omitted). "That is, direct liability attaches only to 'the person who actually presses the button.'" *Id*. (quoting *Cartoon Network LP v. CSC Holdings, Inc.*, 536 F.3d 121, 131 (2d Cir. 2008)). Hayward did ***not*** sue Excel Pool Products—the party that created and distributed the manual. In short, it sued the wrong party. If there is an infringing party, it is Excel Pool Products, not Ningbo C.F. As such, Hayward failed to meet its burden as to the second element of copyright infringement: "unauthorized copying of the protected work ***by the infringing party***." *Universal Furniture*, 196 Fed. Appx. at 172 (emphasis added).

5

Notably, the Copyright Act "does not expressly render anyone liable for infringement committed by another," but "the Supreme Court has long held that vicarious and contributory liability for copyright infringement rest on firm legal footing." *Sony Music Ent. v. Cox Commc'ns, Inc.*, 93 F.4th 222, 227 (4th Cir. 2024) (citing S*ony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 434–435, 104 S.Ct. 774, 78 L.Ed.2d 574 (1984)). A claim for indirect copyright infringement must be pled as a separate claim. To state a claim for contributory infringement, a plaintiff must allege facts that a defendant "with knowledge of the infringing activity, induces, causes or materially contributes to the infringing conduct of another ...." *Gershwin Pub. Corp. v. Columbia Artists Mgmt., Inc.*, 443 F.2d 1159, 1162 (2d Cir. 1971). In *ABKCO Music, Inc.*, the Second Circuit **reversed** an order granting judgment against the defendant where the plaintiff had pled only direct liability, but the district court improperly applied the standard for vicarious liability to conduct that could not give rise to direct liability. 50 F.4th 309, 322, *cert. denied*, 144 S. Ct. 77, 217 L. Ed. 2d 13 (2023).

The same can be said here. Hayward did not allege indirect copyright infringement, either through vicarious liability or contributory liability[1]. Hayward only alleged and pursued a claim of direct copyright infringement against the four named Defendants, but Hayward presented zero evidence that any of the Defendants was "the person who actually presses the button."

Mr. Chen testified that Ningbo C.F. printed the brochure for Excel Pool, but that Excel Pool created the content in the manual:

Q And in preparing this brochure, did Ningbo –

---

[1] Count XX of the Operative Complaint is for "Contributory Infringement and Vicarious Liability" against "Ningbo entities;" however, this claim states that it is for "contributory infringement and vicarious liability" related to Hayward's false advertising and trademark claims as between Ningbo C.F. and Blueworks. There is no mention of Hayward's copyright claim, and certainly no mention of Excel Pools. Any attempt by Hayward to shoehorn an indirect copyright claim into Count XX must be rejected.

6

MS. TRIMMER: Objection. He testified that Ningbo did not prepare this manual.

THE COURT: He testified what? Say again?

MS. TRIMMER: He testified that Ningbo did not prepare this manual. His question started, "when Ningbo prepared this manual."

THE COURT: Yeah.

MR. DONOIAN: Okay.

THE COURT: He denies that.

Q Okay. But Ningbo did print this for ExcelPool, correct?

A Yes, it's printed by Ningbo.

Q And ExcelPools would tell Ningbo changes it wanted to make to the manual, correct?

A Yes. They would need to make all those changes themselves. For us, Ningbo, we're only responsible for printing.

[DE 367 at 115:2-18].

Q But Ningbo approved the manual before it was finally printed, correct?

A To be precise, we are not doing this approval action because we don't have the authorization to approve.

*Id*. at 116:12-15].

Since PTX029 is the only evidence of "copying" proffered by Hayward, and since Hayward has not shown that Ningbo C.F. created the manual, PTX029, (i.e., copied the protectable elements of Hayward's copyrights), Hayward failed to make a showing on an essential element of its case with respect to which it had the burden of proof.

## III. HAYWARD FAILED TO PROVIDE LEGALLY ADEQUATE EVIDENCE OF DAMAGES AND PROXIMATE CAUSE AS TO ITS CLAIM FOR LOST PROFITS UNDER THE LANHAM ACT AND NC UDTPA.

Defendants are entitled to judgment as a matter of law on Hayward's claims for actual

damages in the form of lost profits including under the Lanham Act and the NC UDTPA. Hayward failed to produce evidence sufficient to support the jury verdict that Hayward is entitled to its claim for actual damages in the form of lost profits.

### A. <u>Legal Standards for Lost Profit Damages</u>

Under the Lanham Act, an award of money damages is not automatic upon a finding of liability. *See Web Printing Controls Co. v. Oxy-Dry Corp.*, 906 F.2d 1202, 1204–05 (7th Cir. 1990) (describing Lanham Act violations and Lanham Act remedies as "two stages of inquiry ... that should be kept separate"). If liability is established, the Lanham Act then provides that a prevailing plaintiff is entitled "to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action." 15 U.S.C. § 1117(a). The amount awarded must "constitute compensation and not a penalty." *Id*. The nature of a plaintiff's burden to support its damages request "depends on the type of remedy that it seeks." *Wing Enterprises, Inc. v. Tricam Indus., Inc.*, 511 F. Supp. 3d 957, 973 (D. Minn. 2021) (citation omitted). When a plaintiff seeks its own lost profits, its "burden is at its highest." *Id*. "In such cases, a plaintiff 'must prove both actual damages and a causal link between [the] defendant's violation and those damages.'" *Id*. (citing *Rhone-Poulenc Rorer Pharms., Inc. v. Marion Merrell Dow*, Inc., 93 F.3d 511, 515 (8th Cir. 1996)).

More specifically, to recover lost profits damages under the Lanham Act, a plaintiff must show not only trademark infringement or false advertising by a defendant, but also that defendant's statements *caused* plaintiff's actual damages. *See PBM Prods., LLC v. Mead Johnson & Co.*, 639 F.3d 111, 120 (4th Cir. 2011) (affirming judgment as a matter of law in Lanham Act case because plaintiff could not prove "loss causation"); *Xoom, Inc. v. Imageline, Inc.*, 323 F.3d 279, 286 (4th Cir. 2003) (Lanham Act plaintiff must "prove actual damages and a causal link between those

damages and the Lanham Act violation"), *abrogated on other grounds by Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154 (2010); *Texas Pig Stands, Inc. v. Hard Rock Café International, Inc.*, 966 F.2d 956, 957 (5th Cir. 1992) (per curiam) (upholding district court's ruling that the plaintiff was not entitled to damages because plaintiff had failed to present evidence "showing that any of Defendant's profits *were the result of its infringement of the mark*.") (emphasis in original). As the Fourth Circuit has observed regarding the causation element:

> This is not a minor or technical element of a Lanham Act claim; indeed, as the Supreme Court has explained, **it is the core requirement that a plaintiff "show economic or reputational injury flowing directly from the deception wrought by the defendant's advertising"** that assures Article III standing in Lanham Act cases.

*Verisign, Inc. v. XYZ.COM LLC*, 848 F.3d 292, 299-300 (4th Cir. 2017) (emphasis added) (citing *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 133 (2014). "***Recovery is prohibited if a plaintiff fails to prove that a defendant's actions caused the harm claimed***." *Rainbow Play Systems, Inc. v. GroundScape Techs., LLC*, 364 F.Supp.2d 1026, 1033 (D. Minn. 2005) (emphasis added).

For a "UDTPA claim, a plaintiff must [prove] that a defendant engaged in '(1) an unfair or deceptive act or practice or an unfair method of competition; (2) in or affecting commerce; (3) that proximately cause[d] actual injury to the plaintiff or to his business.'" *Mountaineer Motors of Lenoir, LLC v. Carvana, LLC*, No. 522CV00171KDBDCK, 2023 WL 6931787, at *7 (W.D.N.C. Oct. 19, 2023) (quoting *Harty v. Underhill*, 710 S.E.2d 327, 332 (N.C. Ct. App. 2011)). That is, like the Lanham Act, the NC UDTPA includes a "but-for" causation element with respect to injury. *Mountaineer Motors of Lenoir*, 2023 WL 6931787, at *7 (dismissing UDTPA claim where plaintiff failed to identify more than *de minimis* purchasers "who would have bought a car from [plaintiff] but-for the alleged unfair and deceptive advertisements").

9

**B. Hayward Made No Attempt at Claim Differentiation in its Damages Presentation**

A trial, Hayward and its expert simply lumped together ***all*** damages in one ***lump sum*** from ***all*** Defendants for the ***combined*** violations of false advertising and trademark infringement, with no attempt at allocation or differentiation of actual damages among these discrete torts. As presented to the jury, Hayward's damage claims rise and fall together having provided no separate allocation. This is particularly problematic where, as here, the jury returned a split verdict.

Since Hayward sought to recover its own 'lost profits,' Hayward had the 'high' burden of showing not only trademark infringement as to *each* mark or false advertising as to *each* statement by *each* of the Defendants, but also that each Defendants' use of each mark and each alleged false statements *caused* Hayward's actual damages. *See PBM Prods.*, 639 F.3d at 120. With over 100 discrete torts packed into Hayward's 21 counts, one might expect a robust damage model with abundant evidence as to precisely how each alleged infringement and each alleged false statement proximately resulted in specific lost profits. However, at trial, Hayward made exactly zero attempt to provide the jury with evidentiary support for discrete lost profits for each tort. This was so despite that the law provides that when a plaintiff seeks its own lost profits, its "burden is at its highest." *Wing Enterprises,* 511 F. Supp. 3d at 973.

Rather than show the lost profits for particular torts, Hayward only presented evidence showing lost profits generally, indiscriminately lumping *all* of the multitude of alleged torts together in a single "lost profits" calculation. Hayward's damages expert, Ms. Saitz, testified that: (1) her damages analysis was only for Lanham Act trademark infringement and false advertising, and (2) she assumed liability as to ***all*** trademarks and ***all*** asserted false advertising statements:

> Q: Your damages are only for the trademark infringement and false-advertising claim?

10

A: Yes.

[DE 369 at 102:4-6].

> Q Okay. And [did you opine on damages under] North Carolina Unfair Deceptive Practices Act?
>
> A No. Not separately, no.

*Id.* 103:4-5.

> Q Okay. Ms. Saitz, did you undertake any effort to break these figures out on a prorated basis for each of the different trademarks or false ads that Hayward's been claiming in this case?
>
> A I did not. The information contained in my report does break out by the different types of T-Cells, but I didn't have the information necessarily to do that because there were so many different claims and phrases placed in different parts of the ad that it would not necessarily be something I would be able to do.

*Id.* at 58:3-12.

> Q When you said in your report that it covers all the Lanham Act claims, what were you referring to?
>
> A So generally my understanding is that the Lanham Act provides the same types of remedies for false advertising, as well as trademark infringement. And so my calculation – ***I did, essentially, a single calculation. I did not do separate calculations for trademark infringement versus false advertising***.

*Id.* at 99:25-100:7 (emphasis added). In a sidebar during Ms. Saitz testimony, the Court recognized the fallacy in this approach by Hayward, putting all of its proverbial eggs in one basket, if the jury returned a split verdict, just as it ultimately did:

> MS. SERAPHINE: Right. But the problem is that, if that's the false-advertising claim that the jury says, at the end of the day -- or let's use a different one because I think that one's not -- what if the jury, at the end of the day, says we disagree with trademark infringement, we disagree with false advertising, except for this one statement?
>
> THE COURT: What you're going to have to do, then, is argue it to me as to what it shows, not to her. I mean, she has no idea –

MS. SERAPHINE: Right.

THE COURT: -- she's -- she came up with – she assumes all this liability. Let's say that there were -- you had five causes of action, and only one of them cost $22 million in damages. They get the 22 for that one, even if you win on the other four. ***Now, it's going to have to be related to it. And I'm sure there will be motions if there's a verdict for them, and it has some you win on and some you lose on. We'll have to – the Court will have to take a look at that and try to figure that out.***

*Id.* at 110:6-25 (emphasis added). Indeed, Hayward's counsel acknowledged that Ms. Saitz did not opine on the impact to her damages analysis if the jury found for Hayward on only some of the asserted marks and/or false advertisements:

MS. SERAPHINE: Well, I mean, I was going to ask her -- there's four false-advertising claims, right? Four statements saying one false-advertising claim and four false-advertising claims. And let's just call them, 1, 2, 3, and 4. And the jury finds no false advertising in 3, and yes, false advertising on 1, the only damages you get are from the ads that have that statement in it, not from ads that only have one of the other three statements in it.

MR. BELT: I don't know that she even opined on that.

THE COURT: Yeah. But what you could ask her – if there's three of them -- three -- if they find one, but don't find the other three, you've not set -- you've not figured out how the damages are impacted, have you?

MS. SERAPHINE: Okay.

MR. BELT: Yeah, because that's –

HE COURT: And the answer is, she's not done that.

MR. BELT: That's not necessarily –

MS. SERAPHINE: Okay.

THE COURT: Then they can ask -- well, then you can argue it. It doesn't have to -- I mean, we're going to – she can ask that. I'm going to let her ask that. This is cross-examination of your expert.

*Id*. at 114:11-115:7. Ms. Saitz then confirmed that if liability was not found as to **_all_** of the trademarks **_and_** as to **_all_** of the false advertisements, then the damages would have to be appropriately apportioned; but that she, and Hayward, did not supply that evidence:

> Q Okay. And I also asked you what would happen hypothetically if the jury found trademark infringement on only one of the trademarks or only one of the statements alleged as false advertising by Hayward. And you said, "You would have to look at the ad to see which ads contained the marks and see the ultimate sales. So I believe you would have to apportion both." Does that sound right?
>
> A Yes, I'm not sure what I believe you would need to "apportion both" means, but I think, yes, you would -- if there was a finding of liability on certain elements and not others, there would be an apportionment exercise.
>
> Q And by "apportionment," you mean separated out? Is that what you –
>
> A Correct.

*Id*. at 117:15-118:3.

> Q If the jury were to find that BlueWorks or Ningbo CF infringed some of those nine trademarks, but not others, you haven't offered an opinion as to what the damages should be in that case; is that right?
>
> A Correct.
>
> Q And you understand that there's a false-advertising claim and that there's different statements that are alleged to be either false or misleading that my client made; is that right?
>
> A Yes.
>
> Q Okay. And let's say you call them Statements 1, 2, 3, and 4 just to kind of fast-circuit it. If the jury were to find that one of the statements was false and misleading, but Statements 2, 3, and 4 were not misleading or false, you haven't offered a damages opinion or an opinion on what the damages should be in that particular circumstance; is that right?
>
> A That's correct.

*Id*. at 118:10-119:1. Instead, Hayward provided one number—Hayward's total purported lost profits—and assumed Defendants were liable for ***both*** infringement of ***all*** of its trademarks ***<u>and</u>*** for ***all*** the asserted false advertising statements. However, the jury returned a split verdict, finding for Defendants Blueworks and Ningbo C.F. on trademark infringement, but for Hayward on false advertising. Because Hayward failed to provide the jury with any evidence or analysis of how many sales Hayward lost as a result of Defendants' false advertising, Hayward failed to meet its burden of demonstrating its damages on its false advertising claim alone.

Specifically, Hayward should have gone through each of the Amazon sales that Blueworks made, and identified which sales contained each of the asserted false advertising statement. Hayward's damages expert, Ms. Saitz, admitted that she could have conducted this analysis using the data that she had available ***if she had dug deeper***, but that she didn't—instead, she only determined damages assuming liability as to ***all*** of the trademark claims ***<u>and all</u>*** of the false advertising statements combined:

> Q And [Ms. Seraphine] also asked you why you didn't parse out your damages based on all the different trademarks at issue and all the false ads. Do you remember that?
>
> A Yes.
>
> Q And why didn't you parse out all the different alleged infringements and false ads in your calculations?
>
> A I didn't have the ability to do that, not -- in all cases, I didn't necessarily know what ad was associated with the sale, particularly for Ningbo. I didn't know everything that was on a particular Amazon page. There was just so much data to parse through. I don't know how one would do that.
>
> Q But from your data and calculations that you looked at and did to render this opinion, you could still figure out the damages if it did have to come down to a per-trademark or per-false-ad finding by the jury, correct?
>
> A I suppose I could look at the data that I had. So if it was just, say, T-Cell-15, that could be easily ascertainable. If there was something like a claim

about "made in the USA" or "USA manufacturer," I think I would have to look at the data and see if I could ascertain that. ***There's certainly things that you could do to see what's -- if you dig deeper into the data***.

*Id*. at 128:1-22 (emphasis added). And to be certain, Hayward produced zero evidence that Blueworks ever used the asserted "NSF-certified" or "OEM" false advertising statements (there was only limited evidence that Ningbo C.F. used these two statements), so the false advertising claim as against Blueworks boils down to (1) statements of compatibility, and (2) statements of geographic origin ("cell plates made in the USA"/"cell plates made by a USA company"). As argued in Defendants' Opposition to Hayward's Motion for a Permanent Injunction, [DE 386], the jury could not have found on the one hand that Defendants' use of Hayward's trademark to describe that its salt cell is compatible with Hayward's products was ***fair use***, and at the same time found that such compatibility statements were false. So, based on Hayward's own evidence, and based on the jury's finding, the jury's verdict against Blueworks with respect to false advertising could only have related to the statements of geographic origin ("cell plates made in the USA"/"cell plates made by a USA company"). Ms. Saitz expressly admitted that she did not determine what damages Hayward suffered (if any) as a result of Blueworks' use of these statements in advertising. *Id*. at 128:1-22.

For Ningbo C.F., Hayward proffered less than ten emails and two advertisements on the website Alibaba all between 2017-2018 as evidence of ***some*** (not all) of the asserted false statements, [PTX021A, PTX021C-D, PTX075, PTX077, PTX078, PTX082, PTX086], but demonstrated zero evidence as to how many sales Ningbo C.F. made with respect to those handful of emails and Alibaba advertisements, or even that Hayward would have made those sales if Ningbo C.F. had not. To the contrary, the evidence demonstrated that Ningbo C.F. sold its salt cells white label to pool distributors to put their own marks on the product, such that Hayward in

15

fact would not have made any of those sales. [DE 369 at 104:11-20]. At a minimum, Hayward failed to prove *any* damages resulting from any purported false advertising by Ningbo C.F. such that recovery is prohibited as to Ningbo C.F. See *Rainbow Play Systems, Inc.*, 364 F.Supp.2d at 1033 ("Recovery is prohibited if a plaintiff fails to prove that a defendant's actions caused the harm claimed.").

Where Hayward failed "***the core requirement to 'show economic or reputational injury flowing directly from the deception wrought by the defendant's advertising,'***" which necessitates judgment as a matter of law with respect to Hayward's Lanham Act false advertising claim. *Verisign, Inc.*, 848 F.3d at 299-300 (emphasis added).

### C. <u>Hayward Failed to Prove Damages Under the UDTPA</u>

As demonstrated above, Hayward also wholly failed to provide *any* evidence of damages that it purportedly suffered as a result of any violation of the UDTPA. Ms. Saitz testified that she did not even perform that analysis—she did not opine as to what any damage amount would be under the UDTPA. [DE 369 at 103:4-5]. Hayward proffered *zero* evidence of what its damages were under the UDTPA. Over Defendants' objection, [DE 370 at 38:5-9], the verdict form contained a single line for all of Plaintiff's actual damages found under the Lanham Act and the UDTPA combined. [DE 353]. Defendants' proposed a separate line item for any damages under the UDPTA [DE 370 at 53:19-54:3]. The Court acknowledge the "wild card" of the UDTPA:

> THE COURT: I was talking about the wild card. The -- since unfair and deceptive is a finding by the jury which allows treble damages in North Carolina, we got -- that one is going to have to be specifically set aside.
>
> MS. TRIMMER: I agree with your Honor.
>
> THE COURT: That's going to have to be a separate one.
>
> MS. TRIMMER: I understand that and I agree because there is the additional element of the causation that has to be proven with North

Carolina. I would just point out, too, that that's a state claim, so that would relate to damages in North Carolina. It couldn't treble the entire amount. There is case law that that would only -- that would only apply to the sales that were made in North Carolina because it's -- a North Carolina state statute wouldn't have jurisdiction over sales that were made outside of North Carolina.

MR. FERGUSON: I don't know that law, your Honor. I think, if the act occurred in North Carolina, it's enough, and BlueWorks is obviously here in Pineville.

THE COURT: Well, we'll worry about that later when the -- I -- if the Court gets involved, both in signing a judgment and in remitting damages if they've gone over the top on what the Court has seen here. And again, we're not going to be involved in jackpot justice. So it's a lot easier to treble 800,000 than 22 million.

[DE 370 at 40:23-41:23]. Defendants' proposed a separate line item for any damages under the

UDPTA [DE 370 at 53:19-54:3]:

THE COURT: Yeah. We'll have to figure out what we're going to do about unfair and deceptive trade practices if they find it.

MS. TRIMMER: We do have a separate line item for any damages above for deceptive trade practices.

THE COURT: If it gets to that, the Court will see what happens. In other words, if it goes -- if, under the theory, they were to go, on deceptive trade practices, 22 million, which would be trebled, the Court believes that would be beyond the pale and would probably remit a portion of that, so just so everybody knows. On the other hand, if it's some other figure that is reasonable, then the Court will leave it be -- let it stand. So . . .

[DE 53:16-54:3]. However, this separate line for UDTPA damages proposed by Defendants was

removed, over Defendants' objection, before the verdict form was submitted to the jury. [DE 353].

Therefore, because damages found under the Lanham Act were combined with any damages found

under the UDTPA on the verdict form, it is impossible to ferret out what part of the damages award

relates to the jury's finding under the UDTPA:

17

> **10.** If you find for Plaintiff Hayward on its claim for trademark infringement, false advertising, and/or the North Carolina Unfair and Deceptive Trade Practices Act what amount of Plaintiff Hayward's lost profits do you find should be awarded to Plaintiff Hayward?
>
> $ 4,900,000 (enter an amount)

Indeed, the jury was instructed:

> THE COURT: On Hayward's unfair and deceptive trade practice claim, if you find that Hayward suffered an injury and defendant's conduct was a proximate cause of that injury, Hayward would be entitled to recover nominal damages, even without proof of actual damages. Nominal damages consist of some trivial amount, such as $1, in recognition of the technical damage caused by the wrongful conduct of the defendant. Hayward may also be entitled to recover actual damages on this issue, and the burden of proof is on Hayward. This means that Hayward must prove by a preponderance of the evidence the amount of damages sustained, if any, as a result of the injury. Finally, as to this issue on which Hayward has the burden of proof, if you find by a preponderance of evidence the amount of actual damages sustained by Hayward, then it would be your duty to write that amount in the blank space provided on the verdict form. If, on the other hand, you fail to so find, it would be your duty to write a nominal amount, such as $1.

[DE 370 at 143:16-144:8]. Because the damages were combined for both the jury's finding of false advertising as to both Blueworks and Ningbo C.F., and violation of the UDTPA also as to both Blueworks and Ningbo C.F., it is impossible to determine what portion of those damages relate to the UDTPA. Indeed, because Hayward entirely failed to proffer any evidence of its damages under the UDTPA, no amount more than the nominal award of $1 has sufficient evidentiary support.

Moreover, to the extent Hayward was awarded damages under the UDTPA, it would not be entitled to recover damages under the statute for conduct occurring outside North Carolina. As courts in this jurisdiction and elsewhere have recognized, ***giving extraterritorial reach to the state UDTPA and its treble damages penalty would violate the Due Process and Commerce Clauses***

18

*of the United States Constitution*. *See Am. Rockwool, Inc. v. Owens-Corning Fiberglass Corp.*, 640 F. Supp. 1411, 1436–37 (E.D.N.C. 1986) (applying North Carolina's treble damages penalty to conduct outside the state did "not comport with due process requirements" and "would also place a significant burden upon a company engaged in interstate commerce to determine the magnitude of its potential liability for multi-state conduct," thus imposing a "not incidental" burden on interstate commerce) (emphasis added); *Se. Coastal Dev. Fund, LLC v. Commercial Real Estate Inc.*, No. 5:08-CV-15-F, 2009 WL 928543, *12 (E.D.N.C. April 3, 2009) (same).

The basis for this rule is that "no law has any effect, of its own force, beyond the territorial limits of the sovereignty from which its authority is derived." *Gen. Elec. Capital Corp. v. Renew*, 122 F. App'x 604, 607 (4th Cir. 2004) (quoting *Ex Parte First Pa. Banking and Trust Co.*, 148 S.E.2d 373, 374 (S.C. 1966)). "The Commerce Clause . . . precludes the application of a state statute to commerce that takes place wholly outside of the State's borders, whether or not the commerce has effects within the State." *Edgar v. MITE Corp.*, 457 U.S. 624, 642–43 (1982) (invalidating Illinois statute as a "direct restraint on interstate commerce" and having a "sweeping extraterritorial effect"); *see also S. Pac. Co. v. Arizona ex rel. Sullivan*, 325 U.S. 761, 775–83 (1945) (striking down state law where the "practical effect of such regulation is to control [conduct] beyond the boundaries of the state"); *Shafer v. Farmers' Grain Co. of Embden*, 268 U.S. 189, 199 (1925) ("[A] state statute which by its necessary operation directly interferes with or burdens such commerce is a prohibited regulation and invalid, regardless of the purpose with which it was enacted.").

Thus, the Court should reject any argument by Hayward that the UDTPA has effect beyond North Carolina. Specifically, here, while Blueworks is located in North Carolina, Ningbo C.F. is not and Hayward failed to demonstrate that any of Ningbo C.F.'s conduct reached North Carolina.

19

Indeed, the Alibaba ad shown was a European advertisement, at least one of the emails proffered was to a customer in Canada, and *none* of the emails was to a North Carolina customer. Moreover, Blueworks' combined sold units in North Carolina constitute only 3.7% of its total sales[2]. *See* [DTX 1, 321, 322, 323 and 324]. Only those damages awarded under the UDTPA are subject to the automatic trebling provision of the UDTPA. N.C. Gen. Stat. § 75-16. The NC statute does not support trebling of damages awarded under the Lanham Act. Because the Verdict Form forced the jury to combine all damages under both the Lanham Act and the UDTPA as against both Ningbo C.F. and Blueworks, there is no way to determine what portion of the $4.9 million was awarded as damages under the UDTPA. Moreover, it violate the Due Process and Commerce Clauses of the United States Constitution to treble any damages for conduct occurring outside North Carolina.

### D. Hayward Presented No Evidence of Temporal Connection

Hayward's failure to provide evidence as to lost profits for each discrete tort is compounded by the paucity of evidence presented to the jury which consisted of a limited number of data points from a small collection of Amazon.com screen captures along with a few emails. Hayward's expert Ms. Saitz testified that she calculated lost profits combined for Defendants Ningbo C.F. and Blueworks for a date range from 2016 – 2023, merely providing one lump sum figure of lost profits for a period spanning *eight years*. [DE 369 at 40:20-22; 45:14-19; 96:16-20; 127:18-20].

Despite claiming lost profits for a period of approximately ***2,920 days***, the only evidence Hayward submitted to the Jury consisted of approximately 55 discrete Amazon.com screen captures [PTX021C (2018), PTX023A-J (2019), PTX024A-C (2020), PTX025A-F (2021),

---

[2] Based on Amazon sales data, Blueworks sold 1,442 units in North Carolina out of 39,174 total sales on Amazon. *Id*.

PTX026A-I (2022), PTX027A-P (2023), PTX028, PTX032-34, PTX036-37, PTX041, PTX044, PTX289] with respect to Blueworks, and around eight Ningbo C.F. emails to eight single customers [PTX021A-B, PTX021D, PTX075, PTX077, PTX078, PTX082, PTX086] and two Alibaba ads [PTX035, PTX038] all between 2017-2018 with respect to Ningbo C.F. At the outset of trial, answering the Court's question concerning whether "either side [thought] to bring someone from Amazon.com" to testify as to how long an Amazon advertisement was available to the public [DE 364 at 30:11-13], counsel for Hayward admitted that "[n]o, we did not bring someone in from Amazon...." *Id*. at 30:14-16. Indeed, no person from Amazon testified and no other evidence substantiating when and for how long the Amazon listings were available to the public was presented to the Jury. At most, the evidence showed that the Amazon listings were available on the date captured as shown in the screen captures. Hayward's actual damages model as supported by the expert opinion testimony of Ms. Saitz is utterly dependent on these Amazon.com having been published online for the *entirety* of the damages period – but Hayward utterly *failed* to provide evidence of such publication as was their burden. Absent such evidence of continuous publication of all the alleged advertisements, Hayward's lost profit calculation – its "core requirement," *Verisign*, 848 F.3d at 299-300 – is not supported by the evidenced proffered by Hayward at trial and "[r]ecovery is prohibited...." *Rainbow Play Systems*, 364 F.Supp.2d at 1033.

Hayward did not present evidence to the jury showing how many sales were made by Blueworks on the limited dates when the Amazon.com listings were publically available, much less, evidence showing that it was the advertisements and trademarks themselves that, on those dates, caused Blueworks to gain a sale and Hayward to lose a sale.

At bottom, Hayward was unable to provide more "than a scintilla of evidence to support its claim.'" *Mathis*, 69 F.4th at 242. Indeed, Hayward merely speculates that the Amazon.com listings were continuously available over the course of over 2,900 days despite only providing how the Amazon.com listing appeared on a handful of days each year. For this reason, Hayward failed to supply evidence supporting its damages model and judgment in Defendants favor is appropriate pursuant to Rule 50(b).

### E. Hayward Presented No Evidence of Causation

In seeking to recover its lost profits, Plaintiff failed to establish any evidence of causation, as required under both the Lanham Act and the UDTPA. Hayward's damages expert Ms. Saitz testified that "causation is something that experts consider," but in determining that Hayward would have made every sale that Defendants made—otherwise discounting all of the other third parties selling aftermarket replacement salt cells for Hayward systems—but for Defendants' false advertising, Ms. Saitz *assumed* causation. In other words, Ms. Saitz automatically attributed every salt cell sale made by Defendants over the last seven years to all of the allegedly false statements made by Defendants. ***This exact approach to Lanham Act damages has been rejected as insufficient to support a lost profits award***. *See, e.g., 3M Innovative Properties Co. v. Dupont Dow Elastomers LLC*, 361 F. Supp. 2d 958, 973 (D. Minn. 2005) (criticizing damages expert's theory because "it has not been linked to the specific advertising claims challenged here, an critical omission given the many claims made in this advertising.").

There are two Fourth Circuit cases that are particularly instructive on this issue, and that dictate a judgment as a matter of law of no lost profits damages is appropriate here. First, in *PBM Products*, Mead Johnson counterclaimed under the Lanham Act, claiming that PBM falsely advertised its generic baby formula by stating "compare to Enfamil" on its product label. 2010 WL

723750, *1. In order to prove damages, Mead Johnson proffered an economist who conducted a market share analysis to approximate the lost sales. *Id*. at *5. At the close of Mead Johnson's case on its counterclaims, the district court granted PBM's motion for judgment as a matter of law, concluding that Mead Johnson failed to prove loss causation. *Id*. The district court explained that, "[a]lthough a market share analysis is a well-established approach to calculating damages, that approach can only be applied to sales that were caused by PBM's 'compare to' advertisement." *Id*. However, the expert, like Hayward's here, "assumed that every PBM sale made was attributable to the 'compare to' ad on the products and that PBM would not have made any other sales but for the ad." *Id*. Accordingly, the court found that the expert's calculations may have shown that Mead Johnson suffered damages, "but [they] did not show that those damages were caused by PBM's accused advertisement." *Id*.

On appeal, the Fourth Circuit affirmed and found that "the district court correctly concluded that Mead Johnson cannot prove that the 'compare to' language caused any damages." *PBM Products v. Mead Johnson*, 639 F.3d 111, 122 (4th Cir. 2011). The court further explained that Mead Johnson committed a "fatal flaw" because "its expert assumed that every sale PBM made was attributable to the 'compare to' statement on the product." *Id*. Here, Hayward's showing is even worse, because its expert does not just assume that every sale made by Defendants was attributable to an allegedly false statement, but that ***every sale made by Defendants was attributable to <u>all</u> of the allegedly false statements <u>and</u> <u>all</u> of the alleged trademark infringement, combined and without differentiation.*** Just like Mead Johnson, Hayward has not proven that the allegedly false statements, let alone any particular statement, caused any damage to Hayward, and, like PBM Products, a judgment as a matter of law as to no lost profits damages is warranted.

23

**F.  Statute of Limitations and Laches Prevent Award of Any Damages.**

A claim under the UDTPA must be brought within four years after a cause of action accrues.  N.C. Gen. Stat. § 75-16.2.  For a UDTPA claim based on fraudulent conduct or a misrepresentation, the violation occurs "at the time that the fraud is discovered or should have been discovered with the exercise of reasonable diligence." *Withers v. BMW of N. Am., LLC*, 560 F. Supp. 3d 1010, 1018 (W.D.N.C. 2021) (quoting *Dreamstreet Invs., Inc. v. MidCountry Bank*, 842 F.3d 825, 830 (4th Cir. 2016)).

The Lanham Act does not have a statute of limitations but rather borrows from an analogous state statute, here the NC fraud statute which has a ***three-year*** limitations period, see N.C. Gen. Stat. § 1-52(9).  *Mountaineer Motors of Lenoir, LLC*, 2023 WL 6931787, at *10 (finding the analogous statute for Lanham Act false advertising claim is North Carolina's fraud statute) (citing *PBM Products, LLC*, 639 F.3d at 121 (using the Virginia fraud statute, Va. Cod. § 8.01-243(A), as the analogous state statute for a false advertising claim under the Lanham Act); *Unlimited Screw Products, Inc. v. Malm*, 781 F. Supp. 1121, 1125 (E.D. Va. 1991) ("A number of courts have concluded that claims under section 43(a) of the Lanham Act are most analogous to fraud claims.").  Further, courts use the equitable doctrine of laches to determine if false advertising claims are timely. *Mountaineer Motors of Lenoir, LLC*, 2023 WL 6931787, at *10 (citing *What–A–Burger of Virginia v. Whataburger of Corpus Christi, Texas*, 357 F.3d 441, 449 (4th Cir. 2004)). "When a false advertising plaintiff files suit outside of the statute of limitations, both elements of laches—unreasonable delay and prejudice—are strongly presumed." *Id.* (internal quotation omitted). Importantly, "***the presumption of laches is triggered if any part of the claimed wrongful conduct occurred beyond the limitations period.***" *Id.* (emphasis added) (quoting *Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829, 837 (9th Cir. 2002), cited with approval by

*PBM Products, LLC*, 639 F.3d at 122).

Here, evidence was presented at trial that Hayward not only was aware of Ningbo C.F. as early as August 4, 2016, but also at that time had an email advertisement from Ningbo C.F. making many, if not all, of the false advertising statements asserted against Ningbo C.F. [DTX-145]. Hayward never attempted to contact Ningbo C.F. at that time or for more than four years until it filed this lawsuit against Ningbo C.F., *inter alia*, on December 18, 2020—more than four years, four months, and 14 days after Hayward knew that Ningbo C.F. was making these statements to its customers—well after the three-year statute of limitations applied to Hayward's Lanham Act claim and the four-year statute of limitations applied to its UDTPA claim. Accordingly, Hayward's claims are barred by the equitable doctrine of laches and no damages should be awarded as against Ningbo C.F.

The evidence at trial showed that Hayward also knew about Blueworks and its advertising at least as early as October 31, 2017. [DTX 148]. And yet, Hayward wait more than three years before asserting its claims against Blueworks on December 18, 2020. At a minimum, Hayward's Lanham Act claim against Blueworks is barred by the equitable doctrine of laches. Therefore, no damages should be awarded as against Blueworks.

## IV.    CONCLUSION

For all of the reasons stated here, Defendants respectfully request the Court enter judgment as a matter of law under Rule 50(b) in Defendants' favor with respect to Count I, false advertising under the Lanham Act and Count XIX, violation of the NC UDTPA; and in Ningbo C.F.'s favor with respect to Count XXI, copyright infringement. In the alternative, Defendants seek a new trial as to these claims under Rule 59.

Dated: April 30, 2024                    Respectfully submitted,

/s/ Christina Davidson Trimmer
Christina Davidson Trimmer
NC Bar No. 44857
Samuel Alexander Long, Jr.
NC Bar No. 46588
SHUMAKER, LOOP & KENDRICK, LLP
101 South Tryon Street
Suite 2200
Charlotte, North Carolina 28280
Tel: (704) 375-0057
Fax: (704) 332-1197
Email: ctrimmer@shumaker.com
        along@shumaker.com

Michelle C. Dunn
Platinum Intellectual Property
3031 Tisch Way, Suite 110 PW
San Jose, CA 95128
Tel: 404-800-5884
Fax: 877-463-0654
Email: michelle.dunn@platinum-ip.com

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on April 30, 2024, the foregoing document was served on all counsel of record using the Court's CM/ECF system, which will send notification of such filing to any CM/ECF participants.

Respectfully submitted,

*/s/ Christina Davidson Trimmer*
Christina Davidson Trimmer
NC Bar No. 44857
SHUMAKER, LOOP & KENDRICK, LLP
101 South Tryon Street
Suite 2200
Charlotte, North Carolina 28280
Tel: (704) 375-0057
Fax: (704) 332-1197
Email: ctrimmer@shumaker.com

27