**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION**

| | |
|---|---|
| HAYWARD INDUSTRIES, INC., | |
| Plaintiff, | |
| v. | Civil Action No. 3:20-cv-00710-MOC-SCR |
| BLUEWORKS CORPORATION, BLUEWORKS INNOVATION CORPORATION, NINGBO C.F. ELECTRONIC TECH CO., LTD., NINGBO YISHANG IMPORT AND EXPORT CO., LTD., | |
| Defendants. | |

## <u>DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION FOR A NEW TRIAL UNDER FED. R. CIV. P. 59</u>

# TABLE OF CONTENTS

I.    INTRODUCTION…………………………………………………………………...1

II.   FACTUAL BACKGROUND…………………………………………………………..2

      A.    Hayward's Complaints…………………………………………………………….2

III.  NEW TRIAL STANDARD…………………………………………………………….6

IV.   ARGUMENT…………………………………………………………………………...7

      A.    The Court Improperly Allowed the Admission of Evidence Related to
            Hayward's Unpled and Undisclosed Geographic Origin Theory…………………7

      B.    The Court Improperly Directed Verdict, *Sua Sponte*, on Hayward's Unpled
            Alter Ego Theory and Improperly Instructed the Jury on Alter Ego………………14

            1.    The Legal Standards for a *Sua Sponte* Directed Verdict, Generally……..14

            2.    "Alter Ego" is a Claim which Must be Pled in a Complaint……………..16

            3.    The Legal Standards for an Alter Ego Cause of Action…………………17

            4.    Analysis…………………………………………………………………..19

      C.    Hayward's Claims under the UDTPA Were No Pled with Particularity and
            Defendants did not have a Fair Chance to Respond to the Allegations…………..21

            1.    Claims under the UDTPA Must Be Pled with Particularity……………..21

            2.    Pleading with Particularity Provides Fair Notice of Scope
                  of Allegations……………………………………………………………21

            3.    Hayward's Complaint Failed to Meet the Heightened Pleading
                  Standard under the UDTPA for False Advertising………………………23

V.    CONCLUSION………………………………………………………………………...24

i

# I. INTRODUCTION

Defendants Blueworks Corporation ("Blueworks Corp."), Blueworks Innovation Corporation ("Blueworks Innovation"), Ningbo C.F. Electronic Tech Co., Ltd. ("Ningbo C.F."), and Ningbo Yishang Import and Export Co., Ltd. ("Ningbo Yishang") (collectively, "Defendants") respectfully submit this memorandum in support of their Motion for a New Trial [DE 376] on Hayward Industries, Inc.'s ("Hayward") claims for false advertising under the Lanham Act (Count I) [DE 57 at ¶¶122 – 132], violation of the NC UDTPA (Count XIX) [DE 57 at ¶¶269 – 284], pursuant to Fed. R. Civ. P. 59(a). Defendants move for a new trial as to these claims on three bases:

*First*, the Court improperly permitted Plaintiff Hayward to present to the jury evidence on its geographic origin theory (*i.e.*, "cell plates made in the USA" and "cell plates made by USA Company") of its false advertising claim, which Hayward neither pled in its Operative Complaint nor included or supplemented in its discovery responses. This newly raised theory of the case was first raised *months* after discovery closed such that Defendants were prejudiced by not having had the opportunity to take discovery from its suppliers. Hayward itself even complained about this lack of discovery, for example, from Magneto, and ultimately argued to the jury that it should consider this lack of evidence adversely to Defendants. [DE 370 at 76:25-77:5] (arguing the jury should not "believe a thing [Mr. Chen] says" because he did not present documents from Evoqua). Indeed, the only portion of the jury verdict in Hayward's favor ultimately boiled down to this single unpled, undisclosed, and highly inflammatory allegation. This error in allowing evidence that was not properly in the case resulted in a manifest injustice to Defendants.

*Second*, the Court improperly *sua sponte* directed verdict on Hayward's unpled *alter ego* theory. In the Fourth Circuit, as elsewhere, a district court may *only* issue a directed verdict where, construing the evidence and all inferences in a light most favorable to the non-moving party, such

1

evidence points but one way and is susceptible to no reasonable inference which may support the opposing party's position.[1] The district court must issue findings of fact and conclusions of law to support its directed verdict and may *only* enter a directed verdict *sua sponte* where a party has notice and an opportunity to come forward with all evidence or face an adverse judgment. Further, a claim for *alter ego* must be pled in the operative complaint and ultimately proven. Piercing the corporate veil is a fact-intensive inquiry and the burden rests with the party asserting the claim. Under North Carolina law, the party asserting *alter ego* must prove several requisite elements including, *inter alia*, "complete domination, not only of finances, but of policy and business practice...." *Glenn v. Wagner,* 313 N.C. 450, 455, 329 S.E.2d 326, 330 (1985); *Vitol, S.A. v. Primerose Ship. Co. Ltd*., 708 F.3d 527, 545 (4th Cir. 2013) ("actual domination and control essential to prove an alter ego claim"). Here, *alter ego* was not pled in the operative complaint, Hayward failed to present evidence at trial in support of *alter ego*, and Defendants did not have a fair opportunity to be heard prior to the court's *sua sponte* directed verdict which was, in any event, entered without any factual finding that any of the Defendants disregarded the corporate form.

*Third*, Hayward's claims under the North Carolina Unfair and Deceptive Trade Practices Act ("UDTPA"), were not pled *with particularity* as required under North Carolina law.

## II.   FACTUAL BACKGROUND

### A.   <u>Hayward's Complaints</u>

Hayward brought its Original Complaint [DE 1] on December 18, 2020 and filed an Amended Complaint on October 7, 2021. [DE 57]. The Amended Complaint [DE 57] included 21 separate counts, including: Count I: Lanham Act False advertising. The Amended Complaint [DE

---

[1] The Fourth Circuit will review this Court's directed verdict, *de novo*. *Horne v. WTVR, LLC*, 893 F.3d 201, 210 (4th Cir. 2018).

57] only states a theory of false advertising that is based on allegations of misrepresentations with respect to Defendant's products and their compatibility and/or association with Hayward's products. *See, e.g.*, [DE 57 at ¶124] ("In advertisements for salt cells that compete with Hayward's trademarked salt cells, Defendants advertise, offer for sale, and sell in interstate commerce certain products that are represented as a 'direct replacement' for, or 'compatible' with Hayward products; that 'operates same as original cell,' 'meets and exceeds original specifications'; that is a 'cell original: same as Hayward'; and is 'NSF' certified, among other statements alleged above.") (hereinafter Hayward's "compatibility theory" of false advertising).

Hayward also did not plead a claim for *alter ego* in its Original Complaint [DE 1], as noted in the Court's Order on Defendant's Motion to Dismiss. [DE 22] (And, ***although not explicitly stated***, Plaintiff argues this Court has personal jurisdiction over both Ningbo Defendants under an 'alter ego' theory of jurisdiction…'One company blurs into the other.") (emphasis added). Hayward did not add any allegations to support *alter ego* when it subsequently filed its Amended Complaint. [DE 57]. Defendants Answered the Amended Complaint on October 20, 2021. [DE 58], [DE 59], [DE 60].

During this same time period, each of Defendants served interrogatories pursuant to Rule 33, to which Hayward responded with verified answers on December 22, 2021, and March 23, 2022. *See* [DE 296-01—296-04]. In particular, as discussed above, so that Defendants might understand precisely the various claims made against them, each of Defendants asked Hayward to "[i]dentify and describe with particularity each and every action taken by [Defendants], that [Hayward] contend[s] to be a violation of the Lanham Act, the North Carolina Unfair and Deceptive Practices Act, or North Carolina Common Law." [DE 296-01 at Rog. No. 1, p. 5; DE 296-02 at Rog 14, p. 18; DE 296-03 at Rog 12, pp. 15-16; and DE 296-04 at Rog 1, p. 4] . Hayward,

to its credit and as required under Rule 33, responded with the requested particularity, in relevant part as to Hayward's false advertising claim:

> As to the Interrogatory from Ningbo CF [DE 296-01 at Rog 1, pp. 6-7]:
>
> In addition, Defendants makes numerous false and misleading statements in connection with the sale and advertisements with its salt cells. The ads are falsely advertised by including a number of false and misleading statements e.g., "direct replacement," approved by the "NSF," "top manufacturer specialized in pool chlorinator," "OEM for American and European leading salt chlorinator companies," and "same as Hayward." Furthermore, Defendants use the Hayward Marks and registration or trademark symbols to appear to be affiliated with Hayward.

As to the Interrogatories from Blueworks [DE 296-02 at Rog 14, p. 19] and Blueworks Innovation DE 296-03 at Rog 12, p. 17]:

> In addition, Blueworks makes numerous false and misleading statements in connection with the sale and advertisements with its salt cells. The false statements include: calling its cell a "T-cell," "compatible with" Hayward systems, "2 full years warranty," "universal compatibility," "meets or exceed original specifications," "the perfect replacement for Hayward Goldine Aqua Rite, AuqaLogic, Pro Logic, Swim Pure...AquaPlus, Blue Essence," "operates in the same way as your original cell," "generic Hayward," "same cell supplier as the original," "direct replacement," and/or "NSF" certified, among other statements. Furthermore, Blueworks uses the Hayward Marks and registration or trademark symbols to appear to be affiliated with Hayward.

In response to Ningbo Yishang's Interrogatory, Hayward does not identify any alleged false statements. Hayward never identified any allegations relating to its geographic origin theory of false advertising, specifically, Hayward never raised issue with Defendants' alleged "cell plate made in the USA" advertising.

Hayward supplemented its responses to several of Defendants' interrogatories throughout 2022, but never supplemented its response to the interrogatories at issue here. *See* [DE 296-05] (Hayward's Supplemental Responses to Ningbo CF's First Sets of Interrogatories); [DE 296-06] (Hayward's Supplemental Responses to Ningbo Yishang's First Set of Interrogatories; and [DE

4

296-07] (Hayward's Supplemental Responses to Blueworks' First Set of Interrogatories) (DE 296-01—296-07 collectively referred to as "Responses to Defendants' Interrogatories"). Fact discovery closed on January 17, 2023.

Months after the close of discovery, on May 15, 2023, Hayward filed its Motion for Summary Judgment [DE 119] and Supporting Memorandum [DE 120] with respect to its claims for "Claims of Trademark Infringement, False Advertising, Passing-Off, and Unfair Competition". For the first time in the litigation, and ***four months after the close of fact discovery***, Hayward made allegations that underpin its geographic origin theory of false advertising:

> Defendants make the following misrepresentations, among others, about their knock-off salt cells in their ads ... "Made in USA same as 'Hayward'" ... None of these claims are true. For instance, Defendants' own co-owner and CEO, Richard Chen, admitted that Defendants' salt cells, including key components known as "blades" or "cell plates," are not made in the USA but rather are made in China....

[DE 125 at 1-2]. Hayward's geographic origin theory of false advertising was a major theme of Hayward's Summary Judgment Motion. *See id*. at pp. 5-6. Indeed, Hayward led with its geographic origin theory in section II of its Summary Judgment Memorandum, relegating its compatibility theory of false adverting to second tier at the bottom of page 6. *Id*.

This Court ultimately denied all of the parties respective Motions for Summary Judgment [DE 263] and via minute entry on January 29, 2024, and set Jury Trial for February 23, 2024.

On February 9, 2024, Defendants filed a Motion *in limine* to exclude evidence related to Hayward's unpled and undisclosed geographic origin theory of its false advertising claim. [DE 291]. In response, Hayward tacitly acknowledged that (1) it did not meet the heightened pleading standard of Rule 9(b) for false advertising claims and under the NC UDTPA as to its newly added allegation that Defendants' statements: "Cell Plates Made in the USA" and "Cell Plates Made by USA Company;" (2) it never supplemented its discovery responses as was required under Rule

5

26(e); and (3) it did not raise its geographic origin theory until its summary judgement motion, months after discover closed. [DE 339]. The Court denied Defendants' Motion *in limine*. [DE 364 at 48:21 – 49:1]. On the last day of trial, the Court *sua sponte* directed verdict in Hayward's favor on the unpled, and unmoved, claim of *alter ego*. [DE 370 at 14:6-7].

## III. NEW TRIAL STANDARD

A district court should grant a new trial when the verdict: (1) is against the clear weight of the evidence; (2) is based upon false evidence; or (3) will result in a miscarriage of justice. *Atlas Food Sys. & Servs., Inc. v. Crane Nat'l Vendors, Inc.*, 99 F.3d 587, 594 (4th Cir. 1996). "This review encompasses a comparison of the factual record and the verdict to determine their compatibility," *id.*, and permits weighing of the evidence and consideration of the credibility of witnesses. *See King v. McMillan*, 594 F.3d 301, 313–14 (4th Cir. 2010).

The Court may weigh evidence and consider credibility of witnesses, and must grant a new trial when the verdict is against the clear weight of the evidence even when supported by substantial evidence. *Poynter v. Ratcliff*, 874 F.2d 219, 222-223 (4th Cir. 1989).

When a new trial is sought on the basis of error in the jury charge, "[i]nstructions will be considered adequate if construed as a whole, and in light of the whole record, [they] adequately [inform] the jury of the controlling legal principles without misleading or confusing the jury to the prejudice of the objecting party." *Rowland v. Am. Gen. Fin., Inc.*, 340 F.3d 187, 191 (4th Cir. 2003) (citation and quotation marks omitted). If the answers to jury interrogatories are internally inconsistent, the court should order a new trial. Fed. R. Civ. P. Rules 49(b)(4), and 59(a), (d).

When a new trial is sought based on evidentiary errors by the district court, "[s]ubstantial errors in the 'admission or rejection of evidence' may support a new trial." *Daugherty v. Ocwen Loan Servicing, LLC*, No. 5:14-cv-24506, 2016 WL 6650856, at *2 (S.D. W. Va. Oct. 12, 2016)

(quoting *Montgomery Ward & Co. v. Duncan*, 311 U.S. 243, 251 (1940)).

## IV.   ARGUMENT

### A.   The Court Improperly Allowed the Admission of Evidence Related to Hayward's Unpled and Undisclosed Geographic Origin Theory

It was substantial error to allow Hayward to present evidence at trial in support of a theory that Defendants' advertising with respect to indications of geographic origin (e.g., "cell plates made in the USA" and "cell plates made by a USA manufacturer") constitutes "false advertising" under the Lanham Act 15 U.S.C. §1125 (a)(1)(B) and/or under the North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. §75-1.1 ("UDTPA") (collectively, hereinafter, Hayward's "geographic origin theory" of false advertising).   Neither of these statements were specifically pled as being an asserted false statement in Hayward's Complaints. Nor were either of these statements identified in Hayward's responses to Defendants' targeted interrogatories, in which Defendants asked Hayward:

> Identify and describe with particularity each and every action taken by [requesting Defendant], that You contend to be a violation of the Lanham Act, the North Carolina Unfair and Deceptive Practices Act, or North Carolina Common Law. By way of non-limiting example, this Interrogatory seeks a detailed identification of each and every advertisement by [requesting Defendant], that You contend to be infringing and/or false and misleading under Lanham Act or a violation of North Carolina law.

[DE 296-01 at Rog. No. 1, p. 5 (Hayward's Responses to Defendant Ningbo CF's First Set of Interrogatories)]; *see also* [DE 296-02 at Rog 14, p. 18 (Hayward's Responses to Defendant Blueworks' First Set of Interrogatories)]; [DE 296-03 at Rog 12, pp. 15-16 (Hayward's Responses to Blueworks Innovation's First Set of Interrogatories)]; [DE 296-04 at Rog 1, p. 4 (Hayward's Responses to Ningbo Yishang's First Set of Interrogatories)]. Hayward answered each interrogatory in detail, again specifically identifying the statements of compatibility that it alleged to be false; again, the responses contained no allegation of false advertising with respect to its

geographic origin theory. Hayward even later supplemented several of its interrogatory responses, but never sought to supplement its interrogatory responses to add its geographic origin theory of false advertising. In this way, Hayward's Responses to Defendants' Interrogatories are consistent with the allegations in Amended Complaint: Hayward's false advertising claim was always based upon its allegations of false compatibility statements.

Indeed, Hayward conceded in responding to Defendants' motion *in limine* that it first raised its geographic origin theory in its summary judgment motion—months after the close of discovery. [DE 339; cite transcript argument Day 1 at 30:2-17] (arguing that Hayward did not know "that the salt cells were actually not made in the USA, that – the cell plates, in particular – until the final day of discovery, when we finally got it out of Mr. Chen in his deposition." But that it was briefed at summary judgment months later). Despite this assertion that it did not learn of this potentially false statement until the last day of discovery, Hayward nevertheless argued that the theory was adequately pled through copies of entire advertisements included in the Complaint, which included the statement "cell plates made in the USA" (among many other statements that Hayward did not assert as false). This was not sufficient put Defendants on notice that Hayward intended to pursue those statements as false advertisement. Only one of these ads underlined the "made in the USA" phrase, but this appeared in the personal jurisdiction section of Hayward's complaint as evidence that Ningbo C.F. should be subject to jurisdiction in the U.S.—***not*** to assert that the "made in the USA" phrase was false but rather to rely on it as a true statement to support personal jurisdiction. [DE 57 at p. 7].

During oral argument with respect to Defendants' motion *in limine*, the Court acknowledged that Hayward had not met its discovery burden:

> THE COURT:…I mean, this would be a whole lot – the Court wouldn't be dealing
> with this issue if, when you did your list of what they false – what you were saying

was false advertising, you put the 'made in the USA' there because that's an easy thing to put down…You can put it on paper. It's easy to put on paper."

[DE 264 at 42:10-18]. Nevertheless, after oral argument and consideration, the Court denied Defendants' motion to exclude the evidence, stating that "it's in the pleadings, at least as part of some things. I do agree with you that – the jurisdictional issue and where its located." *Id*. at 48:24-49:1.

The law in this district is clear: "Where a UDTPA claim is based upon alleged misrepresentations or fraudulent statements, such as the claim that [the defendant] used misleading advertisements, the plaintiff must meet the heightened standard of Rule 9(b) and make its allegations with particularity." *Mountaineer Motors of Lenoir, LLC v. Carvana, LLC*, No. 522CV00171KDBDCK, 2023 WL 6931787, at *7 (W.D.N.C. Oct. 19, 2023) (citing *Cross v. Ciox Health, LLC*, 438 F. Supp. 3d 572, at 584-85 (E.D.N.C. 2020)). With respect to the Lanham Act false advertising claim, "[t]he Fourth Circuit does not appear to have addressed this issue," *id*. at *10, n.9, but numerous other courts have applied the heightened pleading standard of Rule 9(b) to Lanham Act false advertising claims. *See* [DE 296 at p. 6-7] (listing cases).

Hayward failed to make its allegations with particularity. Hayward also failed to disclose its geographic origin theory of false advertising as part of its case in discovery—first disclosing it months after the close of discovery. ***This requires exclusion of evidence at trial****. See Phillips v. Esper*, No. 1:19-CV-362, 2021 WL 10723904, at *1 (E.D. Va. Apr. 19, 2021) (excluding evidence at trial not disclosed during discovery (1) as irrelevant and unfairly prejudicial under Fed. R. Evid. 402 and 403; (2) as an impermissible attempt to interject an unpled theory under Fed. R. Civ. P. 15(a)(2); and (3) as a discovery sanction under Fed. R. Civ. P. 37(c)); *see also Goodman-Gable-Gould Co. v. Tiara Condo. Ass'n, Inc.*, 595 F.3d 1203, 1203 (11th Cir. 2010) (affirming order excluding evidence at trial of an unpled misrepresentation theory because, among other reasons,

9

the evidence had not been disclosed in response to interrogatories and explaining that condominium association had a duty to supplement its interrogatory answers).

"A person must have a 'fair chance' to respond to allegations made against him, and that opportunity must be provided in a 'reliable and orderly' fashion." *Life Techs. Corp. v. Govindaraj*, 931 F.3d 259, 265 (4th Cir. 2019), as amended (Aug. 7, 2019) (quoting *Nelson v. Adams, USA, Inc.*, 529 U.S. 460, 467 (2000)). "The Federal Rules of Civil Procedure are designed to further the due process of law that the Constitution guarantees." *Nelson*, 529 U.S. at 465. "[I]t is the complaint ... that provides fair notice to defendants of the allegations against them." *Life Techs.*, 931 F.3d at 266–67 (citations omitted). Because of this critical role served by a complaint in affording due process under the Federal Rules of Civil Procedure, "a plaintiff may not 'raise new and unadvertised theories of liability for this first time ... after the close of discovery' for doing so greatly prejudices a defendant who has 'focused their discovery efforts on the theories actually pled.'" *Phillips*, 2021 WL 10723904 at *2 (quoting *Miranda-Rivera v. Toledo-Davila*, 813 F.3d 64, 76 (1st Cir. 2016)). In this regard, the operative complaint informs the scope of evidence that may be relevant, given that it defines the causes of action and theories in support thereof, puts a defendant on notice of the claims against it, and guides the scope of fact discovery. *See Smith v. City & Cnty. of Honolulu*, 887 F.3d 944, 951-52 (9th Cir. 2018) ("A defendant suffers prejudice if a plaintiff is allowed to proceed with a new theory of recovery after close of discovery."); *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1292 (9th Cir. 2000) ("A complaint guides the parties' discovery, putting the defendant on notice of the evidence it needs to adduce in order to defend against the plaintiff's allegations.").

There is no question Defendants here are unfairly prejudice by the gamesmanship of withholding a completely new theory of liability for a false advertising claim—a claim with a

10

heightened pleading standard—until long after discovery had closed. As a result of Hayward's failure to timely disclose its geographic origin theory of false advertising in its Amended Complaint, Defendants were not afforded a "'fair chance' to respond to allegations made against [them.]" *Life Techs.*, 931 F.3d at 265 (quoting *Nelson*, 529 U.S. at 467). The same can be said of Hayward's decision not to supplement its Answers to Defendants' interrogatories, which necessarily "changes the scope of trial...." *Phillips*, 2021 WL 10723904 at *2 (citing *Hartford*, 54 F. App'x at 388). Indeed, this is precisely what happened at trial. Because Hayward improperly withheld any disclosure of geographic origin theory from Defendants until well after discovery closed, Defendants were not able to take discovery from its second cell plate provider, the US-based supplier Evoqua, which proved critical at trial.

As explained during oral argument on Defendants' motion *in limine*, and as demonstrated at trial, Ningbo C.F. originally purchased its cell plates from the same supplier that Hayward purchases its cell plates, DeNora, until mid-2018. DeNora makes its cell plates in the United States. Therefore, Defendants truthfully advertised that its "cell plates are made in the USA" while selling through its inventory of salt cells with plates made by DeNora. After DeNora, Ningbo C.F. began purchasing its cell plates from a competitor of DeNora, Evoqua, which is as U.S. company located in Pittsburgh. However, Evoqua's plates were made by its wholly owned subsidiary of Evoqua, Magneto, which is located in China. When Defendants started selling its salt cells with Evoqua plates, they changed their advertising to "cell plates made by a USA company" to reflect the cell plate supplier change. In response to Hayward's counsel's argument that "If you say 'made by a USA company,' that sounds an awful lot like 'made in the USA' when the factory that actually makes them is in China," Court recognized the nuance:

> "Yeah, but that doesn't make – that doesn't make it false. It doesn't
> – I mean, it's – everything – the – you know, we have a world

11

economy, and, you know, USA companies are buying things from overseas. There's just a lot of that that's going on. And it's all a part of – people are still saying that, you know, the USA companies are selling them…. But we've gotten used to that now, and we understand that."

[DE 264 at 40:9-41:8]. In denying Defendants' motion and allowing the evidence in, the Court instructed Hayward: "So you're going to have to be nuanced about it or I'll step in. In other words, I'm not going to allow an unfair indication that it's just blanket wrong…." *Id*. at 49:2-4.

Yet, that is exactly what Hayward did. Hayward spent nearly two days questioning Mr. Chen ad nauseam about DeNora and Evoqua, and conflating the time periods of when Blueworks advertised various statements, and trying to draw a distinction between the large coated "sheets" purchased that are later cut down to smaller "plates" to be inserted into the salt cells.[2] Indeed, in his closing argument, Hayward's lead counsel argued that since 2018, Defendants had been getting their blades from a factory in China. [DE 370 at 72:9-24]. He then quotes a portion of Mr. Chen's testimony, wherein Hayward asked: "So the blades were not provided by a USA company, correct?", *id*. at 72:25-73:2; however, this question came directly after Hayward's attorney had asked several questions in which he defined "blades" as the "finished blade product that Ningbo could just take and insert into one of its salt cells." [DE 368 at 70:9-71:18]. In closing, Hayward's

---

[2] Since trial, the Tenth Circuit unanimously ruled that there is nothing legally problematic with foreign-made components being used in products advertised as "American-made," upholding a construction equipment manufacturer's summary judgment win over its competitors' claims of false advertising claim. Relevant here, the Court found that the term "made" was too ambiguous to be false under the Lanham Act as a matter of law, as it could refer to the origin of the components or the assembly of the product itself. *I Dig Texas, LLC v. Creager*, No. 23-5046, 2024 WL 1590590, at *7 (10th Cir. Apr. 12, 2024). This recent holding is consistent with the Court's comments at oral argument: "Yeah, but that doesn't make – that doesn't make it false. It doesn't – I mean, it's – everything – the – you know, we have a world economy, and, you know, USA companies are buying things from overseas. There's just a lot of that that's going on. And it's all a part of – people are still saying that, you know, the USA companies are selling them. I mean, the cars that we have are a lot from overseas." [DE 364 at 40:13-20].

lead counsel went on to argue: "He just admitted that ***all*** of their ads are false. And you'll see in every ad over the years, year after year after year, some variation of 'provided by a USA company,' 'made in the USA,' 'made by a USA manufacturer…'" improperly lumping them all together— "an unfair indication that it's just blanket wrong…"[DE 370 at 73:2-6] precisely what the Court cautioned Hayward against doing.

Further, Hayward admonished Mr. Chen for not having documents from Evoqua—the very discovery that Defendants were not able to take because Hayward did not assert that "cell plates made in the USA" and "cell plates made by a USA company" were false statements until after four months after discovery. *See, e.g.*, DE 367 at 169:8-18 ("Q: Okay. You – Mr. Chen, where are the documents that would show that Evoqua did this testing that you're testifying about? A: First of all, Evoqua is a US public trading company and they have done test a lot in their facility and they showed be their test results. Q: Where are those documents? A: It's in Evoqua's lab. Q: Okay. Why didn't you product them in this case?")[3]; at 171:19-20 ("Q: And you forgot to product the testing documents from Evoqua?"). The addition of this theory after the close of discovery "greatly prejudices a defendant who has 'focused their discovery efforts on the theories actually pled.'" *Phillips v. Esper*, No. 1:19-CV-362, 2021 WL 10723904, at *2 (E.D. Va. Apr. 19, 2021) (quoting *Miranda-Rivera v. Toledo-Davila*, 813 F.3d 64, 76 (1st Cir. 2016)).

For these reasons, Defendants request a new trial as to Hayward's false advertising claim and its UDTPA claim, which would exclude the evidence that was improperly admitted as to the

---

[3] The Court even mentioned that this was one of the things that "irritated" the Court about Mr. Chen's testimony – that with respect to the testing by Evoqua "there's no – nothing about that, no – no documents, nothing turned over." [DE 367 at 207:20-211:12] (with explanation from Defendants' attorney that the reason the Evoqua testing was not produced is because it was in Evoqua's custody, and no one subpoenaed Evoqua for documents because Defendants did not know that the statements relating to Evoqua were alleged as false until well after discovery closed).

13

belatedly asserted "made in the USA" and "made by a USA company false advertising statements.

**B.** **The Court Improperly Directed Verdict, *Sua Sponte*, on Hayward's Unpled Alter Ego Theory and Improperly Instructed the Jury on Alter Ego**

On the last day of trial upon its own "motion," this Court *sua sponte* directed verdict in Hayward's favor [DE 370 at 14:6-7] ("THE COURT: .... *Sua sponte*, I'm moving for directed verdict on that issue [alter ego]."). Alter ego is an issue which Hayward **did not plead** in its Operative Complaint [DE 57] (the words "alter ego" appear nowhere in the operative complaint). Tellingly, Hayward did **not even identify** "alter ego" as one of its asserted "claims" for relief at trial in its trial brief. [DE 323 at 7] (identifying **ten** "legal theories" against Hayward but **not** "*alter ego*"). The words "*alter ego*" only appear one time in the Hayward's trial brief, in the context of a motion *in limine*. *Id*. at 25. Nor has this Court provided findings of fact and conclusions of law as required to support *sua sponte* directed verdict on *alter ego*. As such, this Court's *sua sponte* directed verdict on an unpled, unpresented claim for *alter ego* as among the four named defendants was erroneous.

Finally, this Court's error as to the *sua sponte* directed verdict was compounded when this Court instructed the jury of its directed verdict. [DE 370: 120:25 – 121:3; 158:18-24]. As such, the Court's directed verdict impacted the entire damages portion of the Jury's Verdict [DE 353] which lumped **all** damages together **regardless of liability**, if any, as to any one Defendant.

### 1. *The Legal Standards for a Sua Sponte Directed Verdict, Generally*

The Fourth Circuit has invoked Supreme Court authority for the proposition that "'district courts are widely acknowledged to possess the power to enter summary judgments *sua sponte*, so long as the losing party was on notice that she had to come forward with all of her evidence.'" *Moore v. Equitrans, L.P.*, 27 F.4th 211, 224 (4th Cir. 2022) (vacating *sua sponte* judgment) (Quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986)). "These [notice] requirements ensure

14

a litigant has a 'full and fair opportunity to present its case.'" *Id.* (quoting *aaiPharma Inc. v. Thompson*, 296 F.3d 227, 235 (4th Cir. 2002). However, "a district court may not short-circuit the notice and hearing process on the basis that the claim at issue lacks merit." *Id.* (citing U.*S. Dev. Corp. v. Peoples Fed. Sav. & Loan Ass'n*, 873 F.2d 731, 736 (4th Cir. 1989)).

Further, courts are clear that, if a district court is to direct a verdict, it must make findings of fact and conclusions of law supporting the directed verdict: "Without any findings of fact to support it, this conclusion [of *alter ego*] cannot stand." *U.S. v. Fidelity Capital Corp.*, 888 F.2d 1344, 1348 (11th Cir. 1989) (vacating *alter ego* conclusion and remanding to "for the entry of findings of fact and conclusions of law on the issue of abuse of the corporate form").

The Fourth Circuit's holding in *Moore* equally and expressly applies in situations where, as here, a party has not brought a "claim" but only raised an issue in a motion *in limine*. In *Moore*, the Fourth Circuit was explicit that, where an issue is raised only on in a motion *in limine* and not as a claim at trial, such issue cannot be the subject of a *sua sponte* directed verdict because the opposing party would, by definition, not have received the required notice prior to having a verdict against it. 27 F.4th at 225. *En route* to vacating the district court's *sua sponte* decision in *Moore*, the Fourth Circuit quoted Wright & Miller for the proposition that "'if the court determines to enter summary judgment on a ground not presented or argued by the parties, the failure to give the losing party an opportunity to defend against that ground provides a ground for reversal.'" *Id.* at 225, n.9 (quoting 10A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2720.1 (4th ed. 2016 & Supp. 2021)). The district court is ***required*** to give the losing party an opportunity to respond to an unpled, unasserted cause of action for *alter ego* before directing verdict. As further support, the Fourth Circuit cited a Third Circuit opinion that "refus[ed] to uphold a district court's grant of a motion *in limine*, explaining that by granting the motion based on grounds other than

15

those in the motion, 'the district court effectively precluded [the] plaintiffs from marshalling the record evidence that it had already accumulated on th[e] issue' and thus ran afoul of applicable procedural protections.'" *Id.* (*quoting Brobst v. Columbus Servs. Int'l*, 761 F.2d 148, 154 (3d Cir. 1985)). In short, a claim, including for *alter ego*, must be pled and presented at trial or hearing in order to be subject to a *sua sponte* directed verdict. Otherwise, appellate reversal is required.

### 2. "Alter Ego" is a Claim which Must be Pled in a Complaint

In North Carolina, an allegation of "*alter ego*" is a distinct claim which must actually be pled in a complaint. In view of the Fourth Circuit's *Moore* decision discussed *supra*, the reasoning for requiring a claim of *alter ego* to be well pled should be apparent – the party against whom *alter ego* is asserted must have notice of the claim and be afforded an opportunity to defend against the claim. A claim for "*alter ego*" cannot be found where a party pleads only 'vicarious liability' and not *alter ego*. A case from the Eastern District of North Carolina is instructive on this point.

In *U.S. v. Cochran*, 79 F. Supp. 3d 578 (E.D.N.C. 2015), the Eastern District of North Carolina had cause to review a procedural posture whereby the US Government brought claims against various defendants, including two individuals and several entities, for violations of the Fair Housing Act. In a joint pre-trial conference, the Government contended that "all of the LLC defendants could be held jointly and severally liable, premised on alter ego or piercing the corporate veil, for all of the actions taken by [individual defendant] Cochran...." 79 F. Supp. 3d at 581. Defendants objected to the Government's contentions since the Government's *alter ego* "theory of liability was not pleaded." *Id*. The defendants' objection was brought via a motion *in limine* which the district court granted. In granting the motion, the court held that "a case may not proceed to trial on 'an unpleaded theory of recovery' without 'express or implied consent of the parties.'" *Id*. at 583 (quoting *Pinkley, Inc. v. City of Frederick, MD.*, 191 F.3d 394, 401 (4th Cir.

1999); *McLeod v. Stevens*, 617 F.2d 1038, 1040 (4th Cir. 1980)).

After establishing that a party cannot take to trial an issue that has not been pled, the district court explained a pleading of agency or vicarious liability is ***not the same*** as pleading *alter ego*: "[j]oint and several liability, based upon alter ego or piercing the corporate veil, is a distinct theory of relief separate from the agency theory that plaintiff alleged in the complaint." *Cochran*, 79 F. Supp. 3d at 584. Citing Supreme Court authority, the district court explained that "a theory of vicarious liability... is a straightforward, well-established, avenue of relief" and that "joint and several liability theory of relief, by contrast, based upon alter ego or piercing the corporate veil, is an unusual, exceptional, and specialized theory of relief." *Id*. at 584 (citing *Meyer v. Holley*, 537 U.S. 280, 285 (2003)). The court in *Cochran* recognized that the Supreme Court

> rejected expanding its holding from imposing liability "in accordance with traditional agency principles, ... normally impos[ing] vicarious liability upon the corporation," *id.* at 282, 123 S.Ct. 824, to "special circumstances" or "an unusual modification of those rules," which might lead to liability for the "owner or officer" of a corporation. *Id.* at 286, 123 S.Ct. 824.

*Cochran*, 79 F. Supp. 3d at 584 (quoting *Meyer*)(alterations in original).

Having established that a cause of action for 'vicarious liability' does not equal a cause of action for '*alter ego*,' and that *alter ego* must be pled in the complaint, the district court in *Cochran* proceeded to discuss the requirements for a proper *alter ego* pleading. This issue is discussed *infra*.

### 3.  *The Legal Standards for an Alter Ego Cause of Action*

North Carolina law is unambiguous when it comes to the requirements for finding that entities and/or persons are *alter egos* of one another. In a seminal case, the North Carolina Supreme Court set forth three elements which ***must*** be established before a court may find *alter ego* under North Carolina law:

> (1) Control, not mere majority or complete stock control, but complete domination, not only of finances, but of policy and business practice in respect to the transaction

attacked so that the corporate entity as to this transaction had at the time no separate mind, will or existence of its own; ***and***

(2) Such control must have been used by the defendant to commit fraud or wrong, to perpetrate the violation of a statutory or other positive legal duty, or a dishonest and unjust act in contravention of plaintiff's legal rights; ***and***

(3) The aforesaid control and breach of duty must proximately cause the injury or unjust loss complained of.

*Glenn v. Wagner,* 313 N.C. 450, 455, 329 S.E.2d 326, 330 (1985) (emphasis on the conjunction "and" added) (citing *B–W Acceptance Corp. v. Spencer*, 268 N.C. 1, 8, 149 S.E.2d 570, 575 (1966)). These three ***required*** elements have been recited repeatedly over the years and remain good law. *U.S. v. Greer*, 383 F. Supp. 2d 861, 867 (W.D.N.C. 2005) ("state law requires" the three *Glenn* elements), *aff'd*, 182 Fed. Appx. 198 (4th Cir. 2006) (unpublished); *see also U.S. v. Williams*, No. 1:17-CV-00278, 2017 WL 3700901, at *2 (M.D.N.C. Aug. 25, 2017) (same). The case law is equally clear that "[t]he Plaintiff has the burden of establishing ... alter ego ... of the Defendant." *Greer*, 383 F. Supp. 2d at 866 (citing *DP Envtl. Servs., Inc. v. Bertlesen,* 834 F. Supp. 162, 165 (M.D.N.C. 1993) ("The burden of establishing a basis for ... applying the alter ego doctrine rests on the party asserting the claim.")). Indeed, the court in *Cochran* likewise discussed these *alter ego* standards and applied them to the requisite pleading standards in reaching its conclusion that the Government, failing to plead *alter ego*, should be precluded from arguing *alter ego* at trial. *Cochran*, 79 F. Supp. 3d at 584. The substantive law of the Fourth Circuit is in *accord* with that of the North Carolina Supreme Court and the Eastern District of North Carolina in *Cochran*: "[A] corporate entity is liable for the acts of a separate, related entity only under extraordinary circumstances, commonly referred to as 'piercing the corporate veil.'" *Vitol, S.A. v. Primerose Ship. Co. Ltd.*, 708 F.3d 527, 543 (4th Cir. 2013) (quoting *Arctic Ocean Int'l Ltd. v. High Seas Shipping Ltd.,* 622 F.Supp.2d 46, 53 (S.D.N.Y. 2009); *Dolco Invs., Ltd. v. Moonriver*

18

*Dev., Ltd.*, 486 F.Supp.2d 261, 271 (S.D.N.Y. 2007)) (affirming the decision of the district court to vacate an *ex parte* temporary restraining order which had issued on the basis of *alter ego*). In *Vitol*, the Fourth Circuit warned: "'decisions to pierce a corporate veil, exposing those behind the corporation to liability, must be taken reluctantly and cautiously....'" *Id*. at 543-44 (quoting *Keffer v. H.K. Porter Co., Inc.,* 872 F.2d 60, 64 (4th Cir. 1989)) (other citations omitted). In *Vitol*, as in *Cochran*, the Fourth Circuit explained that *alter ego* must be pled with sufficient specificity to include the degree of actual domination and control:

> The district court discussed the relevant alter ego allegations as to S & P and Gerassimos in the Amended Verified Complaint and concluded that "more is necessary to establish the degree of actual domination and control essential to prove an alter ego claim." (J.A. 1565). We agree with the district court's holdings....

708 F.3d at 545 (affirming the district court's conclusion that the pleading as to alter ego was insufficient and that the ex parte TRO must be dissolved).

### 4. *Analysis*

This Court's *sua sponte* directed verdict on the unpled and unasserted *alter ego* was issued neither "reluctantly [nor] cautiously", lacking requisite factual findings and conclusions of law grounded in North Carolina law. *Vitol*, 708 F.3d at 543. This Court must vacate its *sua sponte* directed verdict as to *alter ego* and grant a new trial on damages which excludes any instruction on unpled *alter ego*. Defendants timely objected to both the directed verdict [DE 370 at 15:10-13] and to the jury instruction referencing the directed verdict [DE 370 at 13:25 – 14:3; 15:14-23]. Here, it should be obvious that Hayward's Operative Complaint [DE 57] does not include a cause of action for *alter ego*. Words such as "alter ego", "pierce", "veil", or "corporate" appear nowhere in the voluminous 87 page Complaint. [DE 57]. True, Hayward's complaint includes a claim for "Contributory Infringement and Vicarious Liability" [DE 57 at ¶¶285-293] and its trial brief reiterated its intent to prove this claim at trial [DE 323 at 7], but the holding of the court in *Cochran*

19

which itself is grounded in Supreme Court and Fourth Circuit law requires that *alter ego* is distinct from vicarious liability and ***must*** be separately pled. Even if Hayward's Complaint had referred to 'alter ego' rather than to 'vicarious liability,' the factual allegations do not even rise to the level found ***insufficient*** by the Fourth Circuit in *Vitol*. This Court's oral order at trial does not state otherwise.

To wit: this Court's directed verdict, lacking findings of fact and conclusions of law is legally insufficient. *Fidelity*, 888 F.2d at 1348. Further, there is no basis in the record for the Court to cobble together the required findings of fact since the record is entirely bereft of any facts supporting "complete domination, not only of finances, but of policy and business practice" which are ***required*** by the North Carolina Supreme Court and the Fourth Circuit. *Glenn,* 313 N.C. at 455, 329 S.E.2d at 330 (1985); *Vitol,* 708 F.3d at 545. Further still, because even Hayward cannot dispute that it failed to plead *alter ego* in its operative complaint, which is entirely distinct from vicarious liability, this Court is without jurisdiction to direct a verdict as to *alter ego*. *Cochran*, 79 F. Supp. 3d 583-584; *Pinkley,* 191 F.3d at 401; *McLeod,* 617 F.2d at 1040. Finally, even if Hayward had pled *alter ego*, in view of the fact that Hayward's trial brief wholly omits *alter ego* as a cause it intended to pursue at trial, Defendants lacked sufficient notice and opportunity to be heard prior to *sua sponte* directed verdict. *Moore,* 27 F.4th at 224 (4th Cir. 2022) (vacating *sua sponte* judgment). For all of these reasons, this Court's *sua sponte* directed verdict on *alter ego* is entirely erroneous and must be vacated. Likewise, because vacatur of the directed verdict is required, it also necessarily follows that the single lump sum damage award is erroneous and a new trial on damages is required.

20

## C. Hayward's Claims under the UDTPA Were Not Pled with Particularity and Defendants did not have a Fair Chance to Respond to the Allegations

### 1. Claims under the UDTPA Must Be Pled with Particularity

This Court has recently held that claims for false advertising under the North Carolina Unfair and Deceptive Trade Practices Act ("UDTPA") must be pled with particularity under the heightened standards of Rule 9(b): "Where a UDTPA claim is based upon alleged misrepresentations or fraudulent statements, such as the claim that [defendant] used misleading advertisements, the plaintiff must meet the heightened standard of Rule 9(b) and make its allegations with particularity." *Mountaineer Motors of Lenoir, LLC v. Carvana, LLC*, No. 5:22-CV-00171-KDB-DCK, 2023 WL 6931787, at *7 (W.D.N.C. Oct. 19, 2023) (citing *Cross v. Ciox Health, LLC*, 438 F. Supp. 3d. 572, at 584-85 (E.D.N.C. 2020)).

Further, though the Fourth Circuit has not had a chance to reach the specific application under North Carolina's UDTPA, the Fourth Circuit has been explicit regarding how allegations of false representations must be pled in order to satisfy the requirements of Rule 9(b):

> According to two noted scholars, the "circumstances" required to be pled with particularity under Rule 9(b) are "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." 5 Charles Alan Wright and Arthur R. Miller, *Federal Practice and Procedure: Civil* § 1297, at 590 (2d ed. 1990). *See also Lasercomb America, Inc. v. Reynolds,* 911 F.2d 970, 980 (4th Cir. 1990); *In re Cryomedical Sciences, Inc. Securities Litigation,* 884 F. Supp. 1001, 1012–13 (D. Md. 1995); *In re Medimmune, Inc. Securities Litigation,* 873 F. Supp. 953, 964–69 (D. Md. 1995). Mere allegations of "fraud by hindsight" will not satisfy the requirements of Rule 9(b). *Hillson Partners Ltd. Partnership v. Adage, Inc.,* 42 F.3d 204, 209 (4th Cir. 1994).

*Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999).

### 2. Pleading with Particularity Provides Fair Notice of Scope of Allegations

"A person must have a 'fair chance' to respond to allegations made against him, and that opportunity must be provided in a 'reliable and orderly' fashion." *Life Techs. Corp. v. Govindaraj*,

931 F.3d 259, 265 (4th Cir. 2019), *as amended* (Aug. 7, 2019) (quoting *Nelson v. Adams, USA, Inc.*, 529 U.S. 460, 467 (2000)). "The Federal Rules of Civil Procedure are designed to further the due process of law that the Constitution guarantees." *Nelson*, 529 U.S. at 465. "[I]t is the complaint ... that provides fair notice to defendants of the allegations against them." *Life Techs.*, 931 F.3d at 266–67 (citations omitted). Because of this critical role served by a complaint in affording due process under the Federal Rules of Civil Procedure, "a plaintiff may not 'raise new and unadvertised theories of liability for this first time ... after the close of discovery' for doing so greatly prejudices a defendant who has 'focused their discovery efforts on the theories actually pled.'" *Phillips,* 2021 WL 10723904 at *2 (quoting *Miranda-Rivera v. Toledo-Davila*, 813 F.3d 64, 76 (1st Cir. 2016)). In this regard, the operative complaint informs the scope of evidence that may be relevant, given that it defines the causes of action and theories in support thereof, puts a defendant on notice of the claims against it, and guides the scope of fact discovery. *See Smith v. City & Cnty. of Honolulu*, 887 F.3d 944, 951-52 (9th Cir. 2018) ("A defendant suffers prejudice if a plaintiff is allowed to proceed with a new theory of recovery after close of discovery."); *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1292 (9th Cir. 2000) ("A complaint guides the parties' discovery, putting the defendant on notice of the evidence it needs to adduce in order to defend against the plaintiff's allegations.").

Accordingly, where a plaintiff seeks to introduce evidence supporting an unpled theory after the close of discovery, "all of this evidence must be excluded under Rule 15(a)(2), Fed. R. Civ. P...." *Phillips*, 2021 WL 10723904 at *2 (holding "Defendant would be unduly prejudiced" if plaintiff were allowed to amend its complaint to add an unpled theory "nearly one and a half years" after the close of discovery).

22

### 3. Hayward's Complaint Failed to Meet the Heightened Pleading Standard under the UDTPA for False Advertising

Here, this Court has already opined that at least one of the Hayward's allegations of false advertising was **not** plead with particularity but merely pasted in support of the jurisdictional portion of the complaint. Prior to trial, Defendants brought a Motion in Limine to Exclude Evidence Related to Hayward's Unpled and Undisclosed Geographic Origin Theory of False Advertising. [DE 291](Motion); [DE 296] (Supporting Memo). At trial, this Court heard argument on the Motion and ultimately concluded that as follows:

> But I think it's [allegations regarding 'made in the USA'] -- I think it's fairly pled enough in the documents. That's no ambush here. It came up early enough. And so it's in – it's in the pleadings, at least as part of some things**. *I do agree with you that -- the jurisdictional issue and where it's located there* [in the Compliant].

[DE 364 at 48:21 – 49:1] (emphasis added). That is, this Court expressly **agreed** with counsel for Defendants that the Complaint only ever includes the alleged 'made in the USA' statement in an image pasted in jurisdiction section of the Complaint:

> And the reason that they could not claim this as a false statement in their complaint is one of the advertisements that they point to in our opposition is on page 7 of the amended complaint. It's actually Ningbo's LinkedIn page. It says "made in the USA," and it says, see, we underlined "made in the USA." Well, if you look where this actually is in the amended complaint**, *it's in the personal jurisdiction section of the complaint*.

*Id*. at 33:24 – 34:6 (emphasis added). The image from the jurisdiction statement is shown below:



[DE 57 at 7]. Whatever might be shown in the above screen capture, whether or not it satisfies Rule 8, it cannot be fairly said to satisfy the heightened pleading requirements of Rule 9(b) as required by this Court for an allegation of false advertising under NC UDTPA. *Mountaineer Motors of Lenoir*, 2023 WL 6931787, at *7 ("Where a UDTPA claim is based upon alleged misrepresentations or fraudulent statements, such as the claim that [defendant] used misleading advertisements, the plaintiff must meet the heightened standard of Rule 9(b) and make its allegations with particularity."). Wholly absent from the above image are "the 'circumstances' required to be pled with particularity under Rule 9(b) [including] 'the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.'" *Harrison*, 176 F.3d at 784 (citing 5 Charles Alan Wright and Arthur R. Miller, *Federal Practice and Procedure: Civil* § 1297, at 590 (2d ed. 1990)) (other citations omitted).

While Hayward's geographic origin theory of false advertising is the most glaring example of deficient pleading, Hayward's remaining statements of false advertising also fail to meet the pleading requirements of Rule 9(b), failing to plead with particularity the requisite "time, place, and contents of the false representations." *Harrison*, 176 F.3d at 784.

This substantial error in allowing the admission of evidence as to these unpled claims supports a new trial.

## V.  CONCLUSION

For the foregoing reasons, Defendants respectfully request the Court grant their motion for a new trial [DE 376] on Hayward's claims for false advertising under the Lanham Act (Count I) and violation of the NC UDTPA (Count XIX) pursuant to Fed. R. Civ. P. 59(a).

Dated: April 30, 2024          Respectfully submitted,


/s/ Christina Davidson Trimmer
Christina Davidson Trimmer
NC Bar No. 44857
Samuel Alexander Long, Jr.
NC Bar No. 46588
SHUMAKER, LOOP & KENDRICK, LLP
101 South Tryon Street
Suite 2200
Charlotte, North Carolina 28280
Tel: (704) 375-0057
Fax: (704) 332-1197
Email: ctrimmer@shumaker.com
        along@shumaker.com

Michelle C. Dunn
Platinum Intellectual Property
3031 Tisch Way, Suite 110 PW
San Jose, CA 95128
Tel: 404-800-5884
Fax: 877-463-0654
Email: michelle.dunn@platinum-ip.com

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on April 30, 2024, the foregoing document was served on all counsel of record using the Court's CM/ECF system, which will send notification of such filing to any CM/ECF participants.

Respectfully submitted,

*/s/ Christina Davidson Trimmer*
Christina Davidson Trimmer
NC Bar No. 44857
SHUMAKER, LOOP & KENDRICK, LLP
101 South Tryon Street
Suite 2200
Charlotte, North Carolina 28280
Tel: (704) 375-0057
Fax: (704) 332-1197
Email: ctrimmer@shumaker.com

26