**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**

| | |
|---|---|
| HAYWARD INDUSTRIES, INC., <br><br> Plaintiff, <br><br> v. <br><br> BLUEWORKS CORPORATION, BLUEWORKS INNOVATION CORPORATION, NINGBO C.F. ELECTRONIC TECH CO., LTD; NINGBO YISHANG IMPORT AND EXPORT CO., LTD. <br><br> Defendants. | Civil Action No. 3:20-CV-710 -MOC-DSC |

**HAYWARD'S OPPOSITION TO DEFENDANTS BLUEWORKS CORPORATION'S AND BLUEWORKS INNOVATION CORPORATION'S MOTION TO STAY JUDGMENT UNDER FED. R. CIV. P. 62 (Doc. No. 464)**

Defendants clearly have no intention of voluntarily satisfying the judgment, ever, and thus this Court should deny the request of Blueworks Corporation and Blueworks Innovation Corporation (collectively, "Blueworks Defendants") to stay the judgment. Defendants' collective antics trying to circumvent the Temporary Restraining Order ("TRO"), (Doc. No. 393), including (1) various motions to clarify, dissolve, and/or seek relief from the TRO; (2) a futile petition for writ of mandamus to the Fourth Circuit; (3) this motion to stay execution of the judgment; and now (4) Blueworks Corporation's bankruptcy filing this week, are all designed for one purpose: to allow them to dissipate their assets and thwart Hayward's ability to collect on the judgment. Even though the case is stayed against Blueworks Corporation as a result of its bankruptcy filing, it is not stayed as to the other three Defendants. Thus, Hayward opposes the motion to address the issues raised in the motion to the extent that they apply to the other three defendants and to preserve Hayward's legal position against Blueworks Corporation for the record and for appeal.

First, Hayward wants to ensure that the non-debtors, *i.e*., Defendants Blueworks Innovation, Ningbo C.F. Electronics Tech and Ningbo Yishang Import and Export Co., as well as Zefeng "Richard" Chen and his wife Zhouling "Gina" Lu, will not somehow use the cover of a stay applicable to Blueworks Corporation to further violate the TRO.[1] This concern has taken on greater significance since Defendant Blueworks Corporation ("Debtor Defendant") advised the Bankruptcy Court that it violated the TRO by ***paying their counsel roughly $430,000 while the TRO was in effect and before filing its bankruptcy petition***. *In re Blueworks Corporation*, No.

---

[1] Since filing their motion to stay judgment, (Doc. No. 464), Debtor Defendant" has filed a petition for relief under Chapter 11 of the United States Code in this District, Case No. 24-30494 (Bankr. W.D.N.C. June 11, 2024) (LTB). The automatic stay set forth in section 362 of the Bankruptcy Code, however, does not prevent this Court from ruling on this motion to the extent it applies to Blueworks Innovation and the two Ningbo Defendants as joint tortfeasors and alter egos, as well as to the extent it impacts Mr. Chen and Ms. Lu. If necessary, this Court can decide the applicability of the automatic stay. *Dominic's,* 683 F.3d at 760 (citing *NLRB v. Edward Cooper Painting, Inc*., 804 F.2d 934, 939 (6th Cir.1986)); *see also Holland V. High Power Energy*, 248 B.R. 53 (S.D. W.Va. 2000) ("[W]hile it is correct that the bankruptcy court is the exclusive forum to consider a motion for relief from the automatic stay, the district court retains jurisdiction independent of the bankruptcy court to determine whether a pending civil action is subject to the automatic stay") (internal citation omitted). This Court can also lift the automatic stay and deem this opposition to be applicable to Debtor Defendant as well. *See*, *e.g.*, *Bridgetree, Inc v. Red F Mktg., LLC*, No. 3:10-CV-228-FDW-DSC, 2012 U.S. Dist. LEXIS 150654, *4 (W.D.N.C. Oct. 19, 2012) (sua *sponte* lifting the automatic stay). While the Debtor Defendant also commenced an adversary proceeding in the bankruptcy court seeking to extend the automatic stay to non-debtor Defendants in this action, *Blueworks Corp. v. Hayward Industries, Inc.*, Adv. No. 24-03029 (Bankr. W.D.N.C.), such request has not been ruled upon yet. *In re Thompson*, 2023 WL 2466435 (Bankr. W.D.Wis. Mar. 10, 2023) (application of non-debtor stay is not automatic); *Pavers & Road Builders District Council Welfare Fund et al. v. Core Contracting of N.Y., LLC, et al.*, 536 B.R. 48 (E.D.N.Y. 2015) ("[S]ince this action involves non-debtor defendants in addition to the debtor defendant, the action would continue against those nondebtor defendants."). Hayward intends to oppose it given the lack of "unusual circumstances" present here warranting the extension of the automatic stay to non-debtors. *Id*. Out of an abundance of caution, contemporaneously herewith, Hayward is filing in the bankruptcy court a motion seeking (a) relief from the automatic stay as to the debtor-Defendant and (b) withdrawal of the reference of the adversary proceeding to this Court.

24-30494 (Doc. No. 5 at ¶ 40) (Bankr. W.D.N.C. June 11, 2024) (Affidavit of Michael Bowers). What is more, this large payment was most certainly made ***on behalf of all four Defendants***, i.e., the Debtor Defendant used the fiction of the TRO being expired on May 28 (the date judgment was entered) to pay the debts of the other three Defendants.[2]  To make matters worse, the $430,000 payment apparently drained the Debtor Defendant's bank accounts, which its Chief Restructuring Officer represents now total less than $2,000.  (Doc. No. 5 at ¶ 41) (Bankr. W.D.N.C. June 11, 2024) (Affidavit of Michael Bowers).  The alternative is that, if Debtor Defendant does indeed have no assets, as it claims, then the Ningbo Defendants paid the legal fees on Debtor Defendant's behalf, which was still prohibited under the TRO.

Second, the Ningbo Defendants are clearly running their business on all cylinders and will use any stay of execution to justify transferring assets.  The reality is all too clear given their assertions that the TRO expired upon entry of judgment on May 28, (Doc. No. 464-1).  This absurd position, as Hayward has previously pointed out, was merely a subterfuge to justify moving money, including paying their counsel. *See* (Doc. No. 469 at 2-4). It is also consistent with the Ningbo Defendants' continued operation of their factories, which must be paying their monthly expenses, including payroll, supplies, utilities, rent, and the like. (Doc. No. 440-2, Declaration of Sean Keily, dated May 16, 2024, at ¶¶ 5-7); (Doc. No. 441 at 4-7).

Finally, Hayward will be opposing the Debtor Defendant's bankruptcy and its accompanying adversary proceeding seeking to extend the bankruptcy stay to the non-debtor

---

[2] This is consistent with Debtor Defendant's representation that it had previously paid roughly $5 million in legal fees on behalf of all four Defendants. (Doc. No. 5 at ¶ 17) (Bankr. W.D.N.C. June 11, 2024) (Affidavit of Michael Bowers).

3

parties. If Hayward is successful in its opposition to the bankruptcy and/or defeating the attempt to extend the stay to non-debtors, it must make sure Defendants cannot rely on the stay of execution they seek here to avoid making good on the judgment.

Hayward has secured writs of execution against all four Defendants, (Doc. Nos. 461 and 463), which have been sent to the U.S. Marshals. Hayward has also retained counsel in several states to domesticate and execute on the judgment and has served post-judgment discovery to ascertain the location of Defendants' assets. Hayward should be allowed to continue its collection efforts at least as against non-debtor defendants Blueworks Innovation, Ningbo C.F. Electronics Tech and Ningbo Yishang Imports, and their principal Zefeng "Richard" Chen and former executive and owner Zhouling "Gina" Lu, before Defendants dissipate their assets. Indeed, in dissolving the Rule 62(a) automatic stay of enforcement of the judgment, this Court noted "that the risk of dissipation can justify a court's exercise of discretion to dissolve a Rule 62 stay" and "[t]hat the Court has already credited the threat of dissipation in granting Plaintiff's motion for TRO strengthens—not weakens—Plaintiff's motion to dissolve the Rule 62 stay." (Doc. No. 449 at 3). For this reason—the threat of dissipation—the Court has already ruled on this motion, ordering that Defendants can move to stay the judgment "but such request **must be supported by proof of bond or other security** in an amount sufficient to satisfy the judgment together with costs and interests." (*Id.*) (emphasis added). Defendants have not supported their motion with such proof.

Of particular note, the Blueworks Defendants have not supported their claim in this motion that they cannot afford a bond with a declaration from Mr. Chen or anyone else from Defendants. One would expect a declaration recounting Defendants' efforts to obtain a bond, the price of the

4

bond, the bond companies they contacted, the value of their assets, the collateral they offered to secure the bond, the reasons the bond companies rejected their requests, etc.[3] That declarant would, one would expect, back it up with correspondence with the bond companies. Likewise, Defendants have not offered any declarations or other factual support for their claims that they will be irreparably harmed, that Hayward will suffer no harm, or that the public interest favors a stay. Rather, Defendants rely solely on the lone say-so of their attorneys.

What is more, in the case of the dog that didn't bark, the Ningbo Defendants are conspicuously absent from this motion and, as Hayward has shown, are still operating at full speed. (Doc. No. 441 at 4-7). Indeed, Defendants appear to be flaunting their actions in defying the TRO, believing that Hayward will not be able to execute the judgment against the Ningbo Defendants. This, of course, remains problematic and heightens Hayward's concern that all Defendants, in concert with Mr. Chen and Ms. Lu, are currently moving assets in violation of the TRO. (*Id.* at 7-8). Even if the Blueworks Defendants have insufficient assets for a bond, surely the Ningbo Defendants do. And, given that Mr. Chen effectively controls both the Blueworks and Ningbo defendants, and given that all four Defendants are alter egos and/or joint tortfeasors and, thus, jointly and severally liable, the motion by one subset of the four Defendants should be viewed with skepticism.

---

[3] To date, *Defendants have identified only one asset*: Ms. Lu's purported personal account, which they led the Court to believe was not a business account but rather used to pay the Chens' personal groceries or other household expenses. (Doc. No. 481, Apr. 23, 2024 H'rg Tr. at 24:8-28:10). As detailed in Hayward's reply in support of its motion for an asset freeze, this account is most certainly a business account routinely used to move large sums of money to and from Blueworks, to and from Mr. Chen, and to other outside accounts, including at millions to various investment firms and cryptocurrency accounts. (Doc. No. 422 at 2-8).

5

Further, the Blueworks Defendants cite little to no legal precedence for staying the execution ***without a bond***. Indeed, most of the cases they cite are mischaracterized or just simply stand for the well-settled principle that Rule 62 requires the appellant to post a bond in order to obtain a stay of execution. Indeed, Defendants go so far as misquoting Rule 62 for the proposition that "[w]hen an appeal is taken, the appellant may obtain a stay of execution . . . ." (Doc. No. 464-1 at 3-4). But, that is not the wording used in Rule 62(d), or any other part of the Rule. Rather, the rule states that "[A] party may obtain a stay by providing a bond or other security. The stay takes effect ***when the court approves the bond or other security*** and remains in effect for the time specified in the bond or other security." F.R.C.P. 62(b).

Finally, that the Blueworks Defendants attempt, once again, to reargue the alter ego issue is of no consequence to obtaining a stay of execution without posting a bond as required under Rule 62. Whether or not they are alter egos, the Blueworks Defendants have failed to refute, or even address, the Court's order dissolving the stay "***due to the significant risk that Defendants' assets will dissipate***, i.e., for the same reasons the Court granted [Hayward's] request for TRO. *See* (Doc. No. 393 at 3). (Doc. No. 449 at 3) (emphasis added). What is clear from the Blueworks Defendants' motion is that all four Defendants, essentially operating as one by the Chen family and all being jointly and severally liable, are trying everything within their power to extricate the Blueworks Defendants from the judgment while the related Ningbo Defendants continue to operate freely in violation of the TRO.

## ARGUMENT

## I. DEFENDANTS MISSTATE THE LAW REGARDING STAYS OF EXECUTION

Given the lack of factual and legal support for their position, the Blueworks Defendants resort to misstating or mischaracterizing the law regarding stays of execution under Rule 62. Specifically, in an effort to persuade the Court that Rule 62 provides latitude in granting a stay without a bond, Defendants claim Rule 62 provides that "[w]hen an appeal is taken, the appellant may obtain a stay of execution . . . ." (Doc. No. 464-1 at 3-4). That language, however, is nowhere to be found in the Rule. It appears that Defendants have cited to an older version of Rule 62, which was amended in 2018 to revise 62(b), in part, to incorporate the bond provisions of former Rule 62(d). Defendants further muddy the waters by misquoting the old Rule 62(d), which actually provided in its entirety:

> When an appeal is taken the appellant **by giving a supersedeas bond** may obtain a stay **subject to the exceptions contained in subdivision (a) of this rule. The bond may be given at or after the time of filing the notice of appeal or of procuring the order allowing the appeal, as the case may be. The stay is effective when the supersedeas bond is approved by the court**.

Fed. R. Civ. P. 62 Advisory Committee Notes (2018) (emphasis added to indicate missing text). Thus, a stay may be obtained upon the posting of an adequate bond or other security. The stay then only "takes effect *when the court approves the bond or other security* and remains in effect for the time specified in the bond or security—a party may find it convenient to arrange a single bond or other security that persists through completion of post-judgment proceedings in the trial court and on through completion of all proceedings on appeal by issuance of the appellate mandate." *Id.* (emphasis added).

7

A party is not "entitled" to s stay of execution without a bond, as the Blueworks Defendants would have the Court believe. To the contrary, the default under the rule is that a bond must be posted to obtain such a stay. Fed. R. Civ. P. 62(b). When a party requests a stay without providing a bond, the decision is within the discretion of the court. *ABT, Inc. v. Juszczyk*, No. 5:09CV119-RLV, 2012 WL 117142, at *1 (W.D.N.C. Jan. 13, 2012) (in a case involving liability for a UDTPA violation, denying the defendant's motion to stay because defendant offered no evidence of irreparable injury if it were to post the full bond). Once a court decides a stay is warranted, then it must decide whether to exercise its discretion to reduce the bond to an amount that is less than the full amount necessary to satisfy the judgment. *Diamond Falls Ests., LLC v. Nantahala Bank & Tr. Co.*, No. 2:14-CV-00007-MR-DLH, 2015 WL 6394194, at *2 (W.D.N.C. Oct. 22, 2015).

Indeed, the four cases cited by the Blueworks Defendants do not support granting them a stay without a bond, (Doc. No. 464-1 at 4), because the courts either required the movant to post a sufficient bond or denied the request for a stay altogether. *See, e.g.*, *Baucom v. DoALL Co.*, No. 3:17-cv-00242, 2019 WL 6499582, at *1 (W.D.N.C. Dec. 3, 2019) (granting a stay *upon posting a bond* to prevent undue hardship caused by trying to recoup transferred assets and to guarantee payment of the judgment to plaintiff if defendant is not successful).

For example, in *Kirby v. Gen. Elec. Co.*, 210 F.R.D. 180, 195 (W.D.N.C. 2000), on which the Blueworks Defendants rely, the court recognized that a stay without a bond might be acceptable either when judgment debtor can easily meet judgment and demonstrates ability to maintain solvency during appeal or when judgment debtor's financial condition is such that posting full bond would impose undue financial hardship. But, the court also noted it must find another way to make the judgment creditor as well off during appeal as it would be if it could execute on the

8

judgment at once. *Id.* Notably, the court denied the motion for a stay because the movant did not demonstrate why it could not post a bond and did not propose some other arrangement for substitute security. *Id.*

As for their reliance on the *Diamond Falls* case, the court, citing *Kirby*, denied the stay because—like the Blueworks Defendants here—the movant offered no evidence that it could satisfy the judgment or remain solvent during the appeal, or that its present financial condition showed that posting the full bond would be an undue financial burden. *Diamond Falls*, 2015 WL 6394194 at *3 (citing *Kirby*).

Finally, the Blueworks Defendants' reliance on *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987), misses the mark. The four factors set forth there by the Supreme Court[4] were only meant to decide whether a stay **with** a bond should be granted in the first instance, not whether the stay could be granted without a bond. *Id.* What is more, the Supreme Court was considering the release of a prisoner in a *Habeas Corpus* proceeding under the Federal Rules of Appellate Procedure, and its references to "with or without surety" came directly from those appellate rules. *See* Fed. R. App. P. 23(c) and (d).

Further, granting a stay for the Blueworks Defendants, and not the Ningbo Defendants (who have also filed notices of appeal), will create an opportunity for all Defendants and Mr. Chen to orchestrate transfer of their assets in continuing violation of the TRO. In fact, from the limited

---

[4]The Supreme Court set the following factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceedings; and (4) where the public interest lies." *Hilton* at 776 (citations omitted).

9

information Defendants have provided, it appears they and Mr. Chen and Ms. Lu have already transferred millions of dollars among themselves and to investment funds and cryptocurrency accounts. (Doc. No. 422 at 2-8). Defendants have now unabashedly admitted to violating the TRO by transferring roughly $430,000 to their counsel and roughly $9,000 to an employee, the IRS and another vendor creditor. *In re Blueworks Corporation*, No. 24-30494 (Doc. No. 5 at ¶40) (Bankr. W.D.N.C. June 11, 2024) (Affidavit of Michael Bowers). This, of course, was done while they had two motions pending seeking permission to make those very same payments. (Doc. No. 413 and Doc. No. 437) and before filing for bankruptcy.

There is, therefore, no basis here for granting the Blueworks Defendants a stay without a bond. Indeed, as argued below, they have not met the basic requirements to obtain a stay.

## II. DEFENDANTS ARE NOT LIKELY TO SUCCEED ON THE MERITS

The Blueworks Defendants advance no real argument for granting a stay generally, let alone granting one without a bond. Instead, they use their motion to re-litigate the Court's findings that all four Defendants are alter egos of each other. Apparently, this is their only argument for a likelihood of success on the merits on appeal. Unfortunately, their theory must fail for several reasons.

### A. All Four Defendants Are Jointly and Severally Liable as Joint Tortfeasors *or* as Alter Egos of Each Other

The Blueworks Defendants' use of the alter egos issue to show they have a likelihood of success on the merits on appeal is not supported by the evidence presented at trial or relevant case law. It is merely a miscalculated end-around to re-argue the issue without filing a motion for reconsideration of the Court's prior findings, which were based on extensive briefing and argument before and during trial. Tellingly, the Blueworks Defendants recite black letter law as to the

elements or requirements for a finding of alter ego, (Doc. No. 464-1 at 4-5), but fail to proffer a single argument or piece of evidence on any of the factors to support that the Court's finding was in error. That is because there was more than sufficient evidence to find all four Defendants were alter egos, none of which has been refuted by Defendants. The Court's finding that the four Defendants are alter egos of one another was based on Hayward's motion *in limine* that was fully briefed by all parties (Doc. No. 280, *et seq*.) and argued during trial, as well as extensive evidence elicited through Mr. Chen's own testimony.

> Even viewing the evidence and inferences therefrom **most favorably to the defendants**, the Court concludes that **no reasonable jury could conclude that defendants** BlueWorks Corp, BlueWorks Innovation Corp, Ningbo CF Electronic Tech Company, Limited, and Ningbo Yishang Import and Export Company, Limited, **are not alter egos** of one another.

> Based on plaintiff's evidence -- particularly, **Mr. Chen's deposition testimony and his testimony on direct and cross-examination in these proceedings**, the Court finds that all four defendants are alter egos of one another. **No contrary inferences within the range of reasonable probability could be drawn to the contrary**.

> The Court thereby directs a verdict for the plaintiff as to the alter-ego question. The Court will instruct the jury that it has found the defendants to be alter egos of one another.

(Trial Tr., Vol. 7, 14:6-23) (emphasis added). Moreover, the ruling was consistent with the Court's prior detailed ruling and findings in this case on the same issue (Hon. Judge Whitney) (Doc. No. 31, at 9-12). Both court orders made ample findings of fact and conclusions of law to support their rulings.

As for the "instrumentality rule" on which the Blueworks Defendants hang their hats, Hayward did not ask for, and the Court did not consider, piercing the corporate veil, *i.e.*, the issue was not whether to hold Mr. Chen accountable for the wrongs of the four corporate Defendants. That issue is for another day. Rather, the Court, in both orders, found that all Defendants were

alter egos of one another. As this Court recently confirmed, alter egos are jointly and severally liable for damages stemming from liability against any of the alter ego defendants. *Jahagirdar v. Computer Haus, Inc.*, No. 1:20-cv-33-MOC, 2024 WL 1842161 at *2 (W.D.N.C. Apr. 26, 2024) (after jury verdict against one individual, the court found that other corporate defendants were all alter egos of the individual and entered judgment jointly and severally against all defendants, noting that all of the alter egos were "jointly and severally liable to Plaintiffs for the judgment").

In any event, all four Defendants are joint tortfeasors, having acted in concert to commit the wrongs that caused Hayward's injuries or separate wrongs that still produced an indivisible injury. As joint tortfeasors, Defendants are jointly and severally liable regardless of the Court's alter ego finding. *G.E. Betz, Inc. v. Conrad*, 752 S.E. 2d 634 (N.C. Ct. App. 2013); *Progress Solar Sols., LLC v. Fire Prot., Inc.*, No. 5:17-CV-152-D, 2022 WL 4537903, at *2-*3 (E.D.N.C. Aug. 30, 2022), *appeal dismissed sub nom. Progress Solar Sols., LLC v. Bills*, No. 22-2019, 2023 WL 6366692 (4th Cir. May 18, 2023) (citing *G.E. Betz*) (finding joint and several liability for damages because defendants acted in concert to commit a wrong that caused an injury); *see also Herrmann Int'l, Inc. v. Herrmann Int'l Eur.*, No. 1:17-CV-00073-MR, 2021 WL 861712, at *18 n.12 (W.D.N.C. Mar. 8, 2021) (finding employee defendants jointly and severally liable in an infringement case and holding that "[a]lthough the Court has concluded that the Plaintiffs may pierce the corporate veil of HIE, HT, and BR to hold Defendant Vuillemin directly liable on the tortious interference claims, [Doc. 68-1 at ¶ 18], Defendant Vuillemin **can be held liable** for tortious interference **without piercing the corporate veil** because '[a] corporate official may be held **personally liable for tortious conduct committed by him, though committed primarily for the benefit of the corporation**…'") (emphasis added). In other words, even if the alter ego

12

finding were in error (it is not), it makes no difference—the joint and several judgment results in the same treatment.

The evidence at trial also showed that Blueworks (and Mr. Chen) was an agent of the Ningbo Defendants or *vice versa*. For instance, Ningbo C.F. listed Blueworks as its "branch" in the U.S. (PTX583, PTX075, PTX077-078, PTX082, PTX086), used Blueworks to both advertise and sell the salt cells to consumers in the U.S. and also for after-sales service (PTX029; Trial Tr., Vol. 4, 147:20-148:1; Trial Tr., Vol. 5, 109:21-25; 110:2-10; 114:20-115:1), and, together with Ningbo Yishang Imports, paid Blueworks' employees. (Trial Tr., Vol. 5, 229:4-12). As such, Ningbo was ultimately responsible for Blueworks' misconduct or *vice versa*. *Progress Solar Sols.,* at *2-*3 (citing *G.E. Betz*) (finding joint and several liability for damages because defendants acted in concert to commit a wrong that caused an injury).

### B. The Fourth Circuit Is Not Likely to Reverse the Alter Ego Ruling

The Blueworks Defendants' position that the Fourth Circuit will reverse the Court's two findings of alter ego is nothing more than an idle threat. Notably, they (1) misstate the standard of review as being *de novo* and (2) fail to explain why they have a likelihood of success on appeal even if the standard were *de novo*. Simply stating what one believes (erroneously or not) to be the standard of review does not address the merits of the appeal, nor make success on appeal any more likely.

First, the question of whether all four Defendants are alter egos of on another is essentially a factual one and, therefore, is generally reviewed under the clearly erroneous standard. *Sky Cable, LLC v. DIRECTV, Inc.,* 886 F.3d 375, 389 (4th Cir. 2018) ("Because a court's conclusion that an LLC is an alter ego of its member 'depends largely on the resolution of questions of fact,' we will

13

uphold that determination if it is not clearly erroneous.") (citing *In re Cty. Green Ltd. P'ship*, 604 F.2d 289, 292 (4th Cir. 1979)); *Wolf v. United States*, 798 F.2d 1241, 1243, fn 2 (9th Cir. 1986), citing *United States v. McConney*, 728 F.2d 1195, 1201 (9th Cir. 1984), cert. denied, 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1985).

The Blueworks Defendants' cases to the contrary are unavailing. For example, the Fourth Circuit in *Horne* was reviewing the grant of a Rule 50(a) motion for a directed verdict and the question of actual malice. *Horne v. WTVR, LLC*, 893 F.3d 201, 210-211 (4th Cir. 2018). The case does not discuss findings of alter ego, *sua sponte* orders, or temporary restraining orders as Defendants imply. Similarly, the Sixth Circuit in *Road Sprinkler Fitters* was considering the lower court's summary judgment decision, which had been based, in part, on a finding of alter egos. The court recognized the conflicting authority within the Sixth Circuit as to whether clearly erroneous or *de novo* was the proper standard of review for alter ego finding, with some courts finding alter ego to be a question of fact to be reviewed for clear error. The Sixth Circuit then stated that **clear error would be the proper standard for alter ego determinations made later in litigation** (*i.e.*, at trial), but that *de novo* review was more appropriate for reviewing summary judgment decisions. *Road Sprinkler Fitters Loc. Union No. 669, U.A., AFL-CIO v. Dorn Sprinkler Co.,* 669 F.3d 790, 793-794 (6th Cir. 2012). The same holds true for *Grimmett*, where the legal question the Fourth Circuit considered was the meaning of a North Carolina statue and whether it was constitutional. There was no mention of joint liability, alter egos, or even piercing the corporate veil, let alone the proper standard for appellate review. *Grimmett v. Freeman,* 59 F.4th 689, 692 (4th Cir. 2023).

Second, regardless of the standard of review, the Blueworks Defendants **fail to explain why the Court got the alter ego ruling wrong**, including refuting any of the underlying facts on

14

which the Court relied. As noted above, the trial record was replete with evidence that all four Defendants acted as one, with Mr. Chen at the helm of their business operations. Given the close family ownership and control over all Defendants and Mr. Chen's substantial and direct involvement with all Defendants, including his being the sole witness to testify on behalf of Defendants as a corporate 30(b)(6) designee and as a trial witness, no reasonable fact finder would believe they were not joint tortfeasors here. (Trial Tr., Vol. 7, 14:6-23). Indeed, Defendants Ningbo C.F. and Ningbo Yishang Import paid Blueworks' employees directly. (Trial Tr., Vol. 5, 228:17-229:12).

Thus, the Court had sufficient evidence to make the factual findings and rule that Defendants were alter egos. *Epic Tech, LLC v. STHR Grp., LLC*, No. 1:15CV252, 2015 WL 8179513, at *12 (M.D.N.C. Dec. 7, 2015), *report and recommendation adopted*, No. 1:15-CV-252, 2015 WL 9592522 (M.D.N.C. Dec. 31, 2015) (holding that a person was an alter ego of a corporation, in part, because of the "certain fluidity in corporate formalities" between the person and company when drafting agreements).

In another case in North Carolina, on facts strikingly close to those in this case, the district court found sufficient evidence that the defendants had disregarded corporate formalities and acted as one based, in part, on transferring assets among defendants and to other related to the defendants, disposed of hundreds of thousands of dollars from one of defendants' bank accounts without leaving reserves to cover its obligations, and failed to maintain proper corporate records. *Raleigh Flex Owner I, LLC v. MarketSmart Interactive, Inc.*, No. 1:09-CV-699, 2011 WL 923356, at *15 (M.D.N.C. Mar. 7, 2011) (applying the three-pronged test in *Glenn v. Wagner*, 313 N.C. 450, 455, 329 S.E.2d 326, 330 (1985) to find that corporate mergers, transferred assets, disposal

of hundreds of thousands of dollars as well as business judgment determinations and failure to maintain proper corporate records supported the veil piercing claim).

The Blueworks Defendants here have engaged in similar behavior as that in *Raleigh Flex*. As set out in great detail in Hayward's reply in further support of its motion for an asset freeze and supporting exhibits, (Doc. No. 422 at 2-8), all four Defendants and Mr. Chen and Ms. Lu routinely used purported "personal" accounts to move large sums of money to and from the Blueworks Defendants, to and from Mr. Chen and his wife, and to other outside accounts, including significant sums to various investment firms and cryptocurrency accounts.

Therefore, the Blueworks Defendants are not likely to succeed on the merits, and this factor weighs in Hayward's favor.

Even if the Blueworks Defendants are not alter egos of the Ningbo Defendants, that doesn't get them very far. The Jury found both the Ningbo Defendants ***and*** the Blueworks Defendants liable for false advertising under the Lanham Act *and* unfair or deceptive practices under the UDTPA. (Verdict, Doc. No. 353). Thus, even without an alter ego ruling, the Blueworks Defendants and the Ningbo Defendants would still be liable.

## III. DEFENDANTS WILL NOT SUFFER IRREPARABLE INJURY

The Blueworks Defendants try to prove this factor favors them by simply stating they do not have the resources to pay the judgment or the "capability to obtain a bond covering the entire amount" and hypothesizing that they will be forced into insolvency. (Doc. No. 464-1 at 7). Yet, they do not offer a single fact to show their assets and liabilities would not allow them to satisfy the judgment or raise a bond or that doing so would force them into insolvency. They do not reveal their finances or their ability to put up collateral for a loan. Where are the profit and loss

16

statements, a general ledger, or any other accounting statements or documentation supporting this contention? Where is the correspondence with bond companies corroborating that they have been rejected? Where are the supporting declarations? Curiously, they represent they cannot cover the *entire* $16,000,000 judgment, but they do not offer the amount of bond **they can afford**, proposing only a complete reduction of the required bond from the $16,000,000 Judgment to zero ($0.00).

This has been the pattern since the TRO was entered nearly two months ago. With every filing, Defendants pleaded for fairness and due process so they can stay in business. Each step of the way, however, Defendants failed to support these claims with any affidavits or facts. As with those previous motions, the Blueworks Defendants provide no reliable showing that they will be harmed by the Court's order dissolving the stay. That is because Defendants' business continues full speed ahead, including paying all their operating expenses in violation of the clear terms of the TRO. As more fully detailed in Hayward's opposition to Defendants' second motion for relief from the TRO, Ningbo manufactures and ships product all over the world. (Doc. No. 441 at 4-8). In fact, Ningbo C.F.'s Alibaba store page boasts <u>annual exports of US $7,800,000, over 200 employees worldwide, a new 40,000-50,000 square meter factory manufacturing space (430,000-530,000 sq. ft.), and annual manufacturing capacity over 3,000,000 units</u>.

Further, Defendants have retained no less than eight (8) law firms, including two large national firms; and claim to have paid "**$4.8 million**" in attorneys' fees. Since then, they recently made another payment of $430,000 to legal counsel. *In re Blueworks*, No. 24-30494 (Doc. No. 5 ¶ 40) (June 11, 2024) (Affidavit of Michael Bowers, Chief Restructuring Officer, Blueworks Corporation). Clearly, the Defendants have the resources to post a bond or assets to secure the Judgment.

Indeed, if Defendants' assets in the Ningbo factories, including their inventory, are as valuable and significant as they state, those assets can be used "to satisfy the judgment or post a bond, so posting a full bond would not impose an undue financial burden." *Universal Life Ins. Co. v. Lindberg*, No. 1:20CV681, 2023 WL 6554451, at *5-6 (M.D.N.C. Sept. 21, 2023), *report and recommendation adopted*, No. 1:20CV681, 2023 WL 7062058 (M.D.N.C. Oct. 25, 2023) (denying stay for a reduced amount of the bond where defendant claimed it was unable to access the money required to post the full bond). In *Universal Life*, the court directed the defendant to provide briefing on whether it could post a bond for the full $524 million judgment, the harm it would suffer if the bond could not be posted, and alternative proposals. The defendant, however, did not propose alternative means to secure the stay, instead offering assignment of assets (between $80 million and $145 million) that were substantially less than the full judgment. The court rejected the defendant's alternatives and found that defendant's stated lack of funds was largely due to defendant's creation of an "unnecessarily complex corporate structure" and expressed significant concerns "regarding [d]efendant's dissipation or secretion of assets to avoid enforcement of the Judgment"). *Id.*

Similarly, the court in *ABT v. Juszczyk*, after stating it was mindful that the purpose of a bond was to preserve the *status quo* while protecting the non-appealing party's rights, found that the defendant had not shown sufficient evidence that it would be harmed and thus held that defendant could post a bond for the full judgment as required by Rule 62. *ABT v. Juszczyk*, at *2 (denying defendant's emergency motion for stay of execution in a case involving a violation of the UDTPA, where defendant failed to show that its "present financial condition is such that the posting of a full bond would impose an undue financial hardship" and plaintiff presented evidence

18

that it would be substantially injured if an alternative bond based on defendant's terms were entered); *see also Scot Lad Foods, Inc. v. Ames Food Mkt., Inc.*, 791 F.2d 935 (6th Cir. 1986) ("[Defendant] has set forth no credible argument that it was injured in any manner designed to be protected by Rule 62(a) by the loss of the [thirty]-day automatic stay").

Further, in the lone case on which the Blueworks Defendants rely for this factor, this Court ultimately refused to reduce the size of the bond because defendants had the burden to establish "the '**extraordinary standards' required to deviate from the standard, full supersedeas bond**" because "it would be unfair to Plaintiffs, who did nothing to create the situation Defendants find themselves in . . . ." *Denver Glob. Prod., Inc. v. Leon*, No. 517-CV00102-MOC, 2019 WL 2057277, at *2-3 (W.D.N.C. May 9, 2019) (Cogburn, J.).

Defendants here believe that by creating the fiction that they are not jointly liable, they can separate the Blueworks Defendants from the Ningbo Defendants, allowing the Blueworks Defendants to dissipate assets while the Ningbo Defendants disregard the TRO. Because there will be no harm to the Blueworks Defendants without a stay of execution, this factor weighs in Hayward's favor.

## IV.    HAYWARD WILL BE INJURED IF IT CANNOT EXECUTE THE JUDGMENT

Given the significant risk that Defendants will dissipate assets, and appear to have already been doing so, Hayward will be substantially injured if it cannot fully satisfy the Judgment whether by executing on Defendants' assets or collecting on a bond posted by Defendants. The same reasons the Court dissolved the Rule 62 stay, (Doc. No. 449 at 3), apply equally to the Blueworks Defendants' request here for a stay, especially *without having to post any bond*.  The 2018 Advisory Committee Notes explain the reasons a court might set aside the stay:

19

Amended Rule 62(a) expressly recognizes the court's authority to dissolve the automatic stay or supersede it by a court-ordered stay. ***One reason for dissolving the automatic stay may be a risk that the judgment debtor's assets will be dissipated.*** Similarly, it may be important to allow immediate enforcement of a judgment that does not involve a payment of money. The court may address the risks of immediate execution by ordering dissolution of the stay only on condition that security be posted by the judgment creditor. ***Rather than dissolve the stay, the court may choose to supersede it by ordering a stay that lasts longer or requires security***.

Fed. R. Civ. P. 62 Advisory Comm. Notes (2018) (emphasis added); *see also Calloway Cleaning & Restoration, Inc. v. Burer*, No. 1:22-CV-12, 2024 WL 1604624 at *1 (S.D. Ohio April 12, 2024) (ordering an abbreviated stay of execution under Rule 62 that could only be extended with a sufficient bond or security approved by the Court); *Denver Glob. Prod.* at *2 (denying motion to stay where the court found that reducing the bond requirement, either partially or in full, would put plaintiffs at risk of "not being able to collect on the full judgment, or having to enforce the judgment through foreclosing on [plaintiffs'] judicial lien, which would be a much more complex and cumbersome process than satisfying the judgment through the supersedeas bond currently in place."); *Legacy Data Access, Inc. v. Cadrillion, LLC*, No. 3:15-CV-0163-FDW, 2017 WL 3725216, at *1 (W.D.N.C. Aug. 29, 2017) (denying motion to stay because defendant failed to show that its proposed alternative bond would retain a constant value over the pendency of the appeal).

Here, the Court has already found that Defendants and/or those acting in concert with them will dissipate their assets, frustrating Hayward's ability to collect. Defendants' actions since then, and a review of the only banking documents that Defendants made available, further prove that the risk is real. As the Court acknowledged at the TRO hearing, there has "***got to be protection for the plaintiff's judgment in this case***. There's got to be. There's also got to be the ability of the

20

defendant to run a business." (Doc. No. 481, Apr. 23, 2024 H'rg Tr. at 21:9-11) (emphasis added). In doing so, the Court advised the parties that, when judgment is entered, it would require a bond or other security:

> "the **defendant is either going to have to put up a bond or identify the assets which would satisfy this judgment** . . . there's going to have to either be a bond or [] the Court would look at the possibility *that there would be assets sufficient to satisfy any judgment* in interest -- and that the defense can agree and the plaintiffs recognize it's sufficient -- the Court would then hold these and release the rest."

(*Id.* at 21:14-21) (emphasis added). Thus, the harm to Hayward is significant and far outweighs any harm to the Blueworks Defendants and, therefore, this factor weighs in Hayward's favor.

## V. REQUIRING A BOND TO PRESERVE THE *STATUS QUO* AND PROTECT THE JUDGMENT IS IN THE PUBLIC INTEREST

Courts in this Circuit have found that the public interest factor favors granting a stay only upon posting a sufficient bond. *Eshelman v. Puma Biotechnology, Inc.*, No. 7:16-CV-18-D, 2017 WL 9440363, at *5 (E.D.N.C. May 24, 2017) (denying a motion for a stay and finding that the public interest factor weighed against granting a stay because defendant failed to meet its burden to show likelihood of success on appeal, and granting defendant "a reprieve from proceedings in this court on the basis of a meritless appeal would not promote judicial economy."); *Schmidt v. FCI Enterprises LLC*, No. 118-CV-01472-RDA, 2020 WL 2748499, at *5 (E.D. Va. Feb. 3, 2020) (denying a motion to stay and finding that the public interest factor weighs against a stay because, despite defendants' claim that posting a bond would impose an undue financial burden, "the Fourth Circuit has held that mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough.") (quotation marks and internal citations omitted); *E.I. DuPont de Nemours & Co. v. Kolon Indus., Inc*., No. 3:09-CV-58, 2012 WL 1202485, at *5 (E.D. Va. Apr. 10, 2012) (finding that defendant's arguments that denying a

stay would promote anticompetitive behavior did not sufficiently demonstrate why departing from the general rule "requiring a losing party to post a bond sufficient to secure the prevailing party's judgment" served the public interest). This last factor also weighs in Hayward's favor.

**CONCLUSION**

The Blueworks Defendants' desperate attempt to re-argue the alter ego issue to separate themselves from the Ningbo Defendants so that all four Defendants can avoid paying the Judgment and continue to operate unabated should not be rewarded. The Blueworks Defendants have not shown that they or the Ningbo Defendants cannot obtain a bond or do not have assets to secure the Judgment, nor have they met the requirements under Rule 62 for a stay of execution. A stay of execution will only serve to allow all four Defendants to transfer assets out of the reach of this Court while the Debtor Defendant's bankruptcy case is pending. The Court should, therefore, deny the Blueworks Defendants' request for a stay without posting a bond.

Respectfully submitted this 14th day of June, 2024,

    *s/ Russ Ferguson*

Russ Ferguson (N.C. Bar No. 39671)
B. Chad Ewing (N.C. Bar No. 27811)
**Womble Bond Dickinson (US) LLP**
One Wells Fargo Center
301 South College Street
Charlotte, NC 28202
Russ.Ferguson@wbd-us.com
Chad.ewing@wbd-us.com

Erik Paul Belt (admitted *pro hac vice*)
ebelt@mccarter.com
James Donoian (admitted *pro hac vice*)
jdonoian@mccarter.com
Anne E. Shannon (admitted *pro hac vice*)
ashannon@mccarter.com
Siobhan M. Tolan (admitted *pro hac vice*)
stolan@mccarter.com
Alexander L. Ried (admitted *pro hac vice*)
aried@mccarter.com
**McCarter & English, LL**P
265 Franklin Street
Boston, MA 02110
T: (617) 449-6500

*Attorneys for Plaintiff Hayward Industries, Inc.*

23