UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
No. 3:20-cv-710-MOC-DSC

HAYWARD INDUSTRIES, INC.,
   Plaintiff, Counterclaim Defendant
              v.
BLUEWORKS CORPORATION,
BLUEWORKS INNOVATION
CORPORATION, NINGBO C.F.
ELECTRONIC TECH CO., LTD; NINGBO
YISHANG IMPORT AND EXPORT CO.,
LTD.

   Defendants, Counterclaim Plaintiffs.

**ORDER**

**THIS MATTER** is before the Court on Plaintiff's motion for attorney's fees (Doc. No. 379), Defendant's motion to strike Plaintiff's motion for attorney's fees (Doc. No. 388), and Plaintiff's motion for leave to file a supplemental declaration in support of their motion for attorney's fees. (Doc. No. 424). All three motions are contested. See (Doc. Nos. 444, 456, 445, 446, 439, 443).

**I.    Background**

This is a case about advertising. Plaintiff and Defendants are competing manufacturers and distributors of swimming pool chlorine generators, specifically salt cell systems. Salt cell systems convert dissolved salt into chlorine to sanitize swimming pools, obviating the need for chlorine liquid or tablets. Two components comprise a salt cell system: a control panel and a salt cell. The control panel regulates the amount of chlorine generated by the salt cell, while the cell itself (a series of ruthenium oxide-coated steel plates) converts salt into chlorine which is discharged into the pool. Salt cells, as opposed to generators, have a limited use life, and must be

1

periodically replaced as the ruthenium oxide coating on their steel plates (also known as "blades") degrades.

Plaintiff Hayward contends that its salt cell systems are compatible only with Hayward-manufactured salt cells. Defendants disagree: they manufacture and sell replacement salt cells, which they market as compatible with Plaintiff Hayward's chlorination systems. Hayward markets its salt cells under various trademarks, including TURBO CELL® and T-CELL-15®, among others. Defendants' advertisements refer to Plaintiff's trademarks to indicate that Defendants' replacement salt cells are compatible with particular models of Plaintiff's chlorination systems. What's more, Defendants assert that their salt cells—like Hayward's—are "Made in USA".

After sending several cease-and-desist letters to no avail, Hayward sued Defendants in this Court in December 2020. Plaintiff Hayward brought Lanham Act claims for trademark infringement, false advertising, counterfeiting, passing off, false designation of origin, unfair competition, and importation (15 U.S.C. § 1051 et seq.); state law statutory and common law claims, particularly under the North Carolina Unfair and Deceptive Trade Practices Act ("UDTPA") (N.C. GEN. STAT. § 75-16); and a federal Copyright Act claim (17 U.S.C. § 505). (Doc. No. 57). Defendants raised counterclaims, seeking to invalidate Plaintiff's trademarks as generic or having acquired secondary meaning. Plaintiff and Defendants moved for summary judgment, and this Court denied the motions. (Doc. Nos. 119, 142, 180, 189, 263).

The parties tried this case to a jury in February 2024. (Doc. Nos. 364–70). The jury found that Plaintiff failed to prove that Defendants infringed upon their trademarks, (Doc. No. 353 ¶¶ 1–4); and that Defendants had established that their use of Hayward's marks constituted "fair use," (Id. ¶ 5); but concluded that Defendants' advertising did incorporate false or misleading

statements that were likely to deceive consumers in a way that caused material harm to Plaintiff and therefore violated UDTPA (Id. ¶¶ 6–9). The jury further found that Hayward was entitled to $4,900,000.00 in lost profits caused by Defendants' UDTPA violations, (Id. ¶ 10), an award automatically trebled to $14,700,000 under North Carolina law. (Doc. No. 448 ¶ 5) (citing N.C. GEN. STAT. § 75-16). Finally, the jury concluded that Defendant Ningbo C.F. infringed Hayward's copyrighted "AQUA RITE OPERATION AND INSTALLATION MANUAL," and consequently awarded Hayward the statutory minimum damages of $750.00. (Doc. No. 353 ¶¶ 12–15).

Based on the jury verdict, this Court entered judgment on May 28, 2024. (Doc. No. 448). After including mandatory pre-judgment interest at the North Carolina statutory rate, Plaintiff's award totaled $16,027,736.30. (Id.).

## II. Legal Standard

### a. Plaintiff's Motion for Attorneys' Fees

Plaintiff seeks an award of attorney's fees under the Lanham Act (15 U.S.C. § 1117(a)), the North Carolina Unfair and Deceptive Trade Practices Act (N.C. GEN. STAT. § 75-16), and the Copyright Act (17 U.S.C. § 505). (Doc. No. 379 at 1). Each statute sets forth necessary—but not sufficient—criteria justifying an award of attorney's fees. The statutory criteria are not sufficient because, even where they are satisfied, each statute leaves the ultimate decision of whether to award fees to the Court's discretion. See 17 U.S.C. § 505 ("the court **may** also award a reasonable attorney's fee to the prevailing party") (emphasis added); Irwin Indus. Tool Co. v. Worthington Cylinders Wisconsin, LLC, 747 F. Supp. 2d 568, 589 (W.D.N.C. 2010); USA Trouser, S.A. de C.V. v. Int'l Legwear Grp., Inc., No. 1:11-CV-00244-MRDLH, 2014 WL 1230507, at *10 (W.D.N.C. Mar. 25, 2014); Verisign, Inc. v. XYZ.COM LLC, 891 F.3d 481,

3

484 (4th Cir. 2018). Thus, even where the statutory criteria authorize a fee award, the court may in its discretion decline to order such award.

The Lanham Act authorizes fee awards only in "exceptional" cases. Verisign, Inc., 891 F.3d at 483. While "[t]here is no 'precise rule or formula for' determining whether a case is 'exceptional,'" Citi Trends, Inc. v. Coach, Inc., 780 F. App'x 74, 80 (4th Cir. 2019), the Fourth Circuit indicates that a case is exceptional where "(1) there is an unusual discrepancy in the merits of the positions taken by the parties, . . . ; (2) the non-prevailing party has litigated the case in an unreasonable manner; or (3) there is otherwise the need in particular circumstances to advance considerations of compensation and deterrence." Georgia-Pac. Consumer Prod. LP v. von Drehle Corp., 781 F.3d 710, 721 (4th Cir. 2015), as amended.

North Carolina's UDTPA permits fee awards only where (1) the recipient is a "prevailing plaintiff," (2) the defendant "willfully engaged in the unfair or deceptive trade practice," and (3) the defendant "made an unwarranted refusal to settle." Irwin Indus., 747 F. Supp. 2d at 589 (citing N.C. Gen. Stat. § 75–16.1). A "prevailing plaintiff" is one who suffered actual injury due to the counterparty's UDTPA violation.

Courts in the Fourth Circuit assess four factors to determine whether attorney's fees should be awarded on a Copyright Act claim: "(1) 'the motivation of the parties,' (2) 'the objective reasonableness of the legal and factual positions advanced,' (3) 'the need in particular circumstances to advance considerations of compensation or deterrence,' and (4) 'any other relevant factor presented.'" Diamond Star Bldg. Corp. v. Sussex Co. Builders, Inc., 30 F.3d 503, 505 (4th Cir. 1994) (citation omitted).

If the statutory criteria are satisfied, and the Court finds in its discretion that a fee award is appropriate, the Court must next ensure that any fee award is reasonable. Courts in the Fourth

4

Circuit use the lodestar method to assess fee awards. See e.g., Irwin Indus., 747 F. Supp. 2d at 590-91; USA Trouser, S.A. de C.V., No. 1:11-CV00244-MR-DLH, 2014 WL 1230507, at *10; Clark Material Handling Co., No. 3:12CV-00510-MOC, 2015 WL 3514339, at *7; Design Res., Inc., No. 1:10CV157, 2016 WL 5477611, at *7; Perdue v. Kenny A. ex rel. Winn, 559 U.S. 542, 551 (2010). Under the lodestar method, the Court determines a reasonable number of hours dedicated to the matter, then multiplies by a reasonable hourly fee. Irwin Indus., 747 F. Supp. 2d at 591. Twelve facts guide courts' assessment of whether the hours expended and rates charged were reasonable. Robinson v. Equifax Info. Servs., LLC, 560 F.3d 235, 243–44 (4th Cir. 2009). The Court need not apply all 12 factors, and the most critical factor is "the degree of success obtained" by Plaintiff's counsel. E.E.O.C. v. Service News Co., 898 F.2d 958, 965 (4th Cir. 1990); Doe v. Chao, 435 F.3d 492, 506 (4th Cir. 2006).

The party seeking attorneys' fees—here, Plaintiff—bears the burden to show both that an award is statutorily authorized and that the requested fees are reasonable. Driskell v. Summit Contracting Grp., Inc., No. 3:16-CV-819-FDW-DCK, 2021 WL 3044156, at *2–3 (W.D.N.C. July 19, 2021).

### III. Analysis

The Court will first address Defendants' motion to strike Plaintiff's motion for attorneys' fees and Plaintiff's contested motion for leave to supplement before addressing the merits of the attorneys' fees motion itself.

#### a. Defendants' Motion to Strike

Defendants move to strike Plaintiff's attorneys' fees motion under Federal Rules of Civil Procedure 54(B)(ii) and 6(c)(2). Rule 54 requires fee-shifting motions, like motions for attorneys' fees, to "specify the judgment . . . entitling the movant to the award." Rule 6 requires

5

that "[a]ny affidavit supporting a motion must be served with the motion." The Court will deny Defendants' motion to strike.

Defendants contend that Plaintiff's motion should be stricken because (1) it pre-dated the Court's entry of judgment in this matter, and therefore failed to "specify" the judgment as Rule 54 requires, and (2) Plaintiff untimely filed a supporting exhibit (Doc. No. 381-2) in violation of Rule 6. (Doc. No. 3811-1 at 13). Defendants raised these arguments in April. Four months have passed, and Defendants' arguments are now moot. The Court entered judgment in May, and Defendants have had several months to respond to the exhibit in question. Thus, Defendants cannot credibly claim to be prejudiced by Plaintiff's allegedly untimely filings. At this point, requiring Plaintiffs to re-file their attorneys' fee motion and supporting exhibits would be an empty formality. The Court will, therefore, deny Defendants' motion to strike.

### b. Plaintiff's Motion for Leave to Supplement

Plaintiff moved to supplement its fee-shifting motion to reflect additional attorneys' fees incurred after Plaintiff filed its original motion. Defendants contend that Plaintiffs' motion for leave to supplement is barred by Rule 54 for the same reason as Plaintiffs' underlying fee-shifting motion. The Court finds, first, that Defendants' Rule 54 argument is moot in light of the Court's intervening entry of judgment. Following the example of other district courts in the Fourth Circuit, the Court further finds that it may consider Plaintiff's supplemental briefing at the Court's discretion. See, e.g., Scott v. Clarke, No. 3:12-CV-000036, 2021 WL 806339 (W.D. Va. March 3, 2021); Mcintyre v. Aetna Life Ins. Co., 586 F. Supp. 2d 638 (W.D. Va. 2008). The Court will, therefore, grant Plaintiff's motion for leave to supplement.

### c. Plaintiff's Motion for Attorneys' Fees

#### i. Lanham Act

The Lanham Act authorizes fee awards only to the prevailing party in "exceptional" cases, Verisign, Inc., 891 F.3d at 483. A case is exceptional where "(1) there is an unusual discrepancy in the merits of the positions taken by the parties, . . . ; (2) the non-prevailing party has litigated the case in an unreasonable manner; or (3) there is otherwise the need in particular circumstances to advance considerations of compensation and deterrence." Georgia-Pac. Consumer Prod. LP, 781 F.3d at 721.

"[T]he first part of the fee-shifting inquiry" is whether the movant for attorneys' fees is the "prevailing party." A party prevails "when actual relief on the merits of [their] claim materially alters the legal relationship between the parties by modifying the [counterparty's] behavior in a way that directly benefits the [prevailing party]." Farrar v. Hobby, 506 U.S. 103, 111–12 (1992). In the Fourth Circuit, the prevailing party must further show that they obtained "(1) a judgment, consent decree, or similar order, (2) that grants [the party] some relief on the merits, (3) that materially alters the legal relationship between [the party] and the [counterparty], and (4) that is enforceable by the court." Ge v. U.S. Citizenship & Immigr. Servs., 20 F.4th 147, 153 (2021). Here, Plaintiff obtained an eight-figure judgment granting relief on the merits of Plaintiff's false advertising, UDTPA, and copyright claims, which materially altered the relationship between the parties by requiring Defendants to pay damages to Plaintiff, and which is enforceable by the Court. See (Doc. No. 448). The Court, therefore, reiterates its finding that Plaintiff is the prevailing party. See (Doc. No. 515 at 7).

Defendants' contention that "there was 'no clear winner' and, thus, no prevailing party" is unconvincing. See Royal Palm Props., LLC v. Pink Palm Props., LLC, 38 F.4th 1375 (11th

7

Cir. 2022)); (Doc. No. 444 at 16). The jury awarded Plaintiff a multi-million-dollar damages award, leading at least one Defendant to declare bankruptcy. Plaintiff is the clear winner and prevailing party in this case.

Finding that Plaintiffs are the prevailing party, the Court next moves to the "exceptional" case analysis. See Verisign, Inc., 891 F.3d at 483. The Court finds that this is an "exceptional" Lanham Act case because Defendants—the non-prevailing party—litigated unreasonably. See Georgia-Pac. Consumer Prod. LP, 781 F.3d at 721. The Court rests its finding—that Defendants litigated unreasonably—chiefly on Defendants' reliance on flagrant misrepresentations of material fact. See (Doc. No. 31 at 3-4, 9); (Trial Tr., Feb. 27, 2024, Vol 4, 157:16-18); (Trial Tr., Feb. 28, 2024, Vol 5, 71:16-18). Defendants also delayed litigation, causing Plaintiff to incur additional costs, by making repeated motions to extend schedule and taking a generally obstructionist approach during discovery. The Court thus finds that Defendants litigated unreasonably, rendering this case "exceptional" within the meaning of the Lanham Act, and opening the door to a discretionary award of attorneys' fees.

### ii. UDTPA

North Carolina's UDTPA permits fee awards only where (1) the recipient is a "prevailing plaintiff," (2) the defendant "willfully engaged in the unfair or deceptive trade practice," and (3) the defendant "made an unwarranted refusal to settle." Irwin Indus., 747 F. Supp. 2d at 589 (citing N.C. Gen. Stat. § 75–16.1).

A "prevailing plaintiff" is one who suffered actual injury due to the counterparty's UDTPA violation. The Court has already accepted the jury's finding that Defendants violated UDTPA, and that such violation harmed Plaintiff. (Doc. No. 448 ¶ 5) (citing (Doc. No. 353 ¶ 10)). Thus, Plaintiff satisfies UDTPA's "prevailing party" inquiry.

For Defendants' conduct to be considered "willful," it must have been "done voluntarily and intentionally with the view to doing injury to another." Standing v. Midgett, 850 F. Supp. 396, 404 (E.D.N.C. 1993) (quoted in Cargill, Inc. v. WDS, Inc., No. 316CV00848FDWDSC, 2018 WL 1525352, at *17 (W.D.N.C. Mar. 28, 2018)). Where there is "no accident or mistake and the defendant's act was intentional," a court may find that the defendant acted willfully. Hongda Chem USA, LLC v. Shangyu Sunfit Chem. Co., Ltd., No. 1:12-CV-1146, 2020 WL 1891296, at *1 (M.D.N.C. Apr. 16, 2020). Such was the case here. Defendants intentionally designed advertisements which the jury found violated UDTPA. The Court thus finds that Defendants' conduct was willful.

"In evaluating whether there was an 'unwarranted refusal to fully resolve the matter which constitutes the basis' of the suit, courts can take the entirety of the circumstances into account." DENC, 454 F. Supp. 3d at 562. Plaintiff contends that Defendant made an unwarranted refusal to settle, despite offering $600,000 in February of 2023, because Defendants' offer "came after the parties had already expended significant time and resources on fact discovery, deposition, and expert reports." (Doc. No. 379-1 at 17). Plaintiff further suggests that Defendants' $600,000 offer constitutes an unwarranted refusal to settle in light of the $4.9 million jury award, relying on Irwin Indus., 747 F. Supp. 2d at 589. The Court rejects both arguments, finds that Defendants did not make an unwarranted to refusal to settle, and will therefore decline to award attorneys' fees under UDTPA.[1]

First, the Court finds that Defendants' $600,000 settlement offer <u>was</u> in fact made in time to avoid the significant time and resources required to prepare for trial. True, Defendants' offer

---

[1] The Court notes that Defendants' $600,000 proposal was not the only settlement offer Defendants extended before trial. See (Doc. No. 444-1) (Defendants' January, 2022 offer of judgment on Plaintiff's copyright claims).

9

came after discovery. No doubt, discovery takes time and resources, and is typically a necessary step in trial preparation. But there are many forms of post-discovery trial preparation which Defendant's settlement offer, if accepted, would have sufficed to avoid. The Court declines to accept Plaintiff's argument by implication that settlement offers don't count for UDTPA purposes once discovery has concluded.

Second, while Courts' "unwarranted refusal" inquiry may consider the amount of settlement offers relative to the ultimate award, DENC, 454 F. Supp. 3d at 562, such consideration does not support an award of attorneys' fees on these facts. "Just because Plaintiff and Defendant valued the case differently does not mean Defendant unreasonably refused to settle." Russell v. Absolute Collection Servs. Inc., No. 1:09CV515, 2012 WL 12867829, at *7 (M.D.N.C. Sept. 28, 2012), aff'd, 763 F.3d 385 (4th Cir. 2014). What's more, the authority to which Plaintiff appeals is distinguishable. The Irwin Indus. Court found the defendant's settlement offer insufficient because it "did not approach even half" of undisputed amounts owed to Plaintiff. 747 F. Supp. 2d at 590. Here, by contrast, the amount owed was and remains bitterly disputed. Because Plaintiff fails to establish that Defendants made an unwarranted refusal to settle this matter, the Court finds that Plaintiff is not entitled to attorneys' fees on their UDTPA claim.

### iii. Copyright

Courts in the Fourth Circuit assess four factors to determine whether attorney's fees should be awarded on a Copyright Act claim: "(1) 'the motivation of the parties,' (2) 'the objective reasonableness of the legal and factual positions advanced,' (3) 'the need in particular circumstances to advance considerations of compensation or deterrence,' and (4) 'any other relevant factor presented.'" Diamond Star Bldg. Corp. v. Sussex Co. Builders, Inc., 30 F.3d 503,

10

Case 3:20-cv-00710-MOC-SCR   Document 522   Filed 08/23/24   Page 10 of 13

505 (4th Cir. 1994) (citation omitted). Plaintiff argues that "[t]hese factors weigh heavily in favor of granting Hayward's attorneys' fees." The Court disagrees.

The Court will decline to award fees on Plaintiff's copyright claim because, even accepting Plaintiff's contentions regarding the motivation of the parties and objective reasonableness of the parties' litigation positions, there is no compensation or deterrence rationale justifying a fee award on Plaintiff's copyright claim. Here, the jury found that Defendants' only copyright infringement was Ningbo C.F.'s use of Hayward's "AQUA RITE OPERATION AND INSTALLATION MANUAL," for which the jury awarded Plaintiff statutory minimum damages of $750.00. (Doc. No. 353 ¶¶ 12–15). Plaintiff submits that "Defendants' deceptive activities and passing off remains ongoing and requires deterrence." But "passing off" is a theory of trademark, not copyright, infringement. And the twin rationales of compensation and deterrence have already been served by the multi-million dollar judgment on Plaintiffs' other claims. The Court thus finds that Plaintiff is not entitled to a fee award with respect to its copyright claims.

### iv. Amount of Fee Award

Courts in the Fourth Circuit use the lodestar method to assess fee awards. Under the lodestar method, the Court determines a reasonable number of hours dedicated to the matter, then multiplies by a reasonable hourly fee. Irwin Indus., 747 F. Supp. 2d at 591. Twelve facts guide courts' assessment of whether the hours expended and rates charged were reasonable. Robinson, 560 F.3d at 243–44. The Court need not apply all 12 factors, and the most critical factor is "the degree of success obtained" by Plaintiff's counsel. Service News Co., 898 F.2d at 965; Doe, 435 F.3d at 506.

The Court finds that Plaintiff's counsel charged a reasonable hourly rate for their services

in this matter. This case involved trademark law, a difficult field for which specialist lawyers are well-compensated. Choice Hotels Int'l, Inc. v. A Royal Touch Hosp., LLC (NC), No. 7:17-CV-381, 2019 WL 4781879, at *5 (W.D. Va. Sept. 30, 2019). Hayward, by paying their attorneys, attests to the reasonableness of counsel's fees. See, e.g., Rum Creek Coal Sales, Inc. v. Caperton, 31 F.3d 169, 175 (4th Cir. 1994); Cargill, Inc v. WDS, Inc., No. 1:16-cv-00848, 2018 WL 1525352, at *18 (W.D.N.C. Mar. 28, 2018); Imgarten v. Bellboy Corp., 383 F. Supp. 2d 825, 836 (D. Md. 2005). Counsel further show that they made concessions to keep their rates at a reasonable level. (Doc. No. 379-1 at 22). For the foregoing reasons, the Court finds that Plaintiff's counsel charged a reasonable hourly fee for their services.

Calculating the number of hours for which Plaintiff can recover attorneys' fees poses a difficult question. The Court has already found that Plaintiff should not recover attorneys fees on their Trademark, UDTPA, and Copyright claims. But Plaintiff declined to apportion their fees on a claim-by-claim basis, instead contending that because the claims "arise from the same nucleus and operative facts" and were "inextricably interwoven" with one another, "apportionment of fees is unnecessary." (Doc. No. 379-1 at 25) (quoting Whiteside Estates, Inc. v. Highlands Cove, LLC, 146 N.C. App. 449 (2001)). The Court disagrees. Even if apportionment is not necessary on these facts, the Court finds it appropriate. And there are good reasons to question Plaintiff's assertion that these claims are closely intertwined. The jury's split decision—finding for Defendants as to trademark and fair use, for Plaintiff as to UDTPA and the Lanham Act, and for one Defendant but against another as to copyright—is a strong indicator that Plaintiff's claims were not as "inextricably interwoven" as they may seem. Apportionment is appropriate here.

The Court therefore finds that Plaintiff can only recover attorneys' fees on hours related to Plaintiff's Lanham Act claim. Assuming Plaintiff's counsel dedicated an equal number of

hours to each of their claims, the Court finds that Plaintiffs can reasonably recover fees for one quarter of the hours Plaintiff's counsel billed. The Court will, therefore, award Plaintiff one quarter of their proposed fee award.

### IV. Conclusion

Plaintiff seeks an award of $4,780,001.14 in attorneys' fees. (Doc. No. 425 ¶11). But that amount reflects the attorneys' fees charged for all four of Plaintiffs claims for relief. The Court finds that Plaintiff is only entitled to recover attorneys' fees on one of its claims for relief, i.e., Plaintiff's Lanham Act claim. Finding Plaintiff's counsel's rates to be reasonable, and assuming that Plaintiff's counsel dedicated roughly equal time to each of Plaintiff's claims for relief, the Court divides Plaintiff's proposed award by four, and will therefore order Defendants to pay Plaintiff $1,195,000.28 in attorneys' fees.

### ORDER

**IT IS, THEREFORE, ORDERED** that Defendant's motion to strike Plaintiff's motion for attorney's fees (Doc. No. 388) is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's motion for leave to file a supplemental declaration in support of their motion for attorney's fees (Doc. No. 424) is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's motion for attorney's fees (Doc. No. 379) is **GRANTED**. Defendants are **ORDERED** to pay Plaintiff's attorneys' fees in the amount of $1,195,000.28.

Signed: August 22, 2024

Max O. Cogburn Jr
United States District Judge