IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| HAYWARD INDUSTRIES, INC.,<br><br>      Plaintiff,<br>v.<br>BLUEWORKS CORPORATION, BLUEWORKS INNOVATION CORPORATION, NINGBO C.F. ELECTRONIC TECH CO., LTD; NINGBO YISHANG IMPORT AND EXPORT CO., LTD.<br>      Defendants. | Civil Action No. 3:20-CV-710-MOC-DSC |

## HAYWARD'S SUPPLEMENT TO MOTION TO SHOW CAUSE

### I.  Introduction

In the six months since the TRO was entered in this case, three things have become clear:

(1)      Ningbo C.F.[1] outright refuses to state that it is not continuously violating the TRO;

(2)      Ningbo C.F. continues to operate a robust business, such that it is clear that Ningbo C.F. is continuously violating the TRO in disregard of this Court's Temporary Restraining Order; and

(3)      Mr. Chen—the 49% owner of Ningbo C.F. and its representative in the United States—has fled to China to avoid any consequences of the wrongful conduct he directed.

Accordingly, Hayward respectfully seeks an order from this Court ordering Mr. Chen—as a representative and individually—to personally appear and to show cause as to why he should

---

[1] Because Defendant Blueworks Corporation has filed bankruptcy and the automatic stay applies to that entity. This Supplement is filed solely against Defendant Ningbo C.F., which has not filed for bankruptcy.

not be held in contempt for the ongoing violations of the Court's Temporary Restraining Order by Ningbo C.F.

## II. Defendants Refuse to Confirm Ningbo C.F. is <u>Not</u> Violating the TRO, Making Clear It Is Actively Violating the Court's Order

Respectfully, this Court should order Ningbo C.F. to affirmatively state whether it has violated the TRO. That is the purpose of the Show Cause hearing sought by Hayward.

Recently, Hayward's counsel sent a letter to Ningbo C.F.'s attorneys asking a simple question: "Please confirm with your client that the TRO is not being violated." (Exhibit A at 1). Therein, Hayward explained that it was concerned "because Ningbo C.F. Electronic Tech. Co. appears to be operating a robust business," and presented evidence showing as much. (Ex. A at 1); (Doc. Nos. 468, 469, 476). Hayward said, as it always has, that it is "willing to engage in discussions to permit transfers of funds to allow Ningbo to stay in business—after all, that is in Hayward's best interest, too, so it can collect on its judgment." (*Id.*).

Instead of responding and confirming that Ningbo C.F. is abiding by this Court's order, Ningbo—at first—did not respond at all. After more than three weeks of silence passed, Hayward followed up. Counsel for Ningbo C.F. sent the following response, referencing a completely irrelevant statement taken out of context from months prior[2]:

> Dear Russ:
>
> In your email to me of Thursday April 25, 2024, you said: 'We will not, however, litigate with you by email or outside of Court.' So, I'm sure you will understand our surprise at your recent missives.
>
> As you know, we have always been open to good faith dialog. However, your co-counsel Erik Belt recently refused to entertain even a simple confidentiality request with respect to settlement discussions. Likewise, both you and Chad Ewing abused

---

[2] The April 25, 2024, email was in response to Defendants' request for Hayward's position on a motion to unfreeze the Lu bank account. A copy of that email chain is available at Doc. No. 470-1. That motion to unfreeze was never filed by Defendants.

2

the confidences ordered by the Court when we were in Asheville with respect to Ms. Lu's bank account.

If you, your co-counsel, and your client are newly open to engage in good faith dialog, please advise.

Best,
Alex

(Exhibit B) (September 3, 2024).

That is an interesting non-response. Certainly if Ningbo C.F. were *not* violating the TRO, counsel for Ningbo C.F. would say so. Instead, Ningbo C.F. does not address the question. Previously, Ningbo C.F. avoided the question in response to Hayward's original Motion to Show Cause. *See* (Doc. No. 470) (Defendants' response to Motion to Show Cause which does not deny violating the TRO).

In certain circumstances, the rules of ethical conduct permit such a non-answer. Counsel may "simply decline to respond." ABA Formal Opinion 98-412 (Sept. 9, 1998) ("Disclosure Obligations of a Lawyer Who Discovers That Her Client Has Violated a Court Order During Litigation.") (attached hereto as Exhibit C). However, if counsel does not respond, "the lawyer's action will signal to the court that there is a problem" and the court may impose "adverse consequences" on the client. *Id.* Such "adverse consequences" should be imposed here.[3]

In certain circumstances, however, a non-answer is not permitted. One such circumstance is when there is a reporting requirement to the Court. In that case, a lawyer is required to tell the

---

[3] Perhaps the ability to decline to respond is why Ningbo C.F. has refused to respond to any post-judgment discovery. A motion to compel remains pending so that Hayward can learn of where Defendants' assets are located and execute on its judgment. (Doc. Nos. 505, 506) (Hayward's Motion to Compel and Memorandum in Support); (Doc. No. 512) (Defendants' response); (Doc. No. 520) (Hayward's reply).

3

truth to the Court (or withdraw).  The Court should hold a show cause hearing to ask Ningbo C.F., on the record, whether it is violating the TRO.  It undeniably is.

Another circumstance when an honest response is required is when there is an *ongoing* violation of the TRO, as there is here.  In the face of an ongoing violation of this Court's order, counsel cannot simply remain silent.  Indeed, in deciding "a lawyer's obligations under the Model Rules of Professional Conduct when the lawyer representing a client in civil litigation ***discovers that her client has violated a court order prohibiting the client from transferring or disposing of assets***," the American Bar Association ("ABA") noted the difference between a lawyer who knows a client *previously* violated a court order and a lawyer who knows his or her client is *continuing* to violate a court order.  The ABA called the latter an "ongoing criminal act."  (Ex. C, ABA Formal Opinion 98-412 at 1 n. 1) (emphasis added).

Ningbo C.F. is **continually** violating the TRO, assets are being marshalled to China, and the ability of Hayward to collect—the very purpose of this entire case—is being circumvented.  In such a case, disclosure is required:

> Disclosure of a client's disposition of assets in violation of a court order also is required under Rule 3.3(a)(2) when "necessary to avoid assisting a criminal or fraudulent act by the client."  Such a circumstance could arise <u>if the client's disposition of assets destroyed the subject matter of the litigation or the ability of the court to grant relief to the opposing party</u>.  That is so because <u>the client's conduct will have rendered the litigation a sham</u>. . . . Similarly, if counsel is aware that a client's violation of a court order has made it impossible for the court to grant relief requested on a pending motion, then the lawyer's silence about the matter likely would be viewed as a deception of the court.

(Ex. C, ABA Formal Opinion 98-412 at 4) (emphasis added).  Put simply: "When the client disposes of an asset that is a subject of the litigation and the court's order was designed to preserve it *pendente lite,* the client's action has rendered the litigation a sham to that extent and <u>the lawyer is required to disclose the violation or withdraw</u>."  *Id.*  (emphasis added).  That is the situation

here.  "Accordingly, in these circumstances, the lawyer who is unable to convince her client to regain control the assets in question, or who finds the client is unable to do so, may not continue the representation absent <u>disclosure of the facts to the courts</u>."  *Id.* (emphasis added).

Therefore, the Court should hold a show cause hearing in which Ningbo C.F., through its representatives, is asked a simple question: Has it abided by the Court's order?  As shown below, the answer is clearly "no."

### III. Ningbo C.F. Continues to Operate a Robust Business

It is clear that Ningbo C.F. continues to flout the TRO.  Hayward has said from the beginning it would consent to expenses to allow Ningbo C.F. to operate—and reiterated the same in its most recent letter to Ningbo C.F. (Ex. A).  The Court has said the same. (Doc. No. 404 at 2) (noting the Court will consider exceptions to the TRO on a case-by-case basis).  Hayward stands by that commitment, provided, of course, that there is appropriate oversight by the Court and Hayward.  But Ningbo has brought no such expenses to Hayward or the Court.

Yet Ningbo continues to make expenditures—continuously violating the TRO that froze its assets and bank accounts.  Ningbo operates a factory in China, (Doc. No. 367, Trial Tr. at 160:23-25), that is larger than 430,000 square feet, ships good all over the world, (*id.* at 190:11-25, 191:1-14), has annual exports of US $7,800,000, employs over two hundred (200) employees, and has an annual manufacturing capacity of over 3,000,000 units.  Indeed, as recently as last month it operated an Alibaba page that boasts of its more than 200 employees and 50,000 square meters of manufacturing space:

5

Case 3:20-cv-00710-MOC-SCR   Document 535-1   Filed 10/19/24   Page 5 of 13



"Ningbo C.F. Electronic Tech Co. Ltd.," https://techflife.en.alibaba.com (last accessed Sept 8, 2024).[4]

How is Ningbo CF paying those 200 employees or paying rent, utilities, suppliers, vendors, and other day-to-day expenses necessary to operate a business?

In the United States, as seen in the screen shot below, Ningbo C.F. products continue to be sold on Amazon:

---

[4] Sometime subsequent to September 8, 2024, this website was taken down and is no longer accessible.

6

Case 3:20-cv-00710-MOC-SCR   Document 535-1   Filed 10/19/24   Page 6 of 13

"In The Swim Salt Cell – Replacement for Hayward W3T-Cell-15 Salt Cell for Swimming Pools up to 40,000 gallons" (last accessed Sept. 8, 2024).[5] Indeed, Amazon reviews—including verified purchases—show these sales are being made as recently as August (four months after the TRO was entered):



Id.

---

[5]https://www.amazon.com/Swim-Salt-Cell-Replacement-W3T-Cell-15/dp/B0D47W4XLC/ref=sr_1_1?crid=10NVGORS74YVE&dib=eyJ2IjoiMSJ9.VTEsoydxbXzNWJHii52aYIeT5ZIVJPe_QXoN8ocD7J8.-u55a-Z6miXBsaGO_yTSIQTONt-BATDZ2SxSWKofo_M&dib_tag=se&keywords=%22Ningbo+C.F.%22&qid=1725805791&sprefix=ningbo+c.f.%2Caps%2C286&sr=8-1. Sometime after September 8, 2024, this website was taken down and is no longer accessible.

Additionally, Ningbo continues to operate its own website, where it boasts that "Ningbo CF Electronic Tech. Co., Ltd. is specialized in developing and manufacturing swimming pool equipments [sic]" and "has grown to be one of important swimming pool equipments [sic] supplies, *especially in the USA*, Thailand, Europe." "About Us," https://www.techflife.com/about-us/ (last accessed October 15, 2024) (emphasis added).

Indeed, Ningbo continues to avail itself of the laws of the United States to import its product to the United States through a number of different channels. This is evident from more than just Amazon sales. As shown in bankruptcy reporting, Blueworks continues to have warranty claims from customers for Ningbo products. In July, Blueworks transferred $59,191.59 to Ningbo C.F. for new product because of warranty returns by customers. (Exhibit D) (bankruptcy disclosure email). Indeed, it has been reported that Blueworks' "sales continue to rebound" and it has spent almost $100,000 on inventory from Ningbo C.F. since filing bankruptcy on June 11, 2024. *Id.* (noting $94,440.31 in inventory purchases by Blueworks from Ningbo C.F.). Clearly, Ningbo products are being bought and sold. At the very least, Ningbo is selling products to Blueworks.

It is thus clear that Ningbo is operating at full speed and continues to import its products into the United States in high volumes. Any time it pays employees, pays vendors, pays shipping companies, buys supplies, or similar expenditures, it is violating the TRO. And if Ningbo is completely flouting this Court's order in that regard, it is likely also sequestering money to its principals outside the United States in an effort that Hayward never collect on its judgment. The Court should order Ningbo C.F. to show cause.

### IV. Mr. Chen Has Fled to China

Most recently, Hayward has learned that Mr. Chen has fled to China—and not temporarily. Indeed, his wife, Ms. Lu (also a former Blueworks officer),[6] reports he is "*living there*."

Because Defendants have refused to respond to post-judgment discovery, Hayward sent subpoenas to third parties in an attempt to gain the necessary information, execute on its judgment, and put an end to the need for the TRO. Defendants attempted to serve Mr. Chen personally with a subpoena and successfully served Ms. Lu personally. When Ms. Lu was served with her subpoena and inquiry was made about Mr. Chen's whereabouts for his subpoena, she notified the process server that Mr. Chen "lives in China."[7] (Exhibit E) (Affidavit of process server).

It is likely that Mr. Chen fled to China upon the filing of Hayward's Motion to Show Cause. Further, Mr. Chen likely lined his pockets with money that could be used to satisfy the judgment and snuck that money into China. The Court should order Mr. Chen to personally appear and to show cause as to why sanctions should not issue for Ningbo's continued violation of the TRO. As the Court is aware, of course, Defendants, Mr. Chen, and Ms. Lu continue to stonewall Hayward at every attempt by Hayward to take post-judgment discovery.

### V. Mr. Chen Can and Should Be Held Personally Responsible for Violations of the TRO

This Court has the power to hold a corporate representative, such as Mr. Chen, personally responsible for violations of the Court's order. In this case, where Ningbo C.F. is a foreign

---

[6] In a recent bankruptcy filing signed by counsel for Ms. Lu, she claims she is the "estranged spouse" of Mr. Chen. *In re Blueworks Corp.*, No. 24-30494 ¶ 4 (Doc. No. 153) (Bankr. W.D.N.C. Oct. 14, 2024).

[7] She also informed the process server that he could be served through his attorney. However, to Hayward's knowledge Mr. Chen is ***not*** represented personally in this matter or any other (including, for example, the Shumaker firm, which has denied that it represents Mr. Chen personally).

company that refuses to follow the orders of a United States Court, its officers and directors in the United States should be held accountable.

The Fourth Circuit has made clear that non-parties can be held responsible for corporate parties that do not follow court orders: "[A] court may treat as contempt of court the failure to obey a court order <u>by an officer or director of a party</u>." *Life Techs. Corp. v. Govindaraj*, 931 F.3d 259, 267 (4th Cir. 2019), as amended (Aug. 7, 2019) (emphasis added).[8]

Courts in the Western District of North Carolina have held the same. *Xfinity Mobile v. D Town Trading Inc.*, No. 3:20-MC-00083-RJC-DSC, 2022 WL 23166, at *2 (W.D.N.C. Jan. 3, 2022) ("Mr. Alasfar, *as well as any other officers or directors of Respondents that had knowledge of the Orders in the present case* are hereby in civil contempt of the Court's Order.") (emphasis added).

Although he has fled to China, Mr. Chen has testified under oath that he resides in this district, (Doc. No. 368, Trial Tr. 137:19-138:1) (Mr. Chen testifying he lives in Charlotte); therefore, the Court has general jurisdiction over him. But that is not necessary—when an individual aids in the violation of a Court order, that individual may be held in contempt, <u>even without contacts in the forum state</u>. *Capital Source Fin., LLC v. Delco Oil, Inc.*, 520 F. Supp. 2d 684, 691 (D. Md. 2007) ("[C]ourts have held that a third party may be subject to personal jurisdiction for contempt for knowingly aiding and abetting the violation of a court order, even without other contacts with the forum state.").

Notably, although it will appear clear at the show cause hearing that Mr. Chen is acting willfully, neither willfulness nor intentionality is required for a finding of civil contempt. Both

---

[8] This Fourth Circuit case, *Life Technologies*, has been cited and relied upon by Defendants. *See* (Doc. No. 470 at 17, 21).

the Supreme Court and the Fourth Circuit have held as much. *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191 (1949) ("The absence of willfulness does not relieve from civil contempt."); *United States v. Westbrooks*, 780 F.3d 593, 596 (4th Cir. 2015) (noting civil contempt does not include a willfulness element).

Therefore, the Court should order Mr. Chen to personally appear before the Court to show cause and ultimately hold them personally in contempt.

### VI. Conclusion

Defendants continue to violate the TRO. That violation is ongoing and each day Hayward is irreparably harmed—it is spending hundreds of thousands of dollars attempting to collect a judgment, while the assets to satisfy that judgment are ferreted away beyond the borders of the United States. This Court "has broad discretion in fashioning coercive remedies to ensure compliance with its orders." *Meineke Car Care Centers, LLC v. Asar Inc., LLC*, No. 3:14-CV-129-RJC, 2016 WL 820952, at *2 (W.D.N.C. Mar. 2, 2016). For example, "a person found to be in contempt may be, among other things, imprisoned or fined indefinitely until he complies with the orders of the court." *Id.* After having an opportunity to show cause, Defendants should be held in contempt.

Respectfully submitted this the 19th day of October, 2024,

      s/ *Russ Ferguson*
Russ Ferguson (N.C. Bar No. 39671)
B. Chad Ewing (N.C. Bar No. 27811)
**Womble Bond Dickinson (US) LLP**
301 South College Street, Suite 3500
Charlotte, NC 28202
Russ.Ferguson@wbd-us.com
Chad.Ewing@wbd-us.com

Erik Paul Belt (*admitted pro hac vice*)
ebelt@mccarter.com
James Donoian (*admitted pro hac vice*)
jdonoian@mccarter.com
Anne E. Shannon (*admitted pro hac vice*)
ashannon@mccarter.com
Alexander L. Ried (*admitted pro hac vice*)
aried@mccarter.com
**McCarter & English, LL**P
265 Franklin Street
Boston, MA 02110
T: (617) 449-6500
F: (617) 607 9200

*Attorneys for Plaintiff Hayward Industries, Inc.*

**AI CERTIFICATION**

1. No artificial intelligence was employed in doing the research for the preparation of this document, with the exception of such artificial intelligence embedded in the standard on-line legal research sources Westlaw, Lexus, FastCase, and Bloomberg;

2. Every statement and every citation to an authority contained in this document has been checked by an attorney in this case and/or a paralegal working at his/her direction (or the party making the filing if acting pro se) as to the accuracy of the proposition for which it is offered, and the citation to authority provided.

                                           s/ *Russ Ferguson*
                                           Russ Ferguson