UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:20-cv-710-MOC-DSC

| | | |
|---|---|---|
| **HAYWARD INDUSTRIES, INC.,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| Vs. | ) | |
| | ) | |
| **BLUEWORKS CORPORATION, BLUEWORKS INNOVATION CORPORATION, NINGBO C.F. ELECTRONIC TECH CO., LTD., NINGBO YISHANG IMPORT AND EXPORT CO., LTD.,** | ) ) | |
| | | |
| Defendants. | ) | **ORDER** |
| ------------------------------------------------------------ | ) | |
| **BLUEWORKS CORPORATION, NINGBO C.F. ELECTRONIC TECH CO., LTD., NINGBO YISHANG IMPORT AND EXPORT CO., LTD.**, | | |
| | ) | |
| Counterclaim-Plaintiffs, | ) | |
| | ) | |
| Vs. | ) | |
| | ) | |
| **HAYWARD INDUSTRIES, INC.,** | ) | |
| | ) | |
| Counterclaim-Defendant. | ) | |

**THIS MATTER** is before the Court on Plaintiff's Motion for New Trial. (Doc. No. 373). Having considered the motion and reviewed the pleadings, the Court enters the following Order.

I.  **Background**

The parties are well-versed in the underlying facts of this case. Relevant to the pending motion, Plaintiff seeks a new trial on its trademark infringement claims following a jury verdict in which the jury found in Plaintiff's favor on most of its claims against Defendants and awarded Plaintiff millions of dollars in damages. The jury found, however, that Plaintiff had not shown

1

trademark infringement by Defendants and that Defendants proved that the use of Plaintiff's marks was fair use. (Doc. No. 353: Jury Verdict). Plaintiff seeks a new trial on its trademark infringement claims under FED. R. CIV. P. 59(e), citing "two errors that prejudiced Hayward" in the instructions given to the jury: (1) the instruction that if the T-Cell marks were used only as a model designation, and not as a trademark, then the T-Cell marks were not valid; and (2) the instruction on nominative fair use as an affirmative defense to trademark infringement. Defendants have responded to the pending motion, and Plaintiff has replied. (Doc. Nos. 396, 409). The matter is now ripe for disposition.

II.  **Legal Standard**

Under Rule 59(a), the Court may award a new trial on some or all issues when a verdict (1) is against the clear weight of the evidence, (2) is based on false evidence, or (3) will cause a miscarriage of justice. EEOC v. Consol. Energy, Inc., 860 F.3d 131, 145 (4th Cir. 2017). Even in weighing the evidence for a motion for a new trial, the determination of witness credibility is solely for the jury and will only be disturbed in the most exceptional circumstances. Bailey v. Kennedy, Civ. No. 5:00cv8, 2004 WL 3259000, at *7 (W.D.N.C. July 16, 2004), aff'd, 120 Fed. Appx. 501 (4th Cir. 2005). The determination of a motion for a new trial is within the discretion of the trial court. Chesapeake Paper Prods. Co. v. Stone & Webster Eng'g Corp., 51 F.3d 1229, 1237 (4th Cir. 1995).

When a new trial is sought based on error in the jury charge, "[i]nstructions will be considered adequate if construed as a whole, and in light of the whole record, they adequately informed the jury of the controlling legal principles without misleading or confusing the jury to the prejudice of the [objecting] party." Gentry v. E.W. Partners Club Mgmt. Co., 816 F.3d 228, 233 (4th Cir. 2016) (internal quotations omitted). "Specific jury instructions 'may not be judged

2

in artificial isolation, but must be viewed in the context of the overall charge[,]' Noel v. Artson, 641 F.3d 580, 586 (4th Cir. 2011) (quoting Henderson v. Kibbe, 431 U.S. 145, 153 n.10 (1977)), and 'in light of the whole record[,]' Abraham v. Cnty. of Greenville, 237 F.3d 386, 393 (4th Cir. 2001) (citation omitted)." Raynor v. G4S Secure Sols. (USA) Inc., 327 F. Supp. 3d 925, 933 (W.D.N.C. 2018), aff'd, 805 F. App'x 170 (4th Cir. 2020). "District courts are necessarily vested with a great deal of discretion in constructing the specific form and content of jury instructions." Id. (quoting Hardin v. Ski Venture, Inc., 50 F.3d 1291, 1293 (4th Cir. 1995)).

### III. Discussion

**A. Plaintiff's Contention that the Court Erred in Instructing the Jury that if the T-Cell Marks Were Used Only as a Model Designation, and Not as a Trademark, then the T-Cell Marks Were Not Valid**

In support of its motion for a new trial, Plaintiff first takes issue with the Court's instruction that the jury could find that Hayward's T-CELL marks were invalid if the T-CELL marks were used only as model designators and not for source identification (i.e., as trademarks). For the following reasons, the Court finds that these instructions were proper.

The Court provided a lengthy jury instruction as to Plaintiff's trademark infringement claims, and more specifically with respect to Plaintiff's T-CELL Marks. The Court instructed the jury that Plaintiff owned registered trademarks, including T-CELL-3, T-CELL-9, and T-CELL-15, (Doc. No. 370 at 122:5–7), and that "Hayward's registered trademarks are presumed to be valid." (Id. at 122:14). The Court went on to instruct that, "[a]s a defense to Hayward's claims, defendants may rebut the presumption…" in which case "defendants must prove by a preponderance of the evidence that the T-Cell marks are used as a model number, but not as a trademark, or are merely descriptive and lack secondary meaning." (Doc. No. 370 at 123:7–12).

3

The Court clearly and correctly instructed that Defendants had the burden of showing that the T-Cell marks lack secondary meaning as part of the jury's determination on the defense of invalidity. The Court instructed the jury that:

> Part of your determination of whether the T-Cell marks are valid trademarks is whether the T-Cell marks are used as a trademark or for source identification or whether the T-Cell marks are instead used as a model designation.
>
> A model designation may also be a trademark. If you find the T-Cell marks are used only as a model designation and not also as a trademark, you must find that the T-Cell marks were invalid, and your verdict with respect to the T-Cell marks must be for the defendants.

(Id. at 123:13–124:16 (emphasis added)). It is clear that "part of the determination" was how the T-CELL marks are used (i.e., only as model numbers, or as source-identifying trademarks), where "for source identification" is synonymous with secondary meaning. E. & J. Gallo Winery v. Gallo Cattle Co., 967 F.2d 1280, 1291 (9th Cir. 1992) ("Secondary meaning is the consumer's association of the mark with a particular source or sponsor.") (emphasis added). Secondary meaning is not removed from the consideration of whether the T-CELL marks are only model designations—"source identification" is the same thing. Id. The Court further instructed that a model designation could also be a trademark. Id.

Here, when viewed in the context of the overall charge, and even specifically with respect to the T-CELL marks, the jury was thoroughly instructed as to secondary meaning, and determining whether prospective purchasers have associated the mark with a single source. Directly following the instruction above, the Court instructed the jury:

> An owner of a trademark may not exclude others from using a word that is merely primarily descriptive of goods unless that word has acquired a secondary meaning because the prospective purchasers have associated the mark with a particular source or a sponsor.
>
> A trademark is merely primarily descriptive if it's understood by

4

> prospective purchasers to describe only the functions, qualities, characteristics, or use of the goods. Whether a mark has a secondary meaning depends on the recognition that the mark has among prospective purchasers.
>
> If the evidence shows that a significant number of the consuming public associates the mark with a single source, then the mark has secondary meaning. If you find, for the T-Cell marks, that the marks are descriptive and have not acquired secondary meaning, the marks are invalid, and your verdict with respect to the T-Cell marks must be for the defendants. If, on the other hand, you find that the marks have acquired secondary meaning, then the marks are valid.

(Id. at 123:13–124:14). As these instructions demonstrate, the jury was clearly instructed to consider secondary meaning, in terms of whether the consuming public associates the mark with a single source, specifically with respect to the T-CELL marks. The Court finds no error, much less prejudicial error, in the Court's instructions.

Plaintiff also complains that the Court's instruction focused on "how the marks were used rather than how the relevant consuming public understood the marks." (Doc. No. 373-1 at 13 (emphasis in original)). First, the Court's instruction relating to whether the T-CELL marks were used as trademarks (i.e., for source identification) or solely as model numbers (i.e., merely descriptive) was not to the exclusion of how the relevant consuming public viewed the mark. The Court instructed the jury on both. Specifically, the Court instructed the jury on secondary meaning with respect to the T-CELL marks: "[i]f the evidence shows that a significant number of the consuming public associates the mark with a single source, then the mark has secondary meaning." (Doc. No. 370 at 124:7–9). Moreover, as discussed above, "source identification" and "secondary meaning" are synonymous.

Plaintiff also suggests, citing 15 U.S.C. § 1127, that how the marks are used is irrelevant and "defie[s] a bedrock principle of trademark law." But the Lanham Act defines a trademark as a "word, name, symbol, or device . . . used by a person . . . to indicate the source of the goods."

5

15 U.S.C. § 1127 (emphasis added). In other words, in first determining whether something is a trademark, it must be shown that the mark is being used to identify a source. Only after a trademark is identified does the consumer perception of the mark come into play. See 15 U.S.C. § 1114. It is well-settled that whether an "alphanumerical designation" functions "in part to designate model or grade" and may also be considered a trademark, or whether it functions only to designate model or grade and therefore is descriptive, "depend[s] upon the nature and manner of use" of the designation. Eastman Kodak Co. v. Bell & Howell Document Mgmt. Prod. Co., 994 F.2d 1569, 1576 (Fed. Cir. 1993) (emphasis added)). In sum, the Court did not err in giving the challenged instruction.

Finally, sufficient evidence was presented at trial for the jury to conclude that Hayward used the T-CELL marks only as model designations and not as source-identifying trademarks and that the marks lacked secondary meaning. Indeed, by its own admission, Plaintiff did not seek to register the T-CELL model designations as trademarks until more than a decade after having used them as model designations—and only after third parties were using similar model designations. See (PTX002-004). The jury heard that Hayward claims that it started using T-CELL-3, T-CELL-9, and T-CELL-15 as early as 2009, but that it did not apply to register these model designations at trademarks until November 2019. (Id.). The trademark registrations for the T-CELL marks were issued in June 2020. (Id.). Plaintiff did not use the "TM" symbol in connection with its T-CELL model designations, and even after the marks were registered, rarely used the ® symbol with the mark in advertising. Moreover, Plaintiff's own witnesses testified that the T-CELL marks are part numbers, (Doc. No. 365 at 58:14–17; Doc. No. 366:174:12–14, 175:11 ("At one point or another, [T-Cell-15] was a part number."), 176:13–16 ("Q: And T-Cell-9 is also a part number, is it not? A: It is a part number. Q: Hayward also refers to T-Cell-3 as a

6

part number, right? A: Yes.")). Plaintiff's witness even attempted to correct himself when he referred to "T-Cell-15" as a "part number." (Doc. No. 366 at 112:15–16 ("close to our part number – or to our trademark of T-Cell-15") (testimony of M. Glibowski)). The evidence at trial supported a finding that, at least until Plaintiff registered the T-CELL marks, they were solely model designations.

In sum, the Court's instructions adequately informed the jury of the controlling legal principles. Thus, the Court will deny Plaintiff's motion for new trial as to these challenged instructions.

**B. Plaintiff's Contention that the Court Erred in Instructing the Jury on Fair Use**

In challenging the Court's fair use jury instruction, Plaintiff first argues that it is entitled to a new trial because it was prejudicial error for the Court to instruct the jury on nominative fair use as a defense to trademark infringement. For the following reasons, Plaintiff's contention is without merit.

Here, the Court instructed the jury as to two types of fair use: descriptive and nominative. (Doc. No. 370 at 127:25–128:90). "Descriptive, or classic, fair use applies when the defendant is using a trademark 'in its primary, descriptive sense' to describe the defendant's goods or services." Rosetta Stone Ltd., 676 F.3d 144, 169 (4th Cir. 2012) (citing Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc., 618 F.3d 1025, 1031 (9th Cir. 2010) and 15 U.S.C. § 1115(b)(4)). As to descriptive, or classic, fair use, the Court instructed:

> Defendant made a classic fair use of Hayward's trademark if they, one, used the marks other than as a trademark, used the marks fairly and in good faith, and used the marks only to describe their own goods or services.

7

(Doc. No. 370 at 130:12–15).[1]

Plaintiff did not object to the Court's instruction on descriptive fair use. (Id. at 13:5–9). In any event, Defendants presented more than sufficient evidence of descriptive fair use. As discussed above with respect to Hayward's use of the T-CELL model designations, model designations are typically considered descriptive unless and until they acquire secondary meaning. See Arrow Fastener Co. v. Stanley Works, 59 F.3d 384, 392 (2d Cir. 1995) ("T–50 cannot at once be a model number and also be considered an arbitrary mark for purposes of trademark protection."). In other words, by its very nature, model designations are descriptive.[2]

The evidence presented to the jury demonstrated descriptive fair use, namely that Defendants use Hayward's T-CELL marks in their advertising, not as a source identifier, but to inform the public what the product is. That is, the marks were used to inform the consumer which pool size the replacement salt cells are intended for. Defendants also presented evidence to the jury that Defendants' advertisements prominently feature their names and trademarked logo in association with their products and identify their products as "compatible with" or "replacements for"

---

[1] The Verdict Form asked the jury whether the use of Plaintiff's marks was fair use—it did not differentiate between descriptive fair use and nominative fair use. (Doc. No. 353). Plaintiff suggests that because Defendants' counsel did not specifically mention "classic fair use" in her closing argument that the jury could not have decided its verdict on descriptive fair use. Plaintiff cites no support for the argument that a defense is waived if not addressed in closing, but otherwise included in the jury instruction and trial evidence.

[2] As Defendants note, at trial, Plaintiff argued that the T-CELL model designations were arbitrarily selected, but that does not make them "arbitrary" marks. "Model numbers, while often arbitrary in that they do not refer to characteristics of the item they demark, are nevertheless generally descriptive because they serve to distinguish a single source's products from each other." Arrow Fastener Co. v. Stanley Works, 59 F.3d 384, 391–92 (2d Cir. 1995) (citing J.M. Huber Corp. v. Lowery Wellheads, Inc., 778 F.2d 1467, 1469–70 (10th Cir. 1985) (holding that although alphanumeric symbols on wellheads do not describe wellheads' physical characteristics, "symbols distinguish one [company] wellhead from another").

Plaintiff's salt cells.

More importantly, Defendants' reference to the T-CELL were used so consumers can (1) purchase the correct replacement salt cell for their pool and (2) configure their chlorination system to work correctly with the replacement cell. Defendants also presented other aftermarket replacement parts that used the same model numbers as the manufacturer to inform consumers of the correct size and compatibility. Thus, the evidence supports the jury verdict on descriptive fair use. See Schafer Co. v. Innco Mgmt. Corp., 995 F.2d 1064 (4th Cir. 1993) (holding that the defendant's use of an allegedly infringing term was a fair use where the term was used for its primary descriptive meaning that preexisted the plaintiff's trademark, the visual depiction of the term did not resemble the visual depiction of the plaintiff's trademark, and the defendant's use of the term was accompanied by the prominent display of its own tradename and logo to avoid consumer confusion).

As to nominative fair use, Plaintiff argues that the Fourth Circuit has not recognized the doctrine. This is incorrect. While it may not yet have adopted a formal standard, the Fourth Circuit in Rosetta Stone Ltd. v. Google, Inc. nevertheless recognized and applied the doctrine of nominative fair use. 676 F.3d at 154–55 (finding the district court did not commit reversible error in failing to address every likelihood of confusion factor in a "referential or nominative type use"). Then, in Radiance Found., Inc. v. N.A.A.C.P., the Fourth Circuit, citing Rosetta Stone, subsequently applied nominative fair use to a dilution claim. Moreover, also citing Rosetta Stone, other district courts in the Fourth Circuit have acknowledged that nominative fair use applies in this circuit. See, e.g., Makina v. Kimya Endustrisis A.S., No. 3:20-cv-72, 2023 WL 6540200, at *7 (W.D. Va. Oct. 6, 2023) ("This circuit has held that nominative fair use applies to situations 'in which the defendant uses the plaintiff's trademark to identify the plaintiff's own

9

goods.'") (quoting Rosetta Stone Ltd., 676 F.3d at 154); R/C Theatres Mgmt. Corp. v. Metro Movies, LLC, 44 F. Supp. 3d 626, 634 (D. Md. 2014) (acknowledging that the Fourth Circuit has held that nominative fair use "applies to situations 'in which the defendant uses the plaintiff's trademark to identify the plaintiff's own goods.'") (quoting Rosetta Stone Ltd., 676 F.3d at 154).

The doctrine of nominative fair use employs different factors to fairly assess the likelihood of confusion, recognizing that certain of the factors in the traditional test do not translate to a case where a party is fairly referring to another's products using that party's marks. See Rehrig Pac. Co. v. Norseman Plastics Ltd. Inc., No. SACV0300470JVSAJWX, 2003 WL 25667625, at *33 (C.D. Cal. Sept. 30, 2003). The nominative fair use factors are:

> 1. Is the use of plaintiff's mark necessary to describe (1) plaintiff's product or service and (2) defendant's product or service?
>
> 2. Is only so much of the plaintiff's mark used as is necessary to describe plaintiff's products or services?
>
> 3. Does the defendant's conduct or language reflect the true and accurate relationship between plaintiff and defendant's products or services?

Century 21 Real Est. Corp. v. Lendingtree, Inc., 425 F.3d 211, 228 (3d Cir. 2005); see also Toyota Motor Sales, U.S.A., Inc. v. Tabari, 610 F.3d 1171, 1175–76 (9th Cir. 2010) (similar factors).

Applying the nominative use test, the evidence at trial supports the jury's finding that Defendants' use of the T-CELL marks was fair.[3] First, Defendants needed to refer to Plaintiff's

---

[3] Defendants presented sufficient evidence for the jury to conclude that Plaintiff did not have trademark rights in the T-CELL marks until the registrations issued. Therefore, with respect to the T-CELL marks, the nominative fair use doctrine applies to those instances only after Hayward was found to have trademark rights in the T-CELL marks (if at all)—likely after

T-CELL marks to communicate that Defendants' aftermarket salt cells were replacements for Plaintiff's salt cells and for use in Plaintiff's systems. See Century 21, 425 F.3d at 228 (first factor). To compare products to indicate compatibility, "the most logical manner to identify and describe [plaintiff's] products is to use the [trademarked] terms that describe them in the industry." Rehrig, 2003 WL 25667625, at *33 (finding fair use in such a circumstance). The first factor is met.

Second, Defendants presented evidence supporting their contention that their use of Plaintiff's marks was limited to that reasonably necessary to identify Plaintiff's product. See Century 21, 425 F.3d at 228 (second factor). Defendants' advertisements used the T-CELL marks in a regular font and size and did not use "anything else that isn't needed to make the [advertisements] intelligible." See New Kids on the Block v. News Am. Publ'g, Inc., 971 F.2d 302, 308 (9th Cir. 1992); see also Frontrange Sols. USA, 505 F. Supp. 2d at 835 (use in "generic type" weighed in favor of fair use and against finding of likelihood of confusion). Moreover, the evidence showed that Defendants did not use the T-CELL marks on Defendants' products themselves. Accordingly, the second factor is met.

Third, Defendants' use of Plaintiff's T-CELL marks does not suggest sponsorship or endorsement by Hayward. See Century 21, 425 F.3d at 228 (third factor). As demonstrated at trial, Defendants' advertising always featured some combination of their own name/logo/house

---

registration. Defendants presented evidence that once they were notified that Plaintiff had received trademark registrations for its T-CELL marks, Defendants used the T-CELL marks only nominatively after "compatible with" to reference Plaintiff's products. Each of the examples cited by Plaintiff showing the T-CELL marks in front of "compatible with" occurred before Plaintiff received its trademark registrations for the T-CELL marks. (PTX023J (dated 5/7/2020), PTX023E (dated 5/7/2020), PTX023B (dated 5/7/2020)).

11

mark and terms like "generic," "replacement," and/or "compatible with." See, e.g., (PTX023F-G (dated 8/11/2020) and PTX024B-C (dated 2021), PTX041 (dated 5/24/2021)). Thus, the third factor is met.

Here, the jury's verdict on fair use is supported by the evidence at trial, and the Court's instruction on fair use was a correct statement of law.

## IV. Conclusion

In sum, Plaintiff has failed to meet the stringent standards necessary for a new trial. Neither instruction challenged by Plaintiff resulted in a verdict "against the clear weight of the evidence," "based upon evidence which is false," or "a miscarriage of justice." Atlas Food Sys. & Servs., Inc. v. Crane Nat'l Vendors, Inc., 99 F.3d 587, 594 (4th Cir. 1996). Specifically, as to the challenged instructions, they adequately informed the jury of the controlling legal principles. Plaintiff's motion for a new trial is denied.

**ORDER**

**IT IS, THEREFORE, ORDERED** that Plaintiff's Motion for New Trial, (Doc. No. 373), is **DENIED**.

Signed: December 30, 2024

Max O. Cogburn Jr
United States District Judge