UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:20-cv-710-MOC-DSC

| | |
|---|---|
| **HAYWARD INDUSTRIES, INC.,** )<br>)<br>Plaintiff, )<br>)<br>Vs. )<br>)<br>**BLUEWORKS CORPORATION, BLUEWORKS** )<br>**INNOVATION CORPORATION, NINGBO C.F.** )<br>**ELECTRONIC TECH CO., LTD., NINGBO**<br>**YISHANG IMPORT AND EXPORT CO., LTD.,**<br><br>Defendants. )<br>------------------------------------------------------------------ )<br>**BLUEWORKS CORPORATION, NINGBO C.F.**<br>**ELECTRONIC TECH CO., LTD., NINGBO**<br>**YISHANG IMPORT AND EXPORT CO., LTD.**,<br>)<br>Counterclaim-Plaintiffs, )<br>)<br>Vs. )<br>)<br>**HAYWARD INDUSTRIES, INC.,** )<br>)<br>Counterclaim-Defendant. ) | **ORDER** |

**THIS MATTER** is before the Court on Defendants' Motion for Judgment as a Matter of Law/Renewed Motion for Judgment as a Matter of Law under Fed. R. Civ. P. 50(b) or, in the Alternative, Motion for New Trial under Fed. R. Civ. P. 59(a). (Doc. No. 375). Having considered the motion and reviewed the pleadings, the Court enters the following Order.

I. Background

The parties are well-versed in the underlying facts of this case. Relevant to this motion, after trial, a jury found that Defendants falsely advertised their salt cells, engaged in unfair or

1

deceptive trade practices, and copied Hayward's user manual. The jury thus awarded Hayward $4.9 million in actual damages and $750 in statutory damages. (Doc. No. 353).

In the pending motion, Defendants seek judgment as a matter of law or, alternatively, a new trial on the following grounds: (1) Plaintiff did not produce evidence as to any of its claims with respect to Ningbo Yishang and Blueworks Innovation; (2) Plaintiff failed to provide evidence of direct copyright infringement by Ningbo C.F.; (3) Plaintiff failed to prove evidence of damages as to its claims for false advertising under the Lanham Act and under the NC UDTPA; and (4) Plaintiff's claims are barred by laches. The matter is ripe for disposition.

## II. Legal Standard

First, to be entitled to judgment as a matter of law under Rule 50(b), Defendants must establish that "the only conclusion a reasonable jury could have reached is one in favor of the moving party." Duvall v. Novant Health, Inc., 95 F.4th 778, 788 (4th Cir. 2024). The Court must view the evidence in the light most favorable to the non-moving party—here, Hayward—and disregard all evidence favorable to the moving party that the jury is not required to believe. Id. This standard imposes a "steep hurdle" on Defendants. Id. Indeed, Defendants may not merely show that reasonable minds could differ as to the jury's findings. Id. See also Atlas Food Sys. & Servs., Inc., v. Crane Nat'l Vendors, Inc., 99 F.3d 587, 599 (4th Cir. 1996) ("An appeals court is abjured to determine whether a jury verdict can be sustained on any reasonable theory.").

Next, under Rule 59(a), the Court may award a new trial on some or all issues when a verdict (1) is against the clear weight of the evidence, (2) is based on false evidence, or (3) will cause a miscarriage of justice. EEOC v. Consol Energy, Inc., 860 F.3d 131, 145 (4th Cir. 2017). Even in weighing the evidence for a motion for a new trial, the determination of witness credibility is ordinarily for the jury and will only be disturbed in the most exceptional

2

circumstances. Bailey v. Kennedy, Civ. No. 5:00cv8, 2004 WL 3259000, at *7 (W.D.N.C. July 16, 2004), aff'd, 120 Fed. Appx. 501 (4th Cir. 2005). The determination of a motion for a new trial is within the discretion of the trial court. Chesapeake Paper Prods. Co. v. Stone & Webster Eng'g Corp., 51 F.3d 1229, 1237 (4th Cir. 1995). When a new trial is sought based on evidentiary errors by the district court, "[s]ubstantial errors in the 'admission or rejection of evidence' may support a new trial." Daugherty v. Ocwen Loan Servicing, LLC, No. 5:14-cv-24506, 2016 WL 6650856, at *2 (S.D. W. Va. Oct. 12, 2016).

### III. Discussion

**A. Defendants' Contention that the Court Should Enter Judgment as a Matter of Law in favor of Defendants Ningbo Yishang and Blueworks Innovation**

In their motion for new trial, Defendants first contend that Plaintiff did not produce evidence as to any of its claims with respect to Ningbo Yishang and Blueworks Innovation. Defendants therefore first seek judgment as a matter of law in favor of these Defendants. For the following reasons, the Court declines to enter judgment in favor of these Defendants.

The Court has already found that all four named Defendants are alter egos of one another, and they are therefore jointly and severally liable. Accord Flame S.A. v. Indus. Carriers, Inc., 39 F. Supp. 3d 769, 788 (E.D. Va. 2014) (finding individual and corporate defendants were all alter egos of each other and entering judgment against all jointly and severally), aff'd, Flame S.A. v. Freight Bulk Pte. Ltd., 807 F.3d 572, 591 (4th Cir. 2015) ("[A]lter ego liability made [defendant] Freight Bulk jointly and severally liable for the entirety of [plaintiffs'] judgments against [defendant] ICI."). All four defendants (1) are owned or controlled by Mr. Chen and his family

3

and (2) were all involved in some fashion in the alleged wrongs.[1] See, e.g., Progress Solar Sols., LLC v. Fire Prot., Inc., No. 5:17-cv-152-D, 2022 WL 4537903, at **2–3 (E.D.N.C. Aug. 30, 2022), appeal dismissed sub nom. Progress Solar Sols., LLC v. Bills, No. 22-2019, 2023 WL 6366692 (4th Cir. May 18, 2023) (holding, in a false advertising and UDTPA case, that all defendants were joint tortfeasors and noting that defendants are jointly and severally liable for damages "when (1) defendants have acted in concert to commit a wrong that caused an injury; or (2) defendants, even without acting in concert, have committed separate wrongs that still produced an individual injury") (quoting G.E. Betz, Inc. v. Conrad, 752 S.E. 2d 634 (N.C. Ct. App. 2013)); Migun Life, Inc. v. Cox, No. 1:17-cv-221-MR, 2018 WL 6028720, at *1, *7 (W.D.N.C. Nov. 16, 2018) (holding individual defendant and two companies of which he was the sole owner and member jointly and severally liable for damages arising from Defendants' continued infringement of Plaintiff's mark through online advertisements).

Alternatively, each defendant is contributorily or vicariously liable for the conduct of Ningbo C.F. and/or Blueworks because they had at least constructive knowledge of Blueworks Corporation's and Ningbo C.F.'s false advertising and unfair or deceptive trade practices. See Coach, Inc. v. Farmers Market & Auction, 881 F. Supp. 2d 695, 705 (D. Md. 2012) (finding that defendants who "had at least constructive knowledge of the . . . false advertising . . . [could be

---

[1] As the evidence showed, Mr. Chen owns or controls all four defendants, either by himself or with his mother and brother. Mr. Chen was Defendants' main fact witness and, indeed, was the Rule 30(b)(6) designee not just for Blueworks Corp. and Ningbo C.F., but also for Ningbo Yishang and Blueworks Innovation. See Herrmann Int'l, Inc. v. Herrmann Int'l Europe, No. 1:17-cv-73-MR, 2021 WL 861712, at *16, n.10 (W.D.N.C. Mar. 6, 2021) ("Even without piercing the corporate veil . . . Defendant Vuillemin can be held liable for the DTSA and NCTSPA claims because '[a] corporate official may be held personally liable for tortious conduct committed by him, though committed primarily for the benefit of the corporation'") (citing Polo Fashions, Inc. v. Craftex, Inc., 816 F.2d 145, 149 (4th Cir. 1987) and Sit-Set, A.G., v. Universal Jet Exch., Inc., 747 F.2d 921, 929 (4th Cir. 1984)).

4

liable for] contributory . . . false advertising under the Lanham Act").

Here, given the common ownership and control across Mr. Chen's family, Ningbo Yishang and Blueworks Innovation acted in concert with Ningbo C.F. and Blueworks Corp. or had at least constructive knowledge of Blueworks and Ningbo C.F.'s false advertising and unfair or deceptive practices and are thus joint tortfeasors who are jointly and severally liable.

In sum, the Court denies Defendants' motion for judgment as a matter of law in favor of Defendants Ningbo Yishang and Blueworks.

**B. Defendants' Contention that Plaintiff Failed to Produce Evidence of Direct Copyright Infringement by Ningbo C.F.**

Defendants next contend that Plaintiff failed to provide evidence of direct copyright infringement by Ningbo C.F. The Court disagrees.

As Defendants note, Plaintiff did not bring a claim for vicarious copyright infringement. Thus, Plaintiff's only claim as to Defendants is that of direct copyright infringement. To prove direct copyright infringement, a plaintiff must show that (1) ownership of the copyright in the work that was allegedly copied; and (2) copying of protected elements of that work. Levi v. Twentieth Century Fox Film Corp., No. 3:16cv129, 2018 WL 1542239, at *3 (E.D. Va. Mar. 29, 2018); Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 341 (1991). As to the first prong of this test for copyright infringement, Plaintiff entered into evidence its copyrighted manuals and the copyright registrations pertaining to those manuals, thus proving ownership. As to the second prong, Plaintiff entered into evidence the infringing Excel Pool manual. Plaintiff proved that Ningbo C.F. copied Plaintiff's manual to create the infringing Excel Pool manual because Mr. Chen admitted that Ningbo C.F. prepared the Excel Pool manual that copied graphics and text from Plaintiff's manual. (Trial Tr., Vol. 5, 118:11–119:20). Thus, Ningbo controlled the

5

content. See PTX324-0007 ("You know CF revised all Salt System manual to avoid any further infringement with Hayward"). Here, while Mr. Chen initially denied that Ningbo C.F. had any involvement in creating the Excel Pool manual, Mr. Chen changed his testimony to confirm that Ningbo C.F. provided content for the Excel user manual. Mr. Chen then confirmed that Ningbo C.F. created and provided the actual manual that was the subject of Plaintiff's copyright infringement claim. Defendants have not shown that no reasonable jury would have found for Plaintiff on its copyright claim. Thus, Defendants are not entitled to judgment as a matter of law under Rule 50(b) or a new trial under Rule 59 as to the copyright claim.

C. **Defendants' Contention that Plaintiff's Claims for Damages Relating to its Claims for False Advertising under the Lanham Act and under the NC UDTPA Lacked Evidentiary Support of Damages and Proximate Cause**

Defendants next contend that Plaintiff failed to prove evidence of damages as to its claims for false advertising under the Lanham Act and under the NC UDTPA. The Court disagrees. Here, as noted by the Court at trial, Plaintiff was not required to prove how much damage it suffered from each individual false statement Defendants made. The Court was correct in this analysis because a "plaintiff should not be required to show an exact dollar amount with mathematical precision" but "need only provide a 'basis for a reasonable estimate' of damages." Progress Solar Sols., 2022 WL 4537903, at *2. The Court expressed its concern that requiring a higher standard of certainty for calculating lost profits would render proving damages nearly impossible. This impracticability stems from the fact that most of Defendants' false claims and alleged trademark infringements appear in the same advertisements. Vital Pharms. v. PhD Mktg., Inc., No. CV 20-06745-RSWL-JCX, 2022 WL 2952495, at *6 (C.D. Cal. July 26, 2022) (awarding plaintiff all of defendants' net profits because the "infringing and non-infringing

6

elements of the work cannot be readily separated"). Ms. Saitz, Plaintiff's damages expert, explained that "[it] was difficult for [her] to parse out any differences [because] there were so many different variations in the ads and different statements" in each ad. (Trial Tr., Vol. 6, 67:23–25). Ms. Saitz further explained why she did not distinguish between trademark infringement and false advertising damages: "Well, the remedies under both are the same. That's my understanding. And so I did not make a separate calculation, and neither did [Defendants' expert] Professor Grace." (Trial Tr., Vol. 6, 67:11–13). Ms. Saitz's analysis was correct because the remedies for both causes of action are the same:

> When a violation of any right of the registrant of a mark registered in the Patent and Trademark Office, a violation under section 1125(a), or (d) of this title, . . . shall have been established in any civil action arising under this chapter, the plaintiff shall be entitled . . . to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action.

15 U.S.C. § 1117(a). Moreover, Defendants' conduct for which they are liable under the Lanham Act—their false or deceptive advertising—is the same conduct for which they are liable under the UDTPA, and the Court correctly instructed the jury as such. See, e.g., Camco Mfg., Inc. v. Jones Stephens Corp., 391 F. Supp. 3d 515, 528 (M.D.N.C. 2019). As the Court found, Plaintiff proved that Defendants' false statements in their advertising rendered Defendants liable for Lanham Act false advertising and, by extension, for violating the UDTPA.[2]

---

[2] Defendants' argument that Plaintiff's damages for conduct that violated the UDTPA must be limited to conduct occurring in North Carolina ignores that Plaintiff resides in North Carolina and was injured here; Blueworks is likewise located in North Carolina; and Blueworks advertises and sells the salt cells from its offices in North Carolina. Even if Blueworks advertises and sells the falsely advertised salt cells to out-of-state customers, those sales still violate the UDTPA. See Nat'l Pork Producers Council v. Ross, 988 U.S. 356, 376 (2023) (rejecting "almost per se rule" under the Dormant Commerce Clause that a state cannot validly regulate extraterritorial commerce); Smithkline Beecham Corp. v. Abbott Labs., No. 1:15-cv-360, 2017 WL 1051123, at *6, *9–10 (M.D.N.C. Mar. 20, 2017) (holding that UDTPA applies in "a complex UDTPA claim that touches many states" where the out-of-state defendant's acts occurred in numerous states,

7

By showing sales made through Amazon.com, Plaintiff proved the dates that (1) Defendants' false advertisements were available for consumers to view and from which they could purchase Defendants' salt cells, and (2) consumers actually purchased Defendants' salt cells. Plaintiff also proved that Defendants' false statements caused Plaintiff's lost profits. Jason Davila testified that, based on his review of the market data, "every cell that they [Blueworks] sold directly took away from Hayward."[3] (Trial Tr., Vol. 3, 32:4–8). Davila explained that this is because the Blueworks salt cells are being sold for Plaintiff's systems—i.e., as replacements for Plaintiff's genuine salt cells configured for Plaintiff's controllers for pool owners who already own Plaintiff's controller. (Id. at 32:9-12; 57:21–58:11). Mr. Davila further testified that, based on the Amazon statistics, Plaintiff lost about 13% market share in the same period that Blueworks took that 13% market share. (Trial Tr., Vol. 3, 31:11–32:3).

Moreover, in comparative advertising cases such as this one, there is a presumption of causation. 3M Innovative Props. Co. v. Dupont Dow Elastometers LLC, 361 F. Supp. 2d 958, 972–73 (D. Minn. 2005) (stating that "a presumption of causation and injury" is proper "in the context of comparative advertisements specifically targeting the plaintiff's product"). But even if

---

and the plaintiff, which had offices in North Carolina, felt most of the lost profits in North Carolina). Defendants ignore that Ningbo C.F. sells to Blueworks in North Carolina the salt cells that are the subject of the false advertising. Ningbo C.F.—through its alter ego and joint tortfeasor, Blueworks—does business in and from North Carolina.

[3] As Plaintiff notes, Defendants seem to be arguing that Plaintiff was required to find each person who bought Defendants' salt cells, interview them, and use that testimony to establish the causal link. But, under Fourth Circuit law, Plaintiff was not required to show instances of actual confusion to be entitled to lost profits. See, e.g., Basile Baumann Prost Cole & Assocs., Inc. v. BBP & Assocs. LLC, No. WDQ-11-2478, 2012 WL 3115867, at *3 (D. Md. Jul. 25, 2012) ("Although most circuits have conditioned monetary awards on proof of actual confusion, the Fourth Circuit has not"). In any event, Professor Didow's confusion surveys serve as proxies for evidence of actual confusion. See Sara Lee Corp. v. Kayser-Roth Corp., 81 F.3d 455, 466–67 and n.15 (4th Cir. 1996).

8

Case 3:20-cv-00710-MOC-SCR     Document 569     Filed 01/27/25     Page 8 of 12

causation were not presumed, Plaintiff proved that Defendants' false comparative advertising claims caused consumers to purchase Defendants' replacement salt cells because, as Mr. Davila testified, consumers who purchase Defendants' salt cells are purchasing them to replace one of Plaintiff's salt cells and to work with Plaintiff's controllers. (Trial Tr., Vol. 3, 28:4-16, 31:1–32:13 and PTX559). Moreover, Ms. Saitz's lost profits calculation is supported by case law, which holds that calculating damages based on lost profit requires "a certain degree of approximation and inference." Church & Dwight Co. v. SPD Swiss Precision Diagnostics GMBH, No. 14-cv-585, 2018 WL 4253181, at **15–16 (S.D.N.Y. Sept. 5, 2018). Defendants offered no evidence to overcome the reasonableness of Ms. Saitz market share calculation.

Finally, to the extent that Defendants question the calculation of the $4.9 million damages, there is a reasonable explanation for it. Atlas Food Sys. & Servs., Inc., v. Crane Nat'l Vendors, Inc., 99 F.3d 587, 599 (4th Cir. 1996) ("An appeals court is abjured to determine whether a jury verdict can be sustained on any reasonable theory"). In particular, the jury heard the competing damages numbers from the two experts. The jury heard Ms. Saitz opine that lost profits were either $22 million or $24 million depending on which data set was used. The jury heard Defendants' expert, Dr. Grace, opine that lost profits were only $800,000. Then, during closing argument, Defendants' counsel emphasized Ms. Saitz's $24 million damages number and noted that Dr. Grace had reduced damages by multiplying it by one of Professor Didow's survey numbers, 41%. (Trial. Tr., Vol. 7, at 102:21–103:10). It is plausible that the jury, having considered this evidence and defense counsel's argument, multiplied $24 million by 41% to get $9.84 million (24,000,000 x .41 = 9,840,000). Then, because the jury found no trademark infringement but found false advertising, the jury could have halved the $9.84 and rounded it to $4.9 million (9,840,000/2 = 4,920,000). As the Court noted at trial, the jury may have found a

9

middle ground to assess damages, and Defendant has not carried the high burden of proving that a new trial is warranted based on the damages amount.

In sum, for the reasons stated, the Court finds that the damages amount was reasonable, and Defendants are not entitled to a new trial.

**D. Defendants' Contention that Plaintiff's Claims Are Barred by Laches**

Finally, Defendants argue that Plaintiff's claims are barred by the laches doctrine. The Court disagrees for various reasons. First, Defendants failed to move for JMOL on laches before the case was submitted to the jury and have thus waived the issue.[4] See Bridgetree, Inc. v. Red F Marketing LLC, No. 3:10-cv-228-FDW-DSC, 2013 WL 443698, at *17 (W.D.N.C. Feb. 5, 2013) (denying Rule 50(b) motion because defendants failed to first move under Rule 50(a) and stating that "a Rule 50(a) motion is a prerequisite to a Rule 50(b) motion").

Second, the North Carolina Supreme Court "has recognized the continuing wrong doctrine as an exception to the general rule that a claim accrues when the right to maintain a suit arises." Babb v. Graham, 660 S.E.2d 626, 637 (N.C. Ct. App. 2008) (citing Williams v. Blue Cross Blue Shield of N.C., 581 S.E.2d 415, 423 (N.C. 2003)). Under the continuing wrong exception, a statute of limitations does not begin to run until the wrongful conduct ends. Williams, 581 S.E.2d at 423. A similar continuing wrong rule applies to laches. Fed. Trade Comm'n (FTC) v. Pukke, 53 F.4th 80, 109 (4th Cir. 2022), cert. denied, 144 S. Ct. 73 (2023) (finding that the district court did not abuse its discretion in finding that laches did not bar the entry of contempt orders for conduct that first commenced fifteen years ago because

---

[4] Although Defendants pleaded laches as an affirmative defense in their answers, they did not raise the issue before trial, whether in a motion for summary judgment, motion in limine, or otherwise.

"[Appellant's] violations did not start and end 15 years ago; [Appellant's] violations have occurred continuously for nearly two decades."). Here, Plaintiff argues, and the Court agrees, that Defendants' ads containing the false claims and trademark infringement continued over the years and during the litigation.

Even if Defendants had not waived their JMOL motion, and even if the continuing wrong rule did not apply, Defendants would still not be entitled to a judgment of laches. "Laches . . . is not 'a mere matter of time [ ] but principally a question of the inequity of permitting a claim to be enforced." FTC v. Pukke, 53 F.4th at 109 (citation omitted). To show laches, a defendant must show not just delay, but that the delay was unreasonable and prejudicial. Id.; see also In re Aldrich Pump LLC, No. 20-30608, 2023 WL 9016506, at *9 (Bankr. W.D.N.C. Dec. 28, 2023) ("Laches imposes on the defendant the ultimate burden of proving "(1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting the defense") (citing Costello v. United States, 365 U.S. 265, 282 (1961)). Whether to apply laches "rests in 'the sound discretion of the trial court.'" FTC v. Pukke, 53 F.4th at 109 (citation omitted). Here, Defendants offered no evidence of unreasonable delay, let alone that the delay prejudiced them. In sum, the Court finds that Plaintiff's claims are not barred by laches.

IV. Conclusion

In sum, Defendants have failed to meet the stringent standards necessary for a new trial. Defendants' motion for a new trial is denied.

**ORDER**

**IT IS, THEREFORE, ORDERED** that Defendants' Motion for Judgment as A Matter of Law/Renewed Motion for Judgment as a Matter of Law under Fed. R. Civ. P. 50(b) or, in the Alternative, Motion for New Trial under Fed. R. Civ. P. 59(a), (Doc. No. 375), is **DENIED**.

11

Signed: January 27, 2025

Max O. Cogburn Jr.
United States District Judge