IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| HAYWARD INDUSTRIES, INC., <br><br> Plaintiff <br><br> v. <br><br> BLUEWORKS CORPORATION, BLUEWORKS INNOVATION CORPORATION, NINGBO C.F. ELECTRONIC TECH CO., LTD; NINGBO YISHANG IMPORT AND EXPORT CO., LTD. <br><br> Defendants. | Civil Action No. 3:20-CV-710 -MOC-SCR |

**BLUEWORKS CORPORATION'S MEMORANDUM OF LAW IN SUPPORT OF ITS *EMERGENCY* MOTION FOR CLARIFICATION OF CONTEMPT ORDER [DE 588] ENTERED MARCH 19, 2025**

Blueworks Corporation (the "Debtor"), debtor and debtor in possession in the above-captioned case, by and through undersigned counsel, pursuant to LCvR 7.1(d), hereby files the following Memorandum of Law in Support of its *Emergency* Motion for Clarification of Contempt Order [DE 588] Entered March 19, 2025. The Limited Powers Chapter 11 Trustee (the "Trustee") supports the relief sought by the Debtor.

**PRELIMINARY STATEMENT**

On March 3, 2025, the District Court for the Western District of North Carolina (the "District Court") held a show cause and contempt hearing (the "Show Cause Hearing"), resulting in the Ningbo Parties being held in contempt and sanctioned. Counsel for the Debtor, the Trustee, and the Bankruptcy Administrator for the Bankruptcy Court for the Western District of North Carolina (the "Bankruptcy Administrator") understood based on the pleadings filed by Hayward

Industries, Inc. ("Hayward"), and the arguments at the Show Cause Hearing that—as Hayward would later confirm in writing—the Debtor "is not the subject of the contempt order" though some collateral impact may affect the Debtor based on the sanctions levied by the District Court against the Ningbo Parties—namely, that Debtor may not be able to continue supplying product from the Ningbo Parties.

Following entry of the Contempt Order, Hayward flipped its position, serving the Contempt Order on Amazon.com Services, LLC ("Amazon"), and causing the de-listing of the Debtor's products. With the Contempt Order in hand and the Debtor's sales frozen, Hayward then took the position that the Contempt Order is "a *de facto* ban to the Debtor from selling products in the United States" during proceedings brought by the Debtor to enforce the automatic stay in the Bankruptcy Court for the Western District of North Carolina (the "Bankruptcy Court"). *See* Hayward Industries, Inc.'s Response in Opposition to Debtor's Interim Motion to Enforce Automatic Stay [Docket No. 286][1] (the "Hayward Opposition"), p. 10. Hayward has gone so far as to suggest that the Contempt Order prevents the Debtor from selling *any* products, not just Ningbo products "from candy bars to cell phone accessories to pool products and anything else[.]" Hayward Opposition, p. 9.

Hayward's dueling positions are irreconcilable. Hayward neither sought clarification before the District Court as to the reach and breadth of the Contempt Order vis a vis the Debtor nor did Hayward seek confirmation by the Bankruptcy Court that the automatic stay did not apply to its use of the Contempt Order as a vehicle to destroy the Debtor's business as a going concern and to force the Debtor into liquidation.

---

[1] Citations identified with "Docket No." will refer to the docket of *In re Blueworks Corporation*, Bankruptcy Court for the Western District of North Carolina, Case No. 24-30494. Citations to the District Court docket (as that term is defined herein) shall be identified by "DE".

The Debtor believes that the District Court carefully considered the relief sought by Hayward, deliberately choosing the language used in the Contempt Order to reflect that the Debtor may be impacted by sanctions against the Ningbo Parties while maintaining the Debtor itself was not outright sanctioned along with the Ningbo Parties. In other words, the Contempt Order's language, especially when considered with Hayward's pleadings and arguments, support the notion that the Debtor is *not* the subject of the Contempt Order.

In light of Hayward's shifted position, the Debtor now seeks clarification of the Contempt Order by the District Court. In short, the Debtor respectfully requests that the Court clarify whether the Contempt Order is in fact a de facto import and sales ban—effectively a sanction—against the Debtor, which has the practical effect of terminating the Debtor's Chapter 11 Case.

As the Bankruptcy Court suggested in denying emergency temporary relief sought by the Debtor, the District Court is in the best position to undertake such an analysis and provide certainty to the parties as to whether the Debtor's bankruptcy case and business may continue, allowing it to address the Judgment [DE 448] through its efforts to confirm a plan of reorganization.

## BACKGROUND

**A.     Bankruptcy Court Proceedings**

On June 11, 2024 (the "Petition Date"), the Debtor filed its voluntary petition for relief under chapter 11 of the Bankruptcy Code (the "Chapter 11 Case"). The Debtor is operating its business and managing its property as a debtor in possession pursuant to section 1107(a) and 1108 of the Bankruptcy Code. No examiner or statutory committee has yet been appointed in this Chapter 11 Case. Michael Bowers has been appointed Limited Powers Chapter 11 Trustee. [Docket No. 98].

As described in the Affidavit of Michael Bowers in Support of First Day Relief (the "Bowers Affidavit") [Docket No. 5], the Debtor sells swimming pool equipment, including chlorinators, chlorinator cell replacements, saltwater system parts, pool lights, pool alarms, pool timers, and pool pumps, directly to swimming pool owners. Bowers Aff., ¶ 7. The Debtor sells its products exclusively through listings on Amazon.com, which then pays the Debtor for the sales several times throughout each month by depositing the revenues in the Debtor's bank account. Bowers Aff., ¶ 33.

On March 31, 2025, the Debtor filed its Second Amended Plan of Reorganization of Blueworks Corporation [Docket No. 277] (the "Plan"). The Plan seeks to balance the Debtor's ability to operate, while also addressing the Judgment and providing a payment stream to Hayward in light of the Judgment (pending decisions and outcomes related to the Debtor's appellate rights). The Plan provides that the Debtor will pay its Net Income to Hayward for five years, Plan, § 1.1.58, 3.3, and assigns to Hayward valuable causes of action under the Bankruptcy Code, appropriately brought by the Debtor and Trustee in the first instance, Plan, § 6.5. In other words, the Debtor and Trustee are foregoing their rights in such causes of action to allow Hayward to pursue them for Hayward's own benefit. The Plan also uses Bankruptcy Code provisions to block Ningbo C.F. Electronic Tech Co. Ltd.'s ("NBCF") prepetition claim such that its claim will not be paid pursuant to the Plan. Plan, § 6.7.

The Plan provides certain guardrails and oversight by the Trustee following confirmation, including reporting requirements by the Reorganized Debtor to the Trustee, Plan, § 8.7; inclusion of the Trustee as a signatory to its bank account, which must remain at United Bank in Gastonia, Plan, § 8.8; and certain pre-authorization requirements by the Trustee before the Debtor can take certain actions, Plan, § 8.9.

Finally, the Plan includes default provisions, providing that any default in the Plan after notice and failure to cure will allow claims holders to pursue their state law and bankruptcy law remedies. Plan, § 12.24.

**B.      District Court Proceedings and Contempt Proceedings**

Prior to the Petition Date, a judgment in the amount of $16,021,736.30 (the "Judgment") was entered against the Debtor and in favor of Hayward this case (the "District Court Lawsuit"). Bowers Aff., ¶¶ 11-15. On June 7, 2024, also prior to the Petition Date, Hayward filed a Motion to Show Cause against all Defendants. [DE 468]. Following the Petition Date, Hayward acknowledged that its Motion to Show Cause applied "solely against Defendant Ningbo C.F." "[b]ecause Defendant Blueworks Corporation has filed bankruptcy and the automatic stay applies to that entity." [DE 535-1]. In its Second Supplement to its Motion to Show Cause, Hayward further requested that Mr. Richard Chen be required to attend the hearing personally based on activities as between Defendant Ningbo C.F. and Mr. Chen. [DE 550-1]. Again, Hayward stated in its Second Supplement:

> Indeed, the show cause hearing and a contempt finding thereon, rely only upon evidence concerning Mr. Chen's relationship with Ningbo C.F., ***not Blueworks***.

*Id*. at p. 9, n.9 (emphasis added). Finally, on January 9, 2025, Hayward filed an Emergency Motion for the Court to Expedite the Scheduling of the Show-Cause/Contempt Hearing as against Mr. Chen and NBCF only. [DE 558]. The Cout granted Hayward's Motion for Order to Show Cause [DE 468] and its Motion to Expedite [DE 558] on January 26, 2025. [DE 568].

On March 3, 2025, a show cause hearing was held, and following the show cause hearing, the District Court entered an Order dated March 19, 2025, barring the "Ningbo Parties" from importing or selling any product in the United States [DE 588] (the "Contempt Order"). A true and accurate copy of the Contempt Order is attached hereto as **<u>Exhibit 1.</u>**

{00402230 v 1 }5
Case 3:20-cv-00710-MOC-SCR     Document 614     Filed 04/23/25     Page 5 of 18

The Contempt Order's ruling states that:

1. [. . .] [T]he Ningbo Parties— including all agents, employees, officers, directors, shareholders, affiliates, subsidiaries, assignees, and anyone acting for or through them—shall be barred from importing or selling any product in the United States, including, but not limited to, salt cells, salt water chlorination systems, pumps, heaters, any other equipment for swimming pools, and any components thereof, including the products shown in Appendix A—including, but not limited to, any and all Energy Star certified pumps and any and all pumps bearing Intertek Certification Control No. 4007830. The Ningbo Parties shall not use any shell companies, agents, subsidiaries, affiliates, successors in interest, assignees, corporate restructuring, rebranding, or third parties to evade this import and sales ban.

2. For the avoidance of any doubt, unless and until the Ningbo Parties pay the judgment, all Ningbo Parties shall be barred from inducing, facilitating, contributing to, or otherwise causing, another natural or juristic person(s) (entity) from importing or selling any of the aforementioned products in or into the United States. As a non-limiting example, the Ningbo Parties shall not use any means to evade the import ban, including, for example, by selling products to a middleman, distributor, import/export agent, or any other person(s) or entit(ies) outside of the United States who will then import or sell those products in or into the United States.

[Contempt Order, pp. 16-17].

The Contempt Order defines the Ningbo Parties as: (i) NBCF; (ii) Ningbo Yishang Import and Export Co., Ltd.; (iii) Blueworks Innovation Corporation; and (iv) Zefeng "Richard" Chen.

C.     **Bankruptcy Proceedings following entry of Contempt Order**

On or about March 29, 2025, the Debtor was informed that its listings on Amazon.com, Inc. ("Amazon") had been removed. The Debtor contacted counsel for Amazon on March 29, 2025, to inquire about the de-listing and contacted counsel for Hayward on March 31, 2025, related to the same. Hayward responded later that same day, asserting that the Contempt Order barred the Debtor's sale of its own inventory.

In other words, and as will be more fully discussed below, Hayward took the position that the Contempt Order placed a sales ban on the Debtor despite the fact that the Debtor was not before the District Court and not identified in the defined term "Ningbo Parties". Also, Hayward itself asserted the Debtor "was not the subject of the contempt order".

Through communications with counsel for Amazon from March 29 through April 3, Debtor's counsel was informed that Amazon had been served a copy of the Contempt Order by Hayward and subsequently removed the Debtor's listings. Debtor's counsel has attempted to obtain information from Hayward's counsel, including communications between the parties relating to the Contempt Order but had not been successful. Copies of the email communications between the Debtor and Hayward are attached hereto as **Exhibit 2**.

The items listed by the Debtor on Amazon are products owned and stored by the Debtor, which are invaluable to the Debtor's estate and its ability to operate as a going concern and consequently reorganize to address the Judgment. Without the ability to sell its inventory, the Debtor's chances for a successful reorganization are extinguished. As such, unless and until the Debtor's listings are reinstated on Amazon, the Debtor has been thrust into liquidation mode without advance notice to any party to the Debtor's Chapter 11 Case and without any party seeking such relief before the Bankruptcy Court or the District Court.

In response, the Debtor first sought relief from the Bankruptcy Court for the Western District of North Carolina by filing the Debtor's Emergency Motion to Enforce the Automatic Stay [Docket No. 283], which sought temporary relief to have the Debtor's products re-listed on Amazon while the parties scheduled and litigated final relief. The Debtor believed the Bankruptcy Court was the appropriate forum for the relief requested because Hayward's actions forced the Debtor into liquidation, which effectively resolves the Debtor's Chapter 11 Case. Such an action

converting the case from a reorganization to a liquidation should have been brought by motion to the Bankruptcy Court in the first instance. Importantly, until such relief is granted by the Bankruptcy Court, the Debtor could continue selling[2] its inventory for the benefit of and payment of the Debtor's claims.

On April 7, 2025, the Bankruptcy Court entered its Order Shortening Notice [Docket No. 285], setting expedited briefing deadlines and scheduling an emergency hearing on April 9, 2025 (the "Emergency Hearing"). Hayward filed the Hayward Industries, Inc.'s Response in Opposition to Debtor's Interim Motion to Enforce the Automatic Stay [Docket No. 286] (the "Hayward Response").

At the Emergency Hearing, the Debtor and Trustee argued that the Contempt Order did not apply to the Debtor, while Hayward argued that the Contempt Order did apply.[3] Ultimately, the Bankruptcy Court denied the Debtor's request for interim relief in a bench ruling, which was later memorialized in its Order Denying Debtor's Emergency Interim Motion to Enforce the Automatic Stay [Docket No. 309] (the "Bankruptcy Court Order"), stating:

- The Bankruptcy Court's "inclination is to want to grant the motion" Emergency Hearing Tr., 77:25;

- "[I]t seems clear that the debtor did not, largely based on the pleadings that were filed related to that motion to show cause, believe or understand that it was the subject of the contempt hearing [in] front of Judge Cogburn, nor that the resulting order would instruct Amazon to cease doing business with it", Emergency Hearing Tr., 78:11-16; see also, ¶ 3 ("Upon review of the transcript from the March 3 hearing, the court agrees with the

---

[2] As argued by the Debtor in the Bankruptcy Court, the appropriate approach by Hayward to determine the applicability of the Contempt Order to the Debtor would have been for Hayward to file a motion to convert or dismiss in the Bankruptcy Court. Then Hayward, the Debtor and other parties could litigate, fully and fairly, the practical effect of the Contempt Order. Alternatively, faced with the Debtor's disagreement whether the Contempt Order applied, Hayward could have sought clarification before this Court as to the reach and breadth of the Contempt Order, especially considering Hayward's own statements in the drafting of the proposed order.

[3] The Bankruptcy Administrator expressed concern about Hayward's unilateral action. See Emergency Hearing Tr., 30:11-31:17.

> Debtor's characterization of the proceedings. Notably, there was no discussion about the automatic stay or the police powers exception to the automatic stay nor any mention of the Debtor being barred from selling its product on Amazon's website.");

- "It's also suspect to me that in the email exchange about the proposed order stemming from that hearing, that Hayward affirmatively represented that the proposed order is for the Ningbo Parties. 'Blueworks is not the subject of the contempt order,' and I quote." Emergency Hearing Tr., 79:1-5; <u>see</u> also Bankruptcy Court Order, ¶ ;4 and

- "So putting all of that together, it seems fair to say to me, at least, that the debtor was probably sandbagged by Hayward in this instance. And like Ms. Abel, that doesn't sit well with this Court. And also, as she added, it doesn't appear to me that the debtor got its day in court for purposes of that limited proceeding related to the motion to show cause." Emergency Hearing Tr., 79:6-11.

A true and accurate copy of the Emergency Hearing Transcript is attached hereto as **<u>Exhibit 3</u>**, while a true and accurate copy of the Bankruptcy Court Order is attached hereto as **<u>Exhibit 4</u>**.

The Bankruptcy Court went on to rule that the relief sought by the Debtor is inappropriate, whether pursuant to a consent order lifting the automatic stay entered into in the Bankruptcy Court or the terms of the Contempt Order itself as well as its reference to automatic stay and the District Court's police powers, among other reasons. Emergency Hearing Tr., 79:12-23; Bankruptcy Court Order, ¶ 5.

On April 15, 2025, the Bankruptcy Court entered the Bankruptcy Court Order. In the Bankruptcy Court Order, the Bankruptcy Court also noted:

- "At its core, the Motion seeks to have this court interpret the Contempt Order; however, the District Court is best positioned to do that." Bankruptcy Court Order, ¶ 5;

- "In addition, it would be inappropriate for this court to direct Amazon–a third-party to this proceeding–to resume selling the Debtor's product contrary to the terms of the Contempt Order, as evidenced by the inclusion of the Debtor's product on the chart attached as Appendix A to the Contempt Order." Bankruptcy Court Order, ¶ 6; and

- "Finally, whether as an affiliate or as an entity being induced to import or sell the products at issue—as described in paragraphs 1 and 2 of the decretal portion of the

Contempt Order—it appears to the Court that the Contempt Order applies to the Debtor." Bankruptcy Court Order, ¶ 7.

The Bankruptcy Court Order concluded: "To the extent the Debtor files a motion seeking clarification of the Contempt Order, this court respectfully urges the District Court to consider such motion as soon as reasonably possible in light of the apparent impact the Contempt Order has on the Debtor's ability to continue doing business."

Following entry of the Bankruptcy Court Order and receipt of the Emergency Hearing Transcript, the Debtor and Trustee conferred, analyzing the appropriate steps, if any, to take in response to the Bankruptcy Court's bench ruling and Bankruptcy Court Order. Ultimately, the Debtor decided to file these pleadings before the District Court in order to receive the District Court's guidance as to the Contempt Order.

In their discussions and preparation of the Motion and Brief, the Debtor sought to balance the emergency footing on which it found itself with the time necessary to draft and brief the Motion given the potentially case- and enterprise-ending nature of any ruling on its motion, forcing the Debtor into liquidation, ending its operations as a going concern, and foreclosing the Debtor's ability to pay any amounts toward the Judgment as proposed by its Plan.

## ARGUMENT

The reach and breadth of the Contempt Order is clear—it does not bar the Debtor from selling its own products manufactured and imported by an entity not subject to the Contempt Order.[4] The District Court was intentional in the use of its language in the Contempt Order to make that reach and breadth clear.

---

[4] The Debtor understands the Contempt Order bars NBCF from selling and importing inventory, whether to the Debtor or any other party, and also understands the Contempt Order bars the Debtor from paying NBCF as the current Debtor-owned inventory is sold through Amazon. The Debtor

However, despite Hayward's assertion that the Debtor was not the subject of the Contempt Order, Hayward now presses an argument that the Contempt Order is "a *de facto* ban to the Debtor from selling products in the United States[.]" Hayward Response, p. 10. Hayward accomplished its preferred reading of the Contempt Order—without any notice to the Debtor, Trustee, or other parties—by serving the Contempt Order on Amazon, resulting in the de-listing of the Debtor's products. Therefore, the Debtor respectfully asks this District Court for clarification that the Contempt Order does not bar the Debtor from importing and selling its products.

In other words, was it the District Court's intention that the Contempt Order be a blanket sales and importation ban against the Debtor, ending the Debtor's operations as a going concern and forcing the Debtor into a liquidation, despite the Debtor having no due process or right to be heard on the matter? The Debtor believes that result was not the District Court's intention.

The Debtor's sale of the Debtor's products does not violate the Contempt Order as the property of the estate is not owned by the Ningbo Parties and is not being imported or sold by the Ningbo Parties. Instead, the conduct put at issue by Hayward is the sale of the Debtor's products by the Debtor. Importantly, no proceeds from the sale of the Debtor's property will flow to the Ningbo Parties due to the Contempt Order. This fact will be verifiable, too: All proceeds from the sale of the Debtor's inventory on Amazon are catalogued in the Debtor's monthly reports filed in the Bankruptcy Court, which would show any transfers from the Debtor to a Ningbo Party. Furthermore, any concern relating to the Contempt Order's application to Mr. Chen is ameliorated by the fact that the Debtor's financial operations are currently controlled by the Limited Powers Trustee, **not** Mr. Chen. So long as the Debtor does not import any further inventory from the

---

is in the midst of negotiating with a new supplier so that it may continue selling products given the Contempt Order's import and sales ban directed at NBCF.

{00402230 v 1 }11
Case 3:20-cv-00710-MOC-SCR     Document 614     Filed 04/23/25     Page 11 of 18

Ningbo Parties, and the proceeds from Debtor's sale of its current inventory do not flow back to the Ningbo Parties, the Contempt Order does not bar the Debtor from selling its own products.

The Contempt Order specifically notes that the order "focuses on the Ningbo Parties"; "any impact on Blueworks Corporation is pursuant to this Court's exercise of its police powers to enforce its orders." [Contempt Order, fn. 1]; and "To the extent that this sales and import ban impacts Blueworks Corporation, which is currently in Chapter 11 bankruptcy, the ban does not violate the automatic stay of 11 U.S.C. § 362(a) because the ban is issued pursuant to this Court's police power to enforce its orders, including the TRO."[5] While the impact on the Debtor was considered, no direct enforcement against the Debtor was intended. And an explanation exists for such a carve-out—one could imagine an argument made by a debtor that the inability of a debtor to purchase products from its sole supplier violates the automatic stay. In other words, the footnote (and subsequent automatic stay reference in the Contempt Order) must be read in the context of the Contempt Order, not in isolation to support a ban of the Debtor's sale of its own products.

Also supporting the argument that the Contempt Order is not to be enforced against the Debtor prospectively is the fact that the Debtor was not before the District Court in the contempt proceedings. The Contempt Order only establishes jurisdiction over the Ningbo Parties and only references violations of the temporary restraining order by the Ningbo Parties.

While Hayward filed Hayward Industries, Inc.'s Motion to Show Cause [DE 468] against the Debtor and all its codefendants before the filing of the Chapter 11 Case, Hayward shifted its focus from the Debtor in later pleadings, ending its pursuit of the Debtor for contempt and

---

[5] The Debtor disputed the propriety of such an inclusion in the proposed order shared by Hayward and notified Hayward of the same given that the automatic stay was not litigated in the contempt proceedings, and the Debtor was not a party to the contempt proceedings. The Debtor did not press this issue following Hayward's confirmation that the Debtor was not the subject of the Contempt Order.

sanctions and even referencing that the automatic stay applied. *See* Hayward Industries, Inc.'s Motion for Leave to File Supplement to Motion to Show Cause [DE 535] ("Because Defendant Blueworks Corporation has filed bankruptcy and the automatic stay applies to that entity, this Supplement is filed solely against Defendant Ningbo C.F., which has not filed for bankruptcy."); Hayward Industries, Inc.'s Motion for Leave to File Second Supplement to Motion to Show Cause [DE 550] ("Because there is a bankruptcy stay, and, because the wrongdoing in this Section B(1) arises from Mr. Chen's relationship with *Blueworks*, the information in this Section B(1) is for informational purposes only. Indeed, the show cause hearing and a contempt finding thereon, rely only upon evidence concerning Mr. Chen's relationship with Ningbo C.F., not Blueworks."); Hayward Industries, Inc.'s Emergency Motion for the Court to Expedite the Scheduling of the Show-Cause/Contempt Hearing [DE 558] (seeking "the show-cause hearing as soon as the Court can schedule one so that Mr. Chen and Ningbo CF can answer Hayward's allegations that they have violated, and are continuing to violate, the TRO by diverting assets out of this country").

In *Remington Rand Corp.-Delaware v. Bus. Sys.*, the Third Circuit reversed a finding of civil contempt against an individual, J.A.M. Banning ("Banning"), because Banning did not receive notice that he was subject to the court's contempt power. 830 F.2d 1256, 1258 (3d Cir. 1987). Banning had previously been appointed by a Dutch court to act as a trustee for a company seeking the Dutch equivalent of a Chapter 11 reorganization. *Id.* at 1257. A show cause order was subsequently issued by the United States District Court, and following the show cause hearing, which Banning did not attend, Banning was held to be in civil contempt of the show cause order. *Id.* The Third Circuit reversed this holding on the basis of lack of due process, finding that Banning lacked proper notice that he was personally subject to contempt proceedings. *Id.* at 1259. Though discussion during the contempt hearing mentioned Banning being held in contempt, the Third

Circuit found "the discussion . . . could have provided Banning with some inkling that he might be held in contempt. But an inkling is not enough to subject one to potential incarceration or monetary penalties." *Id.* at 1258. The *Remington* Court further held that whether Banning was represented by counsel at the contempt hearing did not cure the due process issue: "There is a fundamental distinction between Banning's being represented because he had an indirect administrative interest in the contempt proceedings, and his being represented because he was named as an alleged contemnor." *Id.* See also, *Dole Fresh Fruit Co. v. United Banana Co.*, 821 F.2d 106 (2d Cir. 1987) (reversing a contempt order on similar grounds). Like *Remington*, the result here for the Debtor should be the same, especially considering the Debtor itself was not held in contempt and was not sanctioned.

By seeking the removal of the Debtor's Amazon listings, Hayward has prospectively and improperly restricted the Debtor's operations on the basis that a violation of the Contempt Order *could* occur. As stated above, the Debtor's proceedings in the Bankruptcy Court provide clear guardrails to ensure the Debtor's operations remain in conformity with the restrictions established by the Contempt Order and provide a forum, along with the District Court, to litigate any violations of the Contempt Order.

Finally, the Court need look no further than Hayward's own statements about whom the Contempt Order applies. In email correspondence related to Hayward's proposed order, Hayward itself confirmed "Blueworks is not the subject of the contempt order" and described the Debtor as a "third party". The cited correspondence is attached hereto as **Exhibit 5**. Hayward's own pleadings support this conclusion as argued herein.

In proposing the Contempt Order, Hayward took the position the Contempt Order did not affect the Debtor. But now, with the Contempt Order entered, Hayward changed positions, serving

{00402230 v 1 }14
Case 3:20-cv-00710-MOC-SCR    Document 614    Filed 04/23/25    Page 14 of 18

the Contempt Order on Amazon, prompting Amazon to de-list the Debtor, effectively shutting down the Debtor's business, and now asserting the Contempt Order applies to the Debtor's sales of the Debtor's products.

The Debtor has incurred and will continue to incur substantial damages as a result of Amazon's removal of the Debtor's listings as the Debtor is unable to generate revenue through its only sales platform. Of additional concern, the Debtor's priority in search results on Amazon for its products may suffer along with its Amazon reviews and ratings. Furthermore, the Debtor's customers search for the Debtor's products on an as-needed basis, and if no listing exists for such a customer to purchase the product, the customer may find an alternative in the Amazon search results. In such a case, the Debtor may lose that sale for the entire pool season.

Most importantly, though, the Debtor faces no prospects of a successful reorganization should the Contempt Order be read to ban the Debtor's sales of its own products. Consequently, the Debtor respectfully asks the District Court whether such an outcome was intended and whose reading of the Contempt Order is accurate.

## **CONCLUSION**

For the foregoing reasons, the Debtor respectfully requests that the District Court clarify its Contempt Order and rule that the Contempt Order does not bar the Debtor from selling its own products and from selling products received by an entity not subject to the Contempt Order.

[*Remainder of Page Intentionally Left Blank*]

This the 23rd day of April, 2025.

                              RAYBURN COOPER & DURHAM, P.A.

By: */s/ Matthew L. Tomsic*
     Matthew L. Tomsic
     N.C. State Bar No. 52431
     Natalie E. Kutcher
     N.C. State Bar No. 54888
     Ashley B. Oldfield
     N.C. State Bar No. 56552
     Suite 1200, The Carillon
     227 West Trade Street
     Charlotte, NC 28202
     (704) 334-0891

     *Counsel to the Debtor*

# ARTIFICIAL INTELLIGENCE (AI) CERTIFICATION

I hereby certify the following:

1. No artificial intelligence was employed in doing the research for the preparation of this document, with the exception of such artificial intelligence embedded in the standard on-line legal research sources Westlaw, Lexis, FastCase, and Bloomberg;

2. Every statement and every citation to an authority contained in this document has been checked by an attorney in this case and/or a paralegal working at his/her direction (or the party making the filing if acting pro se) as to the accuracy of the proposition for which it is offered, and the citation to authority provided.

This the 23rd day of April, 2025.

*/s/ Matthew L. Tomsic*
Matthew L. Tomsic

# CERTIFICATE OF SERVICE

The undersigned certifies that on this day the **BLUEWORKS CORPORATION'S MEMORANDUM OF LAW IN SUPPORT OF ITS *EMERGENCY* MOTION FOR CLARIFICATION OF CONTEMPT ORDER [DE 588] ENTERED MARCH 19, 2025** was electronically filed via the District Court's CM/ECF system, which will send notification of such filing to all counsel of record.

  This the 23rd day of April, 2025.

             By: */s/ Matthew L. Tomsic*
                Matthew L. Tomsic